Christopher Sproul (Cal. Bar No. 126398)
Brian Orion (Cal. Bar No. 239460)
Marla Fox (Cal. Bar. No. 349813)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: borion@enviroadvocates.com
Email: mfox@enviroadvocates.com

**Attorneys for Plaintiffs**

**Additional Counsel Listed on Next Page**

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>Defendant. | Case No: 2:24-cv-06854<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>(Endangered Species Act, 16 U.S.C. §§ 1531, *et seq*; California Fish and Game Code §§ 5901, 5937; California Public Trust Doctrine; California Constitution, Article X; California Code of Civil Procedure § 1085) |

*Additional Counsel for Plaintiffs*

Jesse Colorado Swanhuyser (Cal. Bar No. 282186)
Sycamore Law Inc.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (805) 689-1469
Email: jesse@sycamore.law

Drevet Hunt (Cal. Bar No. 240487)
Lauren Chase Marshall (Cal. Bar No. 324162)
Cody Phillips (Cal. Bar No. 353840)
California Coastkeeper Alliance
1100 11th Street, 3rd Floor
Sacramento, California 95814
Tel: (415) 606-0864
Email: dhunt@cacoastkeeper.org
Email: lauren@cacoastkeeper.org
Email: cody@cacoastkeeper.org

**INTRODUCTION**

1. In this action, Plaintiffs SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION (collectively, "Plaintiffs") seek to address the jeopardy to the survival and recovery of several species listed as endangered or threatened under the federal Endangered Species Act ("ESA") in the Arroyo Grande Creek watershed in San Luis Obispo County, California that the Defendant County of San Luis Obispo ("Defendant" or "County") is posing due to its operation and maintenance of various County infrastructure. This infrastructure includes Lopez Dam, Lopez Lake, a three-mile buried steel transmission line that conveys water to Lopez Terminal Reservoir, the Lopez Water Treatment Plant, and various in-stream infrastructure downstream from Lopez Dam (collectively, the "Project"). Though on notice from various federal and state agencies, concerned citizen groups, and even its own consultants for decades that the Project is threatening the recovery and survival of several endangered or threatened species, the County has continued to fail to take urgently needed actions to curb the Project's adverse impacts on the species that have been well described to the County by these agencies and consultants.

2. For decades, the County's operation and maintenance of the Project has caused significant harm to the threatened South-Central California Coast ("SCCC") Distinct Population Segment ("DPS") of Steelhead trout (*Oncorhynchus mykiss*) ("Steelhead"), threatened California red-legged frog (*Rana aurora draytonii*) ("CRLF"), endangered Tidewater Goby (*Eucyclogobius newberryi*), and endangered least Bell's vireo (*Vireo bellii pusillus*) (together, the "Listed Species"). The County's operation and maintenance of the Project also harms southwestern pond turtle (*Actinemys pallida*), which is proposed for listing under the ESA as threatened (collectively, with the Listed Species, the "Imperiled Species"). The County's operation and maintenance of the Project harms the Imperiled Species in myriad ways. Most crucially, Lopez Dam is a complete barrier blocking SCCC Steelhead migration to the majority of high-quality

spawning, rearing, and refugia habitat above Lopez Lake. Moreover, the County releases insufficient flows from Lopez Dam to the mainstem Arroyo Grande Creek resulting in severely degraded spawning, rearing, and migration habitat downstream of the dam—the limited remaining habitat for Steelhead in the Arroyo Grande Creek watershed. The County's operation and maintenance of the Project also harms CRLF, Tidewater Goby, least Bell's vireo, and southwestern pond turtle, as well as other wildlife and riparian vegetation that individually and collectively form an important part of the Arroyo Grande Creek ecosystem.

3.      Despite harming the Imperiled Species and the Arroyo Grande Creek ecosystem, the County has continued to operate and maintain the Project for decades without the necessary ESA habitat conservation plan ("HCP") and incidental take permit ("ITP") as required by the ESA. Plaintiffs seek redress for the County's continuing operation and maintenance of the Project in a manner that violates the ESA by causing the unauthorized "take" of Steelhead.

4.      Plaintiffs also challenge the County's continuing operation and maintenance of the Project as violating California Fish and Game Code ("CFGC") sections 5937 and 5901, the California Public Trust Doctrine, and California Constitution Article X, Section 2. The County 's failure to release sufficient water from Lopez Dam to create a healthy Steelhead population in lower Arroyo Grande Creek constitutes a violation of CFGC section 5937, which requires the owner of any dam to allow sufficient water to pass over, around or through the dam, to keep in good condition all fish that reside below the dam. The County's maintenance of Lopez Dam and other instream infrastructure has further violated CFGC section 5901, which prohibits the County from maintaining Lopez Dam and other instream infrastructure in a manner that prohibits Steelhead migration upstream and downstream in Arroyo Grande Creek. The County is violating the California Public Trust Doctrine by failing to analyze and duly consider the impacts of the Project on Arroyo Grande Creek's public trust resources (which include the Imperiled Species and the other ecosystem values of the Creek) and to take the actions necessary to avoid harm

to these public trust resources that the Project causes. The County is violating California Constitution Article X, Section 2 by engaging in an unreasonable method of use, diversion, and storage of the waters of Arroyo Grande Creek in a manner that is causing significant harm to the Arroyo Grande Creek environment, including to the Imperiled Species.

5.    Because of the County's ongoing failures and the resulting harm that has occurred and will continue to occur to the Imperiled Species, the County must take action to protect these species from extinction. This includes (a), providing volitional fish passage past Lopez Dam to allow migrating Steelhead to access high-quality spawning and rearing habitat that exist upstream of the Dam, (b), releasing ecologically meaningful flows from Lopez Dam—flows that would give the Imperiled Species in Arroyo Grande Creek a chance to survive and recover, (c), implementing various ecosystem restoration actions to offset the Project's ongoing harms to the Arroyo Grande Creek ecosystem generally and to the Imperiled Species in particular.

## JURISDICTION

6.    This Court has jurisdiction over the ESA claim set forth in this Complaint pursuant to 28 U.S.C. § 1331 (civil action arising under the laws of the United States), specifically 16 U.S.C. § 1540(g)(1), which authorizes citizens to bring suit to enjoin any person or government agency or instrumentality that is in violation of the ESA or any regulation issued pursuant to the ESA. 16 U.S.C. § 1540(g) further grants jurisdiction to this Court over claims brought pursuant to the ESA's citizen suit provisions. This Court has jurisdiction over the Plaintiffs' claims arising under CFGC sections 5937 and 5901, the California Public Trust Doctrine, and California Constitution Article X, Section 2 pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) because these California state law claims derive from the same common nucleus of operative fact as the Plaintiffs' federal ESA claim and thus form part of the same case or controversy under Article III of the United States Constitution. This Court further has jurisdiction pursuant to 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C § 2202 (injunctive relief).

7.      Further, this Court has subject matter jurisdiction over the claim for the County's ESA violations pursuant to 16 U.S.C. § 1540(g)(1), which authorizes citizens to bring suit to enjoin any person that is in violation of the ESA after providing the prerequisite notice of intent to file suit. Pursuant to 16 U.S.C. § 1540(g)(2), Plaintiffs provided notice of intent to file suit under the ESA on June 6, 2024, to the Secretary of Commerce, the Secretary of the Interior, and the County. The June 6, 2024 notice letter is attached hereto as Exhibit A. More than sixty (60) days have passed since Plaintiffs served this notice, and neither the Secretary of Commerce nor the Secretary of the Interior has initiated any enforcement action against the County and its ESA violations alleged herein continue to occur.

8.      Further, this Court has subject matter jurisdiction over Plaintiffs' claims arising under CFGC sections 5937 and 5901, the California Public Trust Doctrine, and California Constitution Article X, Section 2 pursuant to California Code of Civil Procedure § 1085 which authorizes mandamus actions for failure to perform mandatory duties. *People for Ethical Operation of Prosecutors etc. v. Spitzer*, 53 Cal. App. 5th 391, 407 (2020) (quoting *Common Cause v. Bd. of Supervisors,* 49 Cal.3d 432, 442 (1989)). Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction to hear claims brought pursuant to California Code of Civil Procedure § 1085.

9.      This Court has personal jurisdiction over the County as a general law county that has offices in the County of San Luis Obispo, California.

10.     Plaintiffs and their members are aggrieved by the harms that the County is causing to the Imperiled Species and their habitat, and the County's unauthorized take of Steelhead. Plaintiffs' members visit Arroyo Grande Creek for wildlife viewing, scientific observation, educational study, aesthetic enjoyment, spiritual contemplation, and recreation, including swimming, rafting, kayaking, and fishing. The County's unauthorized take of Steelhead, harm to the Imperiled Species, and other ecological damage has caused, and will in the future continue to cause, an impairment of the state of the Arroyo Grande Creek ecosystem and the fisheries therein, and as a result, Plaintiffs'

members' use of the area is impaired and diminished. As a result, the Plaintiffs' members' enjoyment of the Imperiled Species and the associated Arroyo Grande Creek ecosystem has been and is being impaired and diminished. A favorable decision from this Court would redress Plaintiffs' members' injuries by declaring that the County's operation and maintenance of the Project causes take of threatened Steelhead in violation of the ESA and ecological harm in violation of various California state laws, and by ordering the County to abate the harms to Steelhead and the Arroyo Grande Creek ecosystem.

11.    An actual controversy presently exists between Plaintiffs and the County, as the County continues to fail to comply with ESA § 9 by taking Steelhead and further fails to comply with various California state laws as described herein. Therefore, Plaintiffs are entitled to relief as set forth below.

## VENUE

12.    Venue in the United States District Court for the Central District of California is proper under 28 U.S.C. § 1391(b) and (e) because the events or omissions giving rise to the claim occurred in this District. Specifically, the County's ongoing operation and maintenance of the Project in San Luis Obispo County is in violation of the ESA and various California state laws as described herein. In addition, the County's offices are located in San Luis Obispo County and some of the Plaintiffs have offices located within the Central District of California.

## THE PARTIES

### A. Plaintiffs

13.    Plaintiff San Luis Obispo Coastkeeper is a project of Environment in the Public Interest (collectively, "Coastkeeper"), a corporation organized under the laws of California that is a public trust resource organization. Coastkeeper's main office is located at 1013 Monterey Street, Suite 202 in San Luis Obispo, California. Coastkeeper's members and staff live and/or recreate in and around the waters in San Luis Obispo County, including the Arroyo Grande Creek watershed. Coastkeeper is the only

environmental watchdog dedicated solely to enforcement of water quality, watershed protection, and coastal planning regulations in San Luis Obispo and northern Santa Barbara Counties. To further its mission, Coastkeeper actively seeks federal and state implementation of environmental laws.

14.    Plaintiff Los Padres ForestWatch ("ForestWatch") is an independent, California non-profit 501(c)(3) public interest organization working to protect wildlife, wilderness, and watersheds throughout the Los Padres National Forest along California's Central Coast. ForestWatch's members and staff recreate in and around and otherwise utilize the waters in San Luis Obispo, including the Arroyo Grande Creek watershed for various study and advocacy purposes. One of ForestWatch's core programs is to restore historic Steelhead populations in forest watersheds that are currently blocked by dams or other obstructions. To that end, since 2007, ForestWatch has worked to restore stream flows in various river systems in the region so that fish, including Steelhead, may return to their native spawning grounds that often constitute headwaters in the Los Padres National Forest. ForestWatch has also provided support to other projects that seek to remediate or remove other impediments to Steelhead migration, with the overall goal of enhancing watershed health for the benefit of wildlife and surrounding communities.

15.    Plaintiff California Coastkeeper Alliance is an environmental group organized as a nonprofit corporation in accordance with the laws of the State of California. Using law, policy, and science, California Coastkeeper Alliance advances statewide policies and programs for healthy and clean waters. California Coastkeeper Alliance works with local Waterkeepers to develop, implement, and defend policies that meet the needs of California's distinct communities and ecosystems. California Coastkeeper Alliance also actively seeks federal and state agency implementation of laws to protect imperiled species and, where necessary, initiates enforcement actions on behalf of itself and its members. California Coastkeeper Alliance's members and staff use and enjoy the Arroyo Grande Creek watershed for recreation and enjoyment of the natural environment, and for study and advocacy purposes.

16.      Plaintiff Ecological Rights Foundation is a California nonprofit public benefit corporation with an office in Blocksburg, California, and members throughout California. The Ecological Rights Foundation is dedicated to furthering the rights to a clean, healthy, and diverse environment. The Ecological Rights Foundation represents citizens who are striving to, among other things, secure the multitude of public and private benefits that follow from protecting and ensuring abundant and diverse wildlife populations; clean soil and pure water; healthy recreational opportunities; economic prosperity from commercial sport and subsistence fishing; and other recreational, spiritual, and commercial activities that depend on clean soil and pure water. Ecological Rights Foundation's members value and seek to use Steelhead (including Steelhead that have or would use Arroyo Grande Creek for spawning, rearing, and refuge) for fishing, wildlife observation and enjoyment, spiritual contemplation, and scientific study and understanding.

17.      Plaintiffs and their staff and members have deep and long-standing interests in the preservation and protection of the Imperiled Species in the Arroyo Grande Creek watershed. These interests are directly harmed by Defendant's actions and inactions challenged herein. Plaintiffs' staff and members regularly use and enjoy Arroyo Grande Creek and its tributaries, and the area of the Pacific Ocean that Arroyo Grande Creek empties into, including the areas affected by the Project, to fish for, observe, photograph, study, and enjoy the Imperiled Species and to engage in other personal, recreational, and professional activities. Plaintiffs and their staff and members derive recreational, scientific, aesthetic, spiritual, and economic benefits from these pursuits and the existence in the wild of thriving populations of the Imperiled Species, including native SCCC Steelhead. Plaintiffs and their staff and members will continue to use the Arroyo Grande Creek and its tributaries and the Pacific Ocean in 2024 and beyond for these purposes, and their enjoyment and commercial success will continue to be harmed if the populations of Imperiled Species remain at low numbers due to impacts from the County's Project.

18.    Plaintiffs are advocates for the Imperiled Species and have long-standing concerns about the threat to these species from the County's operation and maintenance of the Project. Plaintiffs' interests in protecting and enjoying the Imperiled Species in the Arroyo Grande Creek watershed are being directly harmed by the County's actions and inactions. Plaintiffs' interests in the Imperiled Species include interests in the scientific and policy information that would be developed by the County complying with ESA § 10 obligations to develop and submit to the National Marine Fisheries Service ("NMFS") a comprehensive HCP and ITP application that would analyze in detail the adverse impacts of the Project on ESA-listed species, including Steelhead, CRLF, Tidewater Goby, and least Bell's vireo and the reasonable and prudent alternatives or reasonable and prudent measures that could and should be implemented to minimize these adverse impacts. Plaintiffs would use this information to inform their members concerning important science issues related to the Plaintiffs' environmental protection missions, to share information on important science and policy questions with other environmental organizations, and to develop advocacy to federal, state, and local government bodies/agencies concerning appropriate means to protect the Arroyo Grande Creek ecosystem. Plaintiffs' interests described above have been, are being, and unless the relief prayed for is granted, will continue to be adversely affected and irreparably injured by the County's violations of law.

**B. Defendant**

19.    Defendant, County of San Luis Obispo is a governmental instrumentality or agency of the State of California. The County constructed and owns, operates, and maintains the Project. The County maintains an office in San Luis Obispo, California. The County is responsible for ensuring its actions in owning, operating, and maintaining the Project comply with the ESA.

## LEGAL BACKGROUND

**A. The Federal Endangered Species Act**

20.    The ESA's purpose is to provide a means to conserve endangered and

threatened species as well as the ecosystems upon which those species depend. 16 U.S.C.
§ 1531(b). "Congress intended endangered species to be afforded the highest of
priorities." *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 174 (1978); 16 U.S.C. §
1531(c). "The plain intent of Congress enacting this statute was to halt and reverse the
trend toward species extinction, whatever the cost." *Id.* at 184.

21.     NMFS or the U.S. Fish and Wildlife Service ("FWS") (collectively, the
"Services") must list a species as threatened under the ESA if it is likely to become
endangered within the foreseeable future throughout all or a significant portion of its
range, and must list it as endangered if it is in danger of going extinct throughout all or a
significant portion of its range. 16 U.S.C. §§ 1532(6), (20); 1533(a)(1).[1] Once a species is
listed as threatened or endangered, the Services must designate critical habitat, which is
occupied or unoccupied habitat that contains physical or biological features essential to
the conservation of the species and which may require special management
considerations or protections. 16 U.S.C. §§ 1532(5), 1533(a)(3).

22.     To achieve its goals, the ESA and its implementing regulations prohibit
"take" of species listed under the act by any person. 16 U.S.C. § 1538(a)(1)(B)
(prohibiting take of endangered species); 50 C.F.R. § 17.31 (extending take prohibition to
threatened species unless there are species-specific exemptions); 50 C.F.R. § 223.203
(extending take prohibition to threatened steelhead DPSs, including SCCC Steelhead).

23.     The term "person" includes "any State, municipality, or political subdivision
of a State, or . . . any State, municipality, or political subdivision of a State; or any other
entity subject to the jurisdiction of the United States." 16 U.S.C. § 1532(13). It is
unlawful for any person to cause an ESA violation to be committed. 16 U.S.C. § 1538(g).

24.     The ESA defines the term "take" to mean "to harass, harm, pursue, hunt,
shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."

---

[1] NMFS is responsible for conservation and recovery of marine species, such as
anadromous Steelhead, while FWS is responsible for conservation and recovery of
freshwater and terrestrial species, such as CRLF, Tidewater Goby, and least Bell's vireo.

16 U.S.C. § 1532(19). "Take" includes indirect as well as direct harm and need not be purposeful. *See Sweet Home Chapter of Cmtys. for a Great Oregon v. Babbitt*, 515 U.S. 687, 704 (1995).

25.    The term "harm" within the meaning of "take" means "an act which actually kills or injures fish or wildlife." 50 C.F.R. §§ 17.3, 222.102. "Such an act may include significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including, breeding, spawning, rearing, migrating, feeding or sheltering." 50 C.F.R. § 222.102. By including the terms "spawning," "rearing," and "migrating" in the definition of harm, NMFS made clear that it considers these behaviors to be "essential behavioral patterns." 64 Fed. Reg. 60,727 (Nov. 8, 1999). NMFS determined that "any habitat modification that significantly impairs spawning, rearing, or migrating does constitute harm to the species and is a take pursuant to the provisions of the ESA." *Id.* at 60,728.

26.    Although NMFS has not defined "harass," FWS defines "harass" in the definition of "take" as "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3.

27.    The Services can authorize take of a listed species through an incidental take statement, following consultation with NMFS or FWS, if the relevant agency determines that the taking is incidental to an otherwise lawful activity and does not cause jeopardy to the species and the private party agrees to operate the project consistent with the provisions of the reasonable and prudent alternatives and incidental take statement set forth in a biological opinion. 16 U.S.C. § 1536. However, in the absence of the protection offered by a biological opinion's incidental take statement, or an HCP and permit issued under ESA section 10, a private party that engages in the take of an endangered or protected threatened species is liable under ESA section 9.

28.    The ESA contains a broad citizen suit provision which authorizes any person

to commence a civil suit "to enjoin any person . . . who is alleged to be in violation of this chapter or regulation issued under the authority hereof . . ." 16 U.S.C. § 1540(g)(1). A court may grant preliminary and permanent injunctive relief pursuant to this provision. *See Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1068 (9th Cir. 1996) (granting injunction based upon reasonably certain threat of imminent future harm to species).

**B. California Fish and Game Code Section 5937**

29.    CFGC section 5937 provides "The owner of any dam shall allow sufficient water at all times… to pass over, around or through the dam, to keep in good condition any fish that may be planted or exist below the dam." *See Nat. Res. Def. Council v. Patterson,* 333 F. Supp. 2d 906, 918 (E.D. Cal. 2004); *Cal. Trout v. State Bd.,* 207 Cal. App. 3d 593, 605 (Cal. Ct. App. 1989) (*Cal Trout I*). Dam operators must release "enough [water] to restore the historic fishery;" *i.e.*, sufficient water "to reestablish and maintain the fisheries which existed in [streams] prior to [the operator's] diversion of water." *Cal. Trout v. Super. Ct.*, 218 Cal. App. 3d 187, 210, 213 (Cal. Ct. App. 1990) (*Cal Trout II*). If dam operators are not releasing water sufficient to reestablish historic fisheries, they must alter their operations to do so. *Patterson*, 333 F. Supp. 2d at 924 & n.12. Keeping fish in good condition within the meaning of CFGC section 5937 means releasing water sufficient to create habitat that supports a healthy, self-sustaining fish population with reasonable growth rates, diversity of age class, and ability to thrive during all life stages. *Cal Trout I*, 207 Cal.App.3d at 599; *Cal Trout II*, 218 Cal.App.3d at 201, 210, 213.

**C. California Fish and Game Code Section 5901**

30.    CFGC section 5901 states "it is unlawful to construct or maintain in any stream [in certain districts, including District 3 ½,] any device or contrivance that prevents, impedes, or tends to prevent or impede, the passing of fish up and down stream."

**D. The California Public Trust Doctrine**

31.    The California Public Trust Doctrine mandates that the State of California

and its political subdivisions have the duty "to protect the people's common heritage of streams, lakes, marshlands and tidelands, surrendering that right of protection only in rare cases when the abandonment of that right is consistent with the purposes of the trust." *Nat'l Audubon Soc'y v. Super. Ct*., 33 Cal.3d 419, 436-37 (1983). The California Public Trust Doctrine requires state and local government "to administer trust resources such as rivers and streams consistent with facilitating public access, public enjoyment, and public use of trust land and resources." *E.g.*, *San Francisco Baykeeper, Inc. v Cal. State Lands Comm*. 242 Cal.App.4th 202, 237-238 (2015). Arroyo Grande Creek and its Steelhead population are public trust resources. *See Nat'l Audubon Soc'y*, 33 Cal.3d at 434-35 (California's waterways and fisheries are held in public trust for the benefit of the people; interest in fishing is a protected public trust use); *Ctr. for Biological Diversity, Inc. v. FPL Grp., Inc.*, 166 Cal. App. 4th 1349, 1366 (2008) (same); *Cal. Trout II*, 218 Cal. App. 3d at 206 ; CFGC § 711.7(a); *see also* CFGC §§ 1600, 1801.

32.    State and local government agencies may not ignore or unnecessarily or unjustifiably harm public trust interests. *Nat'l Audubon Soc'y*, 33 Cal.3d at 446; *Citizens for Eastshore Parks v. State Lands Comm*., 202 Cal. App .4th 549, 577 (2011); *FPL Grp.*, 166 Cal. App. 4th at 1366. Specifically, in implementing water diversions that may harm public trust uses, "the state must bear in mind its duty as trustee to consider the effect of the taking on the public trust, and to preserve, so far as consistent with the public interest, the uses protected by the trust." *Nat'l Audubon Soc'y*, 33 Cal.3d at 446 (internal citations omitted). Before approving or implementing water diversions, state and local government agencies must avoid or minimize any harm to public trust interests to the extent feasible. *Id.* at 426; *see also Envtl. Law Found. v. State Water Res. Control Bd*., 26 Cal. App. 5th 844, 861 (2018); *FPL Grp.*, 166 Cal. App. 4th at 1370. The protection of fisheries public trust resources trumps the County's otherwise existing water rights to divert the flow from Arroyo Grande Creek. *El Dorado Irrigation Dist. v. State Water Res. Control Bd.*, 142 Cal.App.4th 937, 966 (2006).

