Christopher Sproul (Cal. Bar No. 126398)
Brian Orion (Cal. Bar. No. 239460)
Marla Fox (Cal. Bar. No. 349813)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: borion@enviroadvocates.com
Email: mfox@enviroadvocates.com

**Attorneys for Plaintiffs**

**Additional Counsel Listed on Next Page**

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>Defendant. | Case No: 2:24-cv-06854<br><br>FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>(Endangered Species Act, 16 U.S.C. §§ 1531, *et seq*; California Fish and Game Code §§ 5901, 5937; California Public Trust Doctrine; California Constitution, Article X; California Code of Civil Procedure § 1085) |

*Additional Counsel for Plaintiffs*

Jesse Colorado Swanhuyser (Cal. Bar No. 282186)
Sycamore Law Inc.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (805) 689-1469
Email: jesse@sycamore.law

Drevet Hunt (Cal. Bar No. 240487)
Lauren Chase Marshall (Cal. Bar No. 324162)
Cody Phillips (Cal. Bar No. 353840)
California Coastkeeper Alliance
1100 11th Street, 3rd Floor
Sacramento, California 95814
Tel: (415) 606-0864
Email: dhunt@cacoastkeeper.org
Email: lauren@cacoastkeeper.org
Email: cody@cacoastkeeper.org

## INTRODUCTION

1.    In this action, Plaintiffs SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION (collectively, "Plaintiffs") seek to address the jeopardy to the survival and recovery of several species listed as endangered or threatened under the federal Endangered Species Act ("ESA") in the Arroyo Grande Creek watershed in San Luis Obispo County, California that the Defendant County of San Luis Obispo ("Defendant" or "County") is posing due to its operation and maintenance of various County infrastructure. This infrastructure includes Lopez Dam, Lopez Lake, a three-mile buried steel transmission line that conveys water to Lopez Terminal Reservoir, the Lopez Water Treatment Plant, the infrastructure associated with the County's Arroyo Grande Creek flood control project known as its Waterway Management Program and various additional in-stream infrastructure downstream from Lopez Dam (collectively, the "Arroyo Grande Project"). Though on notice from various federal and state agencies, concerned citizen groups, and even its own consultants for decades that the Arroyo Grande Project is threatening the recovery and survival of several endangered or threatened species, the County has continued to fail to take urgently needed actions to curb the Arroyo Grande Project's adverse impacts on the species that have been well described to the County by these agencies and consultants.

2.    For decades, the County's operation and maintenance of the Arroyo Grande Project  has caused significant harm to the threatened South-Central California Coast ("SCCC") Distinct Population Segment ("DPS") of Steelhead trout (*Oncorhynchus mykiss*) ("Steelhead" or "SCCC Steelhead"), threatened California red-legged frog (*Rana aurora draytonii*) ("CRLF"), endangered Tidewater Goby (*Eucyclogobius newberryi*), and endangered least Bell's vireo (*Vireo bellii pusillus*) (together, the "Listed Species"). The County's operation and maintenance of the Arroyo Grande Project also harms southwestern pond turtle (*Actinemys pallida*), which is proposed for listing under the ESA as threatened (collectively, with the Listed Species, the "Imperiled Species"). The

County's operation and maintenance of the Arroyo Grande Project harms the Imperiled Species in myriad ways. Most crucially, Lopez Dam is a complete barrier blocking SCCC Steelhead migration to the majority of high-quality spawning, rearing, and refugia habitat above Lopez Lake. Moreover, the County releases insufficient flows from Lopez Dam to the mainstem Arroyo Grande Creek resulting in severely degraded spawning, rearing, and migration habitat downstream of the dam—the limited remaining habitat for Steelhead in the Arroyo Grande Creek watershed. The County's operation and maintenance of the Arroyo Grande Project also harms CRLF, Tidewater Goby, least Bell's vireo, and southwestern pond turtle, as well as other wildlife and riparian vegetation that individually and collectively form an important part of the Arroyo Grande Creek ecosystem.

3.      Despite harming the Imperiled Species and the Arroyo Grande Creek ecosystem, the County has continued to operate and maintain the Lopez Dam, Lopez Lake, a three-mile buried steel transmission line that conveys water to Lopez Terminal Reservoir, the Lopez Water Treatment Plant, and various additional in-stream infrastructure downstream from Lopez Dam ("Lopez Project") for decades without the necessary ESA habitat conservation plan ("HCP") and incidental take permit ("ITP") as required by the ESA. Plaintiffs seek redress for the County's continuing operation and maintenance of the Lopez Project in a manner that violates the ESA by causing the unauthorized "take" of Steelhead.

4.      Plaintiffs challenge the County's ongoing implementation and maintenance of the flood control channel and levee project in Arroyo Grande Creek and Los Berros Creek (known as the "Waterway Management Program") as harming SCCC Steelhead in ways that are not consistent with the ITP or not covered by the ITP that NMFS issued for the Waterway Management Program, and thus in violation of the ESA.

5.      Plaintiffs also challenge the County's continuing operation and maintenance of the Lopez Project as violating California Fish and Game Code ("CFGC") sections 5937 and 5901, the California Public Trust Doctrine, and California Constitution Article

X, Section 2. The County's failure to release sufficient water from Lopez Dam to maintain in good condition the fisheries in lower Arroyo Grande Creek constitutes a violation of CFGC section 5937, which requires the owner of any dam to allow sufficient water to pass over, around or through the dam, to keep in good condition all fish that reside below the dam. The County's maintenance of Lopez Dam and other instream infrastructure has further violated CFGC section 5901, which prohibits the County from maintaining Lopez Dam and other instream infrastructure in a manner that prohibits Steelhead migration upstream and downstream in Arroyo Grande Creek. The County is violating the California Public Trust Doctrine by failing to analyze and duly consider the impacts of the Lopez Project on Arroyo Grande Creek's public trust resources (which include the Imperiled Species and the other ecosystem values of the Creek) and to take the actions necessary to avoid harm to these public trust resources that the Lopez Project causes. The County is violating California Constitution Article X, Section 2 by engaging in an unreasonable method of use, diversion, and storage of the waters of Arroyo Grande Creek in a manner that is causing significant harm to the Arroyo Grande Creek environment, including to the Imperiled Species.

6.    Because of the County's ongoing failures and the resulting harm that has occurred and will continue to occur to the Imperiled Species, the County must take action to protect these species from extinction. This includes (a), providing volitional fish passage past Lopez Dam to allow migrating Steelhead to access high-quality spawning and rearing habitat that exist upstream of the Dam, (b), releasing ecologically meaningful flows from Lopez Dam—flows that would give the Imperiled Species in Arroyo Grande Creek a chance to survive and recover, (c), implementing various ecosystem restoration actions to offset the Arroyo Grande Project's ongoing harms to the Arroyo Grande Creek ecosystem generally and to the Imperiled Species in particular.

## JURISDICTION

7.    This Court has jurisdiction over the ESA claim set forth in this Complaint pursuant to 28 U.S.C. § 1331 (civil action arising under the laws of the United States),

First Amended Complaint                3                CASE NO. 2:24-cv-06854_____

specifically 16 U.S.C. § 1540(g)(1), which authorizes citizens to bring suit to enjoin any person or government agency or instrumentality that is in violation of the ESA or any regulation issued pursuant to the ESA. 16 U.S.C. § 1540(g) further grants jurisdiction to this Court over claims brought pursuant to the ESA's citizen suit provisions. This Court has jurisdiction over the Plaintiffs' claims arising under CFGC sections 5937 and 5901, the California Public Trust Doctrine, and California Constitution Article X, Section 2 pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) because these California state law claims derive from the same common nucleus of operative fact as the Plaintiffs' federal ESA claim and thus form part of the same case or controversy under Article III of the United States Constitution. This Court further has jurisdiction pursuant to 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C § 2202 (injunctive relief).

8.    Further, this Court has subject matter jurisdiction over the claim for the County's ESA violations pursuant to 16 U.S.C. § 1540(g)(1), which authorizes citizens to bring suit to enjoin any person that is in violation of the ESA after providing the prerequisite notice of intent to file suit. Pursuant to 16 U.S.C. § 1540(g)(2), Plaintiffs provided notice of intent to file suit under the ESA on June 6, 2024, and supplemental notice of intent to file suit on October 10, 2024, to the Secretary of Commerce, the Secretary of the Interior, and the County. More than sixty (60) days have passed since Plaintiffs served these notices, and neither the Secretary of Commerce nor the Secretary of the Interior has initiated any enforcement action against the County and its ESA violations alleged herein continue to occur.

9.    Further, this Court has subject matter jurisdiction over Plaintiffs' claims arising under CFGC sections 5937 and 5901, the California Public Trust Doctrine, and California Constitution Article X, Section 2 pursuant to California Code of Civil Procedure § 1085 which authorizes mandamus actions for failure to perform mandatory duties. *People for Ethical Operation of Prosecutors etc. v. Spitzer*, 53 Cal. App. 5th 391, 407 (2020) (quoting *Common Cause v. Bd. of Supervisors,* 49 Cal.3d 432, 442 (1989)). Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction to hear claims brought

pursuant to California Code of Civil Procedure § 1085.

10.    This Court has personal jurisdiction over the County as a general law county that has offices in the County of San Luis Obispo, California.

11.    Plaintiffs and their members are aggrieved by the harms that the County is causing to the Imperiled Species and their habitat, and the County's unauthorized take of Steelhead. Plaintiffs' members visit Arroyo Grande Creek for wildlife viewing, scientific observation, educational study, aesthetic enjoyment, spiritual contemplation, and recreation, including swimming, rafting, kayaking, and fishing. The County's unauthorized take of Steelhead, harm to the Imperiled Species, and other ecological damage has caused, and will in the future continue to cause, an impairment of the state of the Arroyo Grande Creek ecosystem and the fisheries therein, and as a result, Plaintiffs' members' use of the area is impaired and diminished. As a result, the Plaintiffs' members' enjoyment of the Imperiled Species and the associated Arroyo Grande Creek ecosystem has been and is being impaired and diminished. A favorable decision from this Court would redress Plaintiffs' members' injuries by declaring that the County's operation and maintenance of the Arroyo Grande Project causes take of threatened Steelhead in violation of the ESA and ecological harm in violation of various California state laws, and by ordering the County to abate the harms to Steelhead and the Arroyo Grande Creek ecosystem.

12.    An actual controversy presently exists between Plaintiffs and the County, as the County continues to fail to comply with ESA § 9 by taking Steelhead and further fails to comply with various California state laws as described herein. Therefore, Plaintiffs are entitled to relief as set forth below.

## VENUE

13.    Venue in the United States District Court for the Central District of California is proper under 28 U.S.C. § 1391(b) and (e) because the events or omissions giving rise to the claim occurred in this District. Specifically, the County's ongoing operation and maintenance of the Arroyo Grande Project in San Luis Obispo County is in

violation of the ESA and various California state laws as described herein. In addition, the County's offices are located in San Luis Obispo County and some of the Plaintiffs have offices located within the Central District of California.

THE PARTIES

**A. Plaintiffs**

14.    Plaintiff San Luis Obispo Coastkeeper is a project of Environment in the Public Interest (collectively, "Coastkeeper"), a corporation organized under the laws of California that is a public trust resource organization. Coastkeeper's main office is located at 1013 Monterey Street, Suite 202 in San Luis Obispo, California. Coastkeeper's members and staff live and/or recreate in and around the waters in San Luis Obispo County, including the Arroyo Grande Creek watershed. Coastkeeper is the only environmental watchdog dedicated solely to enforcement of water quality, watershed protection, and coastal planning regulations in San Luis Obispo and northern Santa Barbara Counties. To further its mission, Coastkeeper actively seeks federal and state implementation of environmental laws.

15.    Plaintiff Los Padres ForestWatch ("ForestWatch") is an independent, California non-profit 501(c)(3) public interest organization working to protect wildlife, wilderness, and watersheds throughout the Los Padres National Forest along California's Central Coast. ForestWatch's members and staff recreate in and around and otherwise utilize the waters in San Luis Obispo, including the Arroyo Grande Creek watershed for various study and advocacy purposes. One of ForestWatch's core programs is to restore historic Steelhead populations in forest watersheds that are currently blocked by dams or other obstructions. To that end, since 2007, ForestWatch has worked to restore stream flows in various river systems in the region so that fish, including Steelhead, may return to their native spawning and rearing grounds that often constitute headwaters in the Los Padres National Forest. ForestWatch has also provided support to other projects that seek to remediate or remove other impediments to Steelhead migration, with the overall goal of enhancing watershed health for the benefit of wildlife and surrounding communities.

16.     Plaintiff California Coastkeeper Alliance is an environmental group organized as a nonprofit corporation in accordance with the laws of the State of California. Using law, policy, and science, California Coastkeeper Alliance advances statewide policies and programs for healthy and clean waters. California Coastkeeper Alliance works with local Waterkeepers to develop, implement, and defend policies that meet the needs of California's distinct communities and ecosystems. California Coastkeeper Alliance also actively seeks federal and state agency implementation of laws to protect imperiled species and, where necessary, initiates enforcement actions on behalf of itself and its members. California Coastkeeper Alliance's members and staff use and enjoy the Arroyo Grande Creek watershed for recreation and enjoyment of the natural environment, and for study and advocacy purposes.

17.     Plaintiff Ecological Rights Foundation is a California nonprofit public benefit corporation with an office in Blocksburg, California, and members throughout California. The Ecological Rights Foundation is dedicated to furthering the rights to a clean, healthy, and diverse environment. The Ecological Rights Foundation represents citizens who are striving to, among other things, secure the multitude of public and private benefits that follow from protecting and ensuring abundant and diverse wildlife populations; clean soil and pure water; healthy recreational opportunities; economic prosperity from commercial sport and subsistence fishing; and other recreational, spiritual, and commercial activities that depend on clean soil and pure water. Ecological Rights Foundation's members value and seek to use Steelhead and other fish (including Steelhead that have or would use Arroyo Grande Creek for spawning, rearing, and refuge) for fishing, wildlife observation and enjoyment, spiritual contemplation, and scientific study and understanding.

18.     Plaintiffs and their staff and members have deep and long-standing interests in the preservation and protection of the Imperiled Species in the Arroyo Grande Creek watershed. These interests are directly harmed by Defendant's actions and inactions challenged herein. Plaintiffs' staff and members regularly use and enjoy Arroyo Grande

Creek and its tributaries, and the area of the Pacific Ocean that Arroyo Grande Creek empties into, including the areas affected by the Arroyo Grande Project, to fish for, observe, photograph, study, and enjoy the Imperiled Species and to engage in other personal, recreational, and professional activities. Plaintiffs and their staff and members derive recreational, scientific, aesthetic, spiritual, and economic benefits from these pursuits and the existence in the wild of thriving populations of the Imperiled Species, including native SCCC Steelhead. Plaintiffs and their staff and members will continue to use the Arroyo Grande Creek and its tributaries and the Pacific Ocean in 2024 and beyond for these purposes, and their enjoyment and commercial success will continue to be harmed if the populations of Imperiled Species remain at low numbers due to impacts from the County's Arroyo Grande Project.

19.    Plaintiffs are advocates for the Imperiled Species and have long-standing concerns about the threat to these species from the County's operation and maintenance of the Arroyo Grande Project. Plaintiffs' interests in protecting and enjoying the Imperiled Species in the Arroyo Grande Creek watershed are being directly harmed by the County's actions and inactions. Plaintiffs' interests in the Imperiled Species include interests in the scientific and policy information that would be developed by the County complying with ESA § 10 obligations to develop and submit to the National Marine Fisheries Service ("NMFS") and the U.S. Fish and Wildlife Service ("FWS") a comprehensive HCP and ITP application that would analyze in detail the adverse impacts of the Arroyo Grande Project on ESA-listed species, including Steelhead, CRLF, Tidewater Goby, and least Bell's vireo and the reasonable and prudent alternatives or reasonable and prudent measures that could and should be implemented to minimize these adverse impacts. Plaintiffs' interests in the Imperiled Species also include interests in the scientific and policy information and environmental outcomes resulting from the County complying with its existing ESA § 10 ITP for the Waterway Management Program, including but not limited to the requirements set forth in the terms and conditions of the ITP as well as the measures detailed in the reasonable and prudent

alternative that NMFS determined was necessary to implement to avoid jeopardy to SCCC Steelhead. Plaintiffs would use this information to inform their members concerning important science issues related to the Plaintiffs' environmental protection missions, to share information on important science and policy questions with other environmental organizations, and to develop advocacy to federal, state, and local government bodies/agencies concerning appropriate means to protect the Arroyo Grande Creek ecosystem. Plaintiffs' interests described above have been, are being, and unless the relief prayed for is granted, will continue to be adversely affected and irreparably injured by the County's violations of law.

