Christopher Sproul (Cal. Bar No. 126398)
Brian Orion (Cal. Bar. No. 239460)
Marla Fox (Cal. Bar. No. 349813)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: borion@enviroadvocates.com
Email: mfox@enviroadvocatescom

**Attorneys for Plaintiffs**

**Additional Counsel Listed on Next Page**

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION,<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>Defendant. | Case No: 2:24-cv-06854-SPG-AS<br><br>DISCOVERY MATTER<br><br>OPPOSED EX PARTE APPLICATION TO STAY OR IN THE ALTERNATIVE QUASH DEPOSITION SUBPOENAS FOR BENJAMIN PITTERLE, GORDON HENSLEY, AND CYNTHIA REPLOGLE<br><br>Magistrate Judge: Hon. Alka Sagar |

*Additional Counsel for Plaintiffs*

Jesse Colorado Swanhuyser (Cal. Bar No. 282186)
Sycamore Law Inc.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (805) 689-1469
Email: jesse@sycamore.law

Drevet Hunt (Cal. Bar No. 240487)
Lauren Chase Marshall (Cal. Bar No. 324162)
Cody Phillips (Cal. Bar No. 353840)
California Coastkeeper Alliance
1100 11th Street, 3rd Floor
Sacramento, California 95814
Tel: (415) 606-0864
Email: dhunt@cacoastkeeper.org
Email: lauren@cacoastkeeper.org
Email: cody@cacoastkeeper.org

# **TABLE OF CONTENTS**

NOTICE OF EX PARTE APPLICATION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 2

I. INTRODUCTION ............................................................................................ 2

II. FACTUAL BACKGROUND ........................................................................... 3

III. LEGAL BACKGROUND ................................................................................ 6

IV. ARGUMENT .................................................................................................... 7

   A. Ex Parte Relief is Warranted ..................................................................... 7

   B. The Court Should Quash the County's Deposition Subpoenas for the Witnesses ................................................................................................... 9

   C. If the Court Is Not Inclined To Quash the Subpoenas on an Ex Parte Basis, It Should at Least Stay the Subpoenas To Allow Further Briefing on the Merits on a Nonemergency Schedule ............................................... 13

V. Conclusion. .................................................................................................... 13

# TABLE OF AUTHORITIES

**Federal Cases**

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
    326 F.3d 505 (4th Cir. 2003) ............................................................................... 11

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    300 F.R.D. 406 (C.D. Cal. 2014) ..................................................................... 9, 11

*Cent. Sierra Envtl. Res. Ctr. v. Stainslaus Nat'l Forest*,
    30 F.4th 929 (9th. Cir. 2022) .............................................................................. 11

*Election Integrity Project Cal., Inc. v. Weber*,
    No. 21-32, 2023 U.S. Dist. LEXIS 124778 (C.D. Cal. July 18, 2023) ............... 12

*Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*,
    No. 21-1197, 2022 U.S. Dist. LEXIS 127870 (S.D. Cal. July 18, 2022) .............. 9

*Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.*,
    484 U.S. 49 (1987) ............................................................................................. 11

*Horne v. Wells Fargo Bank, N.A.*,
    969 F. Supp. 2d 1203 (C.D. Cal. 2013) ............................................................... 6

*Inland Empire Waterkeeper v. Corona Clay Co.*,
    17 F.4th 825 (9th Cir. 2021) ............................................................................... 11

*Leonard v. Clark*,
    12 F.3d 885 (9th Cir. 1993) *as amended* (Mar. 8, 1994) ..................................... 12

*Lujan v Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ..................................................................................... 11, 12

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
    883 F. Supp. 488 (C.D. Cal. 1995) ...................................................................... 6

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) ....................................................................... 11

*Nat'l Ass'n of Optometrists & Opticians LensCrafters v. Brown*,

Case 2:24-cv-06854-SPG-AS   Document 121   Filed 05/16/25   Page 5 of 20   Page ID #:10089