**E. California Constitution Article X, Section 2**

33.     Article X, Section 2 of the California Constitution provides: "[t]he right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water." Article X, Section 2 "dictates the basic principles defining water rights: that no one can have a protectible interest in the unreasonable use of water, and that holders of water rights must use water reasonably and beneficially." *City of Barstow v. Mojave Water Agency* 23 Cal.4th 1224, 1242 (2000). "'Beneficial use' and 'reasonable use' are two separate requirements, both of which must be met." *Santa Barbara Channelkeeper v. City of San Buenaventura* 19 Cal.App.5th 1176, 1185 (2018). Water use that unduly harms ecological resources/public trust resources constitutes an unreasonable use of water within the meaning of this California Constitution provision. *El Dorado Irrigation Dist.*, 142 Cal.App.4th at 967.

**F. California Code of Civil Procedure Section 1085**

34.     California Code of Civil Procedure section 1085 provides "[a] writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person."

## FACTUAL BACKGROUND

**A. The County's Diversions and Operations of the Project**

35.     The Project consists of Lopez Dam, Lopez Lake, a three-mile 20-inch diameter buried steel transmission line for conveyance of raw water to the Lopez Terminal Reservoir and subsequently to Lopez Water Treatment Plant, the Lopez Water Treatment Plant, and various in-stream infrastructure downstream of Lopez Dam.

36.     Lopez Dam is located on Arroyo Grande Creek 13 miles upstream from the Pacific Ocean. The County stores water behind the dam in Lopez Lake.

37.     The County is the legally responsible entity for operating and maintaining Lopez Dam.

38.     Infrastructure related to the Project includes the three-mile 20-inch transmission pipe that conveys water to water treatment and supply infrastructure, which includes a smaller dam (Terminal Dam), Lopez Reservoir, and Lopez Water Treatment Plant.

39.     Additional infrastructure constituting part of the Project includes, but is not limited to, the following full or partial barriers to Steelhead migration located downstream from Lopez Dam, to the extent this infrastructure still exists within Arroyo Grande Creek: (1) two concrete dams located at or about mile 2.88 from the confluence with the ocean and about 0.5 miles downstream from the Fair Oaks Crossing; (2) Arroyo Grande Stream Gage, ID # 8409, located at or about stream mile 4.98 from the confluence with the ocean; (3) a riprap dam located about 2,000 feet upstream of the stream gage at mile 5.35 from the confluence with the ocean; (4) a concrete dam located at or about stream mile 5.82 from the confluence with the ocean; (5) "S" riprap dam at or about stream mile 9.31 from the confluence with the ocean; (6) abandoned dam or diversion footings, ID # 141, at or about stream mile 11.22 from the confluence with the ocean; and (7) Biddle Park double arch culvert at the Biddle Park access road crossing over Arroyo Grande Creek. *See* 2007 County of San Luis Obispo Interim Downstream Release Schedule ("2007 IDRS"), pages 13-14; *see also* 2024 NMFS, West Coast Region, California Coastal Office, Role of Arroyo Grande Creek and Tributaries, San Luis Obispo County, California, in Meeting NMFS's South-Central California Coast Steelhead Viability/Recovery Criteria ("2024 NMFS: Role of Arroyo Grande Creek and Tributaries"), pages 38-42.

40.     The Project operations include: reservoir storage in Lopez Lake behind Lopez Dam; directing the California Department of Fish and Wildlife ("CDFW") to stock

non-native fish in Lopez Lake and operating the lake as a recreational fishery; diverting water for use outside of Arroyo Grande Creek; uncontrolled spills and managed instream flow releases from Lopez Dam; altering natural stream flows in Arroyo Grande Creek below Lopez Dam based on seasonally-varied water releases for various uses; municipal water treatment and supply, including backwash water disposal and water sampling activities; and operation of the Arroyo Grande Creek stream gaging station.

41.     Project maintenance activities include: maintaining Lopez Dam by removing vegetation and repairing settlement or soil slippage and related maintenance activities; maintaining on-site drainage facilities including ditches and drains; maintaining the on-site flow channels below the dam outlets by removing vegetation, repairing concrete portions, and repairing or replacing riprap; maintaining access roads on and to the dam including associated drainage structures; maintaining fences, gates, and other elements necessary for the security of the site; dam and stream channel maintenance by the County in Arroyo Grande Creek; and instream infrastructure maintenance by the County in Arroyo Grande Creek.

**B. The County's Operation and Maintenance of the Project Harms ESA-Listed Species**

42.     The County is and has been aware that the Project harms ESA-listed species in Arroyo Grande Creek, including Steelhead that use Arroyo Grande Creek as habitat during portions of its life stages (such as during upstream and downstream migration and rearing), for three decades.

43.     In January 1994, a citizen of Los Osos, California filed a California State Water Resources Control Board ("State Board") complaint against the County alleging that the County was violating the CFGC by failing to release water from Lopez Dam for fish in Arroyo Grande Creek below the dam. *See* Jan. 13, 1994, Complaint by Wm. H. L'Hommedieu. The complaint noted that the County's operation of Lopez Dam resulted in approximately 2 miles of dry creek bed immediately below the dam.

44.     On June 15, 1994, the County filed a response to the citizen's complaint

with the State Board Unit of the Division of Water Rights, asserting that the County operates Lopez Dam in a manner consistent with all local, state, and federal law.

45.    On June 24, 1994, the California Sportfishing Protection Alliance submitted a letter following up on the earlier complaint, requesting that the State Board bring the County into compliance with CFGC sections 5937 and 782, California Code of Regulations, the Public Trust Doctrine, and other applicable statutes.

46.    Around that time, the State Board informed the County that it would not re-issue or amend the County's water rights permit for Lopez Dam until dam operations were brought into compliance with the ESA.[2] The State Board's demand was triggered by the citizen complaint and concerns from California Sportfishing Protection Alliance as well as increasing concern on the part of both NMFS and CDFW about the Dam's impact on SCCC Steelhead.

47.    In 2004, the County completed a Final Draft Arroyo Grande Creek Habitat Conservation Plan ("the 2004 HCP") and Environmental Assessment/Initial Study ("EA/IS") for the Protection of Steelhead and CRLF.

48.    The 2004 HCP and EA/IS sought authorization for incidental take of SCCC Steelhead and CRLF associated with activities including but not limited to: (a) reservoir storage; (b) uncontrolled spills and managed instream flow releases; (c) municipal water treatment and supply, including backwash water disposal and water sampling activities; (d) water releases for irrigated agriculture; (e) dam and stream channel maintenance by the County in Arroyo Grande Creek; (f) Lopez Dam and Reservoir operations; (g) instream flow releases exceeding flows established by the 2004 HCP; and (h) channel and facility maintenance by the County in Arroyo Grande Creek.

49.    In response, the Services provided written comment letters that largely

---

[2] Despite reports indicating that the State Board would not renew or amend the County's water rights permit until it complied with the ESA, it appears that the State Board granted numerous extensions of that permit and that State Board Permit 12814 for the County's water rights is currently in effect.

rejected the 2004 HCP and EA/IS as inadequate. NMFS emphasized that the County's proposed instream flow schedule was not an appropriate starting point and was not sufficient to produce a high likelihood of attaining essential habitat functions for Steelhead and therefore long-term survival of the species. *See* Nov. 25, 2004, NMFS Comments on the County's Proposed Instream Flow Schedule for Steelhead Trout in Arroyo Grande Creek Downstream of Lopez Dam ("2004 NMFS Comments").

50.    NMFS urged the County to develop an adequate downstream release schedule starting from the natural streamflow regime in Arroyo Grande Creek, a process that would be more likely to ensure sufficient flows of water in Arroyo Grande Creek at specific times of the year to support the complex life cycle needs of SCCC Steelhead (*i.e.*, in terms of timing, magnitude, duration, and seasonality) to allow for Steelhead conservation, survival, and recovery.

51.    NMFS stated that since construction of Lopez Dam, the timing of high winter discharge in Arroyo Grande Creek has shifted from February to March and the magnitude of spring discharge (late March through June) has decreased and suggested that the timing of winter discharge and magnitude of spring discharge should be restored to pre-Dam characteristics. *See* 2004 NMFS Comments at 2. NMFS also suggested the County assess the effects of unnatural instream structures in the Creek on passage of adult and juvenile Steelhead. *Id.*

52.    FWS noted that the County should include Tidewater Goby as a covered species in the HCP, stating that the timing and volume of water releases from Lopez Dam has potential to benefit or extirpate the population of Gobies in Arroyo Grande Creek. *See* June 27, 2005, FWS Comments on the February 2004 Draft of the Arroyo Grande Creek Habitat Conservation Plan, San Luis Obispo County, California ("2005 FWS Comments").

53.    FWS also noted that the HCP failed to include commitments for habitat enhancement and directed the County to ensure the County is committed to implementing all conservation measures presented in the HCP and identify the funding to do so. *Id.*

54.    In response to a revised 2005 version of the County's HCP, FWS submitted a second round of comments that again directed the County to address Tidewater Goby because this species may be taken as a result of the Project. *See* March 13, 2006, FWS Comments on the July 2005 Draft of the Arroyo Grande Creek Habitat Conservation Plan, San Luis Obispo County, California ("2006 FWS Comments").

55.    More recently, NMFS stated that the County has failed to assess, with empirical and analytical methods and decision or performance criteria, the technical feasibility of restoring fish passage past Lopez Dam and the related value to the survival and recovery of threatened SCCC Steelhead. *See* June 22, 2023, NMFS Letter to Keith Miller, San Luis Obispo County Department of Public Works ("2023 NMFS Comments"). NMFS noted that the County has failed to assess the technical feasibility of volitional fish passage past Lopez Dam. *Id.* NMFS also emphasized that the County still does not have exemption of liability under ESA section 9 and thus there is some urgency for completion of a study assessing volitional fish passage. *Id.*

56.    Based on information available, to date the County has not yet addressed these issues raised by the Services. The County is operating and maintaining the Project without an HCP or ITP.

## C. South-Central California Steelhead (*Oncorhnchus mykiss*) and the County's Operations of the Project

### SCC Steelhead and the Arroyo Grande Creek

57.    SCCC Steelhead are listed as threatened under the ESA. 62 Fed. Reg. 43,937 (Aug. 18, 1997); 71 Fed. Reg. 834 (Jan. 5, 2006) (reaffirming threatened listing under the joint FWS and NMFS DPS policy).

58.    Threatened SCCC Steelhead include all naturally spawned *O. mykiss* originating below natural and manmade impassable barriers from the Pajaro River to (but not including) the Santa Maria River. 71 Fed. Reg. 834. SCCC Steelhead spawn and rear within Arroyo Grande Creek downstream of Lopez Dam. 70 Fed. Reg. at 52508. *See also* 2004 HCP and EA/IS at 1-64.

59.     SCCC Steelhead abundance has declined precipitously from a historic high of roughly 25,000 returning adults to fewer than 500 adults in 2017. *See* Endangered Species Act Section 7(a)(2) Biological Opinion for the Arroyo Grande Creek Waterway Management Program (Nov. 27, 2017) ("2017 BiOp") at 78; *see also* NMFS West Coast Region, 2023 5-Year Review: Summary & Evaluation of South-Central California Coast Steelhead ("2023 SCCC Steelhead Species Assessment"), page 42.

60.     The SCCC Steelhead population of the Arroyo Grande Creek system may have been the most extensive of the populations of the San Luis Obispo County coast, but accelerated declines of the population have resulted in the current Arroyo Grande Creek SCCC Steelhead run to be only "in the dozens." 2017 BiOp at 35, 78.

61.     In 2005, NMFS designated critical habitat for SCCC Steelhead, including designation of Arroyo Grande Creek and Los Berros Creek as critical habitat. 70 Fed. Reg. 52,488 (Sept. 2, 2005). Exhibit A at 9.

62.     The primary reasons for the decline of west coast steelhead include destruction and modification of habitat, and natural and human-made factors. 62 Fed. Reg. at 43,942.

63.     Because of the species' specific life cycle, "steelhead are only able to express their full life-history trains, which confer a survival advantage to the anadromous form of the species, when the characteristics and condition of their freshwater habitat is conducive to survival, growth, and emigration of smolts to the ocean[.]" *See* 2023 SCCC Steelhead Species Assessment at 44. The Steelhead's "complex life cycle gives rise to complex habitat needs, particularly during the freshwater phase[.]" 70 Fed. Reg. at 52492.

64.     The modification of natural flow regimes by dams and other water-control structures are among the core threats to SCCC Steelhead. 78 Fed. Reg. 77430 (Dec. 23, 2013); NMFS, 2013, South-Central California Coast Steelhead Recovery Plan, West Coast Region, California Coastal Area Office, Long Beach, California ("2013 SCCC Recovery Plan"), page 4-3.

**The County's Operation of the Project Is Harming SCCC Steelhead**

**The County's Construction, Operation, and Maintenance of the Project Blocks Access to Valuable SCCC Steelhead Habitat**

65.     The County's construction, operation, and maintenance of the Project—especially Lopez Dam and Lopez Lake—has and continues to harm SCCC Steelhead by cutting off valuable habitat for SCCC Steelhead in Arroyo Grande Creek.

66.     Lopez Dam cuts off SCCC Steelhead access above Lopez Dam, resulting in the loss of many miles of quality Steelhead spawning, rearing, and over-summering refugia habitat above the dam. 70 Fed. Reg. at 52507. Lopez Dam is a full barrier to SCCC Steelhead migration in Arroyo Grande Creek and prevents SCCC Steelhead access to important spawning, rearing, and drought refugia habitat, thereby reducing the amount of habitat accessible to adult SCCC Steelhead migrating upstream as well as juvenile SCCC Steelhead attempting to emigrate out of the watershed. *Id.* Lopez Dam blocks access to the overwhelming majority of Steelhead spawning, rearing, and refugia habitat. *See* 2023 SCCC Steelhead Species Assessment at 32.

67.     Specifically, Lopez Dam blocks SCCC Steelhead access to about 42 miles of high intrinsic potential Steelhead spawning and rearing habitat, out of a total of about 66 miles of high intrinsic potential Steelhead spawning or over-summering rearing/refugia habitat. *See* 2024 NMFS: Role of Arroyo Grande Creek at 11. Of the high intrinsic potential Steelhead spawning and rearing habitat above Lopez Dam and Lopez Lake, 12.7 miles (about 30%) is located on U.S. Forest Service land within Los Padres National Forest. *Id; See* Exhibit A at 11.

68.     The Project thus prevents access to two-thirds of the high intrinsic potential Steelhead spawning and rearing habitat in the Arroyo Grande Creek watershed. *Id.* at 11-13, 31.

69.     Lopez Dam inundated and thus effectively destroyed SCCC Steelhead habitat underneath the waters of Lopez Lake.

70.     By inundating previously accessible, quality habitat, the County's

construction, operation and maintenance of Lopez Dam and Lopez Lake turned Arroyo Grande Creek into a lake and thereby eliminated historically accessible SCCC Steelhead spawning habitat. The now-inundated area is no longer usable for SCCC Steelhead for life cycle behavior. *Id.* at 31.

71.    The County's operation and maintenance of the Project that reduced the area of available spawning habitat reduces the SCCC Steelhead abundance in Arroyo Grande Creek watershed.

72.    Moreover, the higher elevation areas above Lopez Dam and Lopez Lake provide cooler waters, providing key refugia habitat to escape impacts from climate change, drought, and forest fires. Reducing the fish's available spawning habitat and refugia habitat makes the SCCC Steelhead population in Arroyo Grande Creek even more vulnerable to catastrophic events.

73.    By preventing access to and inundating this high-quality habitat, the County's Project has harmed and continues to harm SCCC Steelhead and the County is thus perpetuating unlawful take in violation of the ESA.

74.    The Arroyo Grande Creek population is critical for the survival and recovery of SCCC Steelhead across its range. This population is a "Core-1 Population," which means it has the highest priority for recovery based on a variety of factors. 2017 BiOp at 34.

75.    The population extends over a broad and geographically diverse area and is therefore likely to withstand environmental unpredictability and possess ecologically significant attributes not found in most other SCCC Steelhead populations. *Id.* at 32.

76.    The Arroyo Grande Creek population is an independent population and is therefore expected to support formation of SCCC Steelhead numbers in several adjacent population units. *Id*

77.    For these reasons, the Arroyo Grande Creek population has a high potential for population viability. *Id.* Moreover, the Arroyo Grande Creek population is one of only a few populations throughout the southern portion of the SCCC Steelhead geographic

range where SCCC Steelhead actively spawn and rear.

78.    As NMFS has stated:

"Streams classified as Core-1 Populations are essential for recovering the DPS of steelhead as a whole. Therefore, reducing the likelihood of survival and recovery of a Core-1 Population, would have adverse consequences for the survival and recovery of the DPS as a whole. Overall, while the Arroyo Grande Creek Watershed is only one watershed throughout a geographically broad DPS, this watershed is crucial for recovering the entire South-Central California Coast DPS of steelhead. *Id.*

**The County's Operation of the Project Reduces and Alters Flows in Arroyo Grande Creek, Resulting in Harm to Steelhead**

79.    The County's failure to release sufficient water from Lopez Dam at crucial times of the year has caused the SCCC Steelhead population in Arroyo Grande Creek to significantly decline. The County's operation of the Project limits the timing, duration, magnitude, quantity, and seasonality of water flow released into Arroyo Grande Creek from Lopez Dam. *See, e.g.*, 2007 IDRS at 2-4.

80.    As demonstrated by various NMFS documents, the County's flow releases are not ecologically meaningful and are inadequate to support SCCC Steelhead life cycles. *See, e.g.*, 2024 NMFS: Role of Arroyo Grande Creek at 29. In its 5-year review of the species in 2016, NMFS concluded that recovery of SCCC Steelhead depends on addressing the most fundamental threats, including by having the County restore natural flow patterns on Arroyo Grande Creek. *See* NMFS, South-Central/Southern California Coast Steelhead Recovery Planning Domain, 5-Year Review: Summary and Evaluation of South-Central California Coast Steelhead Distinct Population Segment ("2016 SCCC Steelhead DPS Status Assessment"), page 55; *see also* 2013 SCCC Recovery Plan at 7-14.

81.    In 2004, NMFS rejected the County's proposed flow regime in the County's 2004 HCP and the County's method for developing that flow schedule. *See* 2004 NMFS

Comments.

82.    As noted above, NMFS observed that since the construction of Lopez Dam, the timing of high winter discharge has shifted from February to March and the magnitude of spring discharge (late March through June) has decreased. *See* 2004 NMFS Comments at 2. As NMFS has explained, the instream flow schedule that the County is presently implementing is harmful because it is not meeting NMFS' recommended monthly discharge during base-flow conditions for release from Lopez Dam into Arroyo Grande Creek in more than half of the months. *See* Exhibit A at 14.

83.    The County's 2007 IDRS provides the current plan for managing downstream releases from Lopez Dam. *See* San Luis Obispo County Flood Control and Water Conservation District, Lopez Water Project Contract Changes Project Description (Oct. 2020), page 5.

84.    The 2007 IDRS was meant to be an interim document to manage releases from Lopez Dam until such time as the County completes and secures approval for its HCP, but the County has continued to rely on it for its Lopez Dam operations for more than 17 years. *Id.*

85.    The 2007 IDRS does not set precise numeric release requirements to control the volume of water released from Lopez Dam. Under the 2007 IDRS, downstream releases range between 3 and 6 cubic feet per second ("cfs"), depending on the hydrologic conditions and downstream demands.

86.    Since 2007, the County's downstream releases from Lopez Dam have averaged approximately 5 cfs. *Id.*

87.    The 2007 IDRS also includes a Low Reservoir Response Plan ("LRRP") that even further reduces downstream release flows when the amount of water in Lopez Reservoir drops below 20,000 Acre-Feet ("AF") and the County's Board of Supervisors declares an emergency. *Id.*

88.    The available data shows that the County's flow releases from Lopez Dam are inconsistent with NMFS's recommendations, are inadequate to support SCCC

Complaint for Decl. & Inj. Relief          23          CASE NO. 2:24-cv-06854_____

Steelhead life cycles, and are causing harm to SCCC Steelhead in the Arroyo Grande Creek watershed. *See, e.g.*, 2024 NMFS: Role of Arroyo Grande Creek at 31, 71.

89.    The County's operation of the Project that reduces flows to Arroyo Grande Creek fundamentally alters the natural hydrological cycle of high winter and low summer flows of Arroyo Grande Creek.

90.    Elevated flow discharge into Arroyo Grande Creek during and shortly after periods of rainfall is essential for creating and maintaining migration opportunities for adult SCCC Steelhead to swim upriver and navigate physical features normally constituting obstacles during relatively low river discharge. 2017 BiOp at 22-23. The migratory behavior and ecology of adult SCCC Steelhead is strongly associated with the natural pattern and magnitude of the Creek's discharge. *Id.* at 23.

91.    The County's operation and maintenance of the Project artificially disrupts these Creek flow patterns, which adversely impacts migration opportunities for both adult Steelhead and smolts and their arrival at target habitats.

92.    By altering the pattern (magnitude, frequency, timing, and duration) of attraction and migratory flows essential to the successful upstream migration of SCCC Steelhead from the ocean to spawning habitat, the County's limited flow releases from Lopez Dam have reduced SCCC Steelhead access to the lower Arroyo Grande Creek. *See* 2024 NMFS: Role of Arroyo Grande Creek at 31.

93.    In its 2004 HCP, even the County acknowledged that continuing operation of Lopez Dam and Lopez Reservoir and the associated releases of water into Arroyo Grande Creek, in addition to other operations and maintenance activities performed by the County, affects the quality and availability of habitat for SCCC Steelhead, and may result in take of this ESA-listed species. *See* 2004 HCP and EA/IS at ES-1.

94.    Specifically, the County releases insufficient water from Lopez Dam at necessary times of the year, resulting in insufficient flows in Arroyo Grande Creek that in turn: (a) prevents or inhibits upstream migration of adult SCCC Steelhead (including by preventing attraction or migratory flows); (b) prevents or inhibits spawning and rearing of

SCCC Steelhead; (c) harms the success of juveniles during life stages spent in-river in freshwater and in estuarine waters near the mouth of Arroyo Grande Creek and thereby harms their ability to complete the physiological transformation into smolts and diminishes their overall likelihood of successfully returning as adults; and (d) prevents or inhibits juvenile and adult SCCC Steelhead from completing downstream migration and reaching the Pacific Ocean.