**B. Defendant**

20.    Defendant, County of San Luis Obispo is a governmental instrumentality or agency of the State of California. The County constructed and owns, operates, and maintains the Arroyo Grande Project. The County maintains an office in San Luis Obispo, California. The County is responsible for ensuring its actions in owning, operating, and maintaining the Arroyo Grande Project comply with the ESA.

## LEGAL BACKGROUND

**A. The Federal Endangered Species Act**

21.    The ESA's purpose is to provide a means to conserve endangered and threatened species as well as the ecosystems upon which those species depend. 16 U.S.C. § 1531(b). "Congress intended endangered species to be afforded the highest of priorities." *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 174 (1978); 16 U.S.C. § 1531(c). "The plain intent of Congress enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." *Id.* at 184.

22.    NMFS or the FWS (collectively, the "Services") must list a species as threatened under the ESA if it is likely to become endangered within the foreseeable future throughout all or a significant portion of its range, and must list it as endangered if it is in danger of going extinct throughout all or a significant portion of its range. 16

U.S.C. §§ 1532(6), (20); 1533(a)(1).[1] Once a species is listed as threatened or endangered, the Services must designate critical habitat, which is occupied or unoccupied habitat that contains physical or biological features essential to the conservation of the species and which may require special management considerations or protections. 16 U.S.C. §§ 1532(5), 1533(a)(3).

23.     To achieve its goals, the ESA and its implementing regulations prohibit "take" of species listed under the act by any person. 16 U.S.C. § 1538(a)(1)(B) (prohibiting take of endangered species); 50 C.F.R. § 17.31 (extending take prohibition to threatened species unless there are species-specific exemptions); 50 C.F.R. § 223.203 (extending take prohibition to threatened steelhead DPSs, including SCCC Steelhead).

24.     The term "person" includes "any State, municipality, or political subdivision of a State, or . . . any State, municipality, or political subdivision of a State; or any other entity subject to the jurisdiction of the United States." 16 U.S.C. § 1532(13). It is unlawful for any person to cause an ESA violation to be committed. 16 U.S.C. § 1538(g).

25.     The ESA defines the term "take" to mean "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). "Take" includes indirect as well as direct harm and need not be purposeful. *See Sweet Home Chapter of Cmtys. for a Great Oregon v. Babbitt*, 515 U.S. 687, 704 (1995).

26.     The term "harm" within the meaning of "take" means "an act which actually kills or injures fish or wildlife." 50 C.F.R. §§ 17.3, 222.102. "Such an act may include significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including, breeding, spawning, rearing, migrating, feeding or sheltering." 50 C.F.R. § 222.102. By including the terms "spawning," "rearing," and "migrating" in the definition of harm, NMFS made

---

[1] NMFS is responsible for conservation and recovery of marine species, such as anadromous Steelhead, while FWS is responsible for conservation and recovery of freshwater and terrestrial species, such as CRLF, Tidewater Goby, and least Bell's vireo.

clear that it considers these behaviors to be "essential behavioral patterns." 64 Fed. Reg. 60,727 (Nov. 8, 1999). NMFS determined that "any habitat modification that significantly impairs spawning, rearing, or migrating does constitute harm to the species and is a take pursuant to the provisions of the ESA." *Id.* at 60,728.

27.    Although NMFS has not defined "harass," FWS defines "harass" in the definition of "take" as "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3.

28.    The Services can authorize take of a listed species through an incidental take statement, following consultation with NMFS or FWS, if the relevant agency determines that the taking is incidental to an otherwise lawful activity and does not cause jeopardy to the species and the private party agrees to operate the project consistent with the provisions of the reasonable and prudent alternatives and incidental take statement set forth in a biological opinion. 16 U.S.C. § 1536. However, in the absence of the protection offered by a biological opinion's incidental take statement, or an HCP and permit issued under ESA section 10, a private party that engages in the take of an endangered or protected threatened species is liable under ESA section 9.

29.    The incidental take statement functions as a safe harbor provision from section 9 liability and penalties for takings committed during activities that are otherwise lawful and in compliance with the incidental take statement's terms and conditions. 16 U.S.C. § 1536(o). If the action agency (or its permittee) disregards the terms and conditions of the incidental take statement and a taking does occur, the agency (or permittee) may be subject to liability including penalties under section 9 of the ESA. *Arizona Cattle Growers' Ass'n. v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1239 (9th Cir. 2001). An incidental take statement also "set[s] forth a 'trigger' that, when reached, results in an unacceptable level of incidental take, invalidating the safe harbor provision, and requiring the parties to re-initiate consultation." *Id.* at 1249.

30.     The ESA contains a broad citizen suit provision which authorizes any person to commence a civil suit "to enjoin any person . . . who is alleged to be in violation of this chapter or regulation issued under the authority hereof . . ." 16 U.S.C. § 1540(g)(1). A court may grant preliminary and permanent injunctive relief pursuant to this provision. *See Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1068 (9th Cir. 1996) (granting injunction based upon reasonably certain threat of imminent future harm to species).

**B. California Fish and Game Code Section 5937**

31.     CFGC section 5937 provides "The owner of any dam shall allow sufficient water at all times… to pass over, around or through the dam, to keep in good condition any fish that may be planted or exist below the dam." *See Nat. Res. Def. Council v. Patterson,* 333 F. Supp. 2d 906, 918 (E.D. Cal. 2004); *Cal. Trout v. State Bd.,* 207 Cal. App. 3d 593, 605 (Cal. Ct. App. 1989) (*Cal Trout I*). Dam operators must release "enough [water] to restore the historic fishery;" *i.e.*, sufficient water "to reestablish and maintain the fisheries which existed in [streams] prior to [the operator's] diversion of water." *Cal. Trout v. Super. Ct.*, 218 Cal. App. 3d 187, 210, 213 (Cal. Ct. App. 1990) (*Cal Trout II*). If dam operators are not releasing water sufficient to reestablish historic fisheries, they must alter their operations to do so. *Patterson*, 333 F. Supp. 2d at 924 & n.12. Keeping fish in good condition within the meaning of CFGC section 5937 means releasing water sufficient to create habitat that supports a healthy, self-sustaining fish population with reasonable growth rates, diversity of age class, and ability to thrive during all life stages. *Cal Trout I*, 207 Cal.App.3d at 599; *Cal Trout II*, 218 Cal.App.3d at 201, 210, 213.

**C. California Fish and Game Code Section 5901**

32.     CFGC section 5901 states "it is unlawful to construct or maintain in any stream [in certain districts, including District 3 ½,] any device or contrivance that prevents, impedes, or tends to prevent or impede, the passing of fish up and down stream."

**D. The California Public Trust Doctrine**

33.     The California Public Trust Doctrine mandates that the State of California and its political subdivisions have the duty "to protect the people's common heritage of streams, lakes, marshlands and tidelands, surrendering that right of protection only in rare cases when the abandonment of that right is consistent with the purposes of the trust." *Nat'l Audubon Soc'y v. Super. Ct*., 33 Cal.3d 419, 436-37 (1983). The California Public Trust Doctrine requires state and local government "to administer trust resources such as rivers and streams consistent with facilitating public access, public enjoyment, and public use of trust land and resources." *E.g.*, *San Francisco Baykeeper, Inc. v Cal. State Lands Comm*. 242 Cal.App.4th 202, 237-238 (2015). Arroyo Grande Creek and its Steelhead population are public trust resources. *See Nat'l Audubon Soc'y*, 33 Cal.3d at 434-35 (California's waterways and fisheries are held in public trust for the benefit of the people; interest in fishing is a protected public trust use); *Ctr. for Biological Diversity, Inc. v. FPL Grp., Inc.*, 166 Cal. App. 4th 1349, 1366 (2008) (same); *Cal. Trout II*, 218 Cal. App. 3d at 206 ; CFGC § 711.7(a); *see also* CFGC §§ 1600, 1801.

34.     State and local government agencies may not ignore or unnecessarily or unjustifiably harm public trust interests. *Nat'l Audubon Soc'y*, 33 Cal.3d at 446; *Citizens for Eastshore Parks v. State Lands Comm*., 202 Cal. App .4th 549, 577 (2011); *FPL Grp.*, 166 Cal. App. 4th at 1366. Specifically, in implementing water diversions that may harm public trust uses, "the state must bear in mind its duty as trustee to consider the effect of the taking on the public trust, and to preserve, so far as consistent with the public interest, the uses protected by the trust." *Nat'l Audubon Soc'y*, 33 Cal.3d at 446 (internal citations omitted). Before approving or implementing water diversions, state and local government agencies must avoid or minimize any harm to public trust interests to the extent feasible. *Id.* at 426; *see also Envtl. Law Found. v. State Water Res. Control Bd.*, 26 Cal. App. 5th 844, 861 (2018); *FPL Grp.*, 166 Cal. App. 4th at 1370. The protection of fisheries public trust resources trumps the County's otherwise existing water rights to divert the flow from Arroyo Grande Creek. *El Dorado Irrigation Dist. v. State Water Res. Control Bd.*,

First Amended Complaint              13              CASE NO. 2:24-cv-06854_____

142 Cal.App.4th 937, 966 (2006).

**E. California Constitution Article X, Section 2**

35.    Article X, Section 2 of the California Constitution provides: "[t]he right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water." Article X, Section 2 "dictates the basic principles defining water rights: that no one can have a protectible interest in the unreasonable use of water, and that holders of water rights must use water reasonably and beneficially." *City of Barstow v. Mojave Water Agency* 23 Cal.4th 1224, 1242 (2000). "'Beneficial use' and 'reasonable use' are two separate requirements, both of which must be met." *Santa Barbara Channelkeeper v. City of San Buenaventura* 19 Cal.App.5th 1176, 1185 (2018). Water use that unduly harms ecological resources/public trust resources constitutes an unreasonable use of water within the meaning of this California Constitution provision. *El Dorado Irrigation Dist.*, 142 Cal.App.4th at 967.

**F. California Code of Civil Procedure Section 1085**

36.    California Code of Civil Procedure section 1085 provides "[a] writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person."

## FACTUAL BACKGROUND

**A. The County's Operation and Maintenance of the Lopez Project**

37.    The Lopez Project consists of Lopez Dam, Lopez Lake, a three-mile 20-inch diameter buried steel transmission line for conveyance of raw water to the Lopez Terminal Reservoir and subsequently to Lopez Water Treatment Plant, the Lopez Water

First Amended Complaint                14                CASE NO. 2:24-cv-06854_____

Treatment Plant, and various in-stream infrastructure downstream of Lopez Dam. The County's Arroyo Grande Creek flood control project is known as the Waterway Management Program. Collectively, the County's Lopez Project and the County's Waterway Management Program make up the Arroyo Grande Project.

38.    Lopez Dam is located on Arroyo Grande Creek 13 miles upstream from the Pacific Ocean. The County stores water behind the dam in Lopez Lake.

39.    The County is the legally responsible entity for operating and maintaining Lopez Dam.

40.    Infrastructure related to the Lopez Project includes the three-mile 20-inch transmission pipe that conveys water to water treatment and supply infrastructure, which includes a smaller dam (Terminal Dam), Lopez Reservoir, and Lopez Water Treatment Plant.

41.    Infrastructure related to the Lopez Project also includes Lopez Lake (also known as Lopez Reservoir), the reservoir located behind Lopez Dam.

42.    The County is the legally responsible entity for operating and maintaining Lopez Lake.

43.    Additional infrastructure constituting part of the Lopez Project includes, but is not limited to, the following full or partial barriers to Steelhead migration located downstream from Lopez Dam, to the extent this infrastructure still exists within Arroyo Grande Creek: (1) two concrete dams located at or about mile 2.88 from the confluence with the ocean and about 0.5 miles downstream from the Fair Oaks Crossing; (2) Arroyo Grande Stream Gage, ID # 8409, located at or about stream mile 4.98 from the confluence with the ocean; (3) a riprap dam located about 2,000 feet upstream of the stream gage at mile 5.35 from the confluence with the ocean; (4) a concrete dam located at or about stream mile 5.82 from the confluence with the ocean; (5) "S" riprap dam at or about stream mile 9.31 from the confluence with the ocean; (6) abandoned dam or diversion footings, ID # 141, at or about stream mile 11.22 from the confluence with the ocean; (7) Biddle Park double arch culvert at the Biddle Park access road crossing over

Arroyo Grande Creek; (8) the grade control structure downstream of Valley Road in Los Berros Creek; and (9) the remnants of the Cecchetti Road crossing. *See* 2007 County of San Luis Obispo Interim Downstream Release Schedule ("2007 IDRS"), pages 13-14; *see also* 2024 NMFS, West Coast Region, California Coastal Office, Role of Arroyo Grande Creek and Tributaries, San Luis Obispo County, California, in Meeting NMFS's South-Central California Coast Steelhead Viability/Recovery Criteria ("2024 NMFS: Role of Arroyo Grande Creek and Tributaries"), pages 38-42.

44.    The Lopez Project operations include: reservoir storage in Lopez Lake behind Lopez Dam; directing or allowing the California Department of Fish and Wildlife ("CDFW") to stock non-native fish in Lopez Lake and operating the lake as a recreational fishery; diverting water for use outside of Arroyo Grande Creek; uncontrolled spills and managed instream flow releases from Lopez Dam; altering natural stream flows in Arroyo Grande Creek below Lopez Dam based on seasonally-varied water releases for various uses; municipal water treatment and supply, including backwash water disposal and water sampling activities; and operation of the Arroyo Grande Creek stream gaging station.

45.    The Lopez Project maintenance activities include: maintaining Lopez Dam by removing vegetation and repairing settlement or soil slippage and related maintenance activities; maintaining on-site drainage facilities including ditches and drains; maintaining the on-site flow channels below the dam outlets by removing vegetation, repairing concrete portions, and repairing or replacing riprap; maintaining access roads on and to the dam including associated drainage structures; maintaining fences, gates, and other elements necessary for the security of the site; dam and stream channel maintenance by the County in Arroyo Grande Creek; and maintenance of instream infrastructure, listed above, that poses full or partial barriers to Steelhead migration by the County in Arroyo Grande Creek.

**B. Background on the County's Waterway Management Program**

46.     In 1961, the County completed its flood control channel along Arroyo
Grande Creek. The flood control channel is comprised of a set of levees and a constructed
channel of the lower three miles of the Creek extending from the mouth at the Pacific
Ocean inland. NMFS explained that since 1958, the levee eliminated natural channel
meandering (river-floodplain connection) and helped to create unnatural sediment
accumulation, which specifically altered physical and biological features essential to the
conservation of SCCC Steelhead and delayed development of such features. *See* ESA
section 7(a)(2) Biological Opinion assessing the Corps' permit for the San Luis Obispo
Flood Control and Water Conservation District's Arroyo Grande Creek Waterway
Management Program (File No. SPL-2012-00317-JWM) (hereafter, "2017 BiOp") at 36.
In a letter dated November 30, 2005, NMFS expressed concerns with the County's
maintenance of its flood control channel and the harmful impacts to SCCC Steelhead and
its designated critical habitat due to confining Arroyo Grande Creek within an artificially
defined corridor, reducing habitat complexity to increase flood conveyance of the
channel, and perpetuating the existing disconnect between Arroyo Grande Creek and the
historical floodplain.

47.     On September 30, 2014, the U.S. Army Corps of Engineers ("Corps")
submitted an ESA consultation request to NMFS for the Corps' proposed permit to the
County to manage lower Arroyo Grande Creek and a portion of Los Berros Creek for 16
years through a set of actions designed to achieve higher flood-control capacity of the
lower three miles of Arroyo Grande Creek channel and the Los Berros Creek channel (the
"Waterway Management Program"). Major aspects of the Waterway Management
Program include:

- ■ Maintaining an artificially narrow riparian buffer width
- ■ Confining a large portion of Arroyo Grande Creek to a flood-control channel
- ■ Limiting connection between the active Arroyo Grande Creek channel and
  floodplain areas

- Reducing Arroyo Grande Creek channel roughness to achieve increased flood conveyance
- Long-term vegetation management
- Long-term sediment management
- Increased height of portions of the existing levee system including freeboard
- Habitat alteration through construction of permanent log structures within the Arroyo Grande Creek channel

48.     The County's Waterway Management Program covers 2.8 miles of designated SCCC Steelhead critical habitat in Arroyo Grande Creek out of a total of 13 miles for the creek system (21.6%), and 0.7 miles of designated SCCC Steelhead critical habitat in Los Berros Creek out of a total of 10.78 miles for the creek system (6.5%). *See* 2017 BiOp at 19.