  567 F.3d 521 (9th Cir. 2009) .............................................................................. 12

*Novitzky v. Transunion LLC*,
  No. 23-4229, 2025 U.S. Dist. LEXIS 27428 (C.D. Cal. Feb. 14, 2025) ............ 8, 9

*Piney Run Pres. Ass'n v. County Com'rs of Carroll County, MD*,
  50 F. Supp. 2d 443 (D. MD. 1999) ...................................................................... 11

*Piney Run Pres. Ass'n v. County Com'rs of Carroll County, MD*,
  268 F.3d 255 (4th Cir. 2001) ............................................................................... 11

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ............................................................................................... 10

*SW Ctr. for Biological Diversity v. Clark*,
  90 F. Supp. 2d 1300 (D.N.M. 1999) .................................................................... 11

*Townley v. Miller*,
  722 F.3d 1128 (9th Cir. 2013) ............................................................................. 12

Ex Parte App. to Quash Subpoenas                                iii

**Federal Statutes**

16 U.S.C. § 1538 ................................................................................................................ 3

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 30(b)(6) ..................................................................................................... 7

Fed. R. Civ. P. 26(b) ........................................................................................................ 10

Fed. R. Civ. P. 26(c)(1) .................................................................................................... 10

Fed. R. Civ. P. 45(d)(3)(A)(iv) ........................................................................................ 10

Fed. R. Civ. P. 45(g) .......................................................................................................... 9

# NOTICE OF EX PARTE APPLICATION

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Central District Local Rule 7-19, nonparty standing witnesses Benjamin Pitterle, Gordon Hensley and Cynthia Replogle (collectively "Witnesses") hereby apply *ex parte* for an order granting this Application to Quash Deposition Subpoenas for Benjamin Pitterle, Gordon Hensley, and Cynthia Replogle ("Application"). Defendant County of San Luis Obispo ("the County") issued subpoenas to the Witnesses to attend depositions taking place this month. The County has temporarily withdrawn these subpoenas but indicated it intends to reissue subpoenas to the witnesses to attend depositions on the following days: May 29, May 30, June 2 or June 3, 2025. Due to this timing, the Witnesses cannot seek the relief herein by regular noticed motion.

This Application is based on this Notice, the accompanying Memorandum of Points and Authorities, Declarations in support, proposed *Ex Parte* Order, and all attachments hereto. This Application is made consistent with Local Rule 7-19 and for good cause as shown below.

Pursuant to Local Rule 7-19.1, the Witnesses made reasonable, good faith efforts to advise the County's counsel of the date and substance of this Application via several communications taking place between May 2, 2025 and May 15, 2025. Declaration of Christopher Sproul ("Sproul Decl."), ¶¶ 8-11, 16, Exs. 5-7. Counsel for the County's response indicated that it opposes the Witnesses' Application. *Id.*

Dated: May 16, 2025

*/s/ Christopher Sproul*
Christopher Sproul
Environmental Advocates
*Attorney for Plaintiffs*
Benjamin Pitterle, Gordon Hensley
and Cynthia Replogle

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Witnesses apply to this Court *ex parte* for an order staying the County's deposition subpoenas sufficient to allows the Parties to brief this matter by noticed motion. Alternatively, the Witnesses seek an *ex parte* order quashing the subpoenas. As stated above, this Application is made consistent with Local Rule 7-19.