95.    The reduced stream flows in Arroyo Grande Creek cause a truncated migration season for the SCCC Steelhead, causing further harm.

96.    The County's limited flow releases from Lopez Dam also reduce the suitability of rearing habitat in lower Arroyo Grande Creek and the downstream emigration of Steelhead smolts to the estuary and ocean. *See* 2024 NMFS: Role of Arroyo Grande Creek at 31.

97.    The County's limited flow releases from Lopez Dam deplete the flows necessary for flushing out fine sediments from spawning gravels that SCCC Steelhead require for spawning and rearing. The fine sediments choke the SCCC Steelhead redds (egg nests).

98.    The County's operation and maintenance of the Project thus depletes the flows necessary for SCCC Steelhead migration, spawning, and rearing.

99.    The County's operation and maintenance of the Project also depletes the flows necessary for estuarine functions in the Arroyo Grande Creek Lagoon near the Creek's confluence with the ocean. That the County's Project operations have created insufficient water quantity and quality in the Lagoon and the immediately upstream Arroyo Grande Creek reach has been documented, *inter alia*, by a series of California State Parks surveys done in June 2022, September 2022, and December 2022. *See* June 30, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); Sept. 28, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); Jan. 10, 2023, California

State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons; Oso Flaco Creek, Pismo State Beach; Oceano Dunes State Vehicular Recreation Area (Reference Permit #TE-101154-3). The County's operations have caused or contributed to portions of lower Arroyo Grande Creek being completely dry and water quality in the Arroyo Grande Lagoon being unsuitable for SCCC Steelhead survival due to warm water, low levels of dissolved oxygen, and reduced depth.

100.   Arroyo Grande Creek has only about 20 percent of historical estuarine habitat remaining and there have been similarly large losses of SCCC Steelhead estuarine and other habitat throughout the fish's range. The adverse impacts to estuarine functions in the Arroyo Grande Lagoon perpetuated by the Project are particularly harmful given the cumulative impacts to SCCC Steelhead throughout its range.

101.   In addition to disrupting the natural pattern and magnitude of streamflow, the County's operation of the Project that modifies the natural flow regimes in Arroyo Grande Creek causes increased water temperatures, lower water column oxygen levels, higher water column turbidity and creek bottom sedimentation, changes in river geomorphology that destroy river features needed for Steelhead habitat, and reduced gravel recruitment. High water temperature, physical barriers to Steelhead migration, low dissolved oxygen, and high turbidity in Arroyo Grande Creek caused by the County's Project causes delay or even halts downstream migration of juvenile SCCC Steelhead and subsequent entry into estuary, lagoon, or ocean.

102.   The County's limited flow releases from Lopez Dam thereby reduce the amount and quality of drought refugia habitat in the mainstem and tributaries of Arroyo Grande Creek.

103.   The County's operation of the Project by reducing flow releases to Arroyo Grande Creek disrupts the natural pattern and movement of sediment within the Creek. Limited releases of water from Lopez Dam alter the movement of sediment in Arroyo Grande Creek and Arroyo Grande Lagoon by taking away the high pulse flow conditions that transport fine sediments deleterious to Steelhead spawning out of Arroyo Grande

Creek reaches and that create cobble and gravel substrate conditions that are suitable to Steelhead spawning.

104.   Maintenance of Lopez Dam is further harmful because it traps cobble and gravel sediments that would naturally wash down from the upper watershed, thus diminishing recruitment of cobble and gravel that provides substrate suitable for Steelhead spawning in the lower reaches of Arroyo Grande Creek. *See* 2004 HCP and EA/IS at 2-1.

105.   Maintenance of Lopez Dam is further harmful because it traps large woody debris/large wood pieces that would naturally wash down from the upper watershed, thus diminishing recruitment of large woody debris/large wood piece presence that provides habitat features that support Steelhead spawning and rearing in the lower reaches of Arroyo Grande Creek. Large wood debris creates snags in streams/rivers that in turn provide places for Steelhead to hide from predators, rest and seek refuge in areas of the Creek with lower flow velocity, and to build redds (egg nests) that are protected from being washed away by high velocity flows.

106.   The County's method of releasing flow from Lopez Dam adversely affects channel conditions and geomorphic processes downstream in Arroyo Grande Creek, which reduces SCCC Steelhead habitat diversity and impairs habitat characteristics including presence of appropriate bottom substrate, extent of pools and riffles, appropriate channel heterogeneity (*i.e*, variation in channel shape associated with the natural meander of streams that in turn creates areas where flow velocities are diminished and features like undercut banks, large wood snags, pools with greater stream depth and quieter waters useful as productive spawning, refuge, and rearing habitats and areas where flow velocities are increased that can provide good oxygenation of waters and feeding opportunities), and other instream habitat features that Steelhead need to complete their lifecycle behaviors successfully. *Id.*

107.   In sum, because the natural movement of water and large wood and bottom settlement substrate are necessary for the creation and maintenance of essential habitat

features that SCCC Steelhead require, disruption of natural fluvial processes resulting from the Project causes inhospitable habitat characteristics and condition for SCCC Steelhead in Arroyo Grande Creek.

108.   The County's Project is thus harming SCCC Steelhead by limiting the flow of water from Lopez Dam downstream to Arroyo Grande Creek, resulting in take in violation of the ESA.

### Predatory Fish in Lopez Lake and Failure to Screen Fish Spills to Arroyo Grande Creek Harms Steelhead

109.   By directing CDFW to stock Lopez Lake with non-native predators or competitors of SCCC Steelhead and otherwise maintaining Lopez Lake such that populations of non-native predators such as largemouth and smallmouth bass, crappie, red-ear sunfish, and catfish have flourished, the County has promoted the presence of such non-native predators in Arroyo Grande Creek. *See* San Luis Obispo County Parks, Fishing, Lopez Lake Recreational Area, available at https://slocountyparks.com/fishing/ (last accessed June 4, 2024); *see also* 2013 SCCC Recovery Plan at 4-4.

110.   The County has allowed these non-native predator species to periodically escape Lopez Lake into Arroyo Grande Creek downstream when Lopez Dam spills over and releases water from the Lopez Dam spillway. *Id.* In 2023 and 2024, for example, Lopez Dam spilled water to the Creek below.

111.    The County has failed to install a fish screen for the spillway from Lopez Dam that would otherwise prevent non-native predator and competitor species from entering downstream Arroyo Grande Creek. The County's failure to do so is introducing predators of Steelhead eggs and juvenile SCCC Steelhead into lower Arroyo Grande Creek, causing a take of Steelhead in violation of the ESA.

### The County's Operation and Maintenance of Other Infrastructure Within Arroyo Grande Creek Harms SCCC Steelhead

112.   The County's operation and maintenance of other infrastructure in addition to Lopez Dam within Arroyo Grande Creek harms SCCC Steelhead by creating partial

impediments to migration that effectively restrict adult and juvenile Steelhead migration and become full impediments to such migration during periods of low flow. *See* 2024 NMFS: Role of Arroyo Grande Creek at 38-42.

113.   The County has identified multiple known barriers to Steelhead passage in Arroyo Grande Creek that the County itself has prioritized for improvements. *See* 2007 IDRS at 12-13.

114.   For example, abandoned dam and diversion footings at stream mile 11.22 from the confluence with the ocean are passage barriers to adult and juvenile SCCC Steelhead. *See* 2007 IDRS at 14. As another example, the County's double arch culvert at the Biddle Park access road crossing over Arroyo Grande Creek is a passage barrier to adult and juvenile SCCC Steelhead.

115.   The County's operation and maintenance of instream infrastructure that creates a partial barrier to Steelhead passage, when combined with reduced flows from the County's operation and maintenance of Lopez Dam, significantly modifies and degrades SCCC Steelhead habitat by preventing Steelhead migration and by restricting sediment transport. The County's operation and maintenance of infrastructure within Arroyo Grande Creek that creates partial or full impediments to Steelhead passage and unfavorable bottom substrate conditions perpetuates harm to SCCC Steelhead and causes take in violation of the ESA.

**D. California Red-Legged Frog (*Rana aurora draytonii*) and the County's Operations of the Project**

**California Red Legged Frog and Arroyo Grande Creek**

116.   Arroyo Grande Creek downstream from Lopez Dam provides habitat for CRLF, which FWS listed as threatened under the ESA in 1996. 61 Fed. Reg. 25813 (May 23, 1996).[3] At the time of listing in 1996, FWS determined the CRLF had been extirpated from 70 percent of its former range. 61 Fed. Reg. at 25813.

___

[3] California red-legged frog is also considered a Species of Special Concern ("SSC") by CDFW.

117.    CRLFs have been observed in Arroyo Grande Creek immediately downstream from the Lopez Dam outlet. *See* 2004 HCP and EA/IS at 2-1, 1-64, 1-78. An assessment of Arroyo Grande Creek in 2017 found suitable instream aquatic habitat present, noting that the banks of the Creek support vegetation that could be used as upland refugia, and noted a California Natural Diversity Database record from 2002 of CRLF in Arroyo Grande Creek. *See* May 2017, Bridge Street Bridge Rehabilitation Project Biological Assessment ("2017 Bridge Street BA"), page 47.

118.    More recent aquatic surveys in 2021 have observed CRLF in Arroyo Grande Lagoon. *See, e.g.*, July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3).

119.    The primary factors negatively affecting the CRLF throughout its range are habitat loss and alteration. 61 Fed. Reg. at 25824. Large reservoir construction projects have significantly altered or eliminated CRLF habitat. *Id.* at 25,824-25,825. Water diversions also degrade or eliminate CRLF habitat. *Id.* at 25825.

**The County's Operation of the Project is Harming California Red-Legged Frog**

120.    The County's operation and maintenance of the Project has cut off and eliminated CRLF habitat above Lopez Dam, has limited and is limiting and reducing the quantity of water flow in Arroyo Grande Creek, resulting in a dewatering and modification of instream flow in Arroyo Grande Creek and Arroyo Grande Lagoon. *See, e.g.*, 2005 FWS Comments at 8 (FWS explaining, "we do not agree that take of CRLFs would not occur as a result of this activity").

121.    The County's elimination of CRLF habitat due to construction of Lopez Dam reduced the amount of available habitat for CRLFs in the Arroyo Grande Creek watershed.

122.    The County's modification of instream flows in Arroyo Grande Creek and Arroyo Grande Lagoon reduces the amount of water and thereby reduces the amount of available habitat as well as the quality of remaining habitat for CRLF. *See* 61 Fed. Reg. at

25,825 (diverting water from the frog's natural habitats to reservoirs disrupts the natural hydrologic regime and "[l]oss of habitat and decreases in habitat quality will occur as a result of on-site degradation of the stream environment and/or riparian corridor, or through modification of instream flow."). Less available water within Arroyo Grande Creek and Arroyo Grande Lagoon means there is less habitat for CRLF reproduction and disruption of reproduction, foraging, estivation and dispersal. 61 Fed. Reg. at 25,825.

123.    For example, the County's modification of flows by altering the timing, duration, and volume of water releases from Lopez Dam has rendered and continues to render portions of Arroyo Grande Creek and Arroyo Grande Lagoon unsuitable for CRLF reproduction.

124.    CRLF estivation habitat is areas that provide cover and moisture during the dry season (mid to late summer) within 300 feet of a riparian area. 61 Fed. Reg. at 25,814. Without the necessary aquatic habitat, CRLF is unable to reproduce in the area. *Id.* (estivation habitat and the ability to reach estivation habitat is essential for the survival of CRLFs within a watershed). The County's low released flows in the summer diminish CRLF reproduction by drying up pools containing larvae or causing salinity in Arroyo Grande Lagoon to reach lethal levels. *Id.* In particular, areas downstream of State Route 1 could provide CRLF habitat but usually go dry. *Id.* at 1-83.

125.    After noting the presence of CRLF tadpoles in Arroyo Grande Creek immediately upstream of the flood control structure ("flapgates") at the western end of the Arroyo Grande Creek north levee, a July 2021 aquatic survey by California State Parks noted that "[t]here were apparently no remaining lotic areas of Arroyo Grande Creek downstream of State Route 1, a reach that had been flowing four months earlier." *See* July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3). The survey observed no surface water was present downstream of 22nd Street. *Id.*

126.    A subsequent aquatic survey in October of 2021 observed that lower Meadow Creek, including the area at the confluence of Arroyo Grande Lagoon, was dry.

*See* Oct. 28, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3) (noting "the contiguous lagoon pool did not extend north of Post #1, which is unusual.").

127.    These dry conditions were caused by the County failing to release sufficient water from Lopez Dam.

128.    Thus, the County's operation and maintenance of the Project that modifies and reduces flows released into Arroyo Grande Creek perpetuates harm to CRLF by reducing the amount and quantity of available habitat necessary for the frog's estivation and reproduction.

129.    The County's operation of Lopez Lake in a manner that has allowed non-native predator and competitor species to be released from the lake and proliferate in downstream Arroyo Grande Creek waters also harms the CRLF because these non-native species prey on the frogs and disrupt natural community dynamics for the species. *See* 61 Fed. Reg. at 25,825.

130.    The County's modification of flow releases into Arroyo Grande Creek that creates year-round flows in certain years allows predator populations to survive in areas that would normally be dry in the summer. *See* 2004 HCP and EA/IS at 1-81, 1-82.

131.    Also, predatory bullfrogs have been observed at the base of Lopez Dam in areas that otherwise provide habitat for CRLF breeding and tadpole rearing. *Id.* at 1-85. These predatory bullfrogs are abundantly present at the base of Lopez Dam due to conditions created by the dam that are conducive to the proliferation of bullfrogs.

132.    These predatory fish and bullfrogs prey on CRLFs and disrupt the natural community dynamics necessary for CRLF conservation, recovery and survival. 61 Fed. Reg. at 25,825; *see also* 2004 HCP and EA/IS at 1-80 (noting that introduced predators including bullfrogs and predatory fish can be a significant threat to CRLF populations), 1-86 ("Introduced predators in Arroyo Grande Creek, such as bullfrogs and predatory fish, reduce red-legged frog habitat value").

133.    The County's failure to screen or otherwise prevent the dispersal of non-

native predator fish and bullfrogs into Arroyo Grande Creek and maintenance of conditions (such as the relatively warm and stagnant waters of Lopez Lake) that promotes the growth of predatory fish and bullfrog populations thus perpetuates harm to CRLFs, causing take in violation of the ESA.

134.    The County's maintenance activities include vegetation removal, herbicide spraying, shaping of banks to control erosion, and desilting of Arroyo Grande Creek. *See* 2004 HCP and EA/IS at 1-1. These County maintenance activities all degrade CRLF habitat. 61 Fed. Reg. at 25,825. The County's operation and maintenance of the Project further increases siltation in Arroyo Grande Creek and its tributaries. Siltation in the Arroyo Grande Creek watershed that occurs during the CRLF breeding season causes asphyxiation of CRLF eggs and small CRLF larvae. *See* 61 Fed. Reg. at 25826.

135.    Harms from the County's operation and maintenance of the Project are significant because Arroyo Grande Creek is listed as one of the core areas for focused recovery efforts by FWS. *See* FWS, Recovery Plan for the California Red-legged Frog (*Rana aurora draytonii*) (2002), pages 55, 144. As a core area, Arroyo Grande Creek represents a viable population and will contribute to connectivity between habitats and populations. *Id.* This designation further highlights the importance of protecting CRLF within Arroyo Grande Creek from the harm perpetuated by the County's operations and maintenance of the Project.

**E. Tidewater Goby (*Eucyclogobius newberryi*) and the County's Operations of the Project**

**Tidewater Goby and Arroyo Grande Creek**

136.    Tidewater Gobies occur in tidal streams associated with coastal wetlands in California. Arroyo Grande Creek provides habitat for Tidewater Goby, which FWS listed as endangered under the ESA in 1994. 59 Fed. Reg. 5494 (March 7, 1994).

137.    In 1994 at the time of its listing, Tidewater Goby had disappeared from nearly 50 percent of the coastal lagoons within its historic range since 1900. 59 Fed. Reg. at 5494. The number of extirpated localities of Gobies has left remaining populations so

widely separated throughout most of the species' range that recolonization is unlikely. *Id.*

138.    The primary threats to Tidewater Goby include modification and loss of habitat due to coastal development projects that result in the loss of coastal saltmarsh habitat, channelization of habitat, upstream diversions that alter downstream flows and thereby diminish the extent of marsh habitats that occurred historically at the mouths of most rivers and creeks in California, and alteration of water flows. 59 Fed. Reg. at 5495; *see also* 71 Fed. Reg. 3524, 3525 (Jan. 23, 2006) (Recovery Plan for the Tidewater Goby (*Eucyclogobius newberryi*)).

139.    Tidewater Gobies have a short lifespan and seem to be an annual species, which further restricts their potential to recolonize habitats from which they have been extirpated. 59 Fed. Reg. at 5494.

140.    Tidewater Gobies occur in loose aggregations of a few to several hundred individuals on the substrate in shallow water less than 1 meter. *Id.* Peak nesting occurs April through May when male Gobies dig a vertical nesting burrow deep in clean, coarse sand. *Id.* Male Gobies remain in the burrows to guard eggs that are hung from the ceiling and walls of the burrow until hatching. *Id.*

141.    Larval Gobies are found midwater around vegetation until they become benthic. *Id.*

142.    Spawning year-round is probably unlikely because of seasonal low temperatures and disruptions of lagoons during winter storms. *Id.*

143.    Recent surveys between 2020 and 2023 consistently documented Tidewater Goby in Arroyo Grande Lagoon. *See, e.g.*, May 1, 2020, California State Parks, Aquatic Survey Report for Arroyo Grande, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); June 30, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); Dec. 19, 2023, California State Parks, Aquatic Survey Report for Arroyo

Grande, Pismo, Carpenter, and Oso Flaco Lagoons; Pismo State Beach; Oceano Dunes State Vehicular Recreation Area (Reference Permit #TE-101154-3). Tidewater Gobies were also found in Arroyo Grande Creek during sampling in March 2005. *See* FWS, Recovery Plan for the Tidewater Goby (*Eucyclogobius newberryi*) (2005) ("2005 Tidewater Goby Recovery Plan"), page C-21.

### **The County's Operation of the Project is Harming Tidewater Goby**

144.   The County's construction, operation, and maintenance of the Project harms Tidewater Goby in downstream Arroyo Grande Creek by modifying and eliminating coastal saltmarsh habitat and altering downstream flows in Arroyo Grande Creek which then diminish the extent and quality of marsh habitat occurring at the mouth of Arroyo Grande Creek. This adverse habitat modification has caused mortality and other adverse health impacts to Tidewater Goby in Arroyo Grande Creek and led to a decline in the population of Tidewater Goby in Arroyo Grande Creek.

145.   The County's operation and maintenance of the Project including Lopez Dam and limited flow releases to Arroyo Grande Creek (and in turn reduced inflow into Arroyo Grande Lagoon) has and continues to diminish the extent and quality of marsh habitat occurring at the mouth of Arroyo Grande Creek. 59 Fed. Reg. at 5495. This harms Tidewater Goby because the Goby depends on the marsh habitat for its survival and recovery. *Id.* (noting that projects that result in the loss of coastal saltmarsh habitat are currently the major factor adversely affecting the Goby).

146.   Due in part to the County's altered and reduced flow regime for Arroyo Grande Creek caused by the Project, NMFS has estimated that only about 20 percent of historical Goby estuarine habitat remains in Arroyo Grande Creek. 2013 SCCC Recovery Plan at 4-9 (Table 4-2). FWS's 1994 listing determination specifically identified water diversion projects in San Luis Obispo County as a development activity that threatens Tidewater Goby habitat. 59 Fed. Reg. at 5496.

147.   On numerous occasions, the County's reduced flow releases into Arroyo Grande Creek have caused the lower reach of the Creek to go completely dry, which

eliminates Tidewater Goby habitat. For example, in the summer of 2004 the lower reach of Arroyo Grande Creek went completely dry. *See* FWS, Comments on the February 2004 Draft of the Arroyo Grande Creek Habitat Conservation Plan, San Luis Obispo County, California (June 2005).

148.   As noted above in the section discussing harms to CRLF, more recent aquatic surveys in 2021 documented that Arroyo Grande Creek was completely dry downstream of State Route 1 and downstream of 22nd Street. *See* July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); Oct. 28, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3) (observing that lower Meadow Creek, including the area at the confluence of Arroyo Grande Lagoon, was dry).

149.   The County's modification to the timing and reduced volume of water released from Lopez Dam into Arroyo Grande Creek also reduces the quality of coastal marsh habitat in the watershed—habitat that is essential for Tidewater Goby survival and recovery.

150.   The County's reduced flows alter the hydrology in Arroyo Grande Creek and Arroyo Grande Lagoon, resulting in diminished habitat quality (including but not limited to low dissolved oxygen levels) for the Goby and ultimately lower Tidewater Goby abundance. The County's altered flows that reduce the amount of water in Arroyo Grande Creek upstream of Arroyo Grande Lagoon changes the distribution of downstream salinity regimes. 59 Fed. Reg. at 5495.

151.   Because Tidewater Goby has relatively narrow salinity tolerances, changes in salinity distributions due to the County's upstream water diversions, such as those that occur on Arroyo Grande Creek due to the County's Project operations, adversely affect both the size and distribution of the Goby population of Arroyo Grande Creek. *See id.*

152.   In addition to restricting the Goby's habitat by altering downstream salinities, the County's operation of Lopez Dam and reduced flows into Arroyo Grande

Creek also negatively impact Tidewater Goby breeding and foraging activities within
Arroyo Grande Creek and Arroyo Grande Lagoon. *See* 59 Fed. Reg. at 5496. Gobies
breed primarily in sand or mud substrates and avoid areas that contain large amounts of
decaying vegetation. *Id.*

153. The County's reduced flows in Arroyo Grande Creek allow aggressive plant
species to colonize the otherwise bare sand and mud substrates of coastal lagoon margins
and thus degrade habitat quality for the Goby. *Id.*

154. The County's reduced flows into Arroyo Grande Creek also harm the
Tidewater Goby population by reducing the deep stream pools that Gobies use to venture
upstream from Arroyo Grande Lagoon. *Id.*

155. California State Parks recommended in its 2021 aquatic survey report that
resource managers and other stakeholders should continue to increase engagement in
local water management issues for Arroyo Grande Creek, noting that low water levels
seasonally threaten Tidewater Goby and its habitat in Arroyo Grande Creek and Arroyo
Grande Lagoon with dewatering and fish kills. *See* July 21, 2021, California State Parks,
Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek
Lagoons (Reference Permit #TE-101154-3).

156. California State Parks repeated this recommendation in its February 2022
aquatic survey report. *See* Feb. 25, 2022, California State Parks, Aquatic Survey Report
for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit
#TE-101154-3).