49.     In 2017, NMFS issued the 2017 BiOp. NMFS concluded in its 2017 BiOp that the County's Waterway Management Program is likely to jeopardize the continued existence of threatened SCCC Steelhead and is likely to adversely modify or destroy SCCC Steelhead designated critical habitat. 2017 BiOp at 82. Therefore, NMFS identified a Reasonable and Prudent Alternative ("the RPA") that NMFS determined will avoid the likelihood of jeopardizing the continued existence of threatened SCCC Steelhead and avoid the destruction or adverse modification of its designated critical habitat. *Id.* at 82-88. NMFS also issued an Incidental Take Statement ("the ITS"), as described more fully below. *Id.* at 94-100.

50.     In its 2017 BiOp, NMFS identified an RPA that requires the County to implement a Waterway Management Program that maintains properly functioning freshwater SCCC Steelhead rearing sites and freshwater SCCC Steelhead migration sites within the action area of Arroyo Grande Creek and Los Berros Creek including the existing and future restored portions of the Arroyo Grande Creek and Meadow Creek lagoon complex. 2017 BiOp at 82. The RPA identifies three sub-elements to accomplish this objective, which NMFS states "must be implemented on parallel tracks, with the

individual tasks and timing for each sub-element specified herein, to avoid jeopardizing the continued existence of the threatened S-CCC DPS of steelhead and destroying or adversely modifying critical habitat for this species." *Id.* As explained below, the RPA includes modifications to the County's proposed Waterway Management Program and additional restoration activities designed to mitigate many of the adverse effects of the Waterway Management Program on SCCC Steelhead. *Id.* at 82-88.

51. Sub-element 1 of the RPA establishes minimum riparian corridor buffer widths for the channel to mitigate or offset the Waterway Management Program's impact of diminishing the ability of riparian corridor to serve the intended conservation role for SCCC Steelhead. *See* 2017 BiOp at 83. This includes a requirement for the County to establish a minimum riparian-buffer width of 30-feet (15 feet on each side of channel) where space allows given the existing levee footprint. *Id.* Of the total project area, 69% of Arroyo Grande Creek channel must have a 15-foot riparian buffer width on each side and 77% of Los Berros Creek must have a 7.5-foot riparian buffer width on each side of the channel. *Id.* The County must maintain a minimum riparian buffer width of 10 feet on one side and 20 feet on the other side for the remaining areas of Arroyo Grande Creek. *Id.* The County must maintain a minimum riparian buffer width of 5 feet on one side and 10 feet on the other side for the remaining areas of Los Berros Creek. *Id.* Sub-element 1 requires the County to install, annually monitor, and repair as necessary 36 woody structures in Arroyo Grande Creek Channel. *Id.* (sub-element 1(a)). Sub-element 1(b) allows for breaks in the otherwise continuous riparian buffer only for 20 feet up and down stream of three bridge crossings at Union Pacific Railroad's railway, 22nd Street, and U.S. Highway 1. *Id.*

52. Sub-element 2 of the RPA establishes criteria to limit the impact of the County's sediment management activities on SCCC Steelhead freshwater rearing and migration areas and related life stages of SCCC Steelhead. *Id.* at 84-86. This includes criteria for the initial sediment removal in the first two years of the Waterway Management Program. *Id.* at 84 (sub-element 2(a)). It also includes criteria for ongoing

sediment removal for maintenance, such as: (i) the manner and outcome of removal must be consistent with rehabilitating natural geomorphic conditions and Steelhead habitat conditions; and (ii) sediment removal shall involve only discrete, short (less than or equal to 500 linear feet) segments where the capacity is reduced more than 50% of the design freeboard for 10-year flood protection. *Id.* at 85.

53.    Sub-element 3 requires the County to develop and implement a lagoon restoration plan that would include setting back or removing 100 feet of levee in the vicinity of the Meadow Creek Lagoon and Arroyo Grande Creek Lagoon, or relocating or removing tidal gates, or a combination of these actions, and converting 8.28 acres of land to wildlife habitat. *Id.* at 86-88. Sub-element 3 requires the County to: (a) convene a panel of experts to advise the development and implementation of the lagoon restoration plan within 90 days following the date of the Corps' permit approving the Waterway Management Program; (b) develop an Integrated Feasibility Report, provide a draft Environmental Impact Report ("EIR") to NMFS within 3 years of the Corps' permit issuance, and achieve certification of a final EIR within 4.5 years of the Corps' permit issuance; and (c) completely implement the lagoon restoration project within 6.5 years of the Corps' permit issuance and monitor the effectiveness of the lagoon restoration project. *Id.* at 86-88. The RPA sub-element 3 states that the construction and implementation schedule may be revised by agreement between the County, NMFS, and State Parks. *Id.* at 88.

54.    On December 7, 2017, the County notified the Corps of its acceptance of the RPA and its three sub-elements from the 2017 BiOp. The Corps issued its permit to the County on June 25, 2018, and the permit issuance date was subsequently amended to the date that the State of California issued its Clean Water Act section 401 water quality certification for the permit and County program on April 26, 2019.

55.    The 2017 BiOp also includes an ITS that authorizes incidental take of SCCC Steelhead pursuant to the terms and conditions ("T&C") set out in the ITS resulting from five actions: (1) installation of log structures, (2) maintenance of log structures, (3)

creating alcoves, (4) floodplain and lagoon habitat improvement, and (5) elevated water temperatures at three bridge crossings. *See* 2017 BiOp at 94-95. The ITS authorizes incidental take of 360 juvenile SCCC Steelhead from one-time capture and relocation during installation of the log structures, 30 juvenile SCCC Steelhead annually from capture and relocation during maintenance of log structures and creation of alcoves, and 5 juvenile SCCC Steelhead annually from restricted rearing and migration behavior due to the unsuitable water temperature near bridge locations. 2017 BiOp at 96.

56. The ITS details the non-discretionary T&C that the County must comply with to implement the reasonable and prudent measures and ensure compliance with the ITS. *Id.* at 97-100. The T&C include, but are not limited to:

- Ensure the T&C of the ITS, including all best management practices ("BMPs"), are followed for the duration of the Waterway Management Program (T&C 1(A));

- Only conduct project activities when SCCC Steelhead are least likely to be present or affected by the Waterway Management Program (T&C 1(A));

- Minimize mobilization of bank sediment into the creek from access roads and construction activities (T&C 1(D));

- Visually monitor turbidity levels when instream construction and maintenance activities occur within the protected channel buffer (T&C 2(A));

- Take systematic turbidity measurements downstream of each of the three bridge crossings at least 8 times per year (two readings for each season) to minimize uncertainty that these areas will generate elevated levels of turbidity, and annually report measurements to NMFS (T&C 2(A));

- Take water temperature measurements upstream and downstream of the three bridge crossings at least 8 times per year (two readings for each season) to minimize uncertainty that these areas will provide cooler water temperature levels over time, and annually report water temperature measurements to NMFS (T&C 2(B));

- Add trees within 10 feet of active stream channel to enhance canopy on 3.41 acres (T&C 2(B));

- Take field observations and sequential aerial photographs of log structures and created alcoves, measure extent of habitat creation from the log structures and created alcoves, monitor and identify any failures of the log structures or created alcoves, and annually report this information to NMFS (T&C 3(A));

- Take water velocity measurements at least 8 times per year (2 times per season) at multiple points along a channel cross-section including the active channel for each log structure in the action area, and annually report this information to NMFS (T&C 3(B));

- Submit a written yearly report to NMFS by January 15 following completion of construction for 16 years following construction completion that contains at least the following information:

(1) Construction and maintenance within designed buffer at bridge locations and log-placement locations, and related activities, including dates of start and end, color photographs of before, during, and after, and discussion of unanticipated effects;

(2) Document how new habitat structures meet or exceed expected benefits to Steelhead rearing and migration habitat, including SCCC Steelhead and other fish species use of structures, any repair or re-vegetation necessary;

(3) Describe locations planted or seeded, area revegetated, a plant palette, planting or seeding methods, efforts to ensure success of new plantings, performance or success criteria, and pre and post color photographs of revegetated areas;

(4) Describe location of any SCCC Steelhead relocation (removal and release locations) including color photographs, date and time of relocation, description of equipment and methods used, number of fish relocated, injured, or killed, number observed but not relocated, and any observations of SCCC Steelhead

during required monitoring and measurement efforts after completion of log structure installation;

(5) Provide yearly status update on all actions taken by County to achieve successful implementation of 8.28 acres of SCCC Steelhead lagoon-rearing habitat (RPA sub-element 3) (T&C 4(A)). *See* 2017 BiOp at 97-100.

**C. The County Has for Decades Operated and Maintained the Lopez Project in a Manner that Harms ESA-Listed Species without ESA Authorization.**

57.     The County is and has been aware that the Lopez Project harms ESA-listed species in Arroyo Grande Creek, including Steelhead that use Arroyo Grande Creek as habitat during portions of its life stages (such as during upstream and downstream migration and rearing), for three decades. The County has further been on notice for these three decades that its Lopez Project operations are violating the ESA by taking SCCC Steelhead and other species without incidental take authorization and that the County needs to pursue ESA authorization for the Lopez Project.

58.     In January 1994, a citizen of Los Osos, California filed a California State Water Resources Control Board ("State Board") complaint against the County alleging that the County was violating the CFGC by failing to release water from Lopez Dam for fish in Arroyo Grande Creek below the dam. *See* Jan. 13, 1994, Complaint by Wm. H. L' Hommedieu. The complaint noted that the County's operation of Lopez Dam resulted in approximately 2 miles of dry creek bed immediately below the dam.

59.     On June 15, 1994, the County filed a response to the citizen's complaint with the State Board Unit of the Division of Water Rights, asserting that the County operates Lopez Dam in a manner consistent with all local, state, and federal law.

60.     On June 24, 1994, the California Sportfishing Protection Alliance submitted a letter following up on the earlier complaint, requesting that the State Board bring the County into compliance with CFGC sections 5937 and 782, California Code of Regulations, the Public Trust Doctrine, and other applicable statutes.

61.     Around that time, the State Board informed the County that it would not re-

issue or amend the County's water rights permit for Lopez Dam until dam operations were brought into compliance with the ESA.[2] The State Board's demand was triggered by the citizen complaint and concerns from California Sportfishing Protection Alliance as well as increasing concern on the part of both NMFS and CDFW about the Dam's impact on SCCC Steelhead.

62.     In 2004, the County completed a Final Draft Arroyo Grande Creek Habitat Conservation Plan ("the 2004 HCP") and Environmental Assessment/Initial Study ("EA/IS") for the Protection of Steelhead and CRLF.

63.     The 2004 HCP and EA/IS sought ESA authorization for incidental take of SCCC Steelhead and CRLF associated with activities including but not limited to: (a) reservoir storage; (b) uncontrolled spills and managed instream flow releases; (c) municipal water treatment and supply, including backwash water disposal and water sampling activities; (d) water releases for irrigated agriculture; (e) dam and stream channel maintenance by the County in Arroyo Grande Creek; (f) Lopez Dam and Reservoir operations; (g) instream flow releases exceeding flows established by the 2004 HCP; and (h) channel and facility maintenance by the County in Arroyo Grande Creek.

64.     In response, the Services provided written comment letters that largely rejected the 2004 HCP and EA/IS as inadequate. NMFS emphasized that the County's proposed instream flow schedule was not an appropriate starting point and was not sufficient to produce a high likelihood of attaining essential habitat functions for Steelhead and therefore long-term survival of the species. *See* Nov. 25, 2004, NMFS Comments on the County's Proposed Instream Flow Schedule for Steelhead Trout in Arroyo Grande Creek Downstream of Lopez Dam ("2004 NMFS Comments").

65.     NMFS urged the County to develop an adequate downstream release

---

[2] Despite reports indicating that the State Board would not renew or amend the County's water rights permit until it complied with the ESA, it appears that the State Board granted numerous extensions of that permit and that State Board Permit 12814 for the County's water rights is currently in effect.

schedule starting from the natural streamflow regime in Arroyo Grande Creek, a process that would be more likely to ensure sufficient flows of water in Arroyo Grande Creek at specific times of the year to support the complex life cycle needs of SCCC Steelhead (*i.e.*, in terms of timing, magnitude, duration, and seasonality) to allow for Steelhead conservation, survival, and recovery.

66.     NMFS stated that since construction of Lopez Dam, the timing of high winter discharge in Arroyo Grande Creek has shifted from February to March and the magnitude of spring discharge (late March through June) has decreased and suggested that the timing of winter discharge and magnitude of spring discharge should be restored to pre-Dam characteristics. *See* 2004 NMFS Comments at 2. NMFS also suggested the County assess the effects of unnatural instream structures in the Creek on passage of adult and juvenile Steelhead. *Id.*

67.     FWS noted that the County should include Tidewater Goby as a covered species in the HCP, stating that the timing and volume of water releases from Lopez Dam has potential to benefit or extirpate the population of Gobies in Arroyo Grande Creek. *See* June 27, 2005, FWS Comments on the February 2004 Draft of the Arroyo Grande Creek Habitat Conservation Plan, San Luis Obispo County, California ("2005 FWS Comments").

68.     FWS also noted that the HCP failed to include commitments for habitat enhancement and directed the County to ensure the County is committed to implementing all conservation measures presented in the HCP and identify the funding to do so. *Id.*

69.     In response to a revised 2005 version of the County's HCP, FWS submitted a second round of comments that again directed the County to address Tidewater Goby because this species may be taken as a result of the Lopez Project. *See* March 13, 2006, FWS Comments on the July 2005 Draft of the Arroyo Grande Creek Habitat Conservation Plan, San Luis Obispo County, California ("2006 FWS Comments").

70.     More recently, NMFS stated that the County has failed to assess, with empirical and analytical methods and decision or performance criteria, the technical

feasibility of restoring fish passage past Lopez Dam and the related value to the survival and recovery of threatened SCCC Steelhead. *See* June 22, 2023, NMFS Letter to Keith Miller, San Luis Obispo County Department of Public Works ("2023 NMFS Comments"). NMFS noted that the County has failed to assess the technical feasibility of volitional fish passage past Lopez Dam. *Id.* NMFS also emphasized that the County still does not have exemption of liability under ESA section 9 and thus there is some urgency for completion of a study assessing volitional fish passage. *Id.*

71.    On information and belief, to date the County has not addressed these issues raised by the Services. The County is now, as it has for decades, operating and maintaining the Lopez Project without an HCP or ITP and thus without ESA authorization to take the Listed Species.

**D. South-Central California Steelhead (*Oncorhnchus mykiss*) and the County's Operations of the Arroyo Grande Project**

**<u>SCC Steelhead and the Arroyo Grande Creek</u>**

72.    SCCC Steelhead are listed as threatened under the ESA. 62 Fed. Reg. 43,937 (Aug. 18, 1997); 71 Fed. Reg. 834 (Jan. 5, 2006) (reaffirming threatened listing under the joint FWS and NMFS DPS policy).

73.    Threatened SCCC Steelhead include all naturally spawned *O. mykiss* originating below natural and manmade impassable barriers from the Pajaro River to (but not including) the Santa Maria River. 71 Fed. Reg. 834. SCCC Steelhead spawn and rear within Arroyo Grande Creek downstream of Lopez Dam. 70 Fed. Reg. at 52508. *See also* 2004 HCP and EA/IS at 1-64.

74.    SCCC Steelhead abundance has declined precipitously from a historic high of roughly 25,000 returning adults to fewer than 500 adults in 2017. *See* Endangered Species Act Section 7(a)(2) Biological Opinion for the Arroyo Grande Creek Waterway Management Program (Nov. 27, 2017) ("2017 BiOp") at 78; *see also* NMFS West Coast Region, 2023 5-Year Review: Summary & Evaluation of South-Central California Coast Steelhead ("2023 SCCC Steelhead Species Assessment"), page 42.