On May 16, 2025, the County served subpoenas on the Witnesses noticing their depositions this month, which the County has withdrawn but will shortly re-issue. These subpoenas followed multiple attempts by the Witnesses and the Plaintiffs to confer with the County regarding whether the depositions are necessary and whether the significant burden of these depositions is proportional to the needs of the case, if any. *See* Sproul Decl. ¶¶ 8-11, 16, Exs. 5-7. Plaintiffs do not dispute the need to show Article III standing, but they have already done that through the Witnesses' affidavits. Dkts. 13-3, 13-4, 13-5, 13-6; Sproul Decl., Exs. 1-4 (supplemental affidavits). Additionally, to the extent there was any doubt left as to standing after the affidavits, which the Witnesses do not concede, Plaintiffs have agreed to make one of their other standing witnesses, Sean Bothwell, available to the County for deposition on May 19, 2025, as the County requested. Sproul Decl. ¶ 12. Finally, Plaintiffs have offered to respond to any reasonable questions the County may wish to propose to the Witnesses via interrogatories and have further committed to respond to the County's detailed request for production of documents and requests for admission further seeking written discovery responses pertinent to the Witnesses' standing. Response to such written discovery is a less burdensome and costly form of discovery and which would be equally effective in obtaining the information the County seeks. Sproul Decl., ¶¶ 14-15. Accordingly, the County's deposition subpoenas should be quashed in accord with Federal Rules of Civil Procedure requirements that discovery meet proportionality requirements. Presently, the Witnesses request that the Court at least hold the Witnesses obligation to attend the depositions in abeyance via stay

to allow regular briefing via noticed motion--should the Court deem full briefing on the merits to be best handled in that fashion. Alternatively, should the Court find the briefing on this ex parte application sufficient to be fully apprised of the merits, to grant the Witnesses request to quash the deposition subpoenas.

The Witnesses must seek *ex parte* relief because a regularly noticed hearing pursuant to Local Rule 6-1 would occur after the deposition dates noticed in the subpoenas, and thus it is not possible for the Witnesses to pursue a regularly noticed motion seeking this relief. Such relief is necessary without delay as failure to secure an order granting this relief before the noticed time of the depositions could subject the Witnesses to sanctions for contempt. Pursuant to Local Rule 7-19, contact information for the County's counsel is as follows:

> NOSSAMAN LLP
> BENJAMIN Z. RUBIN (SBN 249630)
> brubin@nossaman.com
> PAUL S. WEILAND (SBN 237058)
> pweiland@nossaman.com
> ELIZABETH KLEBANER (SBN 261735)
> lklebaner@nossaman.com
> Katherine L. Felton
> kfelton@nossaman.com
> 18101 Von Karman Avenue, Suite 1800
> Irvine, CA 92612

## II.     FACTUAL BACKGROUND

On August 13, 2024, Plaintiffs filed the Complaint (Dkt. 1) alleging that the County is violating the Endangered Species Act ("ESA") section 9, 16 U.S.C. § 1538, by operating and maintaining Lopez Dam, Lopez Lake, a three-mile buried steel transmission line that conveys water to Lopez Terminal Reservoir, the Lopez Water Treatment Plant, and various in-stream infrastructure downstream from Lopez Dam (collectively, the "Project") in a manner that causes unlawful "take" of threatened South-Central California Coast ("SCCC") Distinct Population Segment ("DPS") of Steelhead trout (*Oncorhynchus mykiss*) ("Steelhead"). Plaintiffs' Complaint alleges that the

County's operation and maintenance of the Project also harms threatened California red-legged frog (*Rana aurora draytonii*) ("CRLF"), endangered Tidewater Goby (*Eucyclogobius newberryi*), endangered least Bell's vireo (*Vireo bellii pusillus*) and southwestern pond turtle (*Actinemys pallida*), which is proposed for listing under the ESA as threatened. *Id.* Plaintiffs' Complaint further alleges that the County's continuing operation and maintenance of the Project is violating California Fish and Game Code ("CFGC") sections 5937 and 5901, the California Public Trust Doctrine, and California Constitution Article X, Section 2. *Id.*