157. The February 2022 California State Parks survey stated that "local water
management and mis-management activities are causing severe negative impacts to these
State Park waters and the aquatic species that depend on them," and that "State Parks
remains concerned by these ongoing impacts to surface water in Arroyo Grande Creek[.]"
*Id.*

158. Subsequently, a California State Parks September 2022 aquatic survey noted
that the numbers of Tidewater Goby in Arroyo Grande Creek appeared greatly

diminished since the previous survey three months prior "even though there appears to be unusually-little competition or predation posed by other fish species this year." *See* Sept. 28, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3) (noting that "dissolved oxygen in Arroyo Grande Lagoon appeared to be alarmingly low at the time of the survey (<1 ppm about 1' below-surface).").

159.    Again, in December 2022, an aquatic survey found Tidewater Goby numbers in Arroyo Grande Lagoon "remarkably low, even acknowledging a lower catch is often expected here during the 'winter months.'" Jan. 10, 2023, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE- 101154-3) (noting that "we were surprised that we could not find any in Arroyo Grande Lagoon where Tidewater Goby are typically the most abundant (densest) among all local watersheds.").

160.    Thus, the County's operation and maintenance of the Project, including reduced flows to Arroyo Grande Creek and reduced inflows to Arroyo Grande Lagoon, perpetuates harm to Tidewater Goby by eliminating and adversely modifying the quality of coastal saltmarsh habitat that the Goby depends on for its survival and recovery.

## F.  Least Bell's Vireo (*Vireo bellii pusillus*) and the County's Operations of the Project

### Least Bell's Vireo and Arroyo Grande Creek

161.    FWS listed the least Bell's vireo ("Vireo") as endangered in 1986. 51 Fed. Reg. 16474 (May 2, 1986). Habitat for Vireo is dense, willow-dominated riparian habitats with lush understory vegetation in the immediate vicinity of water courses. *Id.* Ideal nesting habitat includes a wide riparian corridor of more than 250 meters with dense shrub growth extending vertically up to 3 meters, and an open canopy. *Id.*

162.    Most Vireo nests are built in willows. 51 Fed. Reg. at 16474. However, Vireo do not exclusively build nests in willows, and habitat structure may be a more important determinant of nesting site selection. *See* FWS, 1998 Draft Recovery Plan for

the Least Bell's Vireo ("1998 Vireo Draft Recovery Plan"), page 10. Suitable nesting habitat for Vireo occurs in the riparian vegetation along Arroyo Grande Creek. *See, e.g.*, 2014 Lopez Water Project Habitat Conservation Plan, prepared by H. T. Harvey & Associates for San Luis Obispo County.

163.   In 2009, a Vireo was documented several miles north of Arroyo Grande Creek in willows along Pecho Road in Los Osos. *Id.*

164.   Primary threats to Vireo include riparian habitat destruction and declines in nest survival, resulting in severe population declines. 51 Fed. Reg. at 16478.

165.   The widespread losses of 60-80 percent of the original population are attributable to, *inter alia*, flood control and water development projects and urban development. *Id.* At the time of listing, Vireo occurred in southwestern California and northwestern Baja California, Mexico, an area representing only a fraction of its former range. 51 Fed. Reg. at 16474. At the time of listing, no population of more than five pairs was known to occur below a major water control project. *Id.*

166.   The Vireo recovery priority number is 3C, indicating it is a subspecies with a high degree of threat, high potential for recovery, and conflicts with development activities. *Id.* at 4.

### The County's Operation of the Project is Harming Least Bell's Vireo

167.   The County's construction, operation, and maintenance of the Project and reduced flow releases from Lopez Dam into Arroyo Grande Creek harms the Vireo.

168.   The County's reduced flows diminish Arroyo Grande Creek flows downstream from Lopez Dam, depriving the Creek of flows it would normally have at various times of the year. *See, e.g.*, NMFS, ESA Section 7(a)(2) Biological Opinion, Arroyo Grande Creek Waterway Management Program, NMFS Consultation Number: WCR-2014-1677 (Nov. 2017) ("2017 Waterway Management BiOp"), pages 37, 100.

169.   The lower flows in Arroyo Grande Creek that the County's operation and maintenance of the Project causes also lowers groundwater elevations underlying the Creek beyond the reach of native riparian vegetation and trees. This has caused a decline

in groundwater-dependent native riparian plant species in the Arroyo Grande Creek downstream of Lopez Dam. *See* 2017 Waterway Management BiOp at 45. This alteration and harm to native riparian vegetation harms the endangered Vireo because Vireo depend on densely foliated stands of deciduous trees and shrubs, particularly willows, with a dense understory adjacent to slow-moving watercourses. *See* 1998 Vireo Draft Recovery Plan at 10. Vireo are especially discriminate about the vegetation types they nest in and forage from. *See* 1998 Vireo Draft Recovery Plan at 4 (noting that Vireo is dependent upon riparian habitat for breeding); 51 Fed. Reg. at 16,474 (noting that "the narrow and limited nature of the habitat of the least Bell's vireo makes the subspecies more susceptible to major population reductions than are the other subspecies.").

170.    Vireo occurs in the following riparian habitat types: cottonwood-willow woodlands/forests, oak woodlands, and mule fat scrub, and prefer early successional habitat. *Id.* at 10. Alterations to Vireo's riparian habitat can result in profound effects on its survival and population. 51 Fed. Reg. at 16,474.

171.    The County's alteration of Arroyo Grande Creek hydrology has promoted the spread of invasive non-native plants including Himalayan blackberry, English ivy, fennel, and weeping willow that are better able to access the lower groundwater levels or that have lesser groundwater needs. The County's Project operations have promoted the replacement of native riparian vegetation with these non-native invasive plants. These invasive plants provide little suitable habitat or food for the Vireo, because the Vireo requires the structural diversity associated with native vegetation and mature riparian forests to breed.

172.    By degrading the native riparian plant community, the County's operation of the Project has increased mortality and other harm to the Vireo.

173.    The County's maintenance activities in riparian areas, including removal of riparian vegetation, along Arroyo Grande Creek also harm Vireo by reducing potential Vireo nesting habitat and otherwise disturbing the birds, which in turn has led to a decline in Vireo numbers. The County conducts maintenance activities within riparian areas

during the typical Vireo nesting season (between March and August or September) thus disrupting and/or preventing nesting of Vireo. 51 Fed. Reg. at 16474.

**G. Southwestern Pond Turtle (*Actinemys pallida*) and the County's Operations of the Project**

**Southwestern Pond Turtle and the Arroyo Grande Creek**

174.    The FWS proposed to list and is currently considering listing the southwestern pond turtle as threatened under the ESA along with a proposed ESA section 4(d) rule that would prohibit unauthorized take of southwestern pond turtle. 88 Fed. Reg. 68370 (Oct. 3, 2023) (proposing listing); 89 Fed. Reg. 23534 (April 4, 2024) (reopening public comment on proposed listing).

175.    The southwestern pond turtle is a species found in central and southern California and Baja California, Mexico. 89 Fed. Reg. 23534. The southwestern pond turtle inhabits: (1) ponds, lakes, streams, marshes, estuaries, and other permanent waters for breeding, feeding, overwintering, sheltering, and dispersal; (2) basking sites that allow for thermoregulation; and (3) terrestrial or upland features adjacent to the aquatic habitat for nesting, overwintering and estivation, and dispersal and connectivity between populations. 88 Fed. Reg. at 68373, 68376. The turtles are long-lived, with one individual living to at least 55 years of age. *Id.* Courtship and mating behavior has been observed from April through November. *Id.* Nesting behavior and oviposition usually occur from May through July. *Id.*

176.    Southwestern pond turtles inhabit reaches of streams that contain deep pools, from 3 to 5.2 feet deep. *See* County of San Luis Obispo (Oct. 2010), Arroyo Grande Creek Channel Waterway Management Program Final Environmental Impact Report, SCH No. 2009061030 ("Arroyo Grande Creek WMP 2010 EIR"), page 4-59.

177.    The most important habitat needs for the southwestern pond turtle include aquatic habitat, upland habitat, and basking sites. 88 Fed. Reg. at 68376.

178.    The primary threats to southwestern pond turtle include, *inter alia*, habitat loss and fragmentation, altered hydrology, predation, and the effects of climate change.

88 Fed. Reg. at 68378.

179.   Three key factors that are the most influential in driving the southwestern pond turtle's current and future condition are: (1) anthropogenic impacts, (2) predation by bullfrogs, and (3) drought. *Id.* Specifically, "upland land conversion and draining of the extensive wetlands or channeling of streams have resulted in the decline and extirpation of many populations and left the remaining western pond turtle populations within these areas disjunct, scattered, and isolated from each other with little upland habitat available for nesting." *Id.*

180.   Threats associated with altered hydrology adversely impacting southwestern pond turtle include: wetland conversion and draining; stream channelization and ditching; modification of flow regimes; groundwater pumping; water diversions; damming; and water regulation for flood risk management. 88 Fed. Reg. at 68378. These threats affect the hydrology, thermal conditions, and structure of the western pond turtle aquatic and upland habitat. *Id.*

181.   Southwestern pond turtle inhabits Arroyo Grande Creek. *See* Arroyo Grande Creek WMP 2010 EIR at 4-60 and D-20. Southwestern pond turtles utilize instream and open water habitat of Arroyo Grande Creek, the flow of which is regulated by Lopez Dam. *See* Arroyo Grande Creek WMP 2010 EIR at 4-45.

**The County's Operation of the Project is Harming Southwestern Pond Turtle**

182.   The County's operation and maintenance of the Project is harming southwestern pond turtle by creating a barrier to the turtle's migration, creating stretches of unsuitable habitat, and degrading or eliminating habitat.

183.   The Project's harms to southwestern pond turtle have included causing turtle mortality and interfering with reproduction and other essential lifecycle behaviors thus leading to a decline in southwestern pond turtle population in the Arroyo Grande Creek watershed.

184.   Lopez Dam and Lopez Lake act as a barrier to turtle migration for any turtles attempting to move from downstream Arroyo Grande Creek to habitat above the

Dam.

185.   In addition, the County's alteration of hydrology in Arroyo Grande Creek due to limited flow of water released from the Lopez Dam and modification of flow regimes in the Creek has created stretches of unsuitable habitat and degraded or eliminated habitat for southwestern pond turtle.

186.   Adverse impacts to southwestern pond turtle from the County's Project also include direct or indirect disturbance to the turtle's riparian habitat through the County's maintenance activities including vegetation removal and sediment management activities. *See* Arroyo Grande Creek WMP 2010 EIR at 4-94.

187.   WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FIRST CLAIM FOR RELIEF

**Violation of ESA Section 9 – Prohibition Against Unauthorized Take of Steelhead 16 U.S.C. § 1538; Request for Declaratory Relief and Injunction to Enjoin County from Taking Steelhead**

188.   Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein and incorporate herein by reference each and every allegation set forth in paragraphs 1 through 187.

189.   The County is violating ESA section 9's prohibition on the unauthorized take the Steelhead by harassing, wounding, killing, trapping, and/or capturing Steelhead, and/or by causing significant habitat modification or degradation for Steelhead which kills, injures, or deleteriously impacts the species by significantly impairing essential behavioral patterns, including breeding, spawning, rearing, migrating, feeding or sheltering. 16 U.S.C. § 1538(a)(1)(B); 16 U.S.C. § 1532(19); 50 C.F.R. § 222.102; 50 C.F.R. § 17.3.

## SECOND CLAIM FOR RELIEF

**Violation of California Fish and Game Code § 5937 Associated with Harm to Steelhead, Pursuant to California Code of Civil Procedure § 1085**

190.   Plaintiffs reassert and reallege each of the preceding paragraphs as if set

forth herein and incorporate herein by reference each and every allegation set forth in paragraphs 1 through 189.

191.   The County has a clear and mandatory duty under CFGC section 5937 as alleged herein. The County is violating its clear and mandatory duty under CFGC section 5937 by failing to release enough water from Lopez Dam to keep Steelhead in good condition below the dam.

## THIRD CLAIM FOR RELIEF

### Violation of California Fish and Game Code § 5901 Associated with Harm to Steelhead, Pursuant to California Code of Civil Procedure § 1085

192.   Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein and incorporate herein by reference each and every allegation set forth in paragraphs 1 through 191.

193.   The County has a clear and mandatory duty under CFGC sections 5901 as alleged herein. The County is violating its clear and mandatory duty under CFGC section 5901 by operating and maintaining Lopez Dam in a fashion that prevents Steelhead migration upstream and downstream of the dam and that violates various provisions of law including the ESA and CFGC section 5937.

## FOURTH CLAIM FOR RELIEF

### Violation of the California Public Trust Doctrine, Pursuant to California Code of Civil Procedure § 1085

194.   Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein and incorporate herein by reference each and every allegation set forth in paragraphs 1 through 193.

195.   As a county – a state governmental agency – the County has a clear and mandatory duty under the California Public Trust Doctrine to fully analyze and consider the impacts to trust resources caused by its actions and to protect those trust resources. The County is violating its California Public Trust Doctrine duties by failing to fully analyze and consider the impacts of the Project and to implement measures to

appropriately protect the public trust resources of Arroyo Grande Creek.

## FIFTH CLAIM FOR RELIEF

**Violation of California Constitution Article X, Section 2 Due to Harm to the Arroyo Grande Creek Environment, Pursuant to California Code of Civil Procedure § 1085**

196.    Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein, and incorporate herein by reference each and every allegation set forth in paragraphs 1 through 195.

197.    The County has a clear and mandatory duty under California Constitution Article X, Section 2 to not waste or unreasonably use waters of the Arroyo Grande Creek and to not utilize an unreasonable method of use or method of diversion of the waters of the Arroyo Grande Creek. The County has violated, and continues to violate California Constitution Article X, Section 2 through its unreasonable method of use and/or its unreasonable method of diversion of the waters of the Arroyo Grande Creek in a manner that is causing significant and undue harm to the Arroyo Grande Creek environment.

## REMEDY

198.    Plaintiffs have no plain, speedy, and adequate remedy, in the ordinary course of law, other than the relief sought in this Complaint, because there is no other mechanism for compelling Defendant's compliance with the duties imposed under ESA and California state laws as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief:

199.    Declaratory relief stating that the County is in violation of:

    a. ESA section 9 by taking Steelhead in Arroyo Grande Creek without authorization;

    b. California Fish and Game Code §§ 5901 and 5937;

    c. The California Public Trust Doctrine; and

    d. Article X, Section 2 of the California Constitution;

200.    A peremptory writ of mandate:

a. Declaring that Defendant County has violated California Fish and Game Code §§ 5901 and 5937;

b. Declaring that Defendant County has violated the California Public Trust Doctrine;

c. Declaring that Defendant County has violated Article X, Section 2 of the California Constitution;

d. Ordering the County to take such actions as required to bring its operation and maintenance of the Project into compliance with California Fish and Game Code §§ 5901 and 5937;

e. Ordering the County to take such actions as required to bring its operation and maintenance of the Project into compliance with the common law and California Constitution;

f. Prohibiting any and all Project activity in violation of the common law and the California Constitution alleged herein and specifically enjoining the County to implement an appropriate, environmentally protective flow regime on Arroyo Grande Creek;

g. Prohibiting any and all Project activity in violation of California Fish and Game Code §§ 5901 and 5937 alleged herein and specifically enjoining County to implement an appropriate, environmentally protective flow regime on Arroyo Grande Creek;

201. Injunctive relief:

a. Halting the County from diverting water at the Project in a fashion that will impede Steelhead migration and otherwise prevent Steelhead from exercising its essential lifecycle behaviors in Arroyo Grande Creek;

b. Requiring the County to implement all other measures necessary to prevent the Project from unlawfully taking Steelhead; and

c. Requiring the County to promptly complete an adequate and fully compliant ESA HCP and apply to the Services for an ESA § 10 ITP.

202. For costs of suit;

203. For attorneys' fees and costs pursuant to law, including 16 U.S.C. § 1540(g)(4) and California Code of Civil Procedure § 1021.5; and

204. For such other and further relief as the Court deems just and proper.

Dated: August 13, 2024                    Respectfully submitted,

*Christopher A. Sproul*
_____
Christopher Sproul
Attorney for Plaintiffs

# Exhibit A



# ENVIRONMENTAL

## ADVOCATES

ATTORNEYS AT LAW

5135 ANZA STREET
SAN FRANCISCO, CA 94121
(415) 533-3376
Fax: (415) 358-5695
E-mail: csproul@enviroadvocates.com

June 6, 2024

*VIA EMAIL & CERTIFIED MAIL*

| | |
|---|---|
| County of San Luis Obispo<br>Attn: Rita L. Neal, County Counsel; Elaina Cano, County Clerk -Recorder; John Diodati, Director of Department of Public Works<br>1055 Monterey Street<br>San Luis Obispo, CA 93408<br>Emails: rneal@co.slo.ca.us,<br>ecano@co.slo.ca.us, jdiodati@co.slo.ca.us,<br>pwd@co.slo.ca.us | Deb Haaland, Secretary of the Interior<br>U.S. Department of Interior<br>1849 C. Street, N.W.<br>Washington, D.C. 20240<br>Email: exsec@ios.doi.gov,<br>Deb_Haaland@ios.doi.gov |
| Gina Raimondo, Secretary of Commerce<br>U.S. Department of Commerce<br>1401 Constitution Ave. N.W.<br>Washington, D.C. 20230<br>Email: TheSec@doc.gov | |

**Re:    Notice of Violation and Intent to File Suit Under the Endangered Species Act**

Dear Ms. Neal, Ms. Cano, Mr. Diodati, Secretary Raimondo, and Secretary Haaland:

In accordance with the sixty-day notice requirement of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g), you are hereby notified that the organizations noted below intend to bring a civil action against the County of San Luis Obispo, including the San Luis Obispo County Flood Control and Water Conservation District Zone 3 ("District") (together collectively, "County"), for violations of the ESA.

June 6, 2024, ESA 60-Day Notice Letter
Page 2

The name and address of the organizations giving Notice of Intent to Sue (hereafter, "Noticing Parties"):

San Luis Obispo Coastkeeper
Attn: Gordon Hensley
1241 Johnson Ave., No. 230
San Luis Obispo, CA 93401
Email: coastkeeper@epicenteronline.org

Los Padres ForestWatch
Attn: Jeff Kuyper, Executive Director & Ben Pitterle, Director of Advocacy and Field Operations
P.O. Box 831
Santa Barbara, CA 93102
Email: jeff@lpfw.org, ben@lpfw.org

California Coastkeeper Alliance
Attn: Sean Bothwell, Executive Director & Drevet Hunt, Legal Director
1100 11th Street, 3rd Floor
Sacramento, CA 95814
Email: sbothwell@cacoastkeeper.org, dhunt@cacoastkeeper.org

Ecological Rights Foundation
Attn: Linda Sherby, Executive Director & Fredric Evenson, Counsel
2011 Sunset Ridge Rd.
Blocksburg, CA 95514
Email: lssherby@gmail.com, evenson@ecologylaw.com

All communications regarding this notice should be addressed to the following legal counsel representing the Noticing Parties in this matter:

Christopher Sproul
Brian Orion
Marla Fox
Environmental Advocates
5135 Anza Street
San Francisco, CA 94121
Emails: csproul@enviroadvocates.com, borion@enviroadvocates.com, mfox@enviroadvocates.com

Jesse C. Swanhuyser
Sycamore Law, Inc.
1004 O'Reilly Ave
San Francisco, CA 94129
Email: jesse@sycamore.law

June 6, 2024, ESA 60-Day Notice Letter
Page 3

As described herein, the County has violated and is violating section 9 of the ESA, 16 U.S.C. § 1538, by constructing, owning, operating, and maintaining Lopez Dam, Lopez Lake, a three mile buried steel transmission line that conveys water to the Lopez Terminal Reservoir, and various in-stream infrastructure downstream from Lopez Dam (collectively, the "Project") in a manner that unlawfully "takes" ESA-listed species located downstream in Arroyo Grande Creek: namely, the threatened South-Central California Coast ("SCCC") Distinct Population Segment ("DPS") of Steelhead (*Oncorhynchus mykiss*) (hereafter, "SCCC Steelhead"), threatened California red-legged frog (*Rana aurora draytonii*), endangered tidewater goby (*Eucyclogobius newberryi*), and endangered least Bell's vireo (*Vireo bellii pusillus*) (all four species collectively, "Listed Species"). The County's operation and maintenance of the Project also harms southwestern pond turtle (*Actinemys pallida*), which is proposed for listing under the ESA as threatened. This letter also provides notice that the County's operation and maintenance of the Project violates several California state laws, including: the California Public Trust Doctrine; Article X, section 2 of the California Constitution; and California Fish and Game Code sections 5901, 5948, and 5937. This letter is to inform you that the Noticing Parties intend to file a complaint in federal court after the ESA 60-day notice period has run unless the violations identified herein are remedied.

## I.    LEGAL BACKGROUND

The purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered and threatened species[.]" 16 U.S.C. § 1531(b). Congress defined "conservation" as "the use of all methods and procedures that are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary." 16 U.S.C. § 1532(3). The ESA seeks to recover species such that its protections are no longer needed—not simply to prevent extinction of imperiled species. *See Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 699 (1995) ("The plain intent of Congress in enacting this statute . . . was to halt and reverse the trend toward species extinction, whatever the cost.") (citing *TVA v. Hill*, 437 U.S. 153, 184 (1978)).

Section 9 of the ESA furthers these goals by prohibiting the "take" of any endangered species except as authorized pursuant to an ESA section 10 permit or incidental take statement accompanying a biological opinion issued pursuant to ESA section 7. 16 U.S.C. § 1538(a)(1). Species listed as threatened may receive the "take" protections by further regulation pursuant to section 4 of the ESA. *Id.* § 1533(d). The ESA defines "take" broadly to include "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." *Id.* § 1532(19). "Take" includes indirect as well as direct harm and need not be purposeful. *See Sweet Home*, 515 U.S. at 704.

Both the National Marine Fisheries Services ("NMFS") and the U.S. Fish and Wildlife Service ("FWS") (collectively, "Services") have further defined some of the terms that constitute take via regulation. The Services both define "harm" as "an act which actually kills or injures" fish or wildlife and "[s]uch act may include significant habitat modification or degradation where it actually kills or injures" fish or wildlife "by significantly impairing essential behavioral

June 6, 2024, ESA 60-Day Notice Letter
Page 4

patterns, including breeding, feeding, or sheltering." 50 C.F.R. § 222.102; 50 C.F.R. § 17.3. FWS defines "harass" as "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3.