75.    The SCCC Steelhead population of the Arroyo Grande Creek system may have been the most extensive of the populations of the San Luis Obispo County coast, but accelerated declines of the population have resulted in the current Arroyo Grande Creek SCCC Steelhead run to be only "in the dozens." 2017 BiOp at 35, 78.

76.    In 2005, NMFS designated critical habitat for SCCC Steelhead, including designation of Arroyo Grande Creek and Los Berros Creek as critical habitat. 70 Fed. Reg. 52,488 (Sept. 2, 2005).

77.    The primary reasons for the decline of west coast steelhead include destruction and modification of habitat, and natural and human-made factors. 62 Fed. Reg. at 43,942.

78.    Because of the species' specific life cycle, "steelhead are only able to express their full life-history trains, which confer a survival advantage to the anadromous form of the species, when the characteristics and condition of their freshwater habitat is conducive to survival, growth, and emigration of smolts to the ocean[.]" *See* 2023 SCCC Steelhead Species Assessment at 44. The Steelhead's "complex life cycle gives rise to complex habitat needs, particularly during the freshwater phase[.]" 70 Fed. Reg. at 52492.

79.    The modification of natural flow regimes by dams and other water-control structures are among the core threats to SCCC Steelhead. 78 Fed. Reg. 77430 (Dec. 23, 2013); NMFS, 2013, South-Central California Coast Steelhead Recovery Plan, West Coast Region, California Coastal Area Office, Long Beach, California ("2013 SCCC Recovery Plan"), page 4-3.

**The County's Operation of the Lopez Project Is Harming SCCC Steelhead**

**The County's Construction, Operation, and Maintenance of the Lopez Project Blocks Access to Valuable SCCC Steelhead Habitat**

80.    The County's construction, operation, and maintenance of the Lopez Project— especially Lopez Dam and Lopez Lake—has and continues to harm SCCC Steelhead by cutting off valuable habitat for SCCC Steelhead in Arroyo Grande Creek.

81. Lopez Dam cuts off SCCC Steelhead access above Lopez Dam, resulting in the loss of many miles of quality Steelhead spawning, rearing, and over-summering refugia habitat above the dam. 70 Fed. Reg. at 52507. Lopez Dam is a full barrier to SCCC Steelhead migration in Arroyo Grande Creek and prevents SCCC Steelhead access to important spawning, rearing, and drought refugia habitat, thereby reducing the amount of habitat accessible to adult SCCC Steelhead migrating upstream as well as juvenile SCCC Steelhead attempting to emigrate out of the watershed. *Id.* Lopez Dam blocks access to the overwhelming majority of Steelhead spawning, rearing, and refugia habitat. *See* 2023 SCCC Steelhead Species Assessment at 32.

82. Specifically, Lopez Dam blocks SCCC Steelhead access to about 42 miles of high intrinsic potential Steelhead spawning and rearing habitat, out of a total of about 66 miles of high intrinsic potential Steelhead spawning or over-summering rearing/refugia habitat. *See* 2024 NMFS: Role of Arroyo Grande Creek at 11. Of the high intrinsic potential Steelhead spawning and rearing habitat above Lopez Dam and Lopez Lake, 12.7 miles (about 30%) is located on U.S. Forest Service land within Los Padres National Forest. *Id.*

83. The Lopez Project thus prevents access to two-thirds of the high intrinsic potential Steelhead spawning and rearing habitat in the Arroyo Grande Creek watershed. *Id.* at 11-13, 31.

84. Lopez Dam inundated and thus effectively destroyed SCCC Steelhead habitat underneath the waters of Lopez Lake.

85. By inundating previously accessible, quality habitat, the County's construction, operation and maintenance of Lopez Dam and Lopez Lake turned Arroyo Grande Creek into a lake and thereby eliminated historically accessible SCCC Steelhead spawning habitat. The now-inundated area is no longer usable for SCCC Steelhead for life cycle behavior. *Id.* at 31.

86. The County's operation and maintenance of the Lopez Project that reduced the area of available spawning habitat reduces the SCCC Steelhead abundance in Arroyo

Grande Creek watershed.

87.    Moreover, the higher elevation areas above Lopez Dam and Lopez Lake provide cooler waters, providing key refugia habitat to escape impacts from climate change, drought, and forest fires. Reducing the fish's available spawning habitat and refugia habitat makes the SCCC Steelhead population in Arroyo Grande Creek even more vulnerable to catastrophic events.

88.    By preventing access to and inundating this high-quality habitat, the County's Lopez Project has harmed and continues to harm SCCC Steelhead and the County is thus perpetuating unlawful take in violation of the ESA.

89.    The Arroyo Grande Creek population is critical for the survival and recovery of SCCC Steelhead across its range. This population is a "Core-1 Population," which means it has the highest priority for recovery based on a variety of factors. 2017 BiOp at 34.

90.    The population extends over a broad and geographically diverse area and is therefore likely to withstand environmental unpredictability and possess ecologically significant attributes not found in most other SCCC Steelhead populations. *Id.* at 32.

91.    The Arroyo Grande Creek population is an independent population and is therefore expected to support formation of SCCC Steelhead numbers in several adjacent population units. *Id*

92.    For these reasons, the Arroyo Grande Creek population has a high potential for population viability. *Id*. Moreover, the Arroyo Grande Creek population is one of only a few populations throughout the southern portion of the SCCC Steelhead geographic range where SCCC Steelhead actively spawn and rear.

93.    As NMFS has stated:

"Streams classified as Core-1 Populations are essential for recovering the DPS of steelhead as a whole. Therefore, reducing the likelihood of survival and recovery of a Core-1 Population, would have adverse consequences for the survival and recovery of the DPS as a whole. Overall, while the Arroyo Grande Creek

Watershed is only one watershed throughout a geographically broad DPS, this watershed is crucial for recovering the entire South-Central California Coast DPS of steelhead. *Id.*

**The County's Operation of the Lopez Project Reduces and Alters Flows in Arroyo Grande Creek, Resulting in Harm to Steelhead**

94.    The County's failure to release sufficient water from Lopez Dam at crucial times of the year has caused the SCCC Steelhead population in Arroyo Grande Creek to significantly decline. The County's operation of the Lopez Project limits the timing, duration, magnitude, quantity, and seasonality of water flow released into Arroyo Grande Creek from Lopez Dam. *See, e.g.*, 2007 IDRS at 2-4.

95.    As demonstrated by various NMFS documents, the County's flow releases are not ecologically meaningful and are inadequate to support SCCC Steelhead life cycles. *See, e.g.*, 2024 NMFS: Role of Arroyo Grande Creek at 29. In its 5-year review of the species in 2016, NMFS concluded that recovery of SCCC Steelhead depends on addressing the most fundamental threats, including by having the County restore natural flow patterns on Arroyo Grande Creek. *See* NMFS, South-Central/Southern California Coast Steelhead Recovery Planning Domain, 5-Year Review: Summary and Evaluation of South-Central California Coast Steelhead Distinct Population Segment ("2016 SCCC Steelhead DPS Status Assessment"), page 55; *see also* 2013 SCCC Recovery Plan at 7-14.

96.    In 2004, NMFS rejected the County's proposed flow regime in the County's 2004 HCP and the County's method for developing that flow schedule. *See* 2004 NMFS Comments.

97.    As noted above, NMFS observed that since the construction of Lopez Dam, the timing of high winter discharge has shifted from February to March and the magnitude of spring discharge (late March through June) has decreased. *See* 2004 NMFS Comments at 2. As NMFS has explained, the instream flow schedule that the County is presently implementing is harmful because it is not meeting NMFS' recommended

First Amended Complaint                    30                    CASE NO. 2:24-cv-06854_____

monthly discharge during base-flow conditions for release from Lopez Dam into Arroyo
Grande Creek in more than half of the months.

98.    The County's 2007 IDRS provides the current plan for managing
downstream releases from Lopez Dam. *See* San Luis Obispo County Flood Control and
Water Conservation District, Lopez Water Project Contract Changes Project Description
(Oct. 2020), page 5.

99.    The 2007 IDRS was meant to be an interim document to manage releases
from Lopez Dam until such time as the County completes and secures approval for its
HCP, but the County has continued to rely on it for its Lopez Dam operations for more
than 17 years. *Id.*

100.   The 2007 IDRS does not set precise numeric release requirements to control
the volume of water released from Lopez Dam. Under the 2007 IDRS, downstream
releases range between 3 and 6 cubic feet per second ("cfs"), depending on the
hydrologic conditions and downstream demands.

101.   Since 2007, the County's downstream releases from Lopez Dam have
averaged approximately 5 cfs. *Id.*

102.   The 2007 IDRS also includes a Low Reservoir Response Plan ("LRRP") that
even further reduces downstream release flows when the amount of water in Lopez
Reservoir drops below 20,000 Acre-Feet ("AF") and the County's Board of Supervisors
declares an emergency. *Id.*

103.   The available data shows that the County's flow releases from Lopez Dam
are inconsistent with NMFS's recommendations, are inadequate to support SCCC
Steelhead life cycles, and are causing harm to SCCC Steelhead in the Arroyo Grande
Creek watershed. *See, e.g.*, 2024 NMFS: Role of Arroyo Grande Creek at 31, 71.

104.   The County's operation of the Lopez Project that reduces flows to Arroyo
Grande Creek fundamentally alters the natural hydrological cycle of high winter and low
summer flows of Arroyo Grande Creek.

105.   Elevated flow discharge into Arroyo Grande Creek during and shortly after

periods of rainfall is essential for creating and maintaining migration opportunities for adult SCCC Steelhead to swim upriver and navigate physical features normally constituting obstacles during relatively low river discharge. 2017 BiOp at 22-23. The migratory behavior and ecology of adult SCCC Steelhead is strongly associated with the natural pattern and magnitude of the Creek's discharge. *Id.* at 23.

106. The County's operation and maintenance of the Lopez Project artificially disrupts these Creek flow patterns, which adversely impacts migration opportunities for both adult Steelhead and smolts and their arrival at target habitats.

107. By altering the pattern (magnitude, frequency, timing, and duration) of attraction and migratory flows essential to the successful upstream migration of SCCC Steelhead from the ocean to spawning habitat, the County's limited flow releases from Lopez Dam have reduced SCCC Steelhead access to the lower Arroyo Grande Creek. *See* 2024 NMFS: Role of Arroyo Grande Creek at 31.

108. In its 2004 HCP, even the County acknowledged that continuing operation of Lopez Dam and Lopez Reservoir and the associated releases of water into Arroyo Grande Creek, in addition to other operations and maintenance activities performed by the County, affects the quality and availability of habitat for SCCC Steelhead, and may result in take of this ESA-listed species. *See* 2004 HCP and EA/IS at ES-1.

109. Specifically, the County releases insufficient water from Lopez Dam at necessary times of the year, resulting in insufficient flows in Arroyo Grande Creek that in turn: (a) prevents or inhibits upstream migration of adult SCCC Steelhead (including by preventing attraction or migratory flows); (b) prevents or inhibits spawning and rearing of SCCC Steelhead; (c) harms the success of juveniles during life stages spent in-river in freshwater and in estuarine waters near the mouth of Arroyo Grande Creek and thereby harms their ability to complete the physiological transformation into smolts and diminishes their overall likelihood of successfully returning as adults; and (d) prevents or inhibits juvenile and adult SCCC Steelhead from completing downstream migration and reaching the Pacific Ocean.

110.    The reduced stream flows in Arroyo Grande Creek cause a truncated migration season for the SCCC Steelhead, causing further harm.

111.    The County's limited flow releases from Lopez Dam also reduce the suitability of rearing habitat in lower Arroyo Grande Creek and the downstream emigration of Steelhead smolts to the estuary and ocean. *See* 2024 NMFS: Role of Arroyo Grande Creek at 31.

112.    The County's limited flow releases from Lopez Dam deplete the flows necessary for flushing out fine sediments from spawning gravels that SCCC Steelhead require for spawning and rearing. The fine sediments choke the SCCC Steelhead redds (egg nests).

113.    The County's operation and maintenance of the Lopez Project thus depletes the flows necessary for SCCC Steelhead migration, spawning, and rearing.

114.    The County's operation and maintenance of the Lopez Project also depletes the flows necessary for estuarine functions in the Arroyo Grande Creek Lagoon near the Creek's confluence with the ocean. That the County's Lopez Project operations have created insufficient water quantity and quality in the Lagoon and the immediately upstream Arroyo Grande Creek reach has been documented, *inter alia*, by a series of California State Parks surveys done in June 2022, September 2022, and December 2022. *See* June 30, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); Sept. 28, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); Jan. 10, 2023, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons; Oso Flaco Creek, Pismo State Beach; Oceano Dunes State Vehicular Recreation Area (Reference Permit #TE-101154-3). The County's operations have caused or contributed to portions of lower Arroyo Grande Creek being completely dry and water quality in the Arroyo Grande Lagoon being unsuitable for SCCC Steelhead survival due to warm water, low levels of dissolved oxygen, and reduced depth.

115.   Arroyo Grande Creek has only about 20 percent of historical estuarine habitat remaining and there have been similarly large losses of SCCC Steelhead estuarine and other habitat throughout the fish's range. The adverse impacts to estuarine functions in the Arroyo Grande Lagoon perpetuated by the Lopez Project are particularly harmful given the cumulative impacts to SCCC Steelhead throughout its range.

116.   In addition to disrupting the natural pattern and magnitude of streamflow, the County's operation of the Lopez Project that modifies the natural flow regimes in Arroyo Grande Creek causes increased water temperatures, lower water column oxygen levels, higher water column turbidity and creek bottom sedimentation, changes in river geomorphology that destroy river features needed for Steelhead habitat, and reduced gravel recruitment. High water temperature, physical barriers to Steelhead migration, low dissolved oxygen, and high turbidity in Arroyo Grande Creek caused by the County's Lopez Project causes delay or even halts downstream migration of juvenile SCCC Steelhead and subsequent entry into estuary, lagoon, or ocean.

117.   The County's limited flow releases from Lopez Dam thereby reduce the amount and quality of drought refugia habitat in the mainstem and tributaries of Arroyo Grande Creek.

118.   The County's operation of the Lopez Project by reducing flow releases to Arroyo Grande Creek disrupts the natural pattern and movement of sediment within the Creek. Limited releases of water from Lopez Dam alter the movement of sediment in Arroyo Grande Creek and Arroyo Grande Lagoon by taking away the high pulse flow conditions that transport fine sediments deleterious to Steelhead spawning out of Arroyo Grande Creek reaches and that create cobble and gravel substrate conditions that are suitable to Steelhead spawning.

119.   Maintenance of Lopez Dam is further harmful because it traps cobble and gravel sediments that would naturally wash down from the upper watershed, thus diminishing recruitment of cobble and gravel that provides substrate suitable for Steelhead spawning in the lower reaches of Arroyo Grande Creek. *See* 2004 HCP and

EA/IS at 2-1.

120.    Maintenance of Lopez Dam is further harmful because it traps large woody debris/large wood pieces that would naturally wash down from the upper watershed, thus diminishing recruitment of large woody debris/large wood piece presence that provides habitat features that support Steelhead spawning and rearing in the lower reaches of Arroyo Grande Creek. Large wood debris creates snags in streams/rivers that in turn provide places for Steelhead to hide from predators, rest and seek refuge in areas of the Creek with lower flow velocity, and to build redds (egg nests) that are protected from being washed away by high velocity flows.

121.    The County's method of releasing flow from Lopez Dam adversely affects channel conditions and geomorphic processes downstream in Arroyo Grande Creek, which reduces SCCC Steelhead habitat diversity and impairs habitat characteristics including presence of appropriate bottom substrate, extent of pools and riffles, appropriate channel heterogeneity (*i.e*, variation in channel shape associated with the natural meander of streams that in turn creates areas where flow velocities are diminished and features like undercut banks, large wood snags, pools with greater stream depth and quieter waters useful as productive spawning, refuge, and rearing habitats and areas where flow velocities are increased that can provide good oxygenation of waters and feeding opportunities), and other instream habitat features that Steelhead need to complete their lifecycle behaviors successfully. *Id.*

122.    In sum, because the natural movement of water and large wood and bottom settlement substrate are necessary for the creation and maintenance of essential habitat features that SCCC Steelhead require, disruption of natural fluvial processes resulting from the Lopez Project causes inhospitable habitat characteristics and condition for SCCC Steelhead in Arroyo Grande Creek.