  Plaintiffs filed their Motion for Preliminary Injunction (Dkt. 13) on August 17, 2024. Plaintiffs' Motion detailed how the County's ongoing operation and maintenance of the Project is causing irreparable harm to Steelhead and to Plaintiffs' members and is seeking time sensitive relief to protect the pending Steelhead migration season. As part of the Motion, Plaintiffs submitted detailed evidence concerning irreparable harm to Steelhead that the County's Project was causing. This evidence, *inter alia*, included declarations from Sean Bothwell, Benjamin Pitterle, Gordon Hensley, and Cynthia Replogle to demonstrate that the County's ESA violations in violation of state law were causing irreparable harm both to the environment and to the Plaintiffs. Dkts. 13-3, 13-4, 13-5, 13-6. In discussing this irreparable harm and the actions they think that the County could take to lessen the harms they have experienced for purposes of injunctive relief, these declarations also necessarily established the affiants' injuries in fact caused by the County's actions and the redressability of those injuries in fact by a court order in this matter--and thus in effect served to also establish the Plaintiffs have Article III standing in this matter. *Id.* The Court granted Plaintiffs' Motion in part on December 9, 2024, agreeing that the Plaintiffs had shown the requisite irreparable harm necessary for an injunction. Dkt. 57.

  In December 2024, the Plaintiffs provided the County with updated declarations from these four Witnesses with the express purpose of demonstrating to the County that Plaintiffs have Article III standing; the declarations were denominated as being in support

of standing and Plaintiffs discussed with the County there request that the County view these declarations sufficient to establish standing and that no further discovery should be needed on this point. Sproul Decl., ¶¶ 4-8, Exs. 1-4. The County did not then and has never expressed any view concerning or reasons why whether the declarations potentially do not suffice to establish Article III standing. *Id*., ¶ 8.

In late April 2025, again without acknowledging the Plaintiffs' previously served declarations or requests that the County concur that further discovery concerning Article III standing would be unnecessary, the County indicated that it intended to depose Messrs. Bothwell, Pitterle, and Hensley and Ms. Replogle. On May 2, 2025, Plaintiffs wrote a detailed letter requesting the County to confer over whether: (1) other discovery devices such as response to the County's revised interrogatories would appropriately serve in lieu of any such depositions, (2) interrelatedly, what it is that the County seeks to learn from standing witness depositions that it has not been fully informed of by the standing witness declarations that we have already provided and/or that it will be fully informed of by the responses to revised interrogatories that we are pledging to make, and (3) whether deposing all or a subset of our standing witnesses would be appropriate in light of concerns about relevance, proportionality, and avoiding undue burden. Sproul Decl., ¶ 5, Ex. 5. Plaintiffs further pointed out that given that the Witnesses are not parties to the proceeding, they could only be compelled to attend a deposition via subpoenas in any case, which the County had not served. *Id*. The County ignored this conferral request and shortly thereafter sent deposition subpoenas, which demanded the first of the Witnesses to appear at deposition a mere nine days later. *Id*., ¶ 10. In response to the Plaintiffs and the Witnesses complaint that this was insufficient notice and that the County should confer not only about reasonable scheduling, but about the concerns raised in our May 2, 2025 letter as well, the County at last agreed to a conferral discussion on May 13, 2025. In this conferral, the County declined to address any of the points raised in our May 2, 2025 letter, and did not provide any rationale why it could not learn whatever it needed to explore in discovery about the Witnesses' standing via written discovery in

lieu of deposition testimony, what additional facts beyond those stated in the Witnesses' multiple declarations it needed to explore in discovery, and why deposing a subset of all four Witnesses could also not be a reasonable compromise. *Id.*, Ex. 6. However, during the conferral, Plaintiffs' counsel confirmed that following conferral with the Witnesses, the Witnesses did not want to be subjected to the burdens of depositions, but were willing to answer further questions via interrogatories and search their records for and produce documents responsive to the County's request for production of documents. *Id.,* ¶ 14. Plaintiffs also proposed as a compromise that they would produce Mr. Bothwell for deposition on Monday, May 19, 2025, but the other Witnesses continue to dispute whether the depositions are necessary, proportional, or appropriate, especially given the present facts. *Id.* ¶¶ 12-14.

The County has refused to forego depositions of the Witnesses, stating unequivocally its intention to reissue subpoenas for their depositions on May 29, May 30, June 2 or June 3, 2025. Sproul Decl.¶¶ 10, 11, Ex. 7. The inability to resolve this dispute through negotiation and the County's noticing of these subpoenas before the time that would be required to have this dispute resolved via noticed motion necessitates the present Application.