Under section 10 of the ESA, a non-federal entity may obtain an Incidental Take Permit ("ITP") only after the applicant submits to the Services a Habitat Conservation Plan ("HCP") that specifies (i) the impact which will likely result from such taking; (ii) what steps the applicant will take to minimize and mitigate such impacts, and the funding that will be available to implement such steps; (iii) what alternative actions to such taking the applicant considered and the reasons why such alternatives are not being utilized; and (iv) such other measures that the Services may require as necessary or appropriate for purposes of the plan. 16 U.S.C. § 1539. The most important part of any ITP application is the submission of an adequate HCP. Before issuing the ITP, the Services must allow opportunity for comment on the permit application and related HCP, and find that (i) the taking will be incidental; (ii) the applicant will, to the maximum extent practicable, minimize and mitigate the impacts of such taking; (iii) the applicant will ensure that adequate funding for the plan will be provided; (iv) the taking will not appreciably reduce the likelihood of the survival and recovery of the species in the wild; and (v) the measures required by the Services will be met, and that the Services has received such other assurances as they require that the plan will be implemented. *Id.*

## II.     FACTUAL BACKGROUND: THE PROJECT

As referred to herein, the Project consists of Lopez Dam, Lopez Lake, a three mile 20-inch diameter buried steel transmission line for conveyance of raw water to the Lopez Terminal Reservoir and subsequently to Lopez Water Treatment Plant, and various in-stream infrastructure downstream from Lopez Dam. The County built Lopez Dam in 1969 on Arroyo Grande Creek, 13 miles upstream from the Pacific Ocean. Water is stored behind Lopez Dam in Lopez Lake. The District operates and maintains the Project in the Arroyo Grande Creek watershed (1) to provide drinking water supply to five cities, and (2) to provide year-round irrigation water to downstream agriculture to meet riparian rights and for groundwater recharge. The County is the legally responsible entity for operating and maintaining Lopez Dam.

Infrastructure related to the Project includes the three-mile 20-inch transmission pipe that conveys water to water treatment and supply infrastructure, which includes a smaller dam (Terminal Dam), Lopez Reservoir, and a water treatment plant. Infrastructure related to the Project also includes but is not limited to the following full or partial barriers downstream from Lopez Dam, to the extent this infrastructure still exists within Arroyo Grande Creek: (1) two concrete dams located at or about mile 2.88 from the confluence with the ocean and about 0.5 mile downstream from the Fair Oaks Crossing; (2) Arroyo Grande Stream Gage, ID # 8409, located at or about stream mile 4.98 from the confluence with the ocean; (3) a rip rap dam located about 2,000 feet upstream of the stream gage at mile 5.35 from the confluence with the ocean; (4) concrete dam located at or about stream mile 5.82 from the confluence; (5) Cecchetti Road culverted crossing, ID # 142, that requires repeated removal of built-up vegetative debris; (6) "S" rip rap dam at or about stream mile 9.31 from the confluence with the ocean; (7) abandoned dam or diversion footings, ID # 141, at or about stream mile 11.22 from the

June 6, 2024, ESA 60-Day Notice Letter
Page 5

confluence with the ocean; and (8) concrete grade control weir located at or about stream mile 13.29 from the confluence with the ocean at the Rodriguez Road crossing. *See* 2007 Interim Downstream Release Schedule ("2007 IDRS"), pages 13-14; *see also* 2024 NMFS, West Coast Region, California Coastal Office, Role of Arroyo Grande Creek and Tributaries, San Luis Obispo County, California, in Meeting NMFS's South-Central California Coast Steelhead Viability/Recovery Criteria (hereafter, "2024 NMFS Role of Arroyo Grande Creek and Tributaries"), pages 38-42.





June 6, 2024, ESA 60-Day Notice Letter
Page 6

The Project operations include: reservoir storage in Lopez Lake behind Lopez Dam; stocking of native and non-native fish in Lopez Lake; diverting water for use outside of Arroyo Grande Creek; reservoir storage of the diverted water in Lopez Reservoir; uncontrolled spills and managed instream flow releases from Lopez Dam; altering natural stream flows in Arroyo Grande Creek below Lopez Dam based on seasonally varied water releases for agricultural water supply, downstream water rights, and environmental needs; municipal water treatment and supply, including backwash water disposal and water sampling activities; and operation of the Arroyo Grande Creek stream gaging station.

Project maintenance activities include maintaining Lopez Dam by removing vegetation and repairing settlement or soil slippage and related maintenance activities; maintaining on-site drainage facilities including ditches and drains; maintaining the on-site flow channels below the outlet by removing vegetation, repairing concrete portions, and repairing or replacing rip-rap; maintaining access roads on and to the dam including associated drainage structures; maintaining fences, gates, and other elements necessary for the security of the site; dam and stream channel maintenance by the County in Arroyo Grande Creek; and instream infrastructure maintenance by the County in Arroyo Grande Creek.

## III.  THE COUNTY'S OPERATION AND MAINTENANCE OF THE PROJECT HARMS ESA-LISTED SPECIES.

The County is violating the ESA by operating and maintaining the Project in a way that harms ESA-listed species. The County is and has been aware that the Project harms ESA-listed species in Arroyo Grande Creek, including populations that use Arroyo Grande Creek as habitat during portions of their life stages (such as during upstream and downstream migration and rearing), for three decades. In January of 1994, a citizen of Los Osos, California filed a State Water Resources Control Board complaint against the County alleging that the County was violating the California Fish and Game Code by failing to release water from Lopez Dam for fish in Arroyo Grande Creek below the dam. *See* Jan. 13, 1994, Complaint by Wm. H. L' Hommedieu. The complaint noted that the County's operation of Lopez Dam resulted in approximately 2 miles of dry creek bed immediately below the dam. On June 15, 1994, the County filed a response to the citizen's complaint with the Unit of the Division of Water Rights, asserting that the County operates Lopez Dam in a manner consistent with all local, state, and federal law. On June 24, 1994, the California Sportfishing Protection Alliance submitted a letter following up on the earlier complaint, requesting that the State Water Board bring the County into compliance with California Fish and Game Code sections 5937 and 782, California Codes of Regulation, the Public Trust Doctrine, and other applicable statutes. Around that time, the State Board informed the County that it would not re-issue or amend the water rights permit for Lopez Dam until operations of the Dam were brought into compliance with the ESA.[1] The State Board's demand was triggered by the citizen complaint and concerns from California Sportfishing Protection Alliance as well as increasing concern on the part of both NMFS and the

---

[1] Despite reports indicating that the State Board would not renew or amend the County's water rights permit until it complied with the ESA, it appears that the State Board granted numerous extensions of that permit and that Permit 12814 is currently in effect.

June 6, 2024, ESA 60-Day Notice Letter
Page 7

California Department of Fish and Wildlife ("CDFW") about the Dam's impact on SCCC Steelhead.

In 2004, the County completed a Final Draft Arroyo Grande Creek Habitat Conservation Plan ("HCP") and Environmental Assessment/Initial Study ("EA/IS") For the Protection of Steelhead and California Red-Legged Frogs (hereafter, "2004 Final Draft HCP and EA/IS"). The 2004 Final Draft HCP and EA/IS sought authorization for incidental take of SCCC Steelhead and California red-legged frog associated with activities including but not limited to: (a) reservoir storage; (b) uncontrolled spills and managed instream flow releases; (c) municipal water treatment and supply, including backwash water disposal and water sampling activities; (d) water releases for irrigated agriculture; (e) dam and stream channel maintenance by the District in Arroyo Grande Creek; (f) Lopez Dam and Reservoir operations; (g) instream flow releases exceeding flows established by the Final Draft HCP; and (h) channel and facility maintenance by the District in Arroyo Grande Creek.

In response, the Services provided written comment letters that largely rejected the 2004 Final Draft HCP and EA/IS as inadequate. NMFS emphasized that the instream flow schedule proposed by the County in the 2004 Final Draft HCP and EA/IS was not an appropriate starting point and was not sufficient to produce a high likelihood of attaining essential habitat functions for steelhead and therefore long-term survival of the species. *See* Nov. 25, 2004, NMFS Comments on the District's Proposed Instream Flow Schedule for Steelhead Trout in Arroyo Grande Creek Downstream of Lopez Dam (hereafter, "2004 NMFS Comments"). NMFS urged the County to develop an adequate downstream release schedule starting from the natural streamflow regime in Arroyo Grande Creek, a process that would be more likely to ensure sufficient flows of water at specific times of the year to support the complex life cycle needs of SCCC Steelhead (i.e., in terms of timing, magnitude, duration, and seasonality) to allow for SCCC Steelhead conservation, survival, and recovery. NMFS stated that since construction of Lopez Dam, the timing of high winter discharge has shifted from February to March and the magnitude of spring discharge (late March through June) has decreased and suggested that the timing of winter discharge and magnitude of spring discharge should be restored to pre-Dam characteristics. *See* 2004 NMFS Comments at 2. NMFS also suggested the County assess the effects of unnatural instream structures on passage of adult and juvenile steelhead. *Id.*

FWS noted that the County should include Tidewater Goby as a covered species in the HCP, stating that the timing and volume of water releases from Lopez Dam has potential to benefit or extirpate the population of Gobies in Arroyo Grande Creek. *See* June 27, 2005, FWS Comments on the February 2004 Draft of the Arroyo Grande Creek Habitat Conservation Plan, San Luis Obispo County, California (hereafter, "2005 FWS Comments"). FWS also noted that the HCP failed to include commitments for habitat enhancement and directed the County to ensure the County is commented to implementing all conservation measures presented in the HCP and identify the funding to do so. *Id.* In response to a revised 2005 version of the County's HCP, FWS submitted a second round of comments that again directed the County to address Tidewater Goby because this species may be taken as a result of the Project. *See* March 13, 2006, FWS Comments on the July 2005 Draft of the Arroyo Grande Creek Habitat Conservation Plan, San Luis Obispo County, California (hereafter, "2006 FWS Comments").

June 6, 2024, ESA 60-Day Notice Letter
Page 8

More recently, NMFS stated that the County has failed to assess, with empirical and analytical methods and decision or performance criteria, the technical feasibility of restoring fish passage past Lopez Dam and the related value to the survival and recovery of threatened SCCC Steelhead. *See* June 22, 2023, NMFS Letter to Keith Miller, San Luis Obispo County Department of Public Works (hereafter, "2023 NMFS Comments"). NMFS noted that the County has failed to assess the technical feasibility of volitional fish passage past Lopez Dam. *Id.* NMFS also emphasized that the County still does not have exemption of liability under section 9 of the ESA and thus there is some urgency for completion of a study assessing volitional fish passage. *Id.* Based on information available, to date the County has not yet addressed these issues raised by the Services. The County is operating and maintaining the Project without an HCP or ITP.

The County's operation and maintenance of the Project harms ESA-listed species resulting in unauthorized take of the species. This includes but is not limited to the following actions by the County and/or District: (a) reservoir storage; (b) uncontrolled spills and managed instream flow releases; (c) water releases for irrigated agriculture; (d) operation and maintenance of Lopez Dam and Reservoir; (e) insufficient instream flow releases; (f) operation and maintenance of related infrastructure including but not limited to existing in-stream barriers in Arroyo Grande Creek and various tributaries to Arroyo Grande Creek such as Los Berros Creek, and (g) channel and facility maintenance by the District in Arroyo Grande Creek.

### A. The County's Project Is Harming ESA-Threatened South-Central California Steelhead (*Oncorhynchus mykiss*).

#### 1. Arroyo Grande Creek Supports Threatened SCCC Steelhead and Is Designated SCCC Steelhead Critical Habitat.

SCCC Steelhead are listed as threatened under the ESA. 62 Fed. Reg. 43,937 (Aug. 18, 1997); 71 Fed. Reg. 834 (Jan. 5, 2006) (reaffirming threatened listing under the joint FWS and NMFS DPS policy). Threatened SCCC Steelhead include all naturally spawned *O. mykiss* (steelhead) originating below natural and manmade impassable barriers from the Pajaro River to (but not including) the Santa Maria River. 71 Fed. Reg. 834. SCCC Steelhead spawn and rear within Arroyo Grande Creek downstream of Lopez Dam. 70 Fed. Reg. at 52508. *See also* 2004 Final Draft HCP and EA/IS at 1-64.

SCCC Steelhead abundance has declined precipitously from a historic high of roughly 25,000 returning adults to fewer than 500 adults in 2017. *See* Endangered Species Act Section 7(a)(2) Biological Opinion for the Arroyo Grande Creek Waterway Management Program (Nov. 27, 2017) ("2017 BiOp") at 78; *see also* NMFS West Coast Region, 2023 5-Year Review: Summary & Evaluation of South-Central California Coast Steelhead ("hereafter "2023 SCCC Steelhead Species Assessment"), page 42. The SCCC Steelhead population of the Arroyo Grande Creek system may have been the most extensive of the populations of the San Luis Obispo County coast, but accelerated declines of the population have resulted in the current Arroyo Grande Creek SCCC Steelhead run to be "in the dozens." 2017 BiOp at 35, 78.

June 6, 2024, ESA 60-Day Notice Letter
Page 9

In 2005, NMFS designated critical habitat for SCCC Steelhead, including designation of Arroyo Grande Creek and Los Berros Creek as critical habitat. 70 Fed. Reg. 52,488 (Sept. 2, 2005). These designations are shown on the following map, 70 Fed. Reg. at 52,579:



The primary reasons for the decline of west coast steelhead include destruction and modification of habitat, and natural and human-made factors. 62 Fed. Reg. at 43,942. Because of

June 6, 2024, ESA 60-Day Notice Letter
Page 10

the species' specific life cycle, "steelhead are only able to express their full life-history trains, which confer a survival advantage to the anadromous form of the species, when the characteristics and condition of their freshwater habitat is conducive to survival, growth, and emigration of smolts to the ocean[.]" *See* 2023 SCCC Steelhead Species Assessment at 44. The steelhead's "complex life cycle gives rise to complex habitat needs, particularly during the freshwater phase[.]" 70 Fed. Reg. at 52492. The modification of natural flow regimes by dams and other water-control structures are among the core threats to the SCCC Steelhead DPS. 78 Fed. Reg. 77430 (Dec. 23, 2013); NMFS, 2013, South-Central California Coast Steelhead Recovery Plan, West Coast Region, California Coastal Area Office, Long Beach, California (hereafter, "2013 SCCC Recovery Plan"), page 4-3.

### 2.  The County's Project Is Harming SCCC Steelhead.

The County's operation and maintenance of the Project that prevents fish passage (for both juvenile and adult SCCC Steelhead) to quality habitat throughout the Arroyo Grande Creek watershed and the County's failure to provide sufficient flow releases from Lopez Dam to Arroyo Grande Creek harms SCCC Steelhead by preventing the population from meeting the viability and recovery criteria identify by NMFS in its 2013 South-Central California Steelhead Recovery Plan. *See, e.g.*, NMFS, Role of Arroyo Grande Creek and Tributaries, San Luis Obispo County, California, In Meeting NMFS' South-Central California Coast Steelhead Viability/Recovery Criteria (Feb. 2024) (hereafter, "2024 NMFS: Role of Arroyo Grande Creek"), page 2. In addition, the County's stocking of non-native hatchery-reared *O. mykiss* in Lopez Lake and failure to screen this predatory species out of Arroyo Grande Creek harms SCCC Steelhead.

### i.  The County's Construction, Operation, and Maintenance of the Project Blocks Access to Valuable Steelhead Habitat.

The County's construction, operation, and maintenance of the Project—and specifically Lopez Dam and Lopez Lake—has and continues to harm SCCC Steelhead by cutting off valuable habitat for SCCC Steelhead in Arroyo Grande Creek. Lopez Dam cuts off SCCC Steelhead access above Lopez Dam, resulting in the loss of many miles of quality steelhead spawning, rearing, and over-summering refugia habitat above the dam. 70 Fed. Reg. at 52507. Lopez Dam is a full barrier to SCCC Steelhead migration in Arroyo Grande Creek and prevents SCCC Steelhead access to important drought refugia habitat, thereby reducing the amount of habitat accessible to adult SCCC Steelhead migrating upstream as well as juvenile SCCC Steelhead attempting to emigrate out of the watershed. *Id.* Lopez Dam blocks access to the overwhelming majority of steelhead spawning, rearing, and refugia habitat in this Core 1 recovery population. *See* 2023 SCCC Steelhead Species Assessment at 32.

Specifically, Lopez Dam blocks SCCC Steelhead access to about 42 miles of high intrinsic potential steelhead spawning and rearing habitat, out of a total of about 66 miles of high intrinsic potential steelhead spawning or over-summering rearing/refugia habitat. *See* 2024 NMFS: Role of Arroyo Grande Creek at 11. Of the high intrinsic potential steelhead spawning and rearing habitat above Lopez Dam and Lopez Lake, 12.7 miles (about 30%) is located on U.S. Forest Service land within Los Padres National Forest. *Id.* The following map shows the high

June 6, 2024, ESA 60-Day Notice Letter
Page 11

intrinsic potential steelhead spawning and rearing habitat (2024 NMFS: Role of Arroyo Grande
Creek, Figure 6):



The Project thus prevents access to two-thirds of the high intrinsic potential steelhead
spawning and rearing habitat in the Arroyo Grande Creek watershed. *Id.* at 11-13, 31. Further,
Lopez Dam inundated SCCC Steelhead habitat underneath the waters of Lopez Lake. By
inundating previously accessible, quality habitat, the County's construction, operation and
maintenance of Lopez Dam and Lopez Lake turned the creek into a lake and thereby eliminated
historically accessible SCCC Steelhead habitat. The now-inundated area is no longer usable for
SCCC Steelhead for life cycle behavior. *Id.* at 31.

June 6, 2024, ESA 60-Day Notice Letter
Page 12

The County's operation and maintenance of the Project that reduced the area of available spawning habitat is even more harmful because it reduces the SCCC Steelhead abundance in Arroyo Grande Creek watershed. Moreover, the higher elevation areas above Lopez Dam and Lopez Lake provide cooler waters, providing key refugia habitat to escape impacts from climate change, drought, and forest fires. Reducing the available spawning habitat and refugia habitat makes the SCCC Steelhead population in Arroyo Grande Creek even more vulnerable to catastrophic events. By preventing access to and inundating this high-quality habitat, the County's Project has harmed and continues to harm SCCC Steelhead and the County is thus perpetuating unlawful take in violation of the ESA.

The County's violations of the ESA in harming the Arroyo Grande Creek population of SCCC Steelhead are significant because the Arroyo Grande Creek population is critical for the survival and recovery of SCCC Steelhead across its range. This population is a "Core-1 Population," which means it has the highest priority for recovery based on a variety of factors. 2017 BiOp at 34. The population extends over a broad and geographically diverse area and is therefore likely to withstand environmental unpredictability and possess ecologically significant attributes not found in most other SCCC Steelhead populations. *Id.* at 32. Further, the Arroyo Grande Creek population is an independent population, and is therefore expected to support formation of SCCC Steelhead numbers in several adjacent population units. *Id.* For these reasons, the Arroyo Grande Creek population has a high potential for population viability. *Id.* Moreover, the Arroyo Grande Creek population is one of only a few populations throughout the southern portion of the SCCC Steelhead geographic range where SCCC Steelhead actively spawn and rear. *Id.* at 33. As NMFS has stated:

> Streams classified as Core-1 Populations are essential for recovering the DPS of steelhead as a whole. Therefore, reducing the likelihood of survival and recovery of a Core-1 Population, would have adverse consequences for the survival and recovery of the DPS as a whole. Overall, while the Arroyo Grande Creek Watershed is only one watershed throughout a geographically broad DPS, this watershed is crucial for recovering the entire South-Central California Coast DPS of steelhead.

*Id*.

### ii. The County's Operation of the Project Reduces and Alters Flows in Arroyo Grande Creek, Resulting in Harm to Steelhead.

The County's failure to release sufficient water from Lopez Dam at crucial times of the year has caused the SCCC Steelhead population in Arroyo Grande Creek to significantly decline. The County's operation of the Project limits the timing, duration, magnitude, quantity, and seasonality of water flow released into Arroyo Grande Creek from Lopez Dam. *See, e.g.*, County of San Luis Obispo Public Works, Spillway Discharge website[2]; 2007 IDRS at 2-4. As

---

[2] Available at
https://wr.slocountywater.org/sensor/?time_zone=US%2FPacific&site_id=16&site=ad5cdb23-

June 6, 2024, ESA 60-Day Notice Letter
Page 13

demonstrated by various NMFS documents, the County's flow releases are not ecologically meaningful and are inadequate to support SCCC Steelhead life cycles. *See, e.g.*, 2024 NMFS: Role of Arroyo Grande Creek at 29. In its 5-year review of the species in 2016, NMFS concluded that recovery of SCCC Steelhead depends on addressing the most fundamental threats, including by having the County restore natural flow patterns on Arroyo Grande Creek. *See* NMFS, South-Central/Southern California Coast Steelhead Recovery Planning Domain, 5-Year Review: Summary and Evaluation of South-Central California Coast Steelhead Distinct Population Segment (hereafter, "2016 SCCC Steelhead DPS Status Assessment"), page 55; *see also* 2013 SCCC Recovery Plan at 7-14.

In 2004, NMFS rejected the County's proposed flow regime in the County's 2004 Final Draft HCP and the County's method for developing that flow schedule. *See* 2004 NMFS Comments. NMFS observed that since the construction of Lopez Dam, the timing of high winter discharge has shifted from February to March and the magnitude of spring discharge (late March through June) has decreased. *See* 2004 NMFS Comments at 2. NMFS explained how the County's proposed instream flow schedule did not meet NMFS' recommended monthly discharge during base-flow conditions for release from Lopez Dam into Arroyo Grande Creek in more than half of the months, as identified in red on the following Table 1 from NMFS' 2004 letter:

3e46-41f0-98a9-b169a505c0f4&device_id=10&device=66f2305d-7fc0-4af8-a405-bfdf4c251681&data_start=2024-03-01%2000%3A00%3A00&data_end=2024-03-31%2023%3A59%3A59&bin=86400&range=Last%20Month&markers=false&legend=true&thresholds=true&refresh=off&show_raw=true&show_quality=true (last accessed June 5, 2024).

June 6, 2024, ESA 60-Day Notice Letter
Page 14

Table 1.—NOAA Fisheries' recommended monthly discharge (cfs) during base-flow conditions (i.e., periods of low discharge between rain events, sensu Baron et al. 2002) for release from Lopez Dam into Arroyo Grande Creek. Recommended streamflows are presented as lower (25%) and upper (75%) limits (quartiles) that should not be exceeded, with the exception of those discharges listed in Table 2. The District's proposed instream flow schedule is provided for comparison. The expected median daily discharge is based on the pre-impact discharge data.

| Month | Expected median daily | Upper flow | Lower flow | District's flow |
|-------|-----------------------|------------|------------|-----------------|
| Oct | 2.8 | 4.6 | 1.4 | 3 |
| Nov | 4.3 | 6.7 | 2.6 | 3 |
| Dec | 6.5 | 11.7 | 4.2 | 3 |
| Jan | 9.9 | 30.1 | 6.1 | 6 |
| Feb | 19.2 | 44.5 | 10.9 | 6 |
| Mar | 14.3 | 51.5 | 10.0 | 6 |
| Apr | 15.9 | 25.5 | 8.7 | 6 |
| May | 10.4 | 17.9 | 6.7 | 3 |
| Jun | 6.6 | 10.8 | 4.0 | 3 |
| Jul | 3.2 | 7.7 | 1.3 | 3 |
| Aug | 2.1 | 5.3 | 1.0 | 3 |
| Sep | 1.9 | 5.5 | 1.0 | 3 |

The County's 2007 IDRS provides the current plan for managing downstream releases from Lopez Dam. *See* San Luis Obispo County Flood Control and Water Conservation District, Lopez Water Project Contract Changes Project Description (Oct. 2020), page 5. The IDRS was meant to be an interim document to manage releases from Lopez Dam until such time as the County completes and secures approval for its HCP, but the County has continued to rely on its for its Lopez Dam operations for more than 17 years. *Id.* The 2007 IDRS does not set precise numeric release requirements to control the volume of water released from Lopez Dam. Under the 2007 IDRS, downstream releases range between 3 and 6 cubic feet per second ("cfs"), depending on the hydrologic conditions and downstream demands. Since 2007, downstream releases have averaged approximately 5 cfs. *Id.* The 2007 IDRS also includes a Low Reservoir Response Plan ("LRRP") that even further reduces downstream release flows when the amount of water in Lopez Reservoir drops below 20,000 Acre-Feet ("AF") and the District's Board of Supervisors declares an emergency. *Id.*

June 6, 2024, ESA 60-Day Notice Letter
Page 15

The available data shows that the County's flow releases from Lopez Dam are inconsistent with NMFS's recommendations, are inadequate to support SCCC Steelhead life cycles, and are causing harm to SCCC Steelhead in the Arroyo Grande Creek watershed. *See, e.g.*, 2024 NMFS: Role of Arroyo Grande Creek at 31, 71.