123.    The County's Lopez Project is thus harming SCCC Steelhead by limiting the flow of water from Lopez Dam downstream to Arroyo Grande Creek, resulting in take in violation of the ESA.

**Predatory Fish in Lopez Lake and Failure to Screen Fish Spills to Arroyo Grande
Creek Harms Steelhead**

124.   By directing or allowing CDFW to stock Lopez Lake with non-native predators or competitors of SCCC Steelhead and otherwise maintaining Lopez Lake such that populations of non-native predators such as largemouth and smallmouth bass, crappie, red-ear sunfish, and catfish have flourished, the County has promoted the presence of such non-native predators in Arroyo Grande Creek. *See* San Luis Obispo County Parks, Fishing, Lopez Lake Recreational Area, available at https://slocountyparks.com/fishing/ (last accessed June 4, 2024); *see also* 2013 SCCC Recovery Plan at 4-4.

125.   The County has allowed these non-native predator species to periodically escape Lopez Lake into Arroyo Grande Creek downstream when Lopez Dam spills over and releases water from the Lopez Dam spillway. *Id.* In 2023 and 2024, for example, Lopez Dam spilled water to the Creek below.

126.    The County has failed to install a fish screen for the spillway from Lopez Dam that would otherwise prevent non-native predator and competitor species from entering downstream Arroyo Grande Creek. The County's failure to do so is introducing predators of Steelhead eggs and juvenile SCCC Steelhead into lower Arroyo Grande Creek, causing a take of Steelhead in violation of the ESA.

**The County's Operation and Maintenance of the Waterway Management
Program Within Arroyo Grande Creek Harms SCCC Steelhead**

127.   The County's ongoing implementation and maintenance of certain aspects of the Waterway Management Program, including maintenance of the Arroyo Grande Creek channelization and levee, vegetation management, and sediment removal, harms Steelhead. The County's implementation of these aspects of the Waterway Management Program while failing to implement beneficial aspects of the Program (like mitigation measures and the lagoon restoration project) perpetuates harm to Steelhead.

128.   On information and belief, the County has failed to timely and fully

implement the RPA and the T&C set forth in the 2017 BiOp. The specific instances described below are just examples and there are additional instances when these actions occurred. Because the County took these actions, the County is aware of the dates on which it conducted the actions.

129.   The 2017 BiOp correctly concluded that the County's continued implementation and maintenance of the Arroyo Grande Creek Waterway Management Program would jeopardize the continued existence of Steelhead and adversely modify their ESA-designated critical habitat. *See* 2017 BiOp at 82. As NMFS determined, the County's Waterway Management Program is one "that reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of [Steelhead] in the wild by reducing the reproduction, numbers, or distribution of [Steelhead]." 50 C.F.R. § 402.02.

130.   As NMFS concluded in its 2017 BiOp, the County's Waterway Management Program harms Steelhead by, among other things, maintaining an artificially narrow riparian buffer width, consigning a large portion of the lower Arroyo Grande Creek to a flood-control channel, limiting connection between the active creek channel and floodplain areas, removing vegetation from select areas, and removing surficial channel-bed sediments and shaping the creek channels to force the formation of secondary channels. *See* 2017 BiOp at 7. As NMFS determined, these actions are appreciably diminishing the value of Steelhead critical habitat by *inter alia* precluding or significantly delaying the development of physical and biological features needed for the function of designated critical habitat for Steelhead. *Id.*

131.   As the County itself acknowledged in 2024, "[t]he steelhead population size prior to the installation of Lopez Dam and the flood control channel ranged from 500-5,000 in various reports," but "[p]resently, the population has declined to less than one percent of the 1850 levels." *See* April 18, 2024, Fisheries Restoration Grant Program 2024 Funding Opportunity – Final Application, 1732300 – Cecchetti Road Crossing Fish Passage Improvement Project, pdf page 9 of 39. As NMFS has stated, "[n]evertheless,

steelhead are known to be present in small numbers in the action area" of the Waterway Management Program. 2017 BiOp at 35. NMFS concluded that the County's Waterway Management Program is expected to reduce the function and value of the action area as a freshwater rearing site and a freshwater migration site for Steelhead. *Id.* at 48-68. This includes, for example, reducing the riparian corridor to a narrow strip of largely non-woody vegetation that is insufficient to uphold the functional role of streamside riparian buffers. *Id.* at 49-50. NMFS determined this would greatly diminish the natural ability of the riparian corridor to maintain water temperature, provide sources of food and living space for Steelhead, control sediment and erosion, and filter nonpoint source pollution from entering Arroyo Grande Creek. *Id.* at 50-53. NMFS determined that vegetation maintenance of a modified buffer at the three bridge locations, which involves the removal of riparian and aquatic vegetation and sediment and debris, will alter channel morphology and hydraulic conditions that provide habitat for rearing and migratory life stages of Steelhead. *Id.* at 53-54.

132.   As NMFS concluded would occur, removal of channel-bed sediments and channel shaping between the levees has: (1) eliminated complex habitat features from natural fluvial processes; (2) reduced the amount of creek channel available for important habitat functions and values for Steelhead; and (3) increased the amount and extent of exposed fine sediment to be mobilized and settle in important Steelhead habitats. *Id.* at 54-55. In turn, as NMFS anticipated, this has altered the sediment load received by Arroyo Grande Creek Lagoon. *Id.* at 55-57. As NMFS expected, effects from the County's repair of levees has perpetuated the ongoing artificial confinement of Arroyo Grande Creek and Los Berros Creek. *Id.* at 60-62.

133.   As NMFS has noted, constraining channels between levees results in higher, faster water carrying more sediment particles during floods, which can undermine the integrity of the levee structure. *Id.* at 62. As NMFS explained, maintaining a continual disconnect between the active channel and its historical floodplain diminishes the quality and availability of Steelhead rearing habitat. *Id.* at 62-63. Moreover, as NMFS

First Amended Complaint          38          CASE NO. 2:24-cv-06854_____

determined, many of the activities identified by the County to minimize effects of its Waterway Management Program are ineffective. *Id.* at 63-68. Adverse effects on Steelhead from the Waterway Management Program include increased risk of stranding and expenditure of energy to reach destination habitats, reduced prospects for growth and survival of juvenile Steelhead to the smolt stage, and adverse impacts from capture and relocation of Steelhead when dewatering is required. *Id.* at 69-76.

134.   In sum, the County's Waterway Management Program causes harm to Steelhead by *inter alia* confining Arroyo Grande Creek within an artificially defined corridor, reducing habitat complexity to increase flood conveyance of the channel, and perpetuating the existing disconnect between Arroyo Grande Creek and the historical floodplain. *Id.* at 78-82.

135.   Cumulative effects from the County's operation of Lopez Dam in combination with the County's Waterway Management Program have major impacts on Steelhead in Arroyo Grande Creek. *See, e.g.*, 2017 BiOp at 77-78. As NMFS has identified, the County's Lopez Dam and the County's channelization from the flood control project are interrelated actions with adverse effects on Steelhead resources in Arroyo Grande Creek. *Id.* at 37 ("Effects of these alterations combined include seasonality of surface flow, reduced extent of lagoon habitat, lagoon water quality degraded during closed periods, especially if inflow is low"). As NMFS has noted, the levee and channelization of Arroyo Grande Creek affects nearly all hydrogeomorphic processes of the Creek, including vegetation distribution of the riparian corridor, sediment transport, and velocity of flows. *See* 2017 BiOp at 39-41. As NMFS has identified, the levee system is the major contributor to observed patterns in sedimentation because the levee system continually prevents sediments from depositing on the floodplain and has done so since 1961. *Id.* at 38, 39. Physical features of designated critical habitat that support the life-history needs of Steelhead include the ability of the creek channel to meander, maintaining connectivity with the floodplain. *Id.* at 40. As NMFS has concluded, the County's channelization prevents such meandering, and

severely restricts vegetation distribution of the riparian corridor while influencing sediment transport, water depth, stream width, slope, roughness, and velocity of flows. *Id.* at 40-41.

136.   The County itself has also acknowledged that the Waterway Management Program is harmful to Steelhead: the County's application to California Department of Fish and Wildlife for a grant to replace Cecchetti Road crossing (discussed further below) states that the two single largest influences on the current configuration of Arroyo Grande Creek include one, the flood control channel (comprising the lower portion of the mainstem Arroyo Grande Creek and a portion of Los Berros Creek), and two, Lopez Dam and Reservoir. *See* April 18, 2024, Fisheries Restoration Grant Program 2024 Funding Opportunity – Final Application, 1732300 – Cecchetti Road Crossing Fish Passage Improvement Project, pdf page 9 of 39.

**The County Has Failed to Implement RPA Sub-element 1 of the Waterway Management Program, Resulting in Harm to Steelhead.**

137.   The County has failed to implement RPA sub-element 1 of the Waterway Management Program, which requires the County to maintain minimum riparian corridor buffer widths for the channel to mitigate or offset the Waterway Management Program's impact of diminishing the ability of riparian corridor to serve the intended conservation role for Steelhead. On information and belief, the County has failed to establish or maintain a minimum riparian-buffer width of 30-feet (15 feet on each side of channel) where space allows given the existing levee footprint, and has not established or maintained a 150-foot riparian canopy. The County has not established or maintained a 15-foot riparian buffer width on each side of Arroyo Grande Creek channel for 69% of the channel within the project area. The County has failed to maintain a minimum riparian buffer width of 10 feet on one side and 20 feet on the other side for the remaining areas of Arroyo Grande Creek. The County has not established or maintained a 7.5-foot riparian buffer width on each side of Los Berros Creek channel for 77% of the channel within the project area. The County has failed to maintain a minimum riparian buffer

width of 5 feet on one side and 10 feet on the other side for the remaining areas of Los Berros Creek. The County has failed to adequately monitor and repair the 36 woody structures in Arroyo Grande Creek Channel. The County has not limited the breaks at the three bridge crossings (Union Pacific Railroad, 22nd Street, and U.S. Highway 1 crossings) to only 20 feet up and down stream of each crossing.

138.   The County has also failed to implement or maintain the habitat improvements as further described in the Waterway Management Program project description. As one example, the County has failed to meet the success criteria for vegetation of 60% native understory vegetation within impacted areas and 100% area cover for overstory. 2017 BiOp at 67. On information and belief, the County is not meeting the success criteria for vegetation maintenance. There is extensive invasive and non-native vegetation in the project area, including giant reed (*Arundo*) and castor bean. *Arundao* is an extremely invasive plant species that populates areas adjacent to the lower stem of Arroyo Grande Creek. *See* Case No. 2:24-cv-6854-SPG-AS, Dkt. 13-2 at ¶ 98-99 (Declaration of Tevin Schmitt In Support of Plaintiffs' Motion for Preliminary Injunction). Invasive and non-native plant species are very difficult to control, and the County's implementation and maintenance of the Waterway Management Program has not been successful in meeting success criteria for vegetation.

139.   As another example, the County has failed to implement vegetation maintenance activities as proposed under the Waterway Management Program. The 2017 BiOp explains that under the proposed action, woody and non-woody vegetation within the buffer will be undisturbed, with the exception of trees that have fallen over and are a risk to the integrity of the levee (*e.g.*, lodged against levee or bridge) or have the potential to increase the risk of flooding. 2017 BiOp at 8. NMFS notes that if a tree is removed because it has fallen over, the root ball will be left intact to enable re-sprouting and to help stabilize soils. *Id.* However, in 2023, the County removed large woody vegetation that had fallen over without explaining how the removal of that woody vegetation was a risk to the integrity of the levee or increased the risk of flooding. *See* December 2023,

Arroyo Grande Creek Channel Waterway Management Program, Routine Maintenance Agreement Annual Status Report ("Dec. 2023 Annual Status Report"), page B-3. The County also failed to report whether the root ball was left intact to enable re-sprouting and to help stabilize soils when it removed woody vegetation in 2023. *Id.*

140.   By failing to implement RPA sub-element 1 that was designed to minimize harm to Steelhead, while continuing to implement the harmful aspects of the Waterway Management Program, the County is perpetuating unlawful take of Steelhead.

**The County Has Failed to Implement RPA Sub-element 2 of the Waterway Management Program, Resulting in Harm to Steelhead.**

141.   The County has failed to implement RPA sub-element 2, which was designed to limit the impact of the County's sediment-management activities on Steelhead freshwater rearing and migration areas in Arroyo Grande Creek and related life stages of Steelhead. The County's ongoing sediment removal for maintenance in Arroyo Grande Creek has not conformed to the standards set by NMFS in RPA sub-element 2(b). The County has implemented its ongoing sediment removal for maintenance in a fashion that does not rehabilitate natural geomorphic conditions and Steelhead habitat conditions. As just one example, the County conducted sediment removal activities from September 11 through November 17, 2023, in Arroyo Grande Creek. *See* Dec. 2023 Annual Status Report at 3.

142.   The County has not designed ongoing sediment removals to involve only discrete, short (less than or equal to 500 linear feet) segments where the capacity of the segment is reduced more than 50% of the design freeboard for 10-year flood protection. For example, the County states that sediment removal actions in September-November 2023 "occurred in all or some" of sediment management zones ("SMZs") 1 – 2, 4 – 12/13, 16, and 20 – 22, the main channel adjacent to SMZs 3, 14, and 18, an area north of the main channel between SMZs 5 and 6, and north and south of the Los Berros Diversion Channel around Century Land Bridge at the east end of the project area. *See* Dec. 2023 Annual Status Report at 3, 8. The County's 2023 Annual Status Report does

not indicate where exactly sediment removal occurred within these multiple SMZs, or the volume of sediment removed. However, the Figure A-1 from the Dec. 2023 Annual Status Report shows the locations of SMZs.

143.    Based on this information, the County's 2023 sediment removal actions in SMZs 1 – 2, 4 – 12/13, 16, and 20 – 22, the main channel adjacent to SMZs 3, 14, and 18, an area north of the main channel between SMZs 5 and 6, and north and south of the Los Berros Diversion Channel around Century Land Bridge at the east end of the project area did not conform with the RPA 2, resulting in harm to Steelhead.

144.    The County's ongoing maintenance sediment removal have also not conformed or lacked sufficient information to demonstrate conformance with the criteria set forth in RPA sub-element 2(b), including but not limited to the requirement that sediment removal: (i) not exceed 20% of the channel length (less than 2,740 feet of Arroyo Grande Creek and 640 feet of Los Berros Creek); (ii) involve less than 500 linear feet along the channel bed; and (iii) that each sediment removal site be separated by a minimum distance of 500 feet, and within the 500-foot stretch of channel there be no sediment removal activities that will occur for that same year. On information and belief, in its September through November 2023 sediment removal activities, the County has not complied with these criteria.

145.    The County's sediment removal work plans also did not comply with these criteria. For example, the County's August 18, 2023 update to its 2023 Annual Vegetation Management and Sediment Removal Work Plan exceeded 20% of the channel length (more than 2,740 feet of Arroyo Grande Creek and 640 feet of Los Berros Creek); involved more than 500 linear feet along the channel bed; and failed to ensure each sediment removal site was separated by a minimum distance of 500 feet, and within the 500-foot stretch of channel there be no sediment removal activities that will occur for that same year. *See* Aug. 18, 2023, County of San Luis Obispo Arroyo Grande Creek Channel Waterway Management Program – Update to 2023 Annual Vegetation Management and Sediment Removal Work Plan, at 7-10 (including Table 1, showing deviations from the

2017 RPA sub-element 2). The County identified 14 out of 22 SMZs for sediment removal, plus two additional SMZs not previously identified under the Waterway Management Program. *Id.* at 1. The County also failed to justify how actions taken in September through November of 2023, well after the January through March 2023 winter storms, qualified as "emergency" response actions as opposed to annual maintenance activities under the Waterway Management Program. *Id.*

146.   The County's sediment removal work plans have also failed to include information regarding the status of each alcove within the action area, including whether the alcove is functioning as designed or needs repair, and did not include specifications to ensure the alcoves are maintained in the secondary channels and remain connected to the main channel at the downstream end. For example, the County's August 18, 2023 update to its 2023 Annual Vegetation Management and Sediment Removal Work Plan did not even mention the term alcove. The standard in RPA sub-element 2(c) to monitor and report on alcove integrity was designed to minimize stranding risk to Steelhead from the County's primary and secondary channel design for the Waterway Management Program. The reasonable and prudent measures in the ITS require the County to undertake measures to minimize effects to Steelhead resulting from habitat creation, including the creation of alcoves. *See* 2017 BiOp at 96 (reasonable and prudent measure 3). By failing to report or assess compliance with this standard, the County has failed to implement the measures identified by NMFS to ensure that the Waterway Management Program will minimize the risk of Steelhead stranding.