### III. LEGAL BACKGROUND

When seeking *ex parte* relief, the applicant must show: (1) that their cause of action will be irreparably prejudiced if the underlying motion is heard according to regular noticed procedures; and (2) that they are without fault in creating the crises that require *ex parte* relief, or that the crises occurred due to excusable neglect. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492-93 (C.D. Cal. 1995). The use of an *ex parte* application procedure "is justified only when (1) there is a threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (*i.e.*, to file

an overlong brief or shorten the time within which a motion may be brought)." *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013).

## IV.  ARGUMENT

### A. Ex Parte Relief is Warranted.

The Witnesses' request for *ex parte* relief is warranted for two reasons. One, the Witnesses will be irreparably prejudiced if forced to proceed with the depositions or risk being held in contempt before the Court rules on whether the Witnesses should be forced to attend. Two, the urgency of the relief is not the fault of the Witnesses, but instead has been created by the County's failure to notice via subpoena deposition dates for these Witnesses with sufficient lead time for the Witnesses to bring a motion to quash and have such motion heard on the normal calendar provided for discovery disputes by Local Rule 37.

Irreparable harm exists because the Witnesses and the Plaintiffs seek to avoid the inconvenience, cost, and other burdens associated with being forced to attend the County's depositions. If the Court does not rule on whether they should be compelled to attend and be deposed then the Witnesses will be forced to either attend or risk being held in contempt and the Plaintiffs will be obligated to pay thousands of dollars in court reporting and deposition transcript costs, at which point the harm they seek to avoid will have been realized and cannot be undone.

The Witnesses sought to avoid these depositions or at least delay them sufficiently to allow for the Court to rule on a quash request on a nonemergency basis through conferral with the County. Sproul Decl. ¶¶ 8-11, 16. However, the County declined to change course on its demand that it be able to depose the Witnesses, stated unequivocally that it intended to take those depositions and to shortly issue new subpoenas demanding the Witnesses attend depositions their depositions on May 29, May 30, June 2 or June 3, 2025. *Id.* ¶¶ 11, Ex. 7. The County further refused to agree to request the Court to resolve this discovery dispute via the Court's Informal Discovery Conference process that the parties recently invoked to resolve their dispute over the Plaintiffs' Federal Rule of Civil

Procedure 30(b)(6) deposition notice. The demanded depositions would only be 2 to 3 weeks from the date of the subpoenas, making it impossible for the Witnesses to receive a court order quashing the subpoenas via a regularly noticed motion. If the Witnesses' request to quash the subpoenas was heard according to regularly noticed procedures, any hearing would occur well after the depositions. Therefore, if forced to wait for a noticed motion hearing on this issue, the Witnesses would have already been subjected to the inconvenience, costs, and other burdens of the depositions they here seek to avoid. The County's further refusal to agree to the Informal Discovery Conference process that the Court specifically provides for upon the parties' mutual agreement has left this *ex parte* request is the only means available to the Witnesses to be heard on the request to quash the deposition subpoenas before they will otherwise be effectively forced to attend the depositions and forgo any opportunity for judicial relief.

The Witnesses are without fault in creating the need for this relief. The Witnesses sought to convince the County not to serve the subpoenas through conferral. When that failed and the County made it plain today, May 15, 2025 that the County will not under any circumstance forgo seeking to depose all four Witnesses, the Witnesses are promptly filing this present Application seeking to stay or quash those subpoenas.