The County's operation of the Project that reduces flows to Arroyo Grande Creek fundamentally alters the natural hydrological cycle of high winter and low summer flows of Arroyo Grande Creek. Elevated river discharge during and shortly after periods of rainfall is essential for creating and maintaining migration opportunities for adult SCCC Steelhead to swim upriver and navigate physical features normally constituting obstacles during relatively low river discharge. 2017 BiOp at 22-23. The migratory behavior and ecology of adult SCCC Steelhead is strongly associated with the natural pattern and magnitude of river discharge. *Id.* at 23. The County's operation and maintenance of the Project artificially disrupts these patterns, which adversely impacts migration opportunities for both adult fish and smolts and their arrival at target habitats. By altering the pattern (magnitude, frequency, timing, and duration) of attraction and migratory flows essential to the successful upstream migration of SCCC Steelhead from the ocean to spawning habitat, the County's limited flow releases from Lopez Dam have reduced SCCC Steelhead access to the lower Arroyo Grande Creek. *See* 2024 NMFS: Role of Arroyo Grande Creek at 31. In its 2004 Final Draft HCP, the County acknowledged that continuing operation of Lopez Dam and Lopez Reservoir and the associated releases of water into Arroyo Grande Creek, in addition to other operations and maintenance activities performed by the District, affects the quality and availability of habitat for SCCC Steelhead, and may result in direct or indirect take of this ESA-listed species. *See* 2004 Final Draft HCP and EA/IS at ES-1.

Specifically, the County releases insufficient water from Lopez Dam at necessary times of the year, resulting in insufficient flows in Arroyo Grande Creek that in turn: (a) prevents or inhibits upstream migration of adult SCCC Steelhead (including by preventing attraction or migratory flows); (b) prevents or inhibits spawning and rearing of SCCC Steelhead; (c) harms the success of juveniles during life stages spent in-river in freshwater and in estuarine waters near the mouth of Arroyo Grande Creek and thereby harms their ability to complete the physiological transformation into smolts and diminishes their overall likelihood of successfully returning as adults; and (d) prevents or inhibits juvenile and adult SCCC Steelhead from completing downstream migration and reaching the Pacific Ocean. The reduced stream flows in Arroyo Grande Creek cause a truncated migration season for the SCCC Steelhead, causing further harm. The County's limited flow releases from Lopez Dam also reduce the suitability of rearing habitat in lower Arroyo Grande Creek and the downstream emigration of smolts to the estuary and ocean. *See* 2024 NMFS: Role of Arroyo Grande Creek at 31. The County's limited flow releases from Lopez Dam deplete the flows necessary for flushing out fine sediments from spawning gravels that SCCC Steelhead require for spawning and rearing. The fine sediments choke the SCCC Steelhead redds. The County's operation and maintenance of the Project thus depletes the flows necessary for SCCC Steelhead migration, spawning, and rearing.

The County's operation and maintenance of the Project also depletes the flows necessary for estuarine functions. A June 2022 aquatic survey by California State Parks noted there was no (or negligible) surface inflow to Arroyo Grande Lagoon, with the creek channel dry at several

June 6, 2024, ESA 60-Day Notice Letter
Page 16

access points within a mile upstream. *See* June 30, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3). The June 2022 survey also observed that conditions in Arroyo Grande Lagoon did not appear suitable for SCCC Steelhead survival, the water was warm, and the depth had significantly decreased. *Id.* A September 2022 aquatic survey by California State Parks confirmed the ongoing deleterious conditions in Arroyo Grande Creek and the Lagoon. *See* Sept. 28, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3) (noting Arroyo Grande Creek was dry for more than one mile upstream, and that conditions in Arroyo Grande Lagoon were not suitable for SCCC Steelhead survival due to warm water, low levels of dissolved oxygen, and reduced depth). Again, in December of 2002, California State Parks observed a lack of surface inflow to Arroyo Grande Lagoon from Arroyo Grande Creek. The adverse impacts to estuarine functions perpetuated by the Project are particularly harmful given the cumulative impacts to SCCC Steelhead throughout its range. Arroyo Grande Creek has only about 20 percent of historical estuarine habitat remaining and there have been similarly large losses of SCCC Steelhead throughout the fish's range.

In addition to disrupting the natural pattern and magnitude of streamflow, the County's operation of the Project that modifies the natural flow regimes in Arroyo Grande Creek causes increased water temperatures, changes in fish community structures, and reduced gravel recruitment. High water temperature, physical barriers, low dissolved oxygen, and high turbidity causes delay or even halts downstream migration of juvenile SCCC Steelhead and subsequent entry into estuary, lagoon, or ocean. The County's limited flow releases from Lopez Dam thereby reduce the amount and quality of drought refugia habitat in the mainstem and tributaries of Arroyo Grande Creek.

The County's operation of the Project by reducing flow releases to Arroyo Grande Creek disrupts the natural pattern and movement of sediment within the Creek. Limited releases of water from Lopez Dam alter the movement of sediment and organic debris in Arroyo Grande Creek and Arroyo Grande Lagoon. The County's limited releases from Lopez Dam that reduce flows in Arroyo Grande Creek rob the stream of the flow necessary to allow for downstream migration of cobble. The County's reservoir operations include Lopez Dam blocking sediment movement and reduced flows to Arroyo Grande Creek that diminish spawning gravel recruitment to the lower reaches of Arroyo Grande Creek. *See* 2004 Final Draft HCP and EA/IS at 2-1. The County's flow regulation adversely affects channel conditions and geomorphic processes downstream in Arroyo Grande Creek, which reduces SCCC Steelhead habitat diversity and impairs habitat characteristics including presence of appropriate bottom substrate, extent of pools and riffles, appropriate channel heterogeneity, and other instream habitat features. *Id.*

The County's limited flow releases from Lopez Dam have also reduced SCCC Steelhead access to the lower Arroyo Grande Creek by reducing the breaching pattern (frequency, timing and duration) of the Arroyo Grande Creek Estuary. *See* 2024 NMFS: Role of Arroyo Grande Creek at 31. Reduced flows in Arroyo Grande Creek are insufficient to breach the sand bar at mouth of Arroyo Grande Creek into the Pacific Ocean or to create a breach at the particular times necessary for SCCC Steelhead life cycles.

June 6, 2024, ESA 60-Day Notice Letter
Page 17

In sum, because the natural movement of water and organic and inorganic debris is vital for the creation and maintenance of essential habitat features that SCCC Steelhead require, disruption of natural fluvial processes resulting from the Project causes inhospitable habitat characteristics and condition for SCCC Steelhead in Arroyo Grande Creek. The County's Project is thus harming SCCC Steelhead by limiting the flow of water from Lopez Dam downstream to Arroyo Grande Creek, resulting in take in violation of the ESA.

### iii. The County's Stocking of Predatory Fish in Lopez Lake and Failure to Screen Fish Spills to Arroyo Grande Creek Harms Steelhead.

Lopez Lake, above Lopez Dam, includes recreational development for fishing. The County has introduced non-native predators or competitors of SCCC Steelhead such as largemouth and smallmouth bass, crappie, red-ear sunfish, and catfish. *See* San Luis Obispo County Parks, Fishing, Lopez Lake Recreational Area, available at https://slocountyparks.com/fishing/ (last accessed June 4, 2024); *see also* 2013 SCCC Recovery Plan at 4-4. As part of its operation and maintenance of the Project, the County has introduced non-native, resident hatchery-reared *O. mykiss* into the watershed by periodically stocking Lopez Lake to support a non-anadromous sport fishery. *See* 2024 NMFS: Role of Arroyo Grande Creek at 37. These non-native species have periodically escaped by being carried downstream when Lopez Dam spills over. *Id.* There is no fish screen for the spillway from Lopez Dam that would otherwise prevent predatory fish from entering downstream Arroyo Grande Creek where SCCC Steelhead are known to be present. In 2023, for example, Lopez Dam spilled water to the stream below. Thereafter, a number of larger resident *O. mykiss* were observed downstream of Lopez Dam following the spill. *Id.* The non-native hatchery-reared *O. mykiss* prey on juvenile rearing SCCC Steelhead and may carry infectious diseases associated with hatchery stock. *Id.* Thus, the County's stocking of non-native hatchery-reared *O. mykiss* in the Arroyo Grande Creek watershed perpetuates harm to SCCC Steelhead by actively introducing predators of juvenile SCCC Steelhead and failing to adequately prevent those predators from escaping downstream during spills, causing a take in violation of the ESA.

### iv. The County's Operation and Maintenance of Related Infrastructure Within Arroyo Grande Creek Harms SCCC Steelhead.

The County's operation and maintenance of related infrastructure within Arroyo Grande Creek harms SCCC Steelhead by creating partial impediments to migration that effectively restrict the movement of fish, and that become full impediments during periods of low flow. *See* 2024 NMFS: Role of Arroyo Grande Creek at 38. The County identified multiple known barriers to fish passage that existed in Arroyo Grande Creek as of 2007 that the County itself prioritized for improvements. *See* 2007 IDRS at 12-13. The list includes Cecchetti Road Culvert crossing. *Id.* at 13. The Cecchetti Road culvert crossing is a velocity barrier during heightened flows and a partial fish passage barrier due to its small size and becomes a more significant barrier when vegetative debris builds up across the culvert (note removed vegetative debris at white arrows):

June 6, 2024, ESA 60-Day Notice Letter
Page 18



2024 NMFS: Role of Arroyo Grande Creek at 40.

As another example, abandoned dam and diversion footings at stream mile 11.22 from the confluence with the ocean are fish passage barriers to adult and juvenile SCCC Steelhead. *See* 2007 IDRS at 14. The County's operation and maintenance of in-stream infrastructure that creates a partial barrier to fish passage, when combined with reduced flows from the County's operation and maintenance of Lopez Dam, significantly modifies and degrades SCCC Steelhead habitat by preventing fish access and restricting sediment transport. The County's operation and maintenance of infrastructure within Arroyo Grande Creek that creates partial or full impediments to fish passage perpetuates harm to SCCC Steelhead and causes take in violation of the ESA.

**B. The Project Is Harming California Red-Legged Frog (*Rana aurora draytonii*).**

**1. Arroyo Grande Creek Supports the Threatened California Red-Legged Frog.**

Arroyo Grande Creek downstream from Lopez Dam provides habitat for California red-legged frog, which FWS listed as threatened under the ESA in 1996. 61 Fed. Reg. 25813 (May 23, 1996).[3] At the time of listing in 1996, FWS determined the California red-legged frog had been extirpated from 70 percent of its former range. 61 Fed. Reg. at 25813. California red-legged frogs have been observed in Arroyo Grande Creek immediately downstream from the Lopez Dam outlet. *See* 2004 Final Draft HCP and EA/IS at 2-1, 1-64, 1-78. An assessment of Arroyo Grande Creek in 2017 found suitable in-stream aquatic habitat present, noting that the banks of the creek support vegetation that could be used as upland refugia, and noted a California Natural Diversity Database record from 2002 of California red-legged frog in Arroyo Grande Creek. *See*

---

[3] California red-legged frog is also considered a Species of Special Concern ("SSC") by the California Department of Fish and Wildlife ("CDFW").

June 6, 2024, ESA 60-Day Notice Letter
Page 19

May 2017, Bridge Street Bridge Rehabilitation Project Biological Assessment (hereafter "2017 Bridge Street BA"), page 47. More recent aquatic surveys in 2021 have observed California red-legged frog in Arroyo Grande Lagoon. *See, e.g.*, July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3).

The primary factors negatively affecting the California red-legged frog throughout its range are habitat loss and alteration. 61 Fed. Reg. at 25824. Large reservoir construction projects have significantly altered or eliminated California red-legged frog habitat. *Id.* at 25,824-25,825. Water diversions also degrade or eliminate California red-legged frog habitat. *Id.* at 25825.

## 2. The County's Project Is Harming California Red-Legged Frog.

The County's operation and maintenance of the Project has cut off and eliminated California red-legged frog habitat above the Dam, has limited and is limiting and reducing the quantity of water flow in Arroyo Grande Creek, resulting in a dewatering and modification of instream flow in Arroyo Grande Creek and Arroyo Grande Lagoon. *See, e.g.*, 2005 FWS Comments at 8 (FWS explaining, "we do not agree that take of California red-legged frogs would not occur as a result of this activity"). The County's elimination of California red-legged frog habitat due to construction of Lopez Dam reduced the amount of available habitat for the frog in the Arroyo Grande Creek watershed. The County's modification of in-stream flows in Arroyo Grande Creek and Arroyo Grande Lagoon reduces the amount of water and thereby reduces the amount of available habitat as well as the quality of remaining habitat for California red-legged frog. *See* 61 Fed. Reg. at 25,825 (diverting water from the frog's natural habitats to reservoirs disrupts the natural hydrologic regime and "[l]oss of habitat and decreases in habitat quality will occur as a result of on-site degradation of the stream environment and/or riparian corridor, or through modification of instream flow."). Less available water within Arroyo Grande Creek and Arroyo Grande Lagoon means there is less habitat for California red-legged frog reproduction and disruption of reproduction, foraging, estivation and dispersal. 61 Fed. Reg. at 25,825.

For example, the County's modification of flows by altering the timing, duration, and volume of water releases from Lopez Dam has rendered and continues to render portions of Arroyo Grande Creek and Arroyo Grande Lagoon unsuitable for California red-legged frog reproduction. California red-legged frog estivation habitat is areas that provide cover and moisture during the dry season (mid to late summer) within 300 feet of a riparian area. 61 Fed. Reg. at 25,814. Without the necessary aquatic habitat, California red-legged frog is unable to reproduce in the area. *Id.* (estivation habitat and the ability to reach estivation habitat is essential for the survival of California red-legged frogs within a watershed). High flow releases by the County during California red-legged frog breeding period (February to April) renders habitat within Arroyo Grande Creek unsuitable for reproduction. *See* 2004 Final Draft HCP and EA/IS at 1-81. By contrast, the County's low released flows in the summer diminishes California red-legged frog reproduction by drying up pools containing larvae or causing salinity in Arroyo Grande Lagoon to reach lethal levels. *Id.* In particular, areas downstream of State Route 1 could provide California red-legged frog habitat but usually go dry. *Id.* at 1-83.

June 6, 2024, ESA 60-Day Notice Letter
Page 20

Case in point, after noting the presence of California red-legged frog tadpoles in Arroyo Grande Creek immediately upstream of the flood control structure ("flapgates") at the western end of the Arroyo Grande Creek north levee, a July 2021 aquatic survey by California State Parks noted that "[t]here were apparently no remaining lotic areas of Arroyo Grande Creek downstream of State Route 1, a reach that had been flowing four months earlier." *See* July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3). The survey observed no surface water was present downstream of 22nd Street. *Id.* A subsequent aquatic survey in October of 2021 observed that lower Meadow Creek, including the area at the confluence of Arroyo Grande Lagoon, was dry. *See* Oct. 28, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3) (noting "the contiguous lagoon pool did not extend north of Post #1, which is unusual."). These dry conditions were caused by the County failing to release efficient water from Lopez Dam. Thus, the County's operation and maintenance of the Project that modifies and reduces flows released into Arroyo Grande Creek perpetuates harm to California red-legged frog by reducing the amount and quantity of available habitat necessary for the frog's estivation and reproduction.

The County's stocking of Lopez Lake with predatory species of fish that have spilled into downstream Arroyo Grande Creek also harms the California red-legged frog because these non-native fish prey on the frogs and disrupt natural community dynamics for the species. *See* 61 Fed. Reg. at 25,825. As noted above, the County has introduced non-native predators or competitors of SCCC Steelhead such as largemouth and smallmouth bass, crappie, red-ear sunfish, and catfish, and the County stocks non-native, resident hatchery-reared *O. mykiss* in Lopez Lake. *See* 2024 NMFS: Role of Arroyo Grande Creek at 37. The County's spills from Lopez Dam without the necessary fish screen released these predatory fish downstream into Arroyo Grande Creek in 2023. The County's modification of flow releases into Arroyo Grande Creek that creates year-round flows in certain years allows predator populations to survive in areas that would normally be dry in the summer. *See* 2004 Final Draft HCP and EA/IS at 1-81, 1-82. Also, predatory bullfrogs have been observed at the base of Lopez Dam in areas that otherwise provide habitat for California red-legged frog breeding and tadpole rearing. *Id.* at 1-85. These predatory bullfrogs are abundantly present at the base of Lopez Dam due to conditions created by the dam that are conducive to the proliferation of bullfrogs. These predatory fish and bullfrogs prey on California red-legged frogs and disrupt the natural community dynamics necessary for California red-legged frog conservation, recovery and survival. 61 Fed. Reg. at 25,825; *see also* 2004 Final Draft HCP and EA/IS at 1-80 (noting that introduced predators including bullfrogs and predatory fish can be a significant threat to California red-legged frog populations), 1-86 ("Introduced predators in Arroyo Grande Creek, such as bullfrogs and predatory fish, reduce red-legged frog habitat value"). The County's stocking of predatory fish in Lopez Lake and failure to screen or otherwise prevent their dispersal into Arroyo Grande Creek and maintenance of conditions (such as the relatively warm and stagnant waters of Lopez Lake) that promotes the growth of predatory fish and bullfrog populations thus perpetuates harm to California red-legged frogs, causing take in violation of the ESA.

The County's operation and maintenance of related infrastructure within Arroyo Grande Creek (including removal or maintenance of existing barriers identified as part of the Project) harms California red-legged frog. The County's maintenance activities include debris removal

June 6, 2024, ESA 60-Day Notice Letter
Page 21

and maintenance of the Arroyo Grande Creek channel at road crossings and sediment removal. *See* 2004 Final Draft HCP and EA/IS at 1-1. The County's maintenance activities including vegetation removal, herbicide spraying, shaping of banks to control erosion, and desilting of Arroyo Grande Creek all degrade California red-legged frog habitat. 61 Fed. Reg. at 25,825. The County's instream infrastructure increases siltration in Arroyo Grande Creek and its tributaries. Siltration that occurs during the breeding season causes asphyxiation of California red-legged frog eggs and small California red-legged frog larvae. *See* 61 Fed. Reg. at 25826.

Harms from the County's operation and maintenance of the Project are significant because Arroyo Grande Creek is listed as one of the core areas for focused recovery efforts by FWS. *See* FWS, Recovery Plan for the California Red-legged Frog (*Rana aurora draytonii*) (2002), pages 55, 144. As a core area, Arroyo Grande Creek represents a viable population and the location will contribute to connectivity between habitats and populations. *Id.* This designation further highlights the importance of protecting California red-legged frog within Arroyo Grande Creek from the harm perpetuated by the County's operations and maintenance of the Project.

### C. The Project Is Harming Tidewater Goby (*Eucyclogobius newberryi*).

#### 1. Arroyo Grande Creek Supports Endangered Tidewater Goby.

Arroyo Grande Creek provides habitat for Tidewater Goby, which FWS listed as endangered under the ESA in 1994. 59 Fed. Reg. 5494 (March 7, 1994). Tidewater Gobies occur in tidal streams associated with coastal wetlands in California. *Id.* In 1994 at the time of its listing, the Tidewater Goby had disappeared from nearly 50 percent of the coastal lagoons within its historic range since 1900. 59 Fed. Reg. at 5494. The number of extirpated localities of Gobies has left remaining populations so widely separated throughout most of the species' range that recolonization is unlikely. *Id.* The primary threats to Tidewater Goby include modification and loss of habitat due to coastal development projects that result in the loss of coastal saltmarsh habitat, channelization of habitat, upstream diversions that alter downstream flows and thereby diminish the extent of marsh habitats that occurred historically at the mouths of most rivers and creeks in California, and alteration of water flows. 59 Fed. Reg. at 5495; *see also* 71 Fed. Reg. 3524, 3525 (Jan. 23, 2006) (Recovery Plan for the Tidewater Goby (Eucyclogobius newberryi)).

Tidewater Gobies have a short lifespan and seem to be an annual species, which further restricts their potential to recolonize habitats from which they have been extirpated. 59 Fed. Reg. at 5494. Tidewater Goby occurs in loose aggregations of a few to several hundred individuals on the substrate in shallow water less than 1 meter. *Id.* Peak nesting occurs April through May when male Gobies dig a vertical nesting burrow deep in clean, coarse sand. *Id.* Male Gobies remain in the burrows to guard eggs that are hung from the ceiling and walls of the burrow until hatching. *Id.* Larval Gobies are found midwater around vegetation until they become benthic. *Id.* Spawning year-round is probably unlikely because of seasonal low temperatures and disruptions of lagoons during winter storms. *Id.*

Recent surveys between 2020 and 2023 consistently documented Tidewater Goby in Arroyo Grande Lagoon. *See, e.g.*, May 1, 2020, California State Parks, Aquatic Survey Report

June 6, 2024, ESA 60-Day Notice Letter
Page 22

for Arroyo Grande, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3);
July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow,
Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); June 30, 2022,
California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and
Carpenter Creek Lagoons (Reference Permit #TE-101154-3); Dec. 19, 2023, California State
Parks, Aquatic Survey Report for Arroyo Grande, Pismo, Carpenter, and Oso Flaco Lagoons;
Pismo State Beach; Oceano Dunes State Vehicular Recreation Area (Reference Permit #TE-
101154-3). Tidewater gobies were also found in Arroyo Grande Creek during sampling in March
2005. *See* FWS, Recovery Plan for the Tidewater Goby (*Eucyclogobius newberryi*) (2005)
(hereafter "2005 Tidewater Goby Recovery Plan"), page C-21.

## 2. The County's Project Is Harming Tidewater Goby.

The County's construction, operation, and maintenance of the Project harms Tidewater
Goby in downstream Arroyo Grande Creek by modifying and eliminating coastal saltmarsh
habitat and altering downstream flows in Arroyo Grande Creek which then diminish the extent
and quality of marsh habitat occurring at the mouth of Arroyo Grande Creek. This adverse
habitat modification has caused mortality and other adverse health impacts to Tidewater Goby in
Arroyo Grande Creek and led to a decline in the population of Tidewater Goby in Arroyo Grande
Creek.