**The County Has Failed to Implement RPA Sub-element 3 of the Waterway Management Program, Resulting in Harm to Steelhead.**

147.   The County has failed to implement RPA sub-element 3, resulting in harm to Steelhead and loss of take protection. Based on the permit issuance date of April 26, 2019, to offset the adverse impacts of the Waterway Management Program that NMFS expected would reduce the function and value of the area as a freshwater rearing site and freshwater migration site for Steelhead, the County was required to:

- Convene a panel of experts to advise the development and implementation of the lagoon restoration plan by July 26, 2019
- Submit a draft EIR to NMFS by April 26, 2022
- Achieve certification of a final EIR by October 26, 2023
- Completely implement the lagoon restoration project by October 26, 2025

148.    On information and belief, the County has completely failed to submit a draft EIR to NMFS, has completely failed to certify a final EIR, and has not developed a lagoon restoration project and thus is nowhere close to fully implementing the project by the October 26, 2025 deadline. Reasonable and prudent measure 4 required the County to provide NMFS with yearly status reports on the progress towards completing RPA sub-element 3. 2017 BiOp at 96. On information and belief, the County has failed to provide annual reports on the status of completing RPA sub-element 3. On information and belief, the County is not close to finalizing and will not timely complete the lagoon restoration project identified in the RPA sub-element 3 to mitigate the harms of the County's Waterway Management Program and ensure that resulting take of Steelhead is only incidental. On information and belief, the County decided the levee removal setback, an action originally proposed by the County itself as part of the RPA, is not feasible and should not be carried forward in the proposed alternatives analysis.

149.    The County's delay and failure to implement the lagoon restoration project goes well beyond the flexibility allowed for implementing RPA sub-element 3. On information and belief, NMFS has not agreed to extend the timelines set forth in RPA sub-element 3 or otherwise modify the language of the RPA. NMFS already determined in its final 2017 BiOp that the lagoon restoration project was necessary to avoid jeopardy to Steelhead. NMFS also concluded that the RPA including the lagoon restoration project is economically and technologically feasible and would avoid the likelihood of jeopardizing the continued existence of listed species or resulting in the destruction or adverse modification of critical habitat. *See* 2017 BiOp at 88-94; 50 C.F.R. § 402.02. By failing to implement RPA sub-element 3 while continuing to implement the harmful

aspects of the Waterway Management Program, the County is perpetuating unlawful take of Steelhead.

150.    By failing to implement the RPA in the 2017 BiOp, the County has lost the incidental take authorization that the 2017 BiOp would otherwise have provided the County for its implementation of the Waterway Management Program and all take of Steelhead that the County's implementation of the Program is causing is unlawful.

**The County Failed to Comply with the T&C of the ITS for the Waterway Management Program, Resulting in Harm to Steelhead.**

151.    The County has failed to comply with the T&C of the 2017 BiOp, and therefore lost ESA take authorization. For example, the County has conducted Waterway Management Program project activities when Steelhead are most likely to be present or affected, contrary to T&C 1(A). The County conducted sediment removal and levee repair activities from September through November 2023. *See* Dec. 2023 Annual Status Report at 2-3. This T&C was specifically designed to minimize adverse impacts to Steelhead from the Waterway Management Program. By failing to comply with T&C 1(A), the County has failed to ensure the terms and conditions of the ITS are followed for the duration of the Waterway Management Program, contrary to T&C 1(A).

152.    On information and belief, the County has failed to annually report turbidity and water temperature measurements from areas downstream of each of the Arroyo Grande Creek three bridge crossings at least 8 time per year as required by T&C 2(A) and (B). These terms and conditions were designed by NMFS to minimize uncertainty that these areas will generate elevated levels of turbidity and provide cooler water temperature levels over time. Without these reports, there are no assurances that the County's actions are minimizing harms to Steelhead. On information and belief, the County has failed to add trees within 10 feet of active stream channel to enhance canopy on 3.41 acres as required by T&C 2(B). On information and belief, the County has failed to take field observations and sequential aerial photographs of log structures and created alcoves, measure extent of habitat creation from the log structures and created alcoves, monitor

and identify any failures of the log structures or created alcoves, and annually report this information to NMFS as required by T&C 3(A). On information and belief, the County has failed to take water velocity measurements at least 8 times per year at multiple points along a channel cross-section including the active channel for each log structure in the action area, and annually report this information to NMFS as required by T&C 3(B).

153.    On information and belief, the County has failed to submit annual reports to NMFS by January 15 each year, and those annual reports it has submitted do not contain the minimum information required by T&C 4(A). For example, the County's December 2023 Annual Status Report fails to include much of the information required by T&C 4(A). It fails to identify the locations of areas planted, seeded, or revegetated, and failed to provide any information about efforts to ensure success of new plantings, and did not mention performance or success criteria. Dec. 2023 Annual Status Report at 2-5. It also failed to describe the location of fish removal and release locations, included no color photographs, and failed to describe equipment and methods used, number of fish relocated, injured, or killed, number observed but not relocated. *Id.* at 3, 8.

**The County Has Implemented the Waterway Management Program in Ways Not Covered by the 2017 BiOp or ITS.**

154.    In addition to failing to implement the RPA or comply with the T&C of the ITS, the County has implemented the Waterway Management Program in a fashion not covered by the 2017 BiOp or ITS. Because this implementation has caused harm to Steelhead and lawful harm to Steelhead is necessarily limited to the Program described in the 2017 BiOp and ITS, the County is perpetuating unlawful take of Steelhead.

155.    As an example, the County conducted vegetation maintenance outside the work window of July 1 to October 15 (*see* BiOp at 11) by implementing vegetation maintenance before July 1 and after October 15. The County conducted vegetation maintenance in Arroyo Grande Creek from at least October 18 through October 31, 2021, despite surface water existing in the Creek during that time. NMFS informed the County that there is no incidental take coverage under the ITS in the 2017 BiOp for routine

vegetation maintenance along the channel, and that impacts from vegetation maintenance outside the work window of October 15 were not considered in the 2017 BiOp. The County also conducted vegetation maintenance in Arroyo Grande Creek from April 20, 2023 through October 17, 2023. *See* Dec. 2023 Annual Status Report at 3. The County's vegetation maintenance implemented in the channel after October 15, when surface water was present in Arroyo Grande Creek, significantly modified Steelhead critical habitat and impaired Steelhead essential behavioral patterns including breeding, spawning, rearing, migrating, feeding, and sheltering. Because these actions were outside the scope of actions permitted by the 2017 BiOp's ITS, the County's actions resulting in harm to Steelhead constitute unlawful take prohibited by ESA § 9.

**The County's Actions Have Caused More Take than Authorized Under the 2017 BiOp ITS.**

156.  The County's continued implementation of the Waterway Management Program without complying with the T&C or the RPA is also causing take of more Steelhead than permitted by the ITS. The ITS authorized incidental take from the one-time capture and relocation during installation of the log structures, annually from capture and relocation during maintenance of log structures and creation of alcoves, and annually from restricted rearing and migration behavior due to the unsuitable water temperature near bridge locations. 2017 BiOp at 96. NMFS concluded that this anticipated take, coupled with the effects of the Waterway Management *as modified by the RPA* is not likely to result in jeopardy to Steelhead or destruction or adverse modification of Steelhead critical habitat. 2017 BiOp at 96. However, the County's take of Steelhead from other actions—whether beyond those actions identified in the ITS and/or in failing to implement the RPA—is not covered by the 2017 BiOp's ITS. As just one example, the ITS does not authorize any incidental take from vegetation maintenance or sediment removal activities outside of the work window starting July 1 and ending October 15 each year. *See, e.g.*, 2017 BiOp at 11. Thus, the County's actions that have caused more take than what was authorized by the 2017 BiOp ITS constitute unlawful

take in violation of ESA § 9.

**The County's Cecchetti Road Crossing Wash Out**

157.    The Cecchetti Road crossing over Arroyo Grande Creek is located approximately 8 miles upstream of Arroyo Grande Creek confluence with the Pacific Ocean and 5 miles downstream of Lopez Dam. The previous road crossing consisted of an Arizona type crossing with a vented ford, low water crossing with a 72-inch diameter corrugated metal pipe ("CMP") culvert. This location is identified in the California Fish Passage Assessment Database as ID No. 142. The crossing posed a velocity barrier and passage barrier on the upstream side where sediment was deposited. It also limited upstream migration of both adult and juvenile Steelhead due to steep grade, hydraulic capacity, debris accumulation, and bed-load transported material. As NMFS identified, the former Cecchetti Road crossing is a fish passage impediment. *See* Feb. 2024, NMFS, Role of Arroyo Grande Creek and Tributaries, San Luis Obispo County, California, In Meeting NMFS' South-Central California Coast Steelhead Viability/Recovery Criteria, page 40 (Figure 20).

158.    The County was aware of the deficiencies of the previous concrete and culverted road crossing and the risk that the road crossing would wash out in heavy storms. For example, in 2009 the Cecchetti Road crossing was identified as a fish passage barrier during a watershed assessment and stream inventory. The culvert was inadequate for the volume of stream flow in Arroyo Grande Creek and blocked fish passage due to debris blockages and higher channel velocity within the culvert. The County noted in its April 2024 grant application to replace the Cecchetti Road crossing that the County had ranked the Cecchetti Road culvert as a severe passage impediment for juvenile Steelhead because of low residual inlet and outlet water levels in the culvert. *See* April 18, 2024 Fisheries Restoration Grant Program 2024 Funding Opportunity – Final Application, 1732300 – Cecchetti Road Crossing Fish Passage Improvement Project, pdf pages 11-12 of 39.

159.    The Plaintiffs' Initial Notice to the County identified this road crossing as

one of the various infrastructure downstream of Lopez Dam causing take by impeding Steelhead migration. However, in its July 26, 2024, letter responding to the ESA notice, the County explained that the Cecchetti Road culvert was washed out by flooding in 2023. Heavy rains in January and March of 2023 caused Arroyo Grande Creek to flow over the roadway and completely undermined the integrity of the crossing. At some point between June and September of 2023, the Cecchetti Road crossing failed and washed into Arroyo Grande Creek (designated critical habitat for Steelhead).

160.   Following the wash out, the County conducted in-water work to remove portions of the storm-damaged structure. The County removed concrete deck and approaches, excavated fill and removed the culvert. Yet debris from the washout still remains in Arroyo Grande Creek.

161.   The County's failure to address Cecchetti Road and prevent the wash out—despite evidence in the record that the County flagged this crossing as problematic as early as 2009—and the resulting wash out that sent debris and sediment downstream into Arroyo Grande Creek, constitute harm to Steelhead caused by the County's inadequate maintenance of this road crossing. The County noted that between 5-10 Steelhead were observed downstream of the Cecchetti Road crossing in the spring of 2022. *See* April 18, 2024, Fisheries Restoration Grant Program 2024 Funding Opportunity – Final Application, 1732300 – Cecchetti Road Crossing Fish Passage Improvement Project, pdf page 9 of 39. The 2023 wash out caused portions of the roadway foundation, culvert, and surrounding fill to fall into Arroyo Grande Creek resulting in significant habitat modification and degradation.

162.   The harm from the wash out to Arroyo Grande Creek is significant: NMFS has recognized that failures related to road building and maintenance activities produce the highest sediment delivery to streams when compared to other erosion processes. *See* 64 Fed. Reg. at 60,728. In addition to sedimentation, the County acknowledged that the remnant structure in Arroyo Grande Creek posed a total barrier to fish passage and a detriment to streamflow (until portions were removed). The wash out thereby

First Amended Complaint                    50          CASE NO. 2:24-cv-06854_____

significantly impaired Steelhead essential behavioral patterns including breeding, spawning, rearing, migrating, feeding, and sheltering.

163.  Moreover, the debris that remains in Arroyo Grande Creek is causing ongoing harm to Steelhead because it is causing excessive siltation in the Creek's streambed, excessive turbidity in the Creek's water column, and artificially raises the channel bottom in a manner that impedes Steelhead migration, among other impacts. This constitutes significant habitat modification or degradation that significantly impairs Steelhead essential behavioral patterns including breeding, spawning, rearing, migrating, feeding, and sheltering. The County has acknowledged that the remaining debris is causing ongoing Steelhead passage issues. This includes the concrete from the crossing left in the channel bed that raises the channel bottom and impedes low flows. The County has acknowledged that there is still a substantial amount of remnant concrete, fill, and rip rap from the former concrete and culverted crossing. The County noted that existing concrete footings from the old crossing artificially raise the channel bottom, limit gravel accumulation and natural channel formation, and exacerbate fines deposition.

164.  The County's harms to Steelhead due to its past and ongoing inadequate maintenance of the Cecchetti Road crossing constitute unlawful "take" of an ESA-protected species that is prohibited by ESA § 9.

**The County's Water Treatment Plant Chemical Spill**

165.  In support of its Memorandum of Points and Authorities In Opposition to Plaintiffs' Motion for a Preliminary Injunction (Dkt. 18), the County filed a declaration from Dr. Charles Hanson that described a chemical spill from the County's water treatment plant that killed fish, including Steelhead, in Arroyo Grande Creek: "In 2007 approximately 30 fish, some of which were identified as small steelhead, were found dead in Arroyo Grande following a chemical spill from the Lopez Lake water treatment plan (Sneed 2007). Staff from DFG observed about 12 steelhead carcasses ranging from about 25 to 28 inches in length in lower Arroyo Grande after a sudden drying of the creek." Dkt. 18-8 at ¶ 41 (Declaration of Dr. Charles Hanson).

166.    The chemical spill from the County's operation of the water treatment plant caused harm and resulted in unlawful take of Steelhead in violation of ESA § 9. Dr. Hanson's declaration acknowledges the County's actions caused mortality of Steelhead, which constitutes take. The County's operation of the Water Treatment Plant that caused a chemical spill and killed fish including Steelhead constituted harm. The County's harm to Steelhead from its chemical spill constituted "take" that prohibited by ESA § 9. The chemical spill is clear evidence of County actions causing take of Steelhead. In addition, based on information and belief, the County has not taken actions to prevent a similar chemical spill from occurring in the future. Thus, the County's ongoing operations at the water treatment plant also are causing or at least risking harm to Steelhead.

**The County's Operation and Maintenance of Other Infrastructure Within Arroyo Grande Creek Harms SCCC Steelhead**

167.    The County's operation and maintenance of other infrastructure in addition to Lopez Dam within Arroyo Grande Creek harms SCCC Steelhead by creating partial impediments to migration that effectively restrict adult and juvenile Steelhead migration and become full impediments to such migration during periods of low flow. *See* 2024 NMFS: Role of Arroyo Grande Creek at 38-42.

168.    The County has identified multiple known barriers to Steelhead passage in Arroyo Grande Creek that the County itself has prioritized for improvements. *See* 2007 IDRS at 12-13.

169.    For example, abandoned dam and diversion footings at stream mile 11.22 from the confluence with the ocean are passage barriers to adult and juvenile SCCC Steelhead. *See* 2007 IDRS at 14. As another example, the County's double arch culvert at the Biddle Park access road crossing over Arroyo Grande Creek is a passage barrier to adult and juvenile SCCC Steelhead. As another example, the County's grade control structure downstream of Valley Road in Los Berros Creek is a barrier to adult and juvenile SCCC Steelhead. As noted above, the debris remaining in Arroyo Grande Creek at the former location of the Cecchetti Road crossing is also a barrier to SCCC Steelhead.

170.    The County's operation and maintenance of instream infrastructure that creates a partial barrier to Steelhead passage, when combined with reduced flows from the County's operation and maintenance of Lopez Dam, significantly modifies and degrades SCCC Steelhead habitat by preventing Steelhead migration and by restricting sediment transport. The County's operation and maintenance of infrastructure within Arroyo Grande Creek that creates partial or full impediments to Steelhead passage and unfavorable bottom substrate conditions perpetuates harm to SCCC Steelhead and causes take in violation of the ESA.