*Ex parte* relief is necessary because, while there is some case law indicating that filing a motion to quash might be enough to excuse a deponent's duty to appear at the deposition,[1] there is also case law holding that the Witnesses must not just file an

---

[1] *See, e.g., James v. New Century Mortg. Corp.*, No. 04-0194, 2006 U.S. Dist. LEXIS 104819, at *13-15 (E.D. La. May 15, 2006) (holding that filing of motion to quash was sufficient for non-party to avoid sanctions for not appearing at deposition); *Hoog v. Petroquest Energy, L.L.C.*, No. 21-201, 2021 U.S. Dist. LEXIS 143825, at *8-9 (E.D. Okla. Aug. 2, 2021) (considering whether motion to quash had been filed before deposition, not whether an order granting the motion had issued before that time); *Abbott v. Kidder, Peabody & Co.*, No. 97 C 3251, 1997 U.S. Dist. LEXIS 8500, at *10 (N.D. Ill. June 12, 1997) (holding deponent's "objection to service did not excuse her from attending her deposition, absent a motion to quash or a motion for a protective order, which she had not *filed* when she failed to attend the deposition scheduled for February 25.") (emphasis added, citation omitted).

application or motion, *but must receive an order excusing their appearance at the depositions before the time for those depositions passes*. *See, e.g., Novitzky v. Transunion LLC*, No. 23-4229, 2025 U.S. Dist. LEXIS 27428, at *4-5 (C.D. Cal. Feb. 14, 2025). Should the Witnesses fail to secure an order allowing them not to attend the depositions then they must attend or risk being held in contempt. *See, e.g., Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, No. 21-1197, 2022 U.S. Dist. LEXIS 127870, at *11-14 (S.D. Cal. July 18, 2022) (quoting Fed. R. Civ. P. 45(g)). Courts have indicated that *ex parte* relief is appropriate to avoid these problems. *See Novitzky*, 2025 U.S. Dist. LEXIS 27428, at *5. As a result, the Witnesses request such *ex parte* relief here.

### B. The Court Should Quash the County's Deposition Subpoenas for the Witnesses.

The County's subpoenas of the Witnesses are unduly burdensome and should be denied for numerous reasons. To sit for these depositions, the Witnesses will have to be available for the full day to be questioned about topics they have already addressed in their affidavits. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 411-13 (C.D. Cal. 2014) (quashing non-party deposition subpoena where value of evidence was low, evidence could be obtained more easily from a party, and "[p]reparing and sitting for a deposition is always a burden, even when documents are not requested, particularly for a non-party," and especially where the deposition is provided with short notice). Preparing for these depositions will also take significant time outside of the depositions themselves, requiring the deponents to interrupt their work, family, and personal lives further to make additional time to prepare. Furthermore, at least one witness, Mr. Hensley, does not have internet at his home that is sufficiently reliable to ensure that a remote deposition will work. Sproul Decl. ¶ 14. As a result, Mr. Hensley will have to procure an alternate location for the deposition and be there for the day. *Id.* While this makes clear that there are lost opportunity costs and significant inconveniences associated with the depositions, there are also hard costs that will be incurred. Carrying out the depositions will require incurring court reporting and

1 transcription costs that counsel estimates will likely be between $5,000 and $10,000.
2 Furthermore, Mr. Hensley will likely have to incur additional costs to procure a location
3 with suitable internet connection for the deposition. *Id.* Such costs would represent a
4 large portion of the costs the non-profit environmental group Plaintiffs have budgeted to
5 bring this action. Weighing these extensive burdens against the lack of need for these
6 depositions, discussed below, shows that they are unduly burdensome and that the
7 Witnesses should not be required to sit for these depositions.

8 First, the standing declarations that Plaintiffs have submitted are sufficient to show
9 that Plaintiffs have Article III standing to bring this lawsuit. Notably, the County has not
10 indicated in any fashion what it thinks is missing from these declarations that it must
11 probe with depositions. Second, Sean Bothwell, one of Plaintiffs' standing declarants, has
12 agreed to be deposed, and Plaintiffs need only show that one of their members have been
13 injured for Article III standing purposes. Third, Plaintiffs have agreed to respond to
14 reasonable written discovery addressing the Witnesses' injuries in this matter, some of
15 which Defenant has already served on Plaintiffs, which is a less burdensome and
16 expensive than proceeding via deposition.