The County's operation and maintenance of the Project including Lopez Dam and limited
flow releases to Arroyo Grande Creek (and in turn reduced inflow into Arroyo Grande Lagoon)
has and continues to diminish the extent and quality of marsh habitat occurring at the mouth of
Arroyo Grande Creek. 59 Fed. Reg. at 5495. This harms Tidewater Goby because the Goby
depends on the marsh habitat for its survival and recovery. *Id.* (noting that projects that result in
the loss of coastal saltmarsh habitat are currently the major factor adversely affecting the Goby).
Due in part to the County's altered and reduced flow regime for Arroyo Grande Creek caused by
the Project, NMFS has estimated that only about 20 percent of historical estuarine habitat
remains in Arroyo Grande Creek. 2013 SCCC Recovery Plan at 4-9 (Table 4-2). FWS's 1994
listing determination specifically identified water diversion projects in San Luis Obispo County
as a development activity that threatens Tidewater Goby habitat. 59 Fed. Reg. at 5496.

On numerous occasions, the County's reduced flow releases into Arroyo Grande Creek
have caused the lower reach of the creek to go completely dry, which eliminates Tidewater Goby
habitat. For example, in the summer of 2004 the lower reach of Arroyo Grande Creek went
completely dry. *See* FWS, Comments on the February 2004 Draft of the Arroyo Grande Creek
Habitat Conservation Plan, San Luis Obispo County, California (June 2005). As noted above in
the section discussing harms to California red-legged frog, more recent aquatic surveys in 2021
documented that Arroyo Grande Creek was completely dry downstream of State Route 1 and
downstream of 22nd Street. *See* July 21, 2021, California State Parks, Aquatic Survey Report for
Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-
3); Oct. 28, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco,
Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3) (observing that lower
Meadow Creek, including the area at the confluence of Arroyo Grande Lagoon, was dry).

June 6, 2024, ESA 60-Day Notice Letter
Page 23

The County's modification to the timing and reduced volume of water released from Lopez Dam into Arroyo Grande Creek also reduces the quality of coastal marsh habitat in the watershed—habitat that is essential for Tidewater Goby survival and recovery. The County's reduced flows alter the hydrology in Arroyo Grande Creek and Arroyo Grande Lagoon, resulting in diminished habitat quality (including but not limited to low dissolved oxygen levels) for the Goby and ultimately lower Tidewater Goby abundance. The County's altered flows that reduce the amount of water in Arroyo Grande Creek upstream of Arroyo Grande Lagoon changes the distribution of downstream salinity regimes. 59 Fed. Reg. at 5495. Because Tidewater Goby has relatively narrow salinity tolerances, changes in salinity distributions due to the County's upstream water diversions, such as those that occur on Arroyo Grande Creek due to the County's Project operations, adversely affects both the size and distribution of the Goby population of Arroyo Grande Creek. *See id.* In addition to restricting the Goby's habitat by altering downstream salinities, the County's operation of Lopez Dam and reduced flows into Arroyo Grande Creek also negatively impact Tidewater Goby breeding and foraging activities within Arroyo Grande Creek and Arroyo Grande Lagoon. *See* 59 Fed. Reg. at 5496. Gobies breed primarily in sand or mud substrates and avoid areas that contain large amounts of decaying vegetation. *Id.* The County's reduced flows in Arroyo Grande Creek allow aggressive plant species to colonize the otherwise bare sand and mud substrates of coastal lagoon margins and thus degrade habitat quality for the Goby. *Id.* The County's reduced flows into Arroyo Grande Creek also harm the Tidewater Goby population by reducing the deep stream pools that Gobies use to venture upstream from Arroyo Grande Lagoon. *Id.*

California State Parks recommended in it 2021 aquatic survey report that resource managers and other stakeholders should continue to increase engagement in local water management issues for Arroyo Grande Creek, noting that low water levels seasonally threaten Tidewater Goby and its habitat in Arroyo Grande Creek and Arroyo Grande Lagoon with dewatering and fish kills. *See* July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3). California State Parks repeated this recommendation in its February of 2022 aquatic survey report. *See* Feb. 25, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3). The February 2022 survey stated that "local water management and mis-management activities are causing severe negative impacts to these State Park waters and the aquatic species that depend on them," and that "State Parks remains concerned by these ongoing impacts to surface water in Arroyo Grande Creek[.]" *Id.* Subsequently, a California State Parks September 2022 aquatic survey noted that the numbers of Tidewater Goby in Arroyo Grande Creek appear greatly diminished since the previous survey 3 months prior "even through there appears to be unusually-little competition or predation posed by other fish species this year." *See* Sept. 28, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3) (noting that "dissolved oxygen in Arroyo Grande Lagoon appeared to be alarmingly low at the time of the survey (<1 ppm about 1' below-surface)."). Again, in December of 2022, an aquatic survey found Tidewater Goby numbers in Arroyo Grande Lagoon "remarkably low, even acknowledging a lower catch is often expected here during the 'winter months.'" Jan. 10, 2023, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-

June 6, 2024, ESA 60-Day Notice Letter
Page 24

101154-3) (noting that "we were surprised that we could not find any in Arroyo Grande Lagoon where Tidewater Goby are typically the most abundant (densest) among all local watersheds.").

Thus, the County's operation and maintenance of the Project, including reduced flows to Arroyo Grande Creek and reduced inflows to Arroyo Grande Lagoon, perpetuates harm to Tidewater Goby by eliminating and adversely modifying the quality of coastal saltmarsh habitat that the Goby depends on for its survival and recovery.

### D.  The Project Is Harming Least Bell's Vireo (*Vireo bellii pusillus*).

#### 1.  Arroyo Grande Creek Supports Endangered Least Bell's Vireo.

FWS listed the least Bell's vireo ("Vireo") as endangered in 1986. 51 Fed. Reg. 16474 (May 2, 1986). Habitat for Vireo is dense, willow-dominated riparian habitats with lush understory vegetation in the immediate vicinity of water courses. *Id.* Ideal nesting habitat includes a wide riparian corridor of more than 250 meters with dense shrub growth extending vertically up to 3 meters, and an open canopy. *Id.* Most nests are built in willows. 51 Fed. Reg. at 16474. However, Vireo do not exclusively build nests in willows, and habitat structure may be a more important determinant of nesting site selection. *See* Fish and Wildlife Service, 1998 Draft Recovery Plan for the least Bell's Vireo ("1998 Least Bell's Vireo Draft Recovery Plan"), page 10. Suitable nesting habitat for Vireo occurs in the riparian vegetation along Arroyo Grande Creek. *See, e.g.*, 2014 Lopez Water Project Habitat Conservation Plan, prepared by H. T. Harvey & Associates for San Luis Obispo County. In 2009, a Vireo was documented several miles north of Arroyo Grande Creek in willows along Pecho Road in Los Osos. *Id.*

Primary threats to Vireo include riparian habitat destruction and declines in nest survival, resulting in severe population declines. 51 Fed. Reg. at 16478. The widespread losses of 60-80 percent of the original population are attributable to *inter alia* flood control and water development projects and urban development. *Id.* At the time of listing, Vireo occurred in southwestern California and northwestern Baja California, Mexico, an area representing only a fraction of its former range. 51 Fed. Reg. at 16474. At the time of listing, no population of more than five pairs was known to occur below a major water control project. *Id.* Since its listing, recovery efforts including riparian habitat restoration have resulted in increases in Vireo populations in some areas of southern California. *See* 1998 Least Bell's Vireo Draft Recovery Plan at 9. The Vireo recovery priority number is 3C, indicating it is a subspecies with a high degree of threat, has a high potential for recovery, and conflicts with development activities. *Id.* at 4.

#### 2.  The County's Project Is Harming Least Bell's Vireo.

The County's construction, operation, and maintenance of the Project and reduced flow releases from Lopez Dam into Arroyo Grande Creek harms the Vireo. The County's reduced flows diminish Arroyo Grande Creek flows downstream from Lopez Dam, depriving the creek of flows it would normally have at various times of the year. *See, e.g.*, NMFS, ESA Section 7(a)(2) Biological Opinion, Arroyo Grande Creek Waterway Management Program, NMFS Consultation Number: WCR-2014-1677 (Nov. 2017) ("2017 Waterway Management BiOp"), pages 37, 100.

June 6, 2024, ESA 60-Day Notice Letter
Page 25

The lower flows in Arroyo Grande Creek also lowers groundwater elevations underlying the creek beyond the reach of native riparian vegetation and trees. In turn, the County's operation of the Project and the declined flow has caused a decline in groundwater dependent native riparian plant species in the Arroyo Grande Creek downstream of Lopez Dam. *See* 2017 Waterway Management BiOp at 45.

The alteration and harm to native riparian vegetation harms the endangered Vireo because the Vireo depends on densely foliated stands of deciduous trees and shrubs, particularly willows, with a dense understory adjacent to slow moving watercourses. *See* 1998 Least Bell's Vireo Draft Recovery Plan at 10. The Vireo is especially discriminate about the vegetation types it nests in and forages from. *See* 1998 Least Bell's Vireo Draft Recovery Plan at 4 (noting that Vireo is dependent upon riparian habitat for breeding); 51 Fed. Reg. at 16,474 (noting that "the narrow and limited nature of the habitat of the least Bell's vireo makes the subspecies more susceptible to major population reductions than are the other subspecies."). Vireo occurs in the following riparian habitat types: cottonwood-willow woodlands/forests, oak woodlands, and mule fat scrub, and prefer early successional habitat. *Id.* at 10. Alterations to Vireo's riparian habitat can result in profound effects on its survival and population. 51 Fed. Reg. at 16,474. Invasive non-native plants including Himalayan blackberry, English ivy, fennel, and weeping willow that are better able to access the lower groundwater levels or that have lesser groundwater needs have replaced the native riparian vegetation. These invasive plants provide little suitable habitat or food for the Vireo, because the Vireo requires the structural diversity associated with native vegetation and mature riparian forests to breed. The County's operation of the Project has degraded the presence of these riparian vegetation characteristics in the lower Arroyo Grande Creek, causing increased mortality and other harm to the Vireo.

The County's maintenance and modification activities in riparian areas along Arroyo Grande Creek also harm Vireo by reducing potential nesting habitat, which in turn has led to a decline in Vireo numbers. The County's vegetation management, including removal of vegetation to conduct maintenance activities along the riparian corridor of Arroyo Grande Creek, reduces potential nesting habitat and disturbs birds, thereby preventing them from nesting. The County conducts maintenance or modification activities within riparian areas during the typical Vireo nesting season (between March and August or September) thus disrupting and/or preventing nesting of Vireo. 51 Fed. Reg. at 16474.

### E.  The Project Is Harming Southwestern Pond Turtle (*Actinemys pallida*).

#### 1.  Arroyo Grande Creek Supports Southwestern Pond Turtle.

The FWS proposed to list and is currently considering listing the southwestern pond turtle as threatened under the ESA along with a proposed ESA section 4(d) rule. 88 Fed. Reg. 68370 (Oct. 3, 2023) (proposing listing); 89 Fed. Reg. 23534 (April 4, 2024) (reopening public comment on proposed listing). The southwestern pond turtle is a species found in central and southern California and Baja California, Mexico. 89 Fed. Reg. 23534. The southwestern pond turtle inhabits: (1) ponds, lakes, streams, marshes, estuaries, and other permanent waters for breeding, feeding, overwintering, sheltering, and dispersal; (2) basking sites that allow for thermoregulation; and (3) terrestrial or upland features adjacent to the aquatic habitat for nesting,

June 6, 2024, ESA 60-Day Notice Letter
Page 26

overwintering and aestivation, and dispersal and connectivity between populations. 88 Fed. Reg.
at 68373, 68376. The turtles are long-lived, with one individual living to at least 55 years of age.
*Id.* Courtship and mating behavior has been observed from April through November. *Id.* Nesting
behavior and oviposition usually occur from May through July. *Id.* During cold weather, the
southwestern pond turtle hibernates in bottom mud. Southwestern pond turtle deposit eggs
between April and August. Pond turtles inhabit reaches of streams that contain deep pools, from
3 to 5.2 feet deep. *See* County of San Luis Obispo (Oct. 2010), Arroyo Grande Creek Channel
Waterway Management Program Final Environmental Impact Report, SCH No. 2009061030
(hereafter, "Arroyo Grande Creek WMP 2010 EIR"), page 4-59. The most important habitat
needs for the southwestern pond turtle include aquatic habitat, upland habitat, and basking sites.
88 Fed. Reg. at 68376.

The primary threats to southwestern pond turtle include *inter alia* habitat loss and
fragmentation, altered hydrology, predation, and the effects of climate change. 88 Fed. Reg. at
68378. Three key factors that are the most influential in driving the western pond turtle's current
and future condition are: (1) anthropogenic impacts, (2) predation by bullfrogs, and (3) drought.
*Id.* Specifically, "upland land conversion and draining of the extensive wetlands or channeling of
streams have resulted in the decline and extirpation of many populations and left the remaining
western pond turtle populations within these areas disjunct, scattered, and isolated from each
other with little upland habitat available for nesting." *Id.* Threats associated with altered
hydrology adversely impacting southwestern pond turtle include: wetland conversion and
draining; stream channelization and ditching; modification of flow regimes; groundwater
pumping; water diversions; damming; and water regulation for flood risk management. 88 Fed.
Reg. at 68378. These threats affect the hydrology, thermal conditions, and structure of the
western pond turtle aquatic and upland habitat. *Id.*

Southwestern pond turtle inhabits Arroyo Grande Creek. *See* Arroyo Grande Creek WMP
2010 EIR at 4-60 and D-20. One southwestern pond turtle was observed during field surveys by
SWCA biologists in 2009. *Id.* It was observed using open water habitat that had been created by
an existing beaver dam in the channel. *Id.* The southwestern pond turtles utilize in-stream and
open water habitat of Arroyo Grande Creek, the flow of which is regulated by Lopez Dam. *See*
Arroyo Grande Creek WMP 2010 EIR at 4-45. In-stream wetlands include those areas with some
emergent or aquatic vegetation, while areas devoid of vegetation are considered open water. *Id.*

## 2. The County's Project Is Harming Southwestern Pond Turtle.

The County's operation and maintenance of the Project is harming southwestern pond
turtle by creating a barrier to the turtle's migration, creating stretches of unsuitable habitat, and
degrading or eliminating habitat. The Project's harms to southwestern pond turtle have caused
mortality to the turtles and a decline in southwestern pond turtle population in the Arroyo Grande
Creek watershed due to the Project's causing turtle mortality and interfering with reproduction
and other essential lifecycle behaviors. Lopez Dam and Lopez Lake act as a barrier to turtle
migration for any turtles attempting to move from downstream Arroyo Grande Creek to habitat
above the Dam. In addition, the County's alteration of hydrology in Arroyo Grande Creek due to
limited flow of water released from the Lopez Dam and modification of flow regimes in the
creek has created stretches of unsuitable habitat and degraded or eliminated habitat for

June 6, 2024, ESA 60-Day Notice Letter
Page 27

southwestern pond turtle. The County's managed stream flows below Lopez Dam alters the
natural flow regimes, in part by holding water during winter and release water during summer,
which in turn reducing water temperatures below what the turtles require, increases
sedimentation, and reduces turtle basking habitat by increasing canopy cover. Reduced water
temperatures, increased sedimentation, and high canopy cover all negatively impact the aquatic
habitat as well as basking habitat conditions that the southwestern pond turtle requires for
survival and recovery. Adverse impacts to southwestern pond turtle from the County's Project
also include direct or indirect disturbance to the turtle's riparian habitat through the County's
maintenance activities including vegetation and sediment management activities. *See* Arroyo
Grande Creek WMP 2010 EIR at 4-94. The County is not currently violating the ESA with
respect to southwestern pond turtle. However, when the southwestern pond turtle is listed as
threatened under the ESA with a 4(d) rule, the County's operation and maintenance of the Project
in the ways described above that harm southwestern pond turtle will be a violation of the ESA.

## IV.    VIOLATIONS OF THE FEDERAL ENDANGERED SPECIES ACT

This letter provides notice to the County of Noticing Parties' intent to sue the County for
the ESA violations identified below.

The County is taking species listed under the ESA in the Arroyo Grande Creek watershed
without the necessary HCP in violation of ESA section 9 and 50 C.F.R. §§ 17.21, 17.31. The
County's operation and maintenance of the Project is causing various harms to, and taking of,
threatened SCCC Steelhead, as discussed above and summarized below. Further, the County's
operation and maintenance of the Project is causing harm to, and taking of, threatened California
red-legged frog, endangered Tidewater Goby, and endangered Least Bell's Vireo, as discussed
above and summarized below. These harms constitute taking of ESA-listed endangered and
threatened species without the necessary HCP in violation of ESA section 9 and 50 C.F.R. §§
17.21, 17.31. The unauthorized take of threatened SCCC Steelhead, threatened California red-
legged frog, endangered Tidewater Goby, and endangered Vireo are significant violations of the
ESA.

The County presently lacks a resource agency approved HCP or ITP for Lopez Dam—or
any of the County's other related in-stream structures in Arroyo Grande Creek or other activities
in operating and maintaining the Project. The County's 2004 Final Draft HCP envisioned a 20-
year duration of the HCP. *Id.* at ES-4. Yet 20 years later, the County has not finalized nor won
resource agency approval for the HCP nor acquired an ITP. Instead, the County is still in the
process of drafting an HCP, pending completion of various studies including an assessment of
the feasibility of "assisted migration" (*i.e.*, trapping SCCC Steelhead and transporting them via
truck upstream of Lopez Dam). In the meantime, the County has continued to operate and
maintain the Project without any authorization for incidental take of ESA-listed species.
Available information makes plain that the County is not close to finalizing an HCP that would
allow it to apply for an ITP from the Services to cover incidental take associated with the
operation and maintenance of Lopez Dam and its related infrastructure.

The County's 2007 IDRS is inadequate and is not a valid substitute for an approved HCP
and ITP. The County itself has recognized that the IDRS was intended to be an *interim* solution

June 6, 2024, ESA 60-Day Notice Letter
Page 28

until such time as the HCP was completed. The IDRS is an inadequate interim measure because, as detailed in section III.A.2.ii above, the IDRS provides an inadequate amount of water for the ESA-listed species at necessary times of the year. Regardless, the IDRS is not a valid substitute for compliance with the ESA because it is not mandatory or enforceable and has not been reviewed or approved by NMFS or FWS pursuant to section 10 of the ESA.

The County has not obtained the necessary ITP through preparation and completion of a final HCP that is fully compliant with ESA Section 10, including all NMFS and FWS recommendations, despite continuing to operate and maintain Lopez Dam for three decades since concerns about compliance with the ESA were raised to the County in 1994. The County's past and ongoing operation and maintenance of Lopez Dam and its related infrastructure without the necessary HCP and ITP for take of ESA-listed species violates section 9 the ESA.

As described in detail in the prior section of this letter, the County's operation and maintenance of the Project is harassing, wounding, killing, trapping, capturing, and harming SCCC Steelhead both by killing and/or injuring individuals of this species and by causing significant habitat modification or degradation that significantly impairs the fish's behavioral patterns, including spawning, rearing, migrating, feeding, and sheltering, and thus has caused substantial decline in the SCCC Steelhead population in the Arroyo Grande Creek watershed. The County is further harming and taking California red-legged frog, Tidewater Goby, and Vireo as described below. If and when the southwestern pond turtle is listed as threatened under the ESA with a 4(d) rule, the County's violations of the ESA will also include take of southwestern pond turtle.

First, the County's operation and maintenance of the Project is taking SCCC Steelhead in the following ways:

(A)     The County's construction, operation, and maintenance of the Project (specifically, Lopez Dam) completely blocks access to SCCC Steelhead habitat located above the Dam and Lopez Lake. Eliminating upstream migration of adult SCCC Steelhead to intrinsic potential steelhead spawning, rearing, and refugia habitat causes spawning failures and mortality. Adult SCCC Steelhead are harassed, harmed, and killed when they are unable to pass the Dam during conditions suitable for steelhead migration. SCCC Steelhead that are not able to access habitat beyond the Dam are harassed, harmed, or killed when they return to the ocean without successfully spawning, perish in the river downstream without spawning, or build their redds in habitat unsuitable for successful spawning below Lopez Dam. This taking activity is perpetual and ongoing. The taking activity occurs on every day that SCCC Steelhead have been an ESA-listed species because the County has operated and maintained Lopez Dam every day during this time period and will continue every day in the future until SCCC Steelhead passage past Lopez Dam is achieved.

(B)     The County's operation and maintenance of the Project including Lopez Dam and Lopez Lake completely inundated and thereby eliminated SCCC Steelhead habitat located just above the Dam. Eliminating this spawning, rearing, and refugia

June 6, 2024, ESA 60-Day Notice Letter
Page 29

habitat causes spawning failures and mortality. SCCC Steelhead are harassed, harmed, and killed when they are unable to access or use the habitat now covered by Lopez Lake. SCCC Steelhead that are not able to use this habitat are harassed, harmed, or killed when they return to the ocean without successfully spawning, perish in the river downstream due to climate conditions such as high temperatures, or build their redds in habitat unsuitable for successful spawning below Lopez Dam. This taking activity is perpetual and ongoing. The taking activity occurs on every day that SCCC Steelhead have been an ESA-listed species because the County has operated and maintained Lopez Lake every day during this time period and will continue every day in the future that Lopez Lake continues to inundate this habitat.

(C)     The County's operation and maintenance of the Project that limits the timing, duration, magnitude, quantity, and seasonality of water flow released into Arroyo Grande Creek from Lopez Dam and thereby harasses, harms, and kills SCCC Steelhead by failing to provide sufficient Creek flows to support SCCC Steelhead life cycles. The County reduces and alters flows released from Lopez Dam into downstream Arroyo Grande Creek resulting in insufficient flows in the Creek that in turn prevents or inhibits upstream migration of adult SCCC Steelhead, prevents or inhibits spawning and rearing of SCCC Steelhead, harms the success of juvenile SCCC Steelhead during in-river freshwater and estuarine water life stages thereby diminishing the likelihood of successfully returning as adults, and preventing or inhibiting juvenile and adult SCCC Steelhead from completing downstream migration and reaching the Pacific Ocean. The County's limited releases of water into Arroyo Grande Creek deplete the flows necessary for estuarine functions, cause increased water temperatures, changes in fish community structures, and reduced gravel recruitment. The County's limited flow releases to Arroyo Grande Creek disrupts the natural pattern and movement of sediment within the Creek, altering the movement of sediment and organic debris in Arroyo Grande Creek and Arroyo Grande Lagoon in a manner that harms and harasses SCCC Steelhead. The County's limited flow releases from Lopez Dam reduce SCCC Steelhead access to the lower Arroyo Grande Creek by reducing the breaching pattern of the Arroyo Grande Creek Estuary to the Pacific Ocean.