### E. California Red-Legged Frog (*Rana aurora draytonii*) and the County's Operations of the Arroyo Grande Project

#### California Red Legged Frog and Arroyo Grande Creek

171.    Arroyo Grande Creek downstream from Lopez Dam provides habitat for CRLF, which FWS listed as threatened under the ESA in 1996. 61 Fed. Reg. 25813 (May 23, 1996).[3] At the time of listing in 1996, FWS determined the CRLF had been extirpated from 70 percent of its former range. 61 Fed. Reg. at 25813.

172.    CRLFs have been observed in Arroyo Grande Creek immediately downstream from the Lopez Dam outlet. *See* 2004 HCP and EA/IS at 2-1, 1-64, 1-78. An assessment of Arroyo Grande Creek in 2017 found suitable instream aquatic habitat present, noting that the banks of the Creek support vegetation that could be used as upland refugia, and noted a California Natural Diversity Database record from 2002 of CRLF in Arroyo Grande Creek. *See* May 2017, Bridge Street Bridge Rehabilitation Project Biological Assessment ("2017 Bridge Street BA"), page 47.

173.    More recent aquatic surveys in 2021 have observed CRLF in Arroyo Grande Lagoon. *See, e.g.*, July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3).

---

[3] California red-legged frog is also considered a Species of Special Concern ("SSC") by CDFW.

First Amended Complaint                53                CASE NO. 2:24-cv-06854_____

174.    The primary factors negatively affecting the CRLF throughout its range are habitat loss and alteration. 61 Fed. Reg. at 25824. Large reservoir construction projects have significantly altered or eliminated CRLF habitat. *Id.* at 25,824-25,825. Water diversions also degrade or eliminate CRLF habitat. *Id.* at 25825.

## The County's Operation of the Arroyo Grande Project is Harming California Red-Legged Frog

175.    The County's operation and maintenance of the Arroyo Grande Project has cut off and eliminated CRLF habitat above Lopez Dam, has limited and is limiting and reducing the quantity of water flow in Arroyo Grande Creek, resulting in a dewatering and modification of instream flow in Arroyo Grande Creek and Arroyo Grande Lagoon. *See, e.g.*, 2005 FWS Comments at 8 (FWS explaining, "we do not agree that take of CRLFs would not occur as a result of this activity").

176.    The County's elimination of CRLF habitat due to construction of Lopez Dam reduced the amount of available habitat for CRLFs in the Arroyo Grande Creek watershed.

177.    The County's modification of instream flows in Arroyo Grande Creek and Arroyo Grande Lagoon reduces the amount of water and thereby reduces the amount of available habitat as well as the quality of remaining habitat for CRLF. *See* 61 Fed. Reg. at 25,825 (diverting water from the frog's natural habitats to reservoirs disrupts the natural hydrologic regime and "[l]oss of habitat and decreases in habitat quality will occur as a result of on-site degradation of the stream environment and/or riparian corridor, or through modification of instream flow."). Less available water within Arroyo Grande Creek and Arroyo Grande Lagoon means there is less habitat for CRLF reproduction and disruption of reproduction, foraging, estivation and dispersal. 61 Fed. Reg. at 25,825.

178.    For example, the County's modification of flows by altering the timing, duration, and volume of water releases from Lopez Dam has rendered and continues to render portions of Arroyo Grande Creek and Arroyo Grande Lagoon unsuitable for CRLF reproduction.

179.    CRLF estivation habitat is areas that provide cover and moisture during the dry season (mid to late summer) within 300 feet of a riparian area. 61 Fed. Reg. at 25,814. Without the necessary aquatic habitat, CRLF is unable to reproduce in the area. *Id.* (estivation habitat and the ability to reach estivation habitat is essential for the survival of CRLFs within a watershed). The County's low released flows in the summer diminish CRLF reproduction by drying up pools containing larvae or causing salinity in Arroyo Grande Lagoon to reach lethal levels. *Id.* In particular, areas downstream of State Route 1 could provide CRLF habitat but usually go dry. *Id.* at 1-83.

180.    After noting the presence of CRLF tadpoles in Arroyo Grande Creek immediately upstream of the flood control structure ("flapgates") at the western end of the Arroyo Grande Creek north levee, a July 2021 aquatic survey by California State Parks noted that "[t]here were apparently no remaining lotic areas of Arroyo Grande Creek downstream of State Route 1, a reach that had been flowing four months earlier." *See* July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3). The survey observed no surface water was present downstream of 22nd Street. *Id.*

181.    A subsequent aquatic survey in October of 2021 observed that lower Meadow Creek, including the area at the confluence of Arroyo Grande Lagoon, was dry. *See* Oct. 28, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3) (noting "the contiguous lagoon pool did not extend north of Post #1, which is unusual.").

182.    These dry conditions were caused by the County failing to release sufficient water from Lopez Dam.

183.    Thus, the County's operation and maintenance of the Arroyo Grande Project that modifies and reduces flows released into Arroyo Grande Creek perpetuates harm to CRLF by reducing the amount and quantity of available habitat necessary for the frog's estivation and reproduction.

184.    The County's operation of Lopez Lake in a manner that has allowed non-

native predator and competitor species to be released from the lake and proliferate in downstream Arroyo Grande Creek waters also harms the CRLF because these non-native species prey on the frogs and disrupt natural community dynamics for the species. *See* 61 Fed. Reg. at 25,825.

185.    The County's modification of flow releases into Arroyo Grande Creek that creates year-round flows in certain years allows predator populations to survive in areas that would normally be dry in the summer. *See* 2004 HCP and EA/IS at 1-81, 1-82.

186.    Also, predatory bullfrogs have been observed at the base of Lopez Dam in areas that otherwise provide habitat for CRLF breeding and tadpole rearing. *Id.* at 1-85. These predatory bullfrogs are abundantly present at the base of Lopez Dam due to conditions created by the dam that are conducive to the proliferation of bullfrogs.

187.    These predatory fish and bullfrogs prey on CRLFs and disrupt the natural community dynamics necessary for CRLF conservation, recovery and survival. 61 Fed. Reg. at 25,825; *see also* 2004 HCP and EA/IS at 1-80 (noting that introduced predators including bullfrogs and predatory fish can be a significant threat to CRLF populations), 1-86 ("Introduced predators in Arroyo Grande Creek, such as bullfrogs and predatory fish, reduce red-legged frog habitat value").

188.    The County's failure to screen or otherwise prevent the dispersal of non-native predator fish and bullfrogs into Arroyo Grande Creek and maintenance of conditions (such as the relatively warm and stagnant waters of Lopez Lake) that promotes the growth of predatory fish and bullfrog populations thus perpetuates harm to CRLFs, causing take in violation of the ESA.

189.    The County's maintenance activities include vegetation removal, herbicide spraying, shaping of banks to control erosion, and desilting of Arroyo Grande Creek. These County maintenance activities all degrade CRLF habitat. 61 Fed. Reg. at 25,825. The County's operation and maintenance of the Arroyo Grande Project further increases siltation in Arroyo Grande Creek and its tributaries. Siltation in the Arroyo Grande Creek watershed that occurs during the CRLF breeding season causes asphyxiation of CRLF

1  eggs and small CRLF larvae. *See* 61 Fed. Reg. at 25826.

2      190.   Harms from the County's operation and maintenance of the Arroyo Grande

3  Project are significant because Arroyo Grande Creek is listed as one of the core areas for

4  focused recovery efforts by FWS. *See* FWS, Recovery Plan for the California Red-legged

5  Frog (*Rana aurora draytonii*) (2002), pages 55, 144. As a core area, Arroyo Grande

6  Creek represents a viable population and will contribute to connectivity between habitats

7  and populations. *Id.* This designation further highlights the importance of protecting

8  CRLF within Arroyo Grande Creek from the harm perpetuated by the County's

9  operations and maintenance of the Arroyo Grande Project.

10      **F. Tidewater Goby (*Eucyclogobius newberryi*) and the County's Operations**

11      **of the Arroyo Grande Project**

12      **Tidewater Goby and Arroyo Grande Creek**

13      191.   Tidewater Gobies occur in tidal streams associated with coastal wetlands in

14  California. Arroyo Grande Creek provides habitat for Tidewater Goby, which FWS listed

15  as endangered under the ESA in 1994. 59 Fed. Reg. 5494 (March 7, 1994).

16      192.   In 1994 at the time of its listing, Tidewater Goby had disappeared from

17  nearly 50 percent of the coastal lagoons within its historic range since 1900. 59 Fed. Reg.

18  at 5494. The number of extirpated localities of Gobies has left remaining populations so

19  widely separated throughout most of the species' range that recolonization is unlikely. *Id.*

20      193.   The primary threats to Tidewater Goby include modification and loss of

21  habitat due to coastal development projects that result in the loss of coastal saltmarsh

22  habitat, channelization of habitat, upstream diversions that alter downstream flows and

23  thereby diminish the extent of marsh habitats that occurred historically at the mouths of

24  most rivers and creeks in California, and alteration of water flows. 59 Fed. Reg. at 5495;

25  *see also* 71 Fed. Reg. 3524, 3525 (Jan. 23, 2006) (Recovery Plan for the Tidewater Goby

26  (*Eucyclogobius newberryi*)).

27      194.   Tidewater Gobies have a short lifespan and seem to be an annual species,

28  which further restricts their potential to recolonize habitats from which they have been

extirpated. 59 Fed. Reg. at 5494.

195.    Tidewater Gobies occur in loose aggregations of a few to several hundred individuals on the substrate in shallow water less than 1 meter. *Id.* Peak nesting occurs April through May when male Gobies dig a vertical nesting burrow deep in clean, coarse sand. *Id.* Male Gobies remain in the burrows to guard eggs that are hung from the ceiling and walls of the burrow until hatching. *Id.*

196.    Larval Gobies are found midwater around vegetation until they become benthic. *Id.*

197.    Spawning year-round is probably unlikely because of seasonal low temperatures and disruptions of lagoons during winter storms. *Id.*

198.    Recent surveys between 2020 and 2023 consistently documented Tidewater Goby in Arroyo Grande Lagoon. *See, e.g.*, May 1, 2020, California State Parks, Aquatic Survey Report for Arroyo Grande, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); June 30, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); Dec. 19, 2023, California State Parks, Aquatic Survey Report for Arroyo Grande, Pismo, Carpenter, and Oso Flaco Lagoons; Pismo State Beach; Oceano Dunes State Vehicular Recreation Area (Reference Permit #TE-101154-3). Tidewater Gobies were also found in Arroyo Grande Creek during sampling in March 2005. *See* FWS, Recovery Plan for the Tidewater Goby (*Eucyclogobius newberryi*) (2005) ("2005 Tidewater Goby Recovery Plan"), page C-21.

**The County's Operation of the Arroyo Grande Project is Harming Tidewater Goby**

199.    The County's construction, operation, and maintenance of the Arroyo Grande Project harms Tidewater Goby in downstream Arroyo Grande Creek by modifying and eliminating coastal saltmarsh habitat and altering downstream flows in Arroyo Grande Creek which then diminish the extent and quality of marsh habitat

occurring at the mouth of Arroyo Grande Creek. This adverse habitat modification has caused mortality and other adverse health impacts to Tidewater Goby in Arroyo Grande Creek and led to a decline in the population of Tidewater Goby in Arroyo Grande Creek.

200.   The County's operation and maintenance of the Arroyo Grande Project including Lopez Dam and limited flow releases to Arroyo Grande Creek (and in turn reduced inflow into Arroyo Grande Lagoon) has and continues to diminish the extent and quality of marsh habitat occurring at the mouth of Arroyo Grande Creek. 59 Fed. Reg. at 5495. This harms Tidewater Goby because the Goby depends on the marsh habitat for its survival and recovery. *Id.* (noting that projects that result in the loss of coastal saltmarsh habitat are currently the major factor adversely affecting the Goby).

201.   Due in part to the County's altered and reduced flow regime for Arroyo Grande Creek caused by the Arroyo Grande Project, NMFS has estimated that only about 20 percent of historical Goby estuarine habitat remains in Arroyo Grande Creek. 2013 SCCC Recovery Plan at 4-9 (Table 4-2). FWS's 1994 listing determination specifically identified water diversion projects in San Luis Obispo County as a development activity that threatens Tidewater Goby habitat. 59 Fed. Reg. at 5496.

202.   On numerous occasions, the County's reduced flow releases into Arroyo Grande Creek have caused the lower reach of the Creek to go completely dry, which eliminates Tidewater Goby habitat. For example, in the summer of 2004 the lower reach of Arroyo Grande Creek went completely dry. *See* FWS, Comments on the February 2004 Draft of the Arroyo Grande Creek Habitat Conservation Plan, San Luis Obispo County, California (June 2005).

203.   As noted above in the section discussing harms to CRLF, more recent aquatic surveys in 2021 documented that Arroyo Grande Creek was completely dry downstream of State Route 1 and downstream of 22nd Street. *See* July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3); Oct. 28, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter

Creek Lagoons (Reference Permit #TE-101154-3) (observing that lower Meadow Creek, including the area at the confluence of Arroyo Grande Lagoon, was dry).

204. The County's modification to the timing and reduced volume of water released from Lopez Dam into Arroyo Grande Creek also reduces the quality of coastal marsh habitat in the watershed—habitat that is essential for Tidewater Goby survival and recovery.

205. The County's reduced flows alter the hydrology in Arroyo Grande Creek and Arroyo Grande Lagoon, resulting in diminished habitat quality (including but not limited to low dissolved oxygen levels) for the Goby and ultimately lower Tidewater Goby abundance. The County's altered flows that reduce the amount of water in Arroyo Grande Creek upstream of Arroyo Grande Lagoon changes the distribution of downstream salinity regimes. 59 Fed. Reg. at 5495.

206. Because Tidewater Goby has relatively narrow salinity tolerances, changes in salinity distributions due to the County's upstream water diversions, such as those that occur on Arroyo Grande Creek due to the County's Arroyo Grande Project operations, adversely affect both the size and distribution of the Goby population of Arroyo Grande Creek. *See id.*

207. In addition to restricting the Goby's habitat by altering downstream salinities, the County's operation of Lopez Dam and reduced flows into Arroyo Grande Creek also negatively impact Tidewater Goby breeding and foraging activities within Arroyo Grande Creek and Arroyo Grande Lagoon. *See* 59 Fed. Reg. at 5496. Gobies breed primarily in sand or mud substrates and avoid areas that contain large amounts of decaying vegetation. *Id.*

208. The County's reduced flows in Arroyo Grande Creek allow aggressive plant species to colonize the otherwise bare sand and mud substrates of coastal lagoon margins and thus degrade habitat quality for the Goby. *Id.*

209. The County's reduced flows into Arroyo Grande Creek also harm the Tidewater Goby population by reducing the deep stream pools that Gobies use to venture

upstream from Arroyo Grande Lagoon. *Id.*

210.    California State Parks recommended in its 2021 aquatic survey report that resource managers and other stakeholders should continue to increase engagement in local water management issues for Arroyo Grande Creek, noting that low water levels seasonally threaten Tidewater Goby and its habitat in Arroyo Grande Creek and Arroyo Grande Lagoon with dewatering and fish kills. *See* July 21, 2021, California State Parks, Aquatic Survey Report for Arroyo Grande, Meadow, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3).

211.    California State Parks repeated this recommendation in its February 2022 aquatic survey report. *See* Feb. 25, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3).

212.    The February 2022 California State Parks survey stated that "local water management and mis-management activities are causing severe negative impacts to these State Park waters and the aquatic species that depend on them," and that "State Parks remains concerned by these ongoing impacts to surface water in Arroyo Grande Creek[.]" *Id.*

213.    Subsequently, a California State Parks September 2022 aquatic survey noted that the numbers of Tidewater Goby in Arroyo Grande Creek appeared greatly diminished since the previous survey three months prior "even though there appears to be unusually-little competition or predation posed by other fish species this year." *See* Sept. 28, 2022, California State Parks, Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE-101154-3) (noting that "dissolved oxygen in Arroyo Grande Lagoon appeared to be alarmingly low at the time of the survey (<1 ppm about 1' below-surface).").

214.    Again, in December 2022, an aquatic survey found Tidewater Goby numbers in Arroyo Grande Lagoon "remarkably low, even acknowledging a lower catch is often expected here during the 'winter months.'" Jan. 10, 2023, California State Parks,

Aquatic Survey Report for Arroyo Grande, Oso Flaco, Pismo, and Carpenter Creek Lagoons (Reference Permit #TE- 101154-3) (noting that "we were surprised that we could not find any in Arroyo Grande Lagoon where Tidewater Goby are typically the most abundant (densest) among all local watersheds.").