17 The County's right to conduct discovery is subject to the Court's authority to
18 prevent discovery that is "unreasonably cumulative or duplicative, or is obtainable from
19 some other source that is more convenient, less burdensome, or less expensive." Fed. R.
20 Civ. P. 26(b). As the Supreme Court has explained, "[b]ecause of the liberality of pretrial
21 discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the
22 authority to issue protective orders conferred by Rule 26(c)." *Seattle Times Co. v.*
23 *Rhinehart,* 467 U.S. 20, 34 (1984). Additionally, "[i]t is clear from experience that
24 pretrial discovery by depositions…has a significant potential for abuse." *Id.* Therefore,
25 the Court may deny requested discovery, Fed. R. Civ. P. 26(c)(1), or limit discovery
26 "only to a method ... other than that selected by the party seeking discovery...." *Id.* at
27 26(c)(3). Additionally, Fed. R. Civ. P. 45(d)(3)(A)(iv) specifically provides for quashing
28 a subpoena that "subjects a person to undue burden."

   "In determining whether a subpoena poses an undue burden, courts 'weigh the burden to the subpoenaed party against the value of the information to the serving party.'" *Amini*, 300 F.R.D. at 409 (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)). "Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry." *Id.* (cleaned up). The County's proposed depositions of the non-party Witnesses should be quashed as they would significantly but unnecessarily burden the Witnesses.

   First, the depositions are not necessary or appropriate because Plaintiffs have provided detailed declarations from Messrs. Bothwell, Pitterle, and Hensley and Ms. Replogle detailing their membership in Plaintiffs' organization, the injury to their interests caused by the County's actions, and the redressability of those injuries by Court order in this matter. Dkts. 13-3, 13-4, 13-5, 13-6; Sproul Decl. Exs. 1-4 (supplemental standing declarations). The usual approach in environmental citizen suits is for standing to be decided based upon affidavits or declarations submitted by the plaintiffs, such as those submitted here. *See Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 832 (9th Cir. 2021) (holding that declarations discussing harm caused is evidence the Ninth Circuit has "routinely found … sufficient to establish Article III standing.") (citations omitted); *Cent. Sierra Envtl. Res. Ctr. v. Stainslaus Nat'l Forest*, 30 F.4th 929, 937-938 (9th. Cir. 2022) (holding standing declarations "sufficiently establish[ed] their individual Article III standing."); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) (affidavits from members and experts, attached to plaintiffs' summary judgment brief, are the "typical evidence" "usually used" to establish standing); *see also Lujan v Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990); *Gwaltney of Smithfield v. Chesapeake Bay Found.*, Inc., 484 U.S. 49 (1987). For precisely this reason, courts have rejected efforts by defendants to depose standing witnesses, holding that plaintiffs are entitled to rely on affidavits. *SW Ctr. for Biological Diversity v. Clark,* 90 F. Supp. 2d 1300 (D.N.M. 1999) (rejecting request to engage in discovery on standing prior to summary judgment because evidence on standing already presented was sufficient and

defendants had not provided any indication that, with or without discovery, they could factually dispute standing in a material way); *Piney Run Pres. Ass'n v. County Com'rs of Carroll County, MD*, 50 F. Supp. 2d 443, 446 (D. MD. 1999), *vacated on other grounds*, 268 F.3d 255 (4th Cir. 2001) (relying on standing declaration and declining to order "unnecessary" deposition of standing declarant because "Courts have often relied upon affidavits to establish standing in citizen suits."); *Lujan*, 497 U.S. at 906-07 (Blackman, J., dissenting) (noting that District Court granted plaintiffs' motion to quash the depositions of standing declarants who had submitted affidavits because such discovery would be unreasonably cumulative, duplicative, burdensome, and expensive within the meaning of Rule 26). As a result, Plaintiffs should be allowed to stand on the Witnesses' declarations to establish Article III standing, and the Witnesses should not be subject to depositions.