(D)     The County's operation and maintenance of the Project including stocking of predatory fish in Lopez Lake and failure to screen fish spills from Lopez Lake into Arroyo Grande Creek allows for non-native predatory fish to disburse into the Creek and kill, harass, and harm SCCC Steelhead.

(E)     The County's operation and maintenance of the Project including operation and maintenance of related infrastructure within Arroyo Grande Creek downstream from Lopez Dam harms, harasses, and kills SCCC Steelhead by maintaining partial impediments to migration that effectively restrict the movement of fish, and that become full impediments during periods of low flow.

June 6, 2024, ESA 60-Day Notice Letter
Page 30

Second, the County's operation and maintenance of the Project is taking threatened California red-legged frog by eliminating California red-legged frog habitat above Lopez Dam, reducing flows released to Arroyo Grande Creek which in turn reduces the extent and quality of California red-legged frog habitat downstream from the Dam, stocking and failing to prevent predatory fish from disbursing into Arroyo Grande Creek, and maintaining instream infrastructure that partially or fully block frog movement within the Creek. The California red-legged frog is harmed by the County's operation and maintenance of the Project because it entirely blocks the frog from accessing habitat upstream from Lopez Dam. Reducing the water within Arroyo Grande Creek and Arroyo Grande Lagoon means there is less habitat for California red-legged frog to reproduce, forage, estivate, and disperse, which harms the frog. By eliminating habitat and reducing the quality of remaining habitat, the County's operation and maintenance of the Project harms, harasses, and kills California red-legged frog. The County's stocking of Lopez Lake with predatory species of fish without the necessary screen for spills harms, harasses, and kills California red-legged frog because these non-native fish prey on the frogs and disrupt natural community dynamics for the species.

Third, the County's operation and maintenance of the Project is taking endangered Tidewater Goby by modifying and eliminating coastal saltmarsh habitat and altering downstream flows in Arroyo Grande Creek which then diminish the extent and quality of marsh habitat occurring at the mouth of Arroyo Grande Creek. The Tidewater Goby is harmed, harassed, and killed by the County's operation and maintenance of the Project because the County's flow releases entirely dewater the saltwater marsh habitat needed by the Goby for survival and recovery. The County's reduced flows also harms, harasses, and kills Tidewater Goby by lowering dissolved oxygen levels, changing downstream salinity regimes in Arroyo Grande Lagoon and the estuarine area of the watershed, allowing for aggressive plant species to colonize sand and mud substrate that the Goby rely on, and rendering the Goby's saltwater marsh environment inhospitable.

Finally, the County's operation and maintenance of the Project is taking endangered Vireo by causing significant modification and degradation to the Vireo's habitat that significantly impairs the bird's behavioral patterns including nesting, rearing, feeding, and sheltering. The Vireo is harmed by the County's operation and maintenance of the Project because the County's reduced flow releases to Arroyo Grande Creek lowers the groundwater levels downstream of the Dam beyond the reach of native riparian vegetation and the trees that Vireo need for breeding, nesting, rearing, and foraging. The lower water levels have resulted in replacement of structurally diverse native riparian habitat that the Vireo needs to survive with the invasive vegetation that provides little suitable habitat for the Vireo.

## V.    VIOLATIONS OF CALIFORNIA STATE LAW

In addition to claims alleging violations of the ESA that are identified above, the Noticing Parties will include claims alleging violations of California state law in the complaint filed in federal court on the basis of supplemental jurisdiction after the 60-day notice period has run. A federal court has discretion to exercise supplemental jurisdiction where a lawsuit consists of more than one claim, the federal court has valid jurisdiction over at least one of the claims, and the federal claim and other claims arise out of a "common nucleus of operative fact." The

June 6, 2024, ESA 60-Day Notice Letter
Page 31

Noticing Parties therefore put the County on notice regarding the following violations of California state law.

### A. Violation of the California Public Trust Doctrine.

The Public Trust Doctrine establishes a public property right in certain natural resources. *Ill. Cent. R.R. Co. v. Ill.* (1892) 146 U.S. 387, 452 ("It is a title held in trust for the people of the State, that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein, freed from the obstruction or interference of private parties."). California's navigable waterways are "held by it in trust for the people of the state." *People v. Monterey Fish Productions Co.* (1925) 195 Cal. 548, 563. In addition, the State of California has a public trust "duty to preserve and protect the public's interest in common natural resources" that "encompasses the protection of undomesticated birds and wildlife." *Center for Biological Diversity v. FPL* (2008) 166 Cal. App. 4th 1349, 1363 (*FPL Group*) (citations omitted).

The California Supreme Court has recognized two distinct sources for the California public trust doctrine: (1) the common law and (2) "a public trust duty derived from statute, specifically Fish and Game Code section 711.7, pertaining to fish and wildlife." *Environmental Protection & Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 515 [80 Cal.Rptr.3d 28, 187 P.3d 888] ("*EPIC*"). The statutory public trust duty to protect fish and wildlife is "intertwined" with the common law public trust doctrine. *FPL Group*, *supra*, 166 Cal.App.4th at 1363-1364 (citations omitted). The statutory basis includes California Fish and Game Code section 711.7(a), which states: "The fish and wildlife resources are held in trust for the people of the state by and through the department [of Fish and Game]." Further, California Fish and Game Code section 1600 states:

> The Legislature finds and declares that the protection and conservation of the fish and wildlife resources of this state are of utmost public interest. Fish and wildlife are the property of the people and provide a major contribution to the economy of the state, as well as providing a significant part of the people's food supply; therefore their conservation is a proper responsibility of the state.

Section 1801 states:

> It is hereby declared to be the policy of the state to encourage the preservation, conservation, and maintenance of wildlife resources under the jurisdiction and influence of the state. This policy shall include the following objectives: . . . (b) To provide for the beneficial use and enjoyment of wildlife by all citizens of the state[,] (c) To perpetuate all species of wildlife for their intrinsic and ecological values, as well as for their direct benefits to all persons . . .

California Fish and Game Code sections 1802, 2000, 2052, 3503.5, 3511, 3513, 3800, and 12000 provide additional statutory basis for the public trust doctrine.

Courts have held that any water right priorities must yield to the unreasonable use or violation of public trust values and subversion of a water right priority is justified if enforcing

June 6, 2024, ESA 60-Day Notice Letter
Page 32

that priority will lead to the unreasonable use of water or result in harms to values protected by the public trust. *El Dorado Irrigation District v. State Water Resources Control Bd.* (2006) 142 Cal.App.4th 937, 966. Citizens may enforce a state agency's affirmative duty to comply with the public trust doctrine in court. *Audubon*, *supra*, 33 Cal.3d 419, 431 n.11 (citations omitted); *see also FPL Group*, supra, 166 Cal.App.4th 1349, 1366.

The County is a subdivision of the state. As the owner and operator of the Project (including Lopez Dam), the County has a clear mandatory duty to assess the impacts on public trust resources that may result from its actions, including actions that may adversely impact the public trust before it takes those actions. *FPL Group*, *supra*, 166 Cal. App. 4th at 1349, 1370.

In 1994, the County's Water District informed the California State Board that it did not believe it owed any responsibility to operate Lopez Dam and the related infrastructure for the benefit of fish or wildlife. In 1994, the County took the position that it owed no obligation to release water for the benefit of SCCC Steelhead. In fact, the County held the position that allowing water released from Lopez Dam to reach the ocean would be "waste." *See* June 15, 1994, County Response to Citizen's Complaint, Unit of the Division of Water Rights. Since then, due largely to the discovery of two dead Steelhead in Arroyo Grande Creek's upper reaches, the County has been releasing water from the Dam for SCCC Steelhead year-round at low volumes based on its voluntary 2007 IDRS. Yet as detailed in section III.A.2.ii above, the 2007 IDRS flow schedule fails to release sufficient water from Lopez Dam at crucial times of the year. The 2007 IDRS is not ecologically defensible because the timing, duration, magnitude, quantity, and seasonality of flow releases is insufficient to support the life cycle needs of SCCC Steelhead to allow for the species' survival and recovery.

The County has a public trust duty to take public trust properties (including fish, wildlife, and water quality) into account in the planning and allocation of water and to avoid or minimize any harm to these properties, interests, or associated uses whenever feasible. The state's fishery resources are public trust assets. By storing water in Lopez Lake behind Lopez Dam and preventing sufficient flows in Arroyo Grande Creek such that for significant periods of the year too little or no water flows downstream from the Dam to the Pacific Ocean, the County is violating its public trust duties to conserve fish and wildlife including the public trust fishery downstream from Lopez Dam. As just one example, as described in detail above, the County's operation of Lopez Dam in a manner that prevents sufficient flows of water to Arroyo Grande Creek at crucial times of the year impedes the ability of juvenile Steelhead to migrate downstream to the Ocean and adult Steelhead to migrate upstream to their spawning grounds. The County is thus violating its duty to protect the public trust fishery resources and ecosystem of Arroyo Grande Creek.

### B. Violation of the California Constitution Article X, Section 2.

The County has violated its clear and mandatory duty to not waste or unreasonably use waters of Arroyo Grande Creek and to not utilize an unreasonable method of use or method of diversion of Arroyo Grande Creek in violation of California's Constitution. Article X, Section 2 of the California State Constitution states:

June 6, 2024, ESA 60-Day Notice Letter
Page 33

> It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water.

Cal. Const., Art. X, § 2.

Article X, Section 2 "dictates the basic principles defining water rights: that no one can have a protectible interest in the unreasonable use of water, and that holders of water rights must use water reasonably and beneficially." *City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1242. "'Beneficial use' and 'reasonable use' are two separate requirements, both of which must be met." *Santa Barbara Channelkeeper v. City of San Buenaventura* (2018) 19 Cal.App.5th 1176, 1185.

> What constitutes reasonable use is case-specific. . . The inquiry is fact-specific, and the answer may change over time. What may be a reasonable beneficial use, where water is present in excess of all needs, would not be a reasonable beneficial use in an area of great scarcity and great need.

*Id.* (internal quotation omitted). "Private parties . . . may seek court aid in the first instance to prevent unreasonable water use or unreasonable method of diversion." *Env'l Defense Fund v. E. Bay Mun. Utility Dist.* (1980) 26 Cal.3d 183, 200.

Through its unreasonable method of use, diversion, and storage of the waters of Arroyo Grande Creek in a manner that is causing significant harm to the Arroyo Grande Creek environment, the County is violating Article X, Section 2 of the California Constitution. The County stores more water behind Lopez Dam, diverting it from Arroyo Grande Creek, than is reasonably required for any beneficial use served by the County's use of stored and diverted water for its various purposes considering the harm to the Arroyo Grande Creek environment. The County also fails to manage its use of Arroyo Grande Creek water in a manner that avoids unreasonable harm to the Arroyo Grande Creek environment.

### C. Violation of California Fish and Game Code Sections 5901 and 5948.

The County has violated its clear and mandatory duty under California Fish and Game Code sections 5901 and 5948. Section 5901 of the Fish and Game Code states: "it is unlawful to construct or maintain in any stream [in certain districts, including District 3 1/2] any device or contrivance that prevents, impedes, or tends to prevent or impede, the passage of fish up and down stream." Arroyo Grande Creek is located within Fish and Game District 3 1/2. Fish & G.

June 6, 2024, ESA 60-Day Notice Letter
Page 34

Code, § 11009. Section 5948 of the Fish and Game Code states "[n]o person shall cause or
having caused, permit to exist any . . . artificial barrier, except a dam for the storage or diversion
of water . . . *permitted by law* . . . in any stream in this State, which will prevent the passing of
fish up and down stream or which is deleterious to fish as determined by the commission, subject
to review by the courts." (Emphasis added).

The County's Project includes Lopez Dam (which presents a complete barrier to fish
passage) as well as instream infrastructure and road crossings that prevent, impede, and/or tend
to prevent or impede, the passing of juvenile SCCC Steelhead downstream and adult SCCC
Steelhead upstream. *See* 2024 NMFS: Role of Arroyo Grande Creek. As detailed above in
section III.A.2.iv, the instream infrastructure creates partial impediments to SCCC Steelhead
migration that effectively restrict the movement of fish, and that become full impediments during
periods of low flow. The County has violated California Fish and Game Code section 5901 by
constructing, owning, and maintaining the Project because Lopez Dam and the instream
infrastructure prevents and impedes the passage of fish up and down stream.

The County is violating California Fish and Game Code section 5948 by maintaining the
Project (including Lopez Dam and instream infrastructure) in a manner not permitted by law
(*i.e.*, in violation of section 9 of the ESA and other California state laws identified herein), thus
preventing the passage of fish including SCCC Steelhead upstream and downstream from the
Dam. As detailed in section III.A.2.ii above, the County's operation of Lopez Dam and other
related in-stream structures has resulted in flows of inadequate duration and quantity for
successful upstream SCCC Steelhead migration and interfered with upstream migration by
blocking SCCC Steelhead from passage upstream. The County's continued operation and
maintenance of the Project in violation of the California Fish and Game Code threatens to cause
the extirpation of SCCC Steelhead from Arroyo Grande Creek and prevent recovery of SCCC
Steelhead throughout its range.

## D.  Violation of the California Fish and Game Code Section 5937.

Section 5937 of the Fish and Game Code states:

The owner of any dam shall allow sufficient water at all times to pass through a
fishway, or in the absence of a fishway, allow sufficient water to pass over, around
or through the dam, to keep in good condition any fish that may be planted or
exist below the dam.

Fish & G. Code § 5937.

The "good condition" requirement includes, *inter alia*, (1) health of the individuals,
meaning fish are healthy, free of disease, parasites, etc., and have reasonable growth rates with
adequate habitat; (2) diversity and abundance of the aquatic populations, diversity of age class,
sufficient habitat to support all life stages and self-sustaining populations; and (3) health of the
community, including its overall health, co-evolved species, and health of the aquatic ecosystem
at several trophic levels. *Putah Creek v. Solano Irrigation 7 CSPA-294 District*, Sacramento
Superior Court No. CV515766, April 8, 1996; *Cal Trout I, supra*, 207 Cal.App.3d 585; *Cal Trout*

June 6, 2024, ESA 60-Day Notice Letter
Page 35

*II*, *supra*, 218 Cal.App.3d 187; State Board Order WR 95-17, Lagunitas Creek, Oct. 1995; State Board Order 95-4 at 18-22, Bear Cree, 1995. "Compulsory compliance with a rule requiring the release of sufficient water to keep fish alive necessarily limits the water available for appropriation for other uses. Where that affects a reduction in the amount that otherwise might be appropriated, [section 5937] operates as a legislative choice among competing uses of water." *Cal. Trout, Inc. v. State Water Resources Control Bd. et al.* (1989) 207 Cal.App.3d 585, 601.

The County's operation and maintenance of the Project violates California Fish and Game Code section 5937 because the County fails to release sufficient water at all times from Lopez Dam downstream to Arroyo Grande Creek, and thereby fails to keep in good condition fish (including but not limited to any juvenile and adult SCCC Steelhead and juvenile and adult tidewater goby) that exist or are planted below Lopez Dam. As detailed in section III.A.2.ii above, the County's release of flows are of insufficient timing, magnitude, duration, and seasonality to support SCCC Steelhead life cycles and thus are inadequate to ensure SCCC Steelhead conservation, survival, and recovery.

### E.  Failure to Comply with Water Rights Permit.

On information and belief, the County is not operating Lopez Dam in compliance with the terms of its existing water rights permit. In 1990, the California State Board determined that the County's storage permit, Permit No. 12814 on Application No. 18375, did not authorize the County's practice of direct diversions from Arroyo Grande Creek, but rather only authorized diversion to storage. The distinction between storage and diversion is dependent on the time of diversion from the source water and the time of that water's later use. Because the County is using water stored behind Lopez Dam within the timeframe to constitute direct diversion (as opposed to storage), the County is not operating in compliance with the terms of its existing water rights permit. In addition, on information and belief, the County has not complied with all mitigation requirements written into the terms of the Permit No. 12814. Further, Permit 12814 only authorizes 50,000 acre feet of water from October 1 through July 1. To the extent the County is contemplating an increase in storage volume beyond 50,000 acre feet, the County would need a new water right.

The State Water Board can reconsider previous water allocations at any time under its continuous authority under Water Code Sections 100 and 275, and its public trust property interest in both fish and water. *Cal. Trout, Inc. v. State Water Resources Control Bd. et al.* (1989) 207 Cal.App.3d 585, 601. Any future authorization of the County's license to appropriate water, including direct diversion of water, must include a water availability analysis to show that water is available for diversion without causing harm to senior water rights or public trust resources including fish. Any future authorizations of the County's license must also be conditioned by the State Water Board to mandate that the County allow sufficient flow of water to pass downstream of Lopez Dam to keep the fish alive and in good condition, consistent with California Fish and Game Code section 5937 and the public trust.

June 6, 2024, ESA 60-Day Notice Letter
Page 36

## VI.    INTERESTS OF NOTICING PARTIES

The Noticing Parties' members use and enjoy the waters, species, and other natural resources impacted by the Project for various recreational, educational, aesthetic, scientific, and spiritual purposes, including but not limited to wildlife-watching, hiking, walking, swimming, fishing, kayaking, and enjoying fish, birds, and other wildlife. These resources include, but are not limited to, Arroyo Grande Creek, Los Berros Creek, Lopez Canyon Creek, Whittenberg Creek, Phoenix Canyon Creek, the Pacific Ocean, Santa Lucia Wilderness Area, and the valuable riparian, wetland, shore, forest, and other areas within and adjacent to those waters and lands, including those species that occupy, use, migrate through, reside, breed, and/or forage in and/or around these waters, lands and/or natural resources. This also includes, but is not limited to, all waters and natural resources proximate thereto (such as adjacent or nearby wetlands, forest, hiking trails, beaches, preserves, parks, and the like).

The Noticing Parties' members use, enjoy, look for, and appreciate the various species of plants and wildlife that occupy, use, migrate through, reside, breed, and/or forage in and around these waters and natural resources. This includes but is not limited to SCCC Steelhead, California red-legged frog, Tidewater Goby, Vireo, and southwestern pond turtle. This also includes other wildlife that use and or inhabit the areas affected by the County's Project. The Noticing Parties' members' use and enjoyment of these waters, lands, species, and other natural resources is injured by, and is at increased risk and threat of injury by, the violations of the ESA and California State laws set forth herein.

## VII.    CONCLUSION

For the above-stated reasons, the County has violated and remains in ongoing violation of the ESA. By this letter, pursuant to ESA section 11(g), 16 U.S.C. § 1540(g), the Noticing Parties hereby put you on notice that after the expiration of sixty (60) days from the date of this notice letter, they intend to file an enforcement action in federal court against the County for violations of the ESA and the California state laws described above.

The Noticing Parties intend to seek declaratory and injunctive relief preventing further ESA violations pursuant to ESA section 11(g)(1), 16 U.S.C. § 1540(g)(1), and such other relief as is permitted by law. The Noticing Parties also intend to seek injunctive relief (Code Civ. Proc., §§ 526, 527), declaratory relief (Code Civ. Proc. § 1060), and other such relief permitted by state law.

To remedy the violations identified herein, the Noticing Parties seek to bring the County's operation and maintenance of Lopez Dam and related infrastructure back into the regulatory framework through a court-ordered schedule with date-certain deadlines to complete the HCP and ITS process to avoid further unlawful take in violation of Section 9 of the ESA. Any such HCP must direct the County to store less water in Lopez Lake and to ensure release of sufficient flows of water at specific times of the year to support the complex life cycle needs of SCCC Steelhead (i.e., in terms of timing, magnitude, duration, and seasonality) to ensure SCCC Steelhead conservation, survival, and recovery. The HCP must include provisions for securing volitional fish passage past Lopez Dam. Moreover, the HCP must include commitments for

June 6, 2024, ESA 60-Day Notice Letter
Page 37

habitat enhancement both upstream and downstream from Lopez Dam to benefit ESA listed
species, including Steelhead, California red-legged frog, Tidewater Goby, and Vireo.
Downstream habitat enhancement should include removing or modifying structures in the
Arroyo Grande Creek that serve as barriers to SCCC Steelhead migration, augmenting spawning
gravel, minimizing sediment inputs to streams, restoring functional riparian vegetation, and
adding instream woody debris. The HCP must also include actions to benefit other aquatic
species in the Arroyo Grande Creek that are adversely impacted by the County's operations, such
as California red-legged frog, Tidewater Goby, Vireo, and southwestern pond turtle. For
example, this may include ensuring gradual ramping rates for flows in Arroyo Grande Creek that
protect California red-legged frog eggs and juveniles from scour and stranding mortality.

       In addition to declaratory and injunctive relief, counsel for the Noticing Parties intend to
seek compensation for costs and legal fees as authorized by the ESA. 16 U.S.C. § 1540(g)(4).
Counsel for the Noticing Parties will also seek attorneys' fees for the California state law claims
identified herein pursuant to law, including California Code of Civil Procedure section 1021.5 or
as otherwise provided.

       The ESA's 60-day notice requirement is intended to provide the County with an
opportunity to correct the actions that are in violation of the ESA. This notice letter also
identifies the Noticing Parties' grievances under California state law, proposes specific remedies,
and requests a response within a reasonable time. *See Graham v. DaimlerChrysler Corp.* (2004)
34 Cal.4th 553, 577 (for catalyst theory recovery of attorneys' fees and costs, "Lengthy
prelitigation negotiations are not required, nor is it necessary that the settlement demand be made
by counsel, but a plaintiff must at least notify the defendant of its grievances and proposed
remedies and give the defendant the opportunity to meet its demands within a reasonable time.").
The Noticing Parties are interested in discussing effective remedies for the violations identified
herein. If you wish to pursue such discussions in the absence of further litigation, the Noticing
Parties suggest that you initiate those discussions promptly and in the very least within the next
twenty (20) days so that the discussions may be completed before the end of the 60-day ESA
notice period.

                                  Sincerely,

                                  Christopher A. Sproul

                                  Christopher Sproul
                                  Environmental Advocates
                                  Counsel for Noticing Parties

*COPIES OF NOTICE LETTER SENT VIA EMAIL OR REGULAR MAIL TO:*

| | |
|---|---|
| Jennifer Quan, Regional Administrator<br>West Coast Region<br>NOAA Fisheries West Coast Regional Office<br>1201 Northeast Lloyd Blvd.<br>Portland, OR 97232<br>Email: Jennifer.quan@noaa.gov | Merrick Garland, U.S. Attorney General<br>Department of Justice<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530<br>*Sent via regular mail* |

June 6, 2024, ESA 60-Day Notice Letter
Page 38

| | |
|---|---|
| Paul Souza, Regional Director<br>Region 8, Pacific Southwest<br>U.S. Fish and Wildlife Service<br>2800 Cottage Way<br>Sacramento, CA 95825<br>Email: Paul_Souza@fws.gov | Charlton Bonham, Director<br>California Department of Fish and Wildlife<br>1416 Ninth Street, 13th Floor<br>Sacramento, CA 95814<br>Email: Director@wildlife.ca.gov |