215. Thus, the County's operation and maintenance of the Arroyo Grande Project, including reduced flows to Arroyo Grande Creek and reduced inflows to Arroyo Grande Lagoon, perpetuates harm to Tidewater Goby by eliminating and adversely modifying the quality of coastal saltmarsh habitat that the Goby depends on for its survival and recovery.

**G. Least Bell's Vireo (*Vireo bellii pusillus*) and the County's Operations of the Arroyo Grande Project**

**Least Bell's Vireo and Arroyo Grande Creek**

216. FWS listed the least Bell's vireo ("Vireo") as endangered in 1986. 51 Fed. Reg. 16474 (May 2, 1986). Habitat for Vireo is dense, willow-dominated riparian habitats with lush understory vegetation in the immediate vicinity of water courses. *Id.* Ideal nesting habitat includes a wide riparian corridor of more than 250 meters with dense shrub growth extending vertically up to 3 meters, and an open canopy. *Id.*

217. Most Vireo nests are built in willows. 51 Fed. Reg. at 16474. However, Vireo do not exclusively build nests in willows, and habitat structure may be a more important determinant of nesting site selection. *See* FWS, 1998 Draft Recovery Plan for the Least Bell's Vireo ("1998 Vireo Draft Recovery Plan"), page 10. Suitable nesting habitat for Vireo occurs in the riparian vegetation along Arroyo Grande Creek. *See, e.g.*, 2014 Lopez Water Project Habitat Conservation Plan, prepared by H. T. Harvey & Associates for San Luis Obispo County.

218. In 2009, a Vireo was documented several miles north of Arroyo Grande Creek in willows along Pecho Road in Los Osos. *Id.*

219. Primary threats to Vireo include riparian habitat destruction and declines in nest survival, resulting in severe population declines. 51 Fed. Reg. at 16478.

220.   The widespread losses of 60-80 percent of the original population are attributable to, *inter alia*, flood control and water development projects and urban development. *Id.* At the time of listing, Vireo occurred in southwestern California and northwestern Baja California, Mexico, an area representing only a fraction of its former range. 51 Fed. Reg. at 16474. At the time of listing, no population of more than five pairs was known to occur below a major water control project. *Id.*

221.   The Vireo recovery priority number is 3C, indicating it is a subspecies with a high degree of threat, high potential for recovery, and conflicts with development activities. *Id.* at 4.

## The County's Operation of the Arroyo Grande Project is Harming Least Bell's Vireo

222.   The County's construction, operation, and maintenance of the Arroyo Grande Project and reduced flow releases from Lopez Dam into Arroyo Grande Creek harms the Vireo.

223.   The County's reduced flows diminish Arroyo Grande Creek flows downstream from Lopez Dam, depriving the Creek of flows it would normally have at various times of the year. *See, e.g.*, NMFS, ESA Section 7(a)(2) Biological Opinion, Arroyo Grande Creek Waterway Management Program, NMFS Consultation Number: WCR-2014-1677 (Nov. 2017) ("2017 Waterway Management BiOp"), pages 37, 100.

224.   The lower flows in Arroyo Grande Creek that the County's operation and maintenance of the Arroyo Grande Project causes also lowers groundwater elevations underlying the Creek beyond the reach of native riparian vegetation and trees. This has caused a decline in groundwater-dependent native riparian plant species in the Arroyo Grande Creek downstream of Lopez Dam. *See* 2017 Waterway Management BiOp at 45. This alteration and harm to native riparian vegetation harms the endangered Vireo because Vireo depend on densely foliated stands of deciduous trees and shrubs, particularly willows, with a dense understory adjacent to slow-moving watercourses. *See* 1998 Vireo Draft Recovery Plan at 10. Vireo are especially discriminate about the

vegetation types they nest in and forage from. *See* 1998 Vireo Draft Recovery Plan at 4 (noting that Vireo is dependent upon riparian habitat for breeding); 51 Fed. Reg. at 16,474 (noting that "the narrow and limited nature of the habitat of the least Bell's vireo makes the subspecies more susceptible to major population reductions than are the other subspecies.").

225.    Vireo occurs in the following riparian habitat types: cottonwood-willow woodlands/forests, oak woodlands, and mule fat scrub, and prefer early successional habitat. *Id.* at 10. Alterations to Vireo's riparian habitat can result in profound effects on its survival and population. 51 Fed. Reg. at 16,474.

226.    The County's alteration of Arroyo Grande Creek hydrology has promoted the spread of invasive non-native plants including Himalayan blackberry, English ivy, fennel, and weeping willow that are better able to access the lower groundwater levels or that have lesser groundwater needs. The County's Arroyo Grande Project operations have promoted the replacement of native riparian vegetation with these non-native invasive plants. These invasive plants provide little suitable habitat or food for the Vireo, because the Vireo requires the structural diversity associated with native vegetation and mature riparian forests to breed.

227.    By degrading the native riparian plant community, the County's operation of the Arroyo Grande Project has increased mortality and other harm to the Vireo.

228.    The County's maintenance activities in riparian areas, including removal of riparian vegetation, along Arroyo Grande Creek also harm Vireo by reducing potential Vireo nesting habitat and otherwise disturbing the birds, which in turn has led to a decline in Vireo numbers. The County conducts maintenance activities within riparian areas during the typical Vireo nesting season (between March and August or September) thus disrupting and/or preventing nesting of Vireo. 51 Fed. Reg. at 16474.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**H. Southwestern Pond Turtle (*Actinemys pallida*) and the County's
Operations of the Arroyo Grande Project**
**Southwestern Pond Turtle and the Arroyo Grande Creek**

229.    The FWS proposed to list and is currently considering listing the
southwestern pond turtle as threatened under the ESA along with a proposed ESA section
4(d) rule that would prohibit unauthorized take of southwestern pond turtle. 88 Fed. Reg.
68370 (Oct. 3, 2023) (proposing listing); 89 Fed. Reg. 23534 (April 4, 2024) (reopening
public comment on proposed listing).

230.    The southwestern pond turtle is a species found in central and southern
California and Baja California, Mexico. 89 Fed. Reg. 23534. The southwestern pond
turtle inhabits: (1) ponds, lakes, streams, marshes, estuaries, and other permanent waters
for breeding, feeding, overwintering, sheltering, and dispersal; (2) basking sites that
allow for thermoregulation; and (3) terrestrial or upland features adjacent to the aquatic
habitat for nesting, overwintering and estivation, and dispersal and connectivity between
populations. 88 Fed. Reg. at 68373, 68376. The turtles are long-lived, with one individual
living to at least 55 years of age. *Id.* Courtship and mating behavior has been observed
from April through November. *Id.* Nesting behavior and oviposition usually occur from
May through July. *Id.*

231.    Southwestern pond turtles inhabit reaches of streams that contain deep pools,
from 3 to 5.2 feet deep. *See* County of San Luis Obispo (Oct. 2010), Arroyo Grande
Creek Channel Waterway Management Program Final Environmental Impact Report,
SCH No. 2009061030 ("Arroyo Grande Creek WMP 2010 EIR"), page 4-59.

232.    The most important habitat needs for the southwestern pond turtle include
aquatic habitat, upland habitat, and basking sites. 88 Fed. Reg. at 68376.

233.    The primary threats to southwestern pond turtle include, *inter alia*, habitat
loss and fragmentation, altered hydrology, predation, and the effects of climate change.
88 Fed. Reg. at 68378.

234.    Three key factors that are the most influential in driving the southwestern

pond turtle's current and future condition are: (1) anthropogenic impacts, (2) predation by
bullfrogs, and (3) drought. *Id.* Specifically, "upland land conversion and draining of the
extensive wetlands or channeling of streams have resulted in the decline and extirpation
of many populations and left the remaining western pond turtle populations within these
areas disjunct, scattered, and isolated from each other with little upland habitat available
for nesting." *Id.*

235.   Threats associated with altered hydrology adversely impacting southwestern
pond turtle include: wetland conversion and draining; stream channelization and ditching;
modification of flow regimes; groundwater pumping; water diversions; damming; and
water regulation for flood risk management. 88 Fed. Reg. at 68378. These threats affect
the hydrology, thermal conditions, and structure of the western pond turtle aquatic and
upland habitat. *Id.*

236.   Southwestern pond turtle inhabits Arroyo Grande Creek. *See* Arroyo Grande
Creek WMP 2010 EIR at 4-60 and D-20. Southwestern pond turtles utilize instream and
open water habitat of Arroyo Grande Creek, the flow of which is regulated by Lopez
Dam. *See* Arroyo Grande Creek WMP 2010 EIR at 4-45.

## The County's Operation of the Arroyo Grande Project is Harming Southwestern Pond Turtle

237.   The County's operation and maintenance of the Arroyo Grande Project is
harming southwestern pond turtle by creating a barrier to the turtle's migration, creating
stretches of unsuitable habitat, and degrading or eliminating habitat.

238.   The Arroyo Grande Project's harms to southwestern pond turtle have
included causing turtle mortality and interfering with reproduction and other essential
lifecycle behaviors thus leading to a decline in southwestern pond turtle population in the
Arroyo Grande Creek watershed.

239.   Lopez Dam and Lopez Lake act as a barrier to turtle migration for any
turtles attempting to move from downstream Arroyo Grande Creek to habitat above the
Dam.

240.   In addition, the County's alteration of hydrology in Arroyo Grande Creek due to limited flow of water released from the Lopez Dam and modification of flow regimes in the Creek has created stretches of unsuitable habitat and degraded or eliminated habitat for southwestern pond turtle.

241.   Adverse impacts to southwestern pond turtle from the County's Arroyo Grande Project also include direct or indirect disturbance to the turtle's riparian habitat through the County's maintenance activities including vegetation removal and sediment management activities. *See* Arroyo Grande Creek WMP 2010 EIR at 4-94.

242.   WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FIRST CLAIM FOR RELIEF

**Violation of ESA Section 9 – Prohibition Against Unauthorized Take of Steelhead 16 U.S.C. § 1538; Request for Declaratory Relief and Injunction to Enjoin County from Taking Steelhead**

243.   Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein and incorporate herein by reference each and every allegation set forth in paragraphs 1 through 242.

244.   The County is violating ESA section 9's prohibition on the unauthorized take the Steelhead by harassing, wounding, killing, trapping, and/or capturing Steelhead, and/or by causing significant habitat modification or degradation for Steelhead which kills, injures, or deleteriously impacts the species by significantly impairing essential behavioral patterns, including breeding, spawning, rearing, migrating, feeding or sheltering. 16 U.S.C. § 1538(a)(1)(B); 16 U.S.C. § 1532(19); 50 C.F.R. § 222.102; 50 C.F.R. § 17.3.

## SECOND CLAIM FOR RELIEF

**Violation of California Fish and Game Code § 5937 Associated with Harm to Steelhead and other Fish, Pursuant to California Code of Civil Procedure § 1085**

245.   Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein and incorporate herein by reference each and every allegation set forth in

1    paragraphs 1 through 244.

2        246.   The County has a clear and mandatory duty under CFGC section 5937 as

3    alleged herein. The County is violating its clear and mandatory duty under CFGC section

4    5937 by failing to release enough water from Lopez Dam to keep Steelhead and other

5    fish and aquatic life (including CRLF, Tidewater Goby and Southwestern Pond Turtle) in

6    good condition below the dam.

7                              **THIRD CLAIM FOR RELIEF**

8        **Violation of California Fish and Game Code § 5901 Associated with Harm to**

9            **Steelhead, Pursuant to California Code of Civil Procedure § 1085**

10       247.   Plaintiffs reassert and reallege each of the preceding paragraphs as if set

11   forth herein and incorporate herein by reference each and every allegation set forth in

12   paragraphs 1 through 246.

13       248.   The County has a clear and mandatory duty under CFGC sections 5901 as

14   alleged herein. The County is violating its clear and mandatory duty under CFGC section

15   5901 by operating and maintaining Lopez Dam in a fashion that prevents Steelhead

16   migration upstream and downstream of the dam and that violates various provisions of

17   law including the ESA and CFGC section 5937.

18                             **FOURTH CLAIM FOR RELIEF**

19       **Violation of the California Public Trust Doctrine, Pursuant to**

20               **California Code of Civil Procedure § 1085**

21       249.   Plaintiffs reassert and reallege each of the preceding paragraphs as if set

22   forth herein and incorporate herein by reference each and every allegation set forth in

23   paragraphs 1 through 248.

24       250.   As a county – a state governmental agency – the County has a clear and

25   mandatory duty under the California Public Trust Doctrine to fully analyze and consider

26   the impacts to trust resources caused by its actions and to protect those trust resources.

27   The County is violating its California Public Trust Doctrine duties by failing to fully

28   analyze and consider the impacts of the Arroyo Grande Project and to implement

First Amended Complaint                68           CASE NO. 2:24-cv-06854_____

measures to appropriately protect the public trust resources of Arroyo Grande Creek, which include Steelhead, other fish and aquatic life (including CRLF, Tidewater Goby and Southwestern Pond Turtle) and least Bell's vireo.

### FIFTH CLAIM FOR RELIEF

**Violation of California Constitution Article X, Section 2 Due to Harm to the Arroyo Grande Creek Environment, Pursuant to California Code of Civil Procedure § 1085**

251.   Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein, and incorporate herein by reference each and every allegation set forth in paragraphs 1 through 250.

252.   The County has a clear and mandatory duty under California Constitution Article X, Section 2 to not waste or unreasonably use waters of the Arroyo Grande Creek and to not utilize an unreasonable method of use or method of diversion of the waters of the Arroyo Grande Creek. The County has violated, and continues to violate California Constitution Article X, Section 2 through its unreasonable method of use and/or its unreasonable method of diversion of the waters of the Arroyo Grande Creek in a manner that is causing significant and undue harm to the Arroyo Grande Creek environment.

### REMEDY

253.   Plaintiffs have no plain, speedy, and adequate remedy, in the ordinary course of law, other than the relief sought in this Complaint, because there is no other mechanism for compelling Defendant's compliance with the duties imposed under ESA and California state laws as alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief:

254.   Declaratory relief stating that the County is in violation of:

    a.   ESA section 9 by taking Steelhead in Arroyo Grande Creek without authorization;

    b.   California Fish and Game Code §§ 5901 and 5937;

    c.   The California Public Trust Doctrine; and

d.  Article X, Section 2 of the California Constitution;

255.  A peremptory writ of mandate:

a.  Declaring that Defendant County has violated California Fish and Game Code §§ 5901 and 5937;

b.  Declaring that Defendant County has violated the California Public Trust Doctrine;

c.  Declaring that Defendant County has violated Article X, Section 2 of the California Constitution;

d.  Ordering the County to take such actions as required to bring its operation and maintenance of the Arroyo Grande Project into compliance with California Fish and Game Code §§ 5901 and 5937;

e.  Ordering the County to take such actions as required to bring its operation and maintenance of the Arroyo Grande Project into compliance with the common law and California Constitution;

f.  Prohibiting any and all Arroyo Grande Project activity in violation of the common law and the California Constitution alleged herein and specifically enjoining the County to implement an appropriate, environmentally protective flow regime on Arroyo Grande Creek;

g.  Prohibiting any and all Arroyo Grande Project activity in violation of California Fish and Game Code §§ 5901 and 5937 alleged herein and specifically enjoining County to implement an appropriate, environmentally protective flow regime on Arroyo Grande Creek;

256.  Injunctive relief:

a.  Halting the County from diverting water at the Arroyo Grande Project in a fashion that will impede Steelhead migration and otherwise prevent Steelhead from exercising its essential lifecycle behaviors in Arroyo Grande Creek;

b.  Requiring the County to implement all other measures necessary to prevent

the Arroyo Grande Project from unlawfully taking Steelhead; and

c. Requiring the County to promptly complete an adequate and fully compliant ESA HCP and apply to the Services for an ESA § 10 ITP.

257. For costs of suit;

258. For attorneys' fees and costs pursuant to law, including 16 U.S.C. § 1540(g)(4) and California Code of Civil Procedure § 1021.5; and

259. For such other and further relief as the Court deems just and proper.

Dated: December 27, 2024                    Respectfully submitted,

_____
Christopher Sproul
Attorney for Plaintiffs