Second, even if the detailed affidavits that Plaintiffs have already submitted left any questions as to whether Plaintiffs have standing to bring this lawsuit, Plaintiffs have agreed to provide standing witness Sean Bothwell for a deposition which will take place on Monday, May 19, 2025. Sproul Decl. ¶ 12. It is well-established that, in multi-plaintiff cases such as this, the Court need only determine that one plaintiff has standing and need not assess standing for each plaintiff individually. *See, e.g., Election Integrity Project Cal., Inc. v. Weber*, No. 21-32, 2023 U.S. Dist. LEXIS 124778, at *13-14 (C.D. Cal. July 18, 2023) (quoting *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013); *Nat'l Ass'n of Optometrists & Opticians LensCrafters v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009); *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993), *as amended* (Mar. 8, 1994)). As a result, the County's attempt to carry out duplicative depositions of the three Witnesses is excessive and unnecessary.

Third, even if proving standing via the detailed affidavits and deposition of Sean Bothwell were not enough, which Plaintiffs contend they are, Plaintiffs have offered to answer any other reasonable questions the County has with regard to the Witnesses' standing allegations via interrogatory responses and to provide further evidence pertinent

to the Witnesses' standing via response to the County's extensive requests for admission, requests for production of documents. Sproul Decl. ¶¶ 14-15. Addressing remaining questions, if any, about the Witnesses' standing via further written discovery will avoid the burdens of depositions while still giving the County responses to any questions they have. The County has provided no reason why proceeding by written discovery would be insufficient, and there is no such reason.

In constrast to the likely complete lack of value of the depositions of the Witnesses, the burden on the Witnesses, who are not parties to this case, is substantial. As a result, the burden of the redundant depositions on the Witnesses is far greater than the speculative need, if any, for their deposition testimony, and the Court should quash the deposition subpoenas.

**C. If the Court Is Not Inclined To Quash the Subpoenas on an Ex Parte Basis, It Should at Least Stay the Subpoenas To Allow Further Briefing on the Merits on a Nonemergency Schedule.**

The Witnesses are mindful that proceeding on an ex parte basis is not a preferred method for resolving discovery disputes and is only to be resorted to on an emergency basis, when *ex parte* relief is the only practical means for a party to secure relief. If the Court is not inclined to reach the merits of quashing the subpoenas on this *ex parte* basis, it should at least stay the subpoenas pending further merits briefing last the Witnesses effectively denied their day in court on their contentions that the subpoenas do not meet Federal Rules of Civil Procedure proportionality requirements. The Court should then set a merits briefing schedule that is consistent with the Court's June 13, 2025 fact discovery cutoff. However, if necessary to be heard on their request, the Witnesses would agree to potentially submit to depositions after the June 13, 2025 fact discovery cutoff if the Court deems that it will not be possible to brief and decide the merits of a motion to quash before that discovery cutoff date.

**V. CONCLUSION**

In sum, the County's duplicative attempt to depose the three Witnesses is not proportional to the needs of the case. Plaintiffs have already suitably shown their standing through the standing affidavits they have already submitted, Plaintiffs have offered to produce one of the affiants for a deposition, and Plaintiffs have offered to have the County further explore the Witnesses' standing via written discovery. As a result, Plaintiffs request that the Court at least stay the depositions while it considers whether to direct further merits briefing and consider granting a noticed motion to quash the subpoenas. Alternatively, in accord with the above authority, the Witnesses request the Court quash the deposition subpoenas for the Witnesses on the basis that the depositions are necessary in light of the standing evidence already presented in their declarations as supplemented by their promised written discovery responses.

Dated: May 15, 2025　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Christopher Sproul*
　　　　　　　　　　　　　　　　　　Christopher Sproul
　　　　　　　　　　　　　　　　　　Environmental Advocates
　　　　　　　　　　　　　　　　　　*Attorney for Plaintiffs*
　　　　　　　　　　　　　　　　　　Benjamin Pitterle, Gordon Hensley
　　　　　　　　　　　　　　　　　　and Cynthia Replogle