NOSSAMAN LLP
PAUL S. WEILAND (SBN 237058)
pweiland@nossaman.com
BENJAMIN Z. RUBIN (SBN 249630)
brubin@nossaman.com
ELIZABETH KLEBANER (SBN 261735)
lklebaner@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:   949.833.7878

KATHERINE L. FELTON (WA SBN 30382)
*Admitted Pro Hac Vice*
kfelton@nossaman.com
BRIAN FERRASCI-O'MALLEY (WA SBN 46721)
*Admitted Pro Hac Vice*
bferrasciomalley@nossaman.com
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone:  206.395.7630
Facsimile:   206.257.0780

Attorneys for Defendant
COUNTY OF SAN LUIS OBISPO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>Defendant. | Case No. 2:24-cv-06854 SPG (ASx)<br><br>**DEFENDANT COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL CONTEMPT ORDER TO ENFORCE THE COUNTY OF SAN LUIS OBISPO'S COMPLIANCE WITH THE PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Sherilyn Peace Garnett<br>Hearing Date and Time: 1:30 p.m., July 30, 2025<br>Location: First Street Courthouse, 350 West 1st Street, Courtroom 5C |

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION .......................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................ 2

III.  LEGAL STANDARD .................................................................................. 4

IV.   ARGUMENT ............................................................................................... 5

    A.   Plaintiffs' Motion Violates the Court's Stay Order. ............................. 5

        1.   The Stay Order suspended all motions practice. ........................ 6

        2.   Plaintiffs' attempts to relitigate the Court's prior findings
            are improper. .............................................................................. 6

    B.   Plaintiffs Failed to Comply with the Meet and Confer
       Requirements of Local Rule 7-3. .......................................................... 7

    C.   Plaintiffs' Requests to Modify and Enlarge the PI Order are
       Improper. ............................................................................................. 10

        1.   The Court does not have jurisdiction to make the changes
            requested by Plaintiffs. ............................................................ 11

        2.   Plaintiffs' requests contravene the Court's instructions. .......... 12

        3.   No current exigency necessitates additional relief. ................... 14

    D.   The County's Plans Comply with the Court's PI Order. .................... 14

        1.   The County's Final BMP Plan complies. ................................. 15

        2.   The County's Final Spillway Fish Screen Plan complies. ....... 17

        3.   The County's Proposed Steelhead Passage Barriers Plan
            complies. ................................................................................... 19

        4.   The County's Final Predator Removal Plan complies. ............. 21

        5.   The County's Final Habitat Restoration Plan complies. ........... 22

V.    CONCLUSION .......................................................................................... 25

COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL
CONTEMPT ORDER

63609424

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**Federal Cases**

4

*A&M Records, Inc. v. Napster, Inc.*,

5

   284 F.3d 1091 (9th Cir. 2002)............................................................................. 11

6

*Balla v. Idaho State Bd. of Corr.*,

7

   869 F.2d 461 (9th Cir. 1989)................................................................................. 4

8

*Colorado v. New Mexico*,

9

   467 U.S. 310 (1984) .............................................................................................. 5

10

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,

   10 F.3d 693 (9th Cir. 1993).................................................................................. 5

11

*F19 Franchising, LLC v. Endo Fitness LL, LLC*,

12

   Case No. 2:23-cv-00185-MEMF-JC, 2023 U.S. Dist. Lexis 233797

13

   (C.D. Cal., Dec. 8, 2023)...................................................................................... 8

14

*FTC v. Mytel In't, Inc.*,

15

   No. 2:87-cv-07259-SPG, 2025 U.S. Dist. Lexis 51852 (C.D. Cal.

   Mar. 18, 2025) ...................................................................................................... 4

16

*Griggs v. Provident Consumer Disc. Co.*,

17

   459 U.S. 56 (1982) .............................................................................................. 11

18

*Hidden Empire Holdings, LLC v. Angelone*,

19

   No. 2:22-CV-06515-MWF(AGRX), 2024 WL 4797220 (C.D. Cal.

20

   July 17, 2024) ....................................................................................................... 5

21

*Labor/Community Strategy Ctr. v. Los Angeles County Metropolitan
Transp. Auth.*,

22

   564 F.3d 1115 (9th Cir. 2009)........................................................................ 5, 14

23

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,

24

   242 F.3d 1163 (9th Cir. 2001)............................................................................ 11

25

*Sophanthavong v. Palmateer*,

26

   378 F.3d 859 (9th Cir. 2004)................................................................................ 5

27

*Townley v. Miller*,

28

   693 F.3d 1041 (9th Cir. 2012)............................................................................ 11

- ii -           Case No. 2:24-cv-06854 SPG (ASx)
COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL
CONTEMPT ORDER

63609424

# I.    INTRODUCTION

Plaintiffs' Motion, filed just one week after the Court stayed all proceedings in this matter other than the County's continued implementation of the Preliminary Injunction Order ("PI Order"), is in blatant disregard of the stay and should be denied. The County's plans were timely submitted and meet all the substantive requirements of the PI Order, as the Court has already found (though any mention of this irrefutable fact was conveniently omitted from Plaintiffs' Motion).

Plaintiffs' Motion improperly seeks to impose new deadlines and requirements on the County in contravention of both this Court's prior orders on the Motion for Preliminary Injunction and the Motion to Stay, as well as the Ninth Circuit's jurisdiction over the appeal. Indeed, Plaintiffs concede that the stay limits their "ability to seek additional injunctive remedies that they did not request in the original preliminary injunction motion." Declaration of Katherine Felton ("Felton Decl."), Ex. 5 at 4.

But the Court need not reconsider the County's compliance with the PI Order a second time because Plaintiffs' counsel failed to confer in accordance with Local Rule 7-3. If the Court does consider Plaintiffs' arguments, then it will find that the subject plans comply with the requirements of the Court's PI Order and the further direction that the Court provided to the parties at the February 21, 2025, status conference ("Status Conference"). Plaintiffs' Motion identifies where Plaintiffs desire to see more "details" and to have more "spelled out" directions from the National Marine Fisheries Service ("NMFS") and the U.S. Fish and Wildlife Service ("USFWS") (collectively, the "Services"), but they identify no actual omissions or violations of the Court's PI Order. Plaintiffs' Motion should be denied, with fees and costs awarded, if at all, to the County for having to defend against the Motion despite the Court's prior Orders and direction at the Status Conference admonishing the parties from bringing this type of motion.

## II.    FACTUAL BACKGROUND

On November 27, 2024, the Court granted, in part, Plaintiffs' Motion for Preliminary Injunction. ECF No. 54. On December 9, 2024, the Court issued its PI Order. ECF No. 58. The PI Order requires the County to develop and implement numerous interim plans in relation to Arroyo Grande Creek ("AGC") and its tributaries. *Id.* On December 26, 2024, the County appealed the PI Order. ECF No. 63. To date, the County has timely prepared and submitted eight plans (each as a proposed plan followed by the final plan) consistent with the PI Order. Felton Decl. ¶ 3. Plaintiffs' Motion only challenges the Final BMP Plan, the Proposed Steelhead Passage Barriers Plan, the Final Spillway Fish Screen Plan, the Final Habitat Restoration Plan, and the Final Predator Removal Plan (the "Challenged Plans"). ECF No. 132-1 at 12.

In entering the PI Order, the Court expressly contemplated that the Services would be involved throughout the process to provide input on actions set forth in the Challenged Plans and to discuss regulatory requirements of proposed actions. *E.g.*, ECF No. 58 ¶¶ 11, 14, 17, 25, 28 (requiring the County to request input from the Services on the Challenged Plans). The PI Order also envisioned that Plaintiffs' recommendations or suggestions on the draft plans would be submitted "to NMFS and USFWS *for review*." *See id.* (emphasis added). It further established that the County, in adopting the final versions of the Challenged Plans, "shall consider any comments and recommendations on revisions to the Plan provided by NMFS, USFWS, or the Plaintiffs." *See id.* ¶¶ 12, 15, 18, 26, 29.

In fact, the Court granted relief at least in part in reliance on the false representation by Plaintiffs that the Services—nonparties to this proceeding— would collaborate with the parties to fashion a remedy. *E.g.*, ECF No. 54 at 21 ("the Court also finds that both parties ***must collaborate with the appropriate agencies*** to implement some of the Plaintiffs' proposed injunctive measures" (emphasis added)). This expectation was set by the Plaintiffs at the hearing on the

COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL CONTEMPT ORDER

63609424

1   Preliminary Injunction, where they represented to the Court that the Services

2   would review, comment, and provide guidance on the plans required under the PI

3   Order. ECF No. 92 at 17:11–18, 42:5–9.

4         Following the issuance of the PI Order, however, the Services informed the

5   County that they would not provide comment on, or consult with, the County

6   regarding the plans called for in the PI Order. Instead, the Services advised that

7   they would only engage with the County through the habitat conservation plan

8   ("HCP") and Section 10(a)(1)(B) incidental take permit ("ITP") processes under

9   the Endangered Species Act ("ESA"), which is the process that the County was

10  already pursuing prior to the litigation. ECF No. 72-1 at 1; ECF No. 78-1 at 1.

11        At the February 12, 2025, Status Conference, the Court addressed the impact

12  of the Services' absence on the PI Order. The Court noted that the PI Order

13  "contemplated that any recommendations or comments from the Plaintiffs would

14  go through a process where the agencies would weigh in and endorse or not

15  endorse the Plaintiff's comments, and then ***the County would decide*** whether to

16  implement based on that endorsement." ECF No. 101 at 28:5–11 (emphasis

17  added). The Court repeatedly confirmed that the PI Order contemplated that the

18  Services would review, comment, and provide guidance on the plans required

19  under the PI Order. ECF No. 101 at 4:4–7, 4:19–24, 11:2–6.

20        On February 21, 2025, because of the pending appeal of the PI Order, and

21  the considerable burden placed on the County to prepare the HCP and prepare and

22  implement the plans required under the PI Order while also engaging in discovery

23  and defending the litigation, the County moved to stay all elements of the case

24  except for the County's continued efforts to perform under the Court's PI Order.

25  ECF No. 99 at 2. Plaintiffs objected to a stay. ECF No. 106. On June 18, 2025, the

26  Court issued the order granting in full the County's motion to stay the proceedings

27  except for those actions required under the PI Order ("Stay Order"). ECF No. 131

28  at 1, 6. The Court found that "the Ninth Circuit's forthcoming ruling on critical

1  legal issues will inform how both the parties and this Court address Plaintiffs'

2  additional requests for injunctive relief." *Id.* at 3. The Court highlighted how the

3  County's "continued efforts to implement the measures mandated by the [PI

4  Order]—coupled with its participation in extensive discovery and anticipated

5  motion practice—have strained its limited resources to maintain its normal

6  operations." *Id.* at 4. Finally, the Court found that a stay was warranted because

7  "the preliminary injunction remains in effect, thereby redressing many of

8  Plaintiffs' alleged harms." *Id.* at 5–6.

9        On June 6, 2025, Plaintiffs informed the County that Plaintiffs intended to

10  file a "motion to compel the County's compliance" with the PI Order and

11  requested that the County meet and confer regarding that motion. *See* ECF 132-9

12  at 2. The County's counsel responded on the same day, confirming the County

13  would meet and confer. Felton Decl. ¶ 5. On June 13, 2025, the parties met and

14  conferred on this motion. *Id.* ¶ 6. Counsel for the parties exchanged several

15  additional emails about the Plaintiffs' proposed "motion to compel." *Id.* ¶¶ 7–8. On

16  June 23, 2025, Plaintiffs' counsel referred to the forthcoming motion as "our

17  motion to compel/for contempt" for the first time. *Id.* ¶ 9. On June 25, 2025,

18  Plaintiffs filed their Motion. ECF 132. On June 30, 2025, Plaintiffs filed a Request

19  for Judicial Notice with the Ninth Circuit seeking it to take judicial notice of this

20  Court's Stay Order. Felton Decl., Ex. 5. In its filing, Plaintiffs stated that the Stay

21  Order "limits the NGOs' ability to seek additional injunctive remedies that they did

22  not request in the original preliminary injunction motion." *Id.*, Ex. 5 at 4.

23  ## III.    LEGAL STANDARD

24        "'Civil contempt is appropriate only when a party fails to comply with a

25  court order that is both specific and definite.'" *FTC v. Mytel In't, Inc.*, No. 2:87-cv-

26  07259-SPG (JPRx), 2025 U.S. Dist. Lexis 51852, at *15 (C.D. Cal. Mar. 18, 2025)

27  (quoting *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989)).

28        To establish civil contempt, Plaintiffs bear the burden of demonstrating by

*clear and convincing evidence* that the County violated the PI Order in a manner beyond substantial compliance and not based on a good faith and reasonable interpretation of the order. *Labor/Community Strategy Ctr. v. Los Angeles County Metropolitan Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). "Substantial compliance" is not "vitiated by 'a few technical violations,' where every reasonable effort has been made to comply." *In Re Dual-Deck*, 10 F.3d at 695 (quotation omitted).

"Clear and convincing evidence requires greater proof than preponderance of the evidence." *Hidden Empire Holdings, LLC v. Angelone*, No. 2:22-CV-06515-MWF(AGRX), 2024 WL 4797220, at *5 (C.D. Cal. July 17, 2024) (quoting *Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004)). "To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions are ... highly probable.'" *Id.* (quoting *Palmateer*, 378 F.3d at 866) (citing *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)); *see also* 9th Cir. Civ. Jury Instr. 1.7 ("When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.").

## IV.   ARGUMENT

### A.   Plaintiffs' Motion Violates the Court's Stay Order.

The Court stayed ***all*** proceedings in this case, including motion practice, with exception only for the specific actions the County is required to take under the PI Order, which the County continues to complete in a timely manner. Plaintiffs' Motion is precluded by the Stay Order. Plaintiffs' efforts to misrepresent the Court's findings in the Stay Order do not change this fact. Indeed, Plaintiffs appear to acknowledge the Motion is barred, stating that the "NGOs interpret this Motion

as being outside the stay" but requesting "if [they] are wrong" that the Court
reconsider and modify or partially lift the stay. ECF No. 132-1 at 17:26–18:3.

### 1. The Stay Order suspended all motions practice.

The County moved to stay all elements of this case except for the County's
continued efforts to perform under the PI Order. ECF No. 99 at 2. Specifically, the
County moved for a stay of "all discovery, ***motion practice***, hearings, and pre-trial
and trial deadlines in this proceeding…"). *Id.* (emphasis added). The Court granted
the motion in full as made by the County, without condition. ECF No. 131 at 1, 6.
Therefore, all motion practice in this litigation was stayed as of June 18, 2025.
Plaintiffs ignored and violated the Stay Order by filing this Motion, and the Court
should therefore deny it.

### 2. Plaintiffs' attempts to relitigate the Court's prior findings are improper.

Plaintiffs appear to acknowledge that the Motion is not permitted. Offering
their 'interpretation' that the Motion is "outside of the stay," Plaintiffs nonetheless
request that the Court modify or lift the Stay Order to allow the Motion if Plaintiffs
are "wrong." ECF No. 132-1 at 17:26–18:3. Plaintiffs' request that the Court
reconsider the Stay Order should be rejected. The Motion fails to meet the
requirements of a motion for reconsideration under L.R. 7-18 and is improper.

As justification for their 'interpretation,' Plaintiffs further incorrectly claim
that "the Court partially stayed this action based on ***the County's assertion*** that it
is complying with the Preliminary Injunction." ECF No. 132-1 at 17 (emphasis
added). Therefore, they argue "[i]t would be ironic indeed if the Stay Order still
required the County to comply with the Preliminary Injunction but nonetheless
barred the NGOs from going to court should the County defy that obligation." *Id.*
This is false.

In entering the Stay Order, the Court analyzed the record and concluded for
***itself*** that "Defendant has timely complied with the actions mandated by the

COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL
CONTEMPT ORDER

63609424

preliminary injunction order. *See, e.g.*, (ECF Nos. 62, 72, 84, 87, 88, 104, 105, 111, 112, 118)." ECF No. 131 at 1. The filings the Court referenced at ECF Nos. 112 and 118 include the Final Habitat Restoration Plan (ECF No. 112-2), the Final BMP Plan (ECF No. 112-1), the Final Predator Removal Plan (ECF No. 118-2) and the Final Spillway Fish Screen Plan (ECF No. 118-1), four of the five plans on which the Plaintiffs now move for a contempt order.[1] The Court repeated its conclusions multiple times, stating that the County "has timely complied with the actions mandated by the preliminary injunction order," that the County "has fulfilled such obligations," and that it "bears emphasis that [the County's] timely compliance with the preliminary injunctive order redresses many harms to the Steelhead population that Plaintiffs alleged." ECF No. 131 at 1, 3. Plaintiffs' assertion that the stay is based only on the County's "assertions" is erroneous and dismisses the Court's analysis and conclusions on the matter. The Plaintiffs' Motion is an improper attempt to circumvent the Stay Order and to second-guess the Court's conclusion that the County has complied with the PI Order.

### B. Plaintiffs Failed to Comply with the Meet and Confer Requirements of Local Rule 7-3.

Plaintiffs also failed to comply with Local Rule 7-3 by (1) failing to meet and confer regarding the true nature of the Motion; (2) failing to disclose the relief to be sought; and (3) failing to make the required compliance certification to the Court (which they could not considering the circumstances). The Court "strictly enforces Local Rule 7-3" and should do so in this instance. Judge Garnett's Standing Order for Newly Assigned Civil Cases ("Standing Order") at 10.

---

[1] The Proposed Steelhead Passage Barriers Plan was filed on May 30, 2025, (ECF No. 128-1) but was not finalized until June 30, 2025, after the Court issued the Stay Order and after Plaintiffs filed their Motion. *See* ECF No. 133-1.

COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL CONTEMPT ORDER

63609424

1    As set forth in their June 6, 2025, letter, Plaintiffs represented to the County

2    that they would bring a motion to compel. *See* ECF No. 132-9 at 2, 6. The letter

3    does not mention contempt proceedings. *See id.* Plaintiffs essentially conducted a

4    "bait and switch" from the meet and confer to the filing of their Motion. At the

5    June 13, 2025, meet and confer, Plaintiffs' counsel did not state that Plaintiffs

6    intended to file a motion for a civil contempt order. Felton Decl. ¶ 6. On June 14,

7    2025, Plaintiffs' counsel continued to refer to "our motion to compel" in his

8    summary of the meet and confer. *Id.* ¶ 7. On June 16, 2025, Plaintiffs' counsel

9    again referred to the motion as "Plaintiffs' forthcoming motion to compel." *Id.* ¶ 8.

10   It was not until June 23, 2025, two days before Plaintiffs filed their Motion, that

11   Plaintiffs' counsel referred to "our motion to compel/for contempt." *Id.* ¶ 9.

12   Mentioning the true nature of the contemplated motion for the first time in an

13   email two days before filing the motion, and 10 days ***after*** the meet and confer,

14   does not comply with L.R. 7-3. It also runs afoul of the requirement that "[c]ounsel

15   must meet and confer in good faith." Standing Order at 10.

16   Plaintiffs also failed to raise during the meet and confer process that they

17   would seek sanctions, including attorneys' fees, and a court-ordered "expert

18   panel," ***paid for by the County***, to oversee wholesale re-drafting and

19   implementation of the County's plans. Plaintiffs' meet and confer letter did not

20   mention sanctions, attorneys' fees, or the creation of an "expert panel" to control

21   and dictate the County's actions. *See* ECF No. 132-9. Plaintiffs' counsel also failed

22   to mention either sanctions or the proposed expert panel during the June 13 meet

23   and confer. Felton Decl. ¶ 6. These are major issues and clearly part of the "the

24   substance of the contemplated motion and any potential resolution" and failing to

25   raise them is a violation of L.R. 7-3 and counsel's obligation to "meet and confer

26   in good faith." *See* Standing Order at 10; *see e.g.*, *F19 Franchising, LLC v. Endo*

27   *Fitness LL, LLC*, Case No. 2:23-cv-00185-MEMF-JC, 2023 U.S. Dist. Lexis

28   233797, at *8 (C.D. Cal., Dec. 8, 2023) (party failed to comply with L.R. 7-3

1  before bringing motion for contempt by omitting issues from meet and confer

2  letter).

3         In addition to failing to mention at the meet and confer that they would seek

4  fees, Plaintiffs' request for attorneys' fees is also extremely disingenuous.

5  Plaintiffs claim that "for the considerable expense and effort incurred by the NGOs

6  in bringing this Motion, the Court should award the NGOs their attorneys' fees and

7  costs . . ." ECF No. 132-1 at 30. But Plaintiffs have incurred **no** expenses in

8  bringing their Motion and **no** amount of any potential recovery would go to

9  Plaintiffs. Plaintiffs' counsel are operating on a 100% contingency fee basis in this

10 matter. Felton Decl., Ex. 6. Plaintiffs have "irrevocably assign[ed]" to their counsel

11 "all rights they may have to recover fees incurred by Attorneys in this Matter." *Id.*

12 ¶ 10. Furthermore, it is not Plaintiffs, but Plaintiffs' **counsel** who are "responsible

13 for overall management of any litigation" and have "final authority on matters of

14 legal tactics . . . and editorial judgment on pleadings." *Id.* ¶ 3. Plaintiffs only have

15 "authority over the general nature of the litigation" and are merely "consulted on

16 general strategy and tactics of the litigation." *Id.* Plaintiffs' counsel decided to

17 bring this Motion and Plaintiffs' counsel stands to financially benefit from it.

18 However, unlike Plaintiffs, the County **is** incurring attorneys' fees and costs to

19 defend against this Motion. Ballantyne Decl. ¶ 24.

20        Finally, Plaintiffs' counsel's sworn declaration fails to meet the

21 requirements of L.R. 7-3. The declaration is required to include "***at a minimum*** the

22 date(s) the [parties conferred] and the position of ***each*** party with respect to ***each***

23 disputed issue that will be the subject of the motion." L.R. 7-3 (emphases added).

24 Plaintiffs' counsel's declaration merely states the date the conference took place

25 and offers a broad generalization of the reason for the conference. ECF No. 132-3

26 ¶ 11. It does not identify the disputed issues, much less set out the County's

27 position with respect to any of those issues. *See* ECF No. 132-3. As discussed

28 above, Plaintiffs could not comply with this requirement because they did not raise

1  all issues with the County. Plaintiffs' Motion should be denied for failure to

2  comply with L.R. 7-3 and the Court's Standing Order.

3       **C.    Plaintiffs' Requests to Modify and Enlarge the PI Order are**

4              **Improper.**

5       The PI Order does not give Plaintiffs the right to impose their unilateral

6  dictates on the County. ECF No. 58. Plaintiffs' dissatisfaction stems from their

7  apparent frustration that the Court did not vest Plaintiffs with the authority to

8  control when and how the County must act. The County considered Plaintiffs'

9  comments on each of the draft plans and incorporated comments it deemed

10 appropriate. Ballantyne Decl. ¶ 26. The County's plans comply with the PI Order

11 and its intent as the Court has already determined.

12      Nonetheless, Plaintiffs ask the Court to add new deadlines to the PI Order, to

13 add new requirements to plans the County has already completed under the PI

14 Order, and to create an "expert panel" that the County alone would have to fund to

15 oversee re-drafting of the Challenged Plans and their implementation. ECF No.

16 132-1 at 28–30. These improper requests to modify and enlarge the scope of the PI

17 Order would impose unworkable processes on the County, divert its limited

18 resources, and usurp its governmental functions. Ballantyne Decl. ¶¶ 24-25. They

19 should be denied. As Plaintiffs themselves admitted in their recent Request for

20 Judicial Notice filing in the Ninth Circuit, because of the Stay Order, "the NGOs

21 are blocked from seeking additional relief until the Ninth Circuit Court of Appeals

22 resolves the pending interlocutory appeal." Felton Decl., Ex. 5.

23      Plaintiffs attempt to cast their objections to the Challenged Plans as evidence

24 that the County is not complying with the PI Order. But as the Court previously

25 found, the County has complied with the PI Order. Furthermore, Plaintiffs have

26 failed to follow the Court's clear directions on what should happen if Plaintiffs

27 object to one of the County's plans developed under the PI Order. Plaintiffs'

28

1    requests to modify and enlarge the PI Order while that order is currently on appeal

2    are improper and should be denied.

3         **1.    The Court does not have jurisdiction to make the changes**

4              **requested by Plaintiffs.**

5              The County's appeal of the PI Order to the Ninth Circuit divested the Court

6    of jurisdiction to substantively modify the PI Order in the manner requested by

7    Plaintiffs. "The filing of a notice of appeal is an event of jurisdictional

8    significance—it confers jurisdiction on the court of appeals and divests the district

9    court of its control over those aspects of the case involved in the appeal." *Griggs v.*

10   *Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see also Townley v. Miller*,

11   693 F.3d 1041, 1042 (9th Cir. 2012) (filing of notices of appeal divested the

12   district court of jurisdiction over the preliminary injunction). Certainly, district

13   courts may "continue supervising compliance with the injunction." *A&M Records,*

14   *Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002). But that "does not

15   restore jurisdiction to the district court to adjudicate anew the merits of the case"

16   and any action taken "may not materially alter the status of the case on appeal."

17   *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir.

18   2001) (quotation omitted).

19             Dissatisfied with the Court's prior determinations regarding the County's

20   compliance with the Challenged Plans, Plaintiffs ask the Court to reverse course

21   and, in doing so, to materially expand the PI Order. Plaintiffs cloak their requests

22   under the guise of "compliance," but they are asking the Court for additional

23   injunctive remedies—namely to add new dates and new substantive requirements

24   to the PI Order, including the creation of an entirely new "expert panel." *See* ECF

25   No. 132-2 at 3–9. Adding new requirements to the existing PI Order that the

26   County is complying with would "materially alter the status of the case on appeal"

27   and is therefore improper. *See Nat. Res. Def. Council, Inc.*, 242 F.3d at 1166.

28

COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL CONTEMPT ORDER

63609424

1   The merits of the PI Order are currently in front of the Ninth Circuit. *See*

2   ECF No. 63. As the Court noted in the Stay Order, the decision on the appeal will

3   address critical legal issues that inform the Court's analysis on future requests for

4   injunctive relief from Plaintiffs, which supported staying the litigation pending a

5   resolution of the appeal. ECF No. 131 at 3, 5. "Absent a stay, this Court would

6   waste judicial resources by grappling with the same legal question currently before

7   the Ninth Circuit." *Id.* at 5 n.2.

8       **2.**    **Plaintiffs' requests contravene the Court's instructions.**

9   Plaintiffs' Motion is also improper because Plaintiffs have ignored the

10  Court's instructions on how to proceed given that the Services have declined to

11  provide input on any of the interim plans required by the PI Order and will only

12  engage with the County on the County's HCP pursuant to the ESA section 10

13  incidental take permitting process.

14  Plaintiffs unilaterally seek to have the Court modify the PI Order to add new

15  requirements and to provide Plaintiffs with the right to have the final say on the

16  details of the PI Order plans. ECF No. 132-2. This is contrary to the plain terms of

17  the PI Order. ECF No. 58. As the Court noted, the PI Order "contemplated that any

18  recommendations or comments from the Plaintiffs would go through a process

19  where ***the agencies would weigh in and endorse or not endorse the Plaintiffs'***

20  ***comments***, and then ***the County would decide*** whether to implement based on that

21  endorsement." ECF No. 101 at 28:5–11 (emphases added).

22  At the Status Conference, the Court repeatedly confirmed that the PI Order

23  originally contemplated that the Services would review, comment, and provide

24  guidance on the plans required under the PI Order. ECF No. 101 at 4:4–7; 4:19–24;

25  11:2–6. But the Services subsequently advised that they would not provide input or

26  comment on the PI Order plans as suggested by Plaintiffs, though they would work

27  with the County through the HCP process. ECF No. 72-1 at 1; ECF No. 78-1 at 1.

28  The Court recognized at the Status Conference that the lack of expert input from

1   the Services had changed the interpretation of the PI Order and the path forward.

2   *See* ECF No. 101 at 4:7–11, 4:20–5:3, 11:2–6.

3       The Court made it abundantly clear that it did not want to see either

4   contempt motions or objections filed by Plaintiffs given the lack of input from the

5   Services. ECF No. 101 at 27:16–17 ("Between filing a contempt motion and/or

6   objecting, I prefer neither."). Recognizing contempt motions and serial objections

7   in response to the County plans are "an unworkable solution," the Court instructed

8   the parties to "[c]ontinue to meet and confer" and "if it becomes the case that ***both***

9   ***parties agree that modification is warranted***" the Court would be "open to that."

10  *Id.*, at 29:1–3, 7–8 (emphasis added). But the Court cautioned that "[w]hat I'm not

11  open to is continuing to constantly have status conferences over objections and

12  issues." *Id.* at 29:9–10.

13      The Court reiterated that absent agreement of the parties, there would be no

14  modification of the PI Order and the Court would just go forward with "what's

15  there." *Id.* at 30:6–20. Plaintiffs' counsel specifically asked "what if we think a

16  modification is necessary and the County doesn't…then what should we do?" *Id.*

17  at 30:14–17. The Court was crystal clear: "I repeat, only if the parties can agree,

18  because otherwise we're just going to go forward with what's there. . . We'll just

19  have to adapt with what is happening, and to the extent that the current order can

20  assist in that process, we'll go from there." *Id.* at 30:18–24.

21      At Plaintiffs' request, the parties have met and conferred extensively on

22  Plaintiffs' issues with the various plans required under the PI Order. The County

23  agreed to some, but not all, of the changes suggested by Plaintiffs. Ballantyne

24  Decl. ¶ 26. The County's plans are complete and, as discussed above, the Court has

25  also assessed that the County is complying with the PI Order. The County does not

26  agree to the Plaintiffs' other desired modifications. *Id.* ¶¶ 24-25. As such, per the

27  Court's earlier clear instructions, the plans under the PI Order should stand as-is.

28  The Court should deny Plaintiffs' Motion.

### 3. No current exigency necessitates additional relief.

Plaintiffs concede that "the County has complied with the requirement to release more base flows from Lopez Dam." ECF No. 132-1 at 13. Any disagreements over the substance of the Challenged Plans notwithstanding, by Plaintiffs' own admission the County's compliance with the base flow releases should be enough to forestall the need for additional relief at this time. At the Status Conference, Plaintiffs' counsel explained that "the County is implementing the flow releases, which is the most critical component, most time-critical component of the injunctive relief. . . . And this goes a long ways towards satisfying what we think is the exigency that warranted preliminary injunctive relief." ECF No. 101 at 8:18–24. Plaintiffs' counsel stated further that, "in terms of the broad picture, there's good news" and that "[w]e think it's well warranted for the Court to largely stay the course" until the County submits its draft HCP and ITP application in the fall. *Id.* at 8:10–13.

The County continues to comply with the requirement to release more base flows from Lopez Dam.[2] Ballantyne Decl. ¶ 28. The County agrees with Plaintiffs' earlier assertions that the best course of action is to "stay the course" and allow the County to work towards the draft HCP and ITP application.

### D. The County's Plans Comply with the Court's PI Order.

Plaintiffs' foregoing procedural violations aside, Plaintiffs do not establish that the County has violated a specific and definite term of the PI Order by any evidence, let alone ***clear and convincing*** evidence. *Labor/Community Strategy Ctr.*, 564 F.3d at 1123. Each of the Challenged Plans meets the requirements of the PI Order.

---

[2] While Plaintiffs complain that the 100 cubic feet per second flow level trigger for pulse flow releases is too high, ECF No. 132-1 at 13 n.3, the County notes that it was Plaintiffs' own purported expert who advocated for that particular pulse flow trigger. ECF No. 13-2 ¶¶ 117–124.

COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL
CONTEMPT ORDER
63609424

### 1.    The County's Final BMP Plan complies.

Plaintiffs allege that the County is in violation of the PI Order by failing to list in the Final BMP Plan the specific locations where BMPs will ultimately be applied and which BMPs the County prescribes at each location. ECF No. 132-1 at 18:16–17, 19:13–14. The PI Order does not require that the Final BMP Plan have pre-identified the locations where BMPs are recommended to be applied or to have pre-determined which BMPs are appropriate and effective at those locations. ECF No. 58 ¶¶ 17–18. Plaintiffs' position requires the Court to interpret the PI Order in a manner that is illogical and would render compliance impossible.

The PI Order requires that the County develop a plan "for implementing appropriate best management practices to reduce sediment loading into tributaries of Arroyo Grande Creek." *Id.* ¶ 17. It further requires that in developing the plan "the County shall consider such sediment loading reduction BMP measures as installing sediment fences, jute netting, planting and maintaining vegetation, and constructing settling basins (detention ponds)." *Id.* The County's Final BMP Plan does both—it is a plan to implement BMPs to reduce sediment loading using short and long-term BMP technologies as determined appropriate and effective for application at necessary locations. ECF No. 112-1 at 4–9, 13–36.

The first step in implementing the plan is for the County to locate where sediment reduction is recommended and gather location-specific information to enable the County to select ***appropriate, effective*** short and long-term BMPs. *Id.* The County is currently conducting this work by inventorying County-owned parcels and completing a field survey (performed by qualified persons) to identify areas where sediment reduction is recommended. ECF No. 112-1 at 4, 7; Ballantyne Decl. ¶ 29. The inventory and field survey will produce information on locations where the County will apply BMPs and which BMP (or combination of BMPs) is (or are) appropriate to control conditions at that location. ECF No. 112-1 at 7. This analysis will be completed by September 30, 2025, and "will include an

COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL CONTEMPT ORDER

63609424

implementation schedule for each County-owned site identified for recommended treatments." ECF No. 112-1 at 10; Ballantyne Decl. ¶ 29. At locations where standard BMPs are to be applied and permitting is not required, the plan provides that implementation will occur "within reasonable timeframes" as set out in the September 30, 2025, inventory. ECF No. 112-1 at 9, 10.

Plaintiffs' reading of the PI Order would require the County to apply BMPs without first determining where they are recommended and which BMP technology is appropriate. This makes no sense and Plaintiffs' interpretation should be rejected. As the Court has noted, "[it] has a duty to ensure that the proposed measures, particularly the deadlines, are feasible." ECF No. 54 at 28 n.18.

Plaintiffs also argue that the County is stalling BMP implementation until the HCP. This is false. Ballantyne Decl. ¶ 29. The Final BMP Plan clearly states that BMPs that do not require permits will be implemented in a reasonable timeframe following the inventory completion by September 30, 2025. ECF No. 112-1 at 10. It also provides that BMPs requiring permitting and consultations with the regulatory agencies such as the Services, the Regional Water Quality Control Board, and the Coastal Commission will be included in a project delivery schedule, and the BMPs will be implemented when permits are issued. *Id.*

Plaintiffs' assertion that the environmental permitting requirements are not specific enough in the plan also fails. Although Plaintiffs acknowledged in their comment letter on the proposed BMP Plan that the Services will only engage with the County through the ESA section 10 and HCP process, Plaintiffs suggest in the Motion that it is improper for the County to pursue authorization from the Services (to the extent necessary) for BMPs through that process. *Compare id.* at 1 *with* ECF No. 132-1 at 19 (plaintiffs' citation to ECF No. 57 and the Court's statements made prior to the Services advising they would not comment on PI Order Plans). Environmental permitting is not a "check the box" process. It requires the County to follow a sequential process from preliminary planning through more refined

development to environmental compliance, regulatory permitting and implementation (or construction). Declaration of Emily Creel ("Creel Decl.") ¶¶ 32–36.

The Final BMP Plan reflects the Services' responses to the County's request for comment and recommendations on the PI Order plans in stating that the plan will produce "implementable strategies to include as conservation measures for the HCP that is currently under development and ordered for submission by October 1, 2025." ECF No. 112-1 at 1. The PI Order does not preclude this approach, and it is appropriate that the BMP Plan measures identified in the inventory produced by September 30, 2025, may also be incorporated into the HCP – due just one day later. The Final BMP Plan satisfies the requirements of the PI Order.

### 2.    The County's Final Spillway Fish Screen Plan complies.

The PI Order requires the County to develop and adopt a Spillway Fish Screen Plan "for installing a fish screen on the spillway at Lopez Dam to prevent non-native species that prey on and/or compete with Steelhead from escaping Lopez Lake into downstream Steelhead habitat in Arroyo Grande Creek." ECF No. 58 ¶¶ 11–12. Plaintiffs assert that the County's Final Spillway Fish Screen Plan violates the PI Order because it "does not include a schedule for installing the proposed fish screen" and "fails to outline a timely schedule for necessary steps to obtain regulatory approvals necessary to implement the plan." ECF No. 132-1 at 23.

The Final Spillway Fish Screen Plan expressly defines its objective "[t]o design, assess, and install an effective fish screen that prevents fish from exiting the reservoir over the spillway, and ensuring compliance with all applicable legal requirements, including environmental and regulatory requirements." ECF No. 118-1 at 3. The process begins with the County retaining qualified contractors (consistent with County contracting legal requirements) to assess and conduct a feasibility study on potential fish screen preliminary designs. The work

will include, *inter alia*, identifying the species of concern and their migratory

patterns;[3] establishing regulatory and environmental compliance criteria;

determining operational needs; conducting field investigations and identifying

design constraints; engaging with regulatory agencies and obtaining input on

ecological priorities and dam safety requirements; and developing preliminary

designs and a feasibility study. *Id.* at 3–4 (Phases 1–2). Following this, the plan

details the steps required to design, permit, and install the fish screen and to

perform post-installation monitoring and maintenance. *Id.* at 4–6 (Phases 3–5).

Contrary to Plaintiffs' assertion, the plan also includes a schedule (with dates and

timelines) to complete each phase of the plan. *Id.* at 5–6. It also outlines "a timely

schedule for necessary steps to obtain regulatory approvals necessary to implement

the plan" as required by the PI Order. *See id.* at 3–6.

Plaintiffs argue that the schedule does not result in installation of the fish

screen "as soon as" feasible and therefore violates the PI Order. Plaintiffs do not

even attempt to explain how the County's timeline does not meet the PI Order and

this amounts to a frivolous argument. The PI Order does not permit Plaintiffs to

dictate changes unilaterally to the plan. The work necessary to proceed from

concept to preliminary design/engineering, environmental compliance, regulatory

permitting and construction is extensive and must occur in sequence. Creel Decl.

¶¶ 33–40. As a consequence, if the County were to, for example, initiate

environmental review under the California Environmental Quality Act ("CEQA")

for a spillway fish screen that did not include engineering design to a 60% design

stage, it is likely that the County would receive comments from the Division of

Safety of Dams or other agencies with regulatory authority indicating the County

---

[3] The PI Order refers to "non-native species that prey on and/or compete with"
Steelhead but does not identify the specific species that the screen is intended to
block. ECF No. 58 ¶¶ 11–13.

63609424

1   must redo its analysis. *Id.* ¶ 35.

2          **3.     The County's Proposed Steelhead Passage Barriers Plan**

3                  **complies.**

4                  The County's proposed barrier passage plan details the actions the

5   County is taking to address two potential passage barriers identified in Attachment

6   1 of the PI Order that it owns, operates, or maintains. ECF No. 128-1. Plaintiffs

7   frivolously argue that the County "impermissibly omits" Steelhead passage barriers

8   that it does not own or operate from the proposed plan "without evidence or

9   support for the County's assertion that it does not own them." ECF No. 132-1

10  at 21 n.4. The Court's orders on this subject repeatedly confirm that the PI Order

11  applies only to infrastructure that the County owns, operates, or maintains, and the

12  PI Order does not require the County to adjudicate this issue before excluding

13  infrastructure from the Passage Barriers Plan. *See* ECF No. 57 at 3 n.5 (citing ECF

14  No. 54 at 5 n.2 and 26 n.17); ECF No. 58 ¶ 15. Despite this, Plaintiffs' proposed

15  order on its Motion would modify the PI Order to require the County to address all

16  structures on Attachment 1 under the Passage Barriers Plan. ECF No. 132-2 ¶ 1.

17  This is improper. Plaintiffs further argue that the County's proposed plan "omits an

18  actual plan to remove or modify the specified barriers" and is merely a plan to

19  assess barriers, not remove or modify them.[4] ECF No. 132-1 at 21. This is false.

20          The proposed plan is detailed, providing a step-by-step discussion of the

21  County's work to evaluate, and if needed, to modify or remove the identified

22  potential barriers. First, the County will gather LiDAR topography, aerial imagery,

23  and other data regarding the structures to develop contour mapping consistent with

24  applicable mapping standards. ECF No. 128-1 at 3, 6. The County will next

25

26  _____

27  [4] Plaintiffs' Motion challenges the County's proposed plan. However, on June 30,
    2025, consistent with the PI Order, the County adopted and filed the Final

28  Steelhead Barrier Passage Plan. ECF No. 58 ¶ 15; ECF No. 133-1.

"determine if, when, and how often the [potential barrier locations at issue] may impede steelhead migration." *Id.* at 3. This involves completing, *inter alia*, aquatic and terrestrial habitat mapping, and documenting important existing conditions affecting design such as channel morphology, existing habitat features, invasive species, erosion, and sediment deposition. *Id.* at 3. The County will apply established federal and state guidelines on salmonid passage and "evaluate gauge stream flow records and calculate flow exceedances in the [AGC] watershed for each location" to "define the range of fish passage flows" and "fish passage hydrologic and hydraulic criteria will be applied to define design criteria for barrier remediation." *Id.* at 5.

The County will then develop conceptual remedial treatments and final designs if modification or removal is confirmed as necessary. *Id.* at 6. The conceptual designs will be sufficiently detailed to coordinate with agencies and stakeholders and, based on feedback, the County will then prepare design documents and work iteratively with the Services. *Id.* at 7. The County will then advance the design process to develop 30%, 60%, 90%, and 100% designs. *Id.*

The plan details the permits that the County anticipates will be required. *Id.* at 8-9. The process of advancing a project from preliminary design and engineering to environmental compliance and ultimately to regulatory permitting and construction is complex, extensive, and must occur in sequence. Creel Decl. ¶¶ 33–40. Failing to develop the project design to a sufficient degree can result in delays. *Id.* The order of work outlined in the County's plan follows the sequence necessary to achieve regulatory approvals and permits. *Id.*; ECF No. 128-1 at 6-7.

The plan includes steps necessary to obtain permitting and the County's best estimate of a schedule under both the ESA section 7 and section 10 processes. ECF No. 128-1 at 8–9, 11–13. As noted, many permitting timelines are outside the applicant's control. Creel Decl. ¶ 37. Contrary to Plaintiffs' arguments, the proposed plan is sufficiently detailed, identifies the permits expected to be

1   required, and provides a timeline for permitting under the ESA section 7 and

2   section 10 processes. *Id.* Further, the County is implementing the plan. Ballantyne

3   Decl. ¶ 30.

4               **4.     The County's Final Predator Removal Plan complies.**

5          Plaintiffs reiterate the same challenges to the County's Final Predator

6   Removal Plan as they assert for the Proposed Steelhead Barrier Plan—that the plan

7   does not specify the regulatory approvals necessary for its implementation and the

8   steps to obtain the approvals. ECF No. 132-1 at 27. Plaintiffs further object that the

9   schedule for implementation is deficient. *Id.*

10         Contrary to Plaintiffs' argument, the Final Predator Removal Plan does

11   specify the regulatory and permitting requirements necessary for its

12   implementation and the steps necessary for the County to obtain permits and

13   approvals. ECF No. 118-2 at 8–9. The plan expressly provides that coordination

14   with the Services is required, and through this process, the Services will also

15   determine if the ***Services*** must complete an Environmental Assessment or

16   Environmental Impact Statement to comply with the National Environmental

17   Policy Act ("NEPA"). *Id.*; *see also*, Creel Decl. ¶¶ 21-24.

18         The Final Predator Removal Plan further identifies that the County will need

19   to coordinate with the California Department of Fish and Wildlife ("CDFW") to

20   determine whether CDFW will issue a scientific collection permit to the County

21   for its removal efforts, and states that ***both*** CDFW and the County will need to

22   determine whether the predator removal efforts undertaken require CEQA

23   compliance. *Id.* at 9.

24         Finally, the plan provides a schedule for obtaining permits stating that

25   applications will be submitted "within six months of completion of surveys." *Id.* at

26   9. Plaintiffs have not and cannot establish that there is anything deficient in the

27   County's plan with respect to identifying necessary regulatory approvals and

28   permits. Notably, Plaintiffs do not even articulate whether their grievance is that

**COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL
CONTEMPT ORDER**

63609424

the County has overlooked a permitting requirement that Plaintiffs believe is required, or whether Plaintiffs' position is that one of the identified permits and regulatory approvals is not required. Plaintiffs' inability to articulate a specific error in the Plan exposes that there is no real basis to assert the County has not complied with the PI Order.

Plaintiffs further argue that the County's Final Predator Removal Plan is deficient because it purportedly "states" that the schedule for describing treatments, locations, and timing will be "at some point after" surveys are completed. ECF No 132-1 at 27:4–6. This is a misrepresentation of the plan language. The plan expressly states that treatment locations and timing will be described "***within three months***" of survey completion not "at some point after the surveys" as Plaintiffs' claim. *Compare* ECF No. 118-2 at 9 (emphasis added) *with* ECF No. 132-1 at 27:4–6.

Plaintiffs further argue that by including language in the schedule stating that "[a]ll measures will be implemented following permit issuance, and subject to permitting requirements" the County has not provided a compliant schedule for implementation. *Id.* at 27:6–9. This argument also fails. The ***express*** language of the PI Order states that "[t]he County shall implement the Predator Removal Plan . . . ***provided the County has acquired any necessary regulatory approvals to implement the Plan***." ECF No. 58 ¶ 30 (emphasis added). Even absent this express language, by including regulatory approvals as an element of the proposed and final plans, the PI Order clearly contemplates that the County will comply with regulatory and permitting requirements. ECF No. 58 ¶¶ 28–29. Plaintiffs cannot establish any violation of the PI Order with respect to this plan, which the County is implementing. Ballantyne Decl. ¶ 32.

### 5. The County's Final Habitat Restoration Plan complies.

Plaintiffs assert that the County's Final Habitat Restoration Plan violates the PI Order because it omits an actual habitat restoration project or a commitment to

63609424

1    implement a project, lacks sufficient description to ensure the beneficial

2    components will be included in the project implemented, fails to identify the

3    regulatory permits and approvals required, and omits a schedule for

4    implementation. ECF No. 132-1 at 19.

5          Plaintiffs first assert that the Final Habitat Restoration Plan defers

6    identifying an actual project until submission of the HCP. *Id.* This argument flatly

7    misrepresents the contents of the County's plan, which clearly includes an

8    anticipated process and schedule for engaging with the Services under ESA section

9    10 (if the Services advise it should be incorporated into the HCP) ***or*** under ESA

10   section 7 (if the Services confirm it should be pursued as a stand-alone project).

11   ECF No. 112-2 at 5–8. The County clearly explained its rationale for this

12   approach:

13         While NMFS and USFWS are anticipated to prefer incorporation of habitat

14   restoration projects as part of the Section 10 permitting and HCP approval
      process, the Section 7 process is also described as an alternative in the event

15   the HCP approval process is delayed and/or during early consultation the
      agencies provide assurance that a Section 7 process for an individual project

16   is appropriate to pursue separately from the Section 10 permit.

17

18   ECF No. 112-2 at 5; *see also id.* at 7–8 (providing tables for both the Section 10

19   and Section 7 processes). Plaintiffs notably disregard the material change in

20   circumstances that occurred after the PI Order was entered in which the Services

21   advised they would not provide comments or recommendations on *any* County

22   plan but advised they would engage with the County on an HCP under ESA

23   section 10. ECF No. 132-1 at 24:22–25:25 (omitting any discussion of the

24   Services' letters but relying on differences in the language between the County's

25   proposed PI Order and the order entered by the Court). Despite omitting any

26   acknowledgement of the Services position from their Motion, Plaintiffs did

27   acknowledge it in their comment letter on the proposed plan. *See* ECF No. 112-2

28   at 2. The County has not violated the PI Order by providing alternative potential

COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL
CONTEMPT ORDER

63609424

paths for regulatory approvals in light of the Services' response to the County's requests for comments on the PI Order plans.[5]

Plaintiffs next assert that the County's plan violates the PI Order because the project description is too limited and does not specify its "beneficial components." ECF No. 132-1 at 26:2–5. However, the plan summary of habitat restoration options includes identification of the beneficial components that the project is expected to provide. ECF No. 112-2 at 6 (providing for each project a description of the beneficial components such as placement of "gravel or other native bed materials"; "planting native riparian and emergent aquatic vegetation"; "installation of anchored large wood (LW) structures"). In addition, to the extent Plaintiffs object that the projects may have other potential beneficial components not enumerated in the PI Order, the language of the PI Order is clear that it is a non-exhaustive list: "The Proposed Habitat Restoration Plan shall include beneficial components *such as* [gravel substrate, planting riparian vegetation, addition of large woody material]." ECF No. 58 ¶ 25 (emphasis added). Thus, to the extent other beneficial components are listed or discussed in the attached Stillwater Sciences report, this does not constitute a violation of the PI Order.

Finally, Plaintiffs argue that the plan fails to identify the regulatory and permitting requirements to implement the plan and lacks a schedule for implementing a restoration project. ECF No. 132-1 at 26:6–12. As explained in the

_____

[5] Plaintiffs falsely argue that the County has "a multi-decade history of kicking the can down the road even in its HCPs[.]" ECF No. 132-1 at 25:10. In fact, the County has a long record of *successfully* consulting with the Services (and other regulatory agencies) on multiple major projects for which it has completed permitting and then implemented during the past two decades. Ballantyne Decl. ¶¶ 6–16. Plaintiffs' attempt to sway this Court by suggesting that the County has sat on its hands is wrong and misleading. Completing an HCP with the Services generally takes several years or longer of study and negotiation *that can routinely extend over a decade*. *See* Creel Decl. ¶ 36.

COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL CONTEMPT ORDER

63609424

plan, engagement with the Services is necessary to refine and select the specific habitat restoration project that can be permitted for implementation. ECF No. 112-2 at 2 ("Upon further development and consultation with resource agencies, these habitat restoration opportunities can be further refined, and a specific habitat restoration project can be identified for permitting and implementation."). Further, "the sequential nature of this process is critical" because certain minimum levels of design are necessary to complete the required CEQA and NEPA environmental analyses. Creel Decl. ¶¶ 32–34. If design is not advanced and stable enough to have accounted for all necessary project components, then both CEQA and NEPA could be re-triggered and the environmental processes reopened, which can significantly increase a project's timeline. *See id.* The County's plan reflects this level of understanding of the process. *See* ECF No. 112-2 at 2 ("early collaboration and consultation with NMFS will be critical as they are the entity responsible for determining whether a habitat restoration project would mitigate effects on Steelhead in the AG Creek watershed downstream of Lopez Dam"). The plan also contemplates regulatory approval under either ESA section 7 or section 10 and provides timelines for anticipated plan implementation. *Id.* at 7–8. Contrary to Plaintiffs' assertions, the PI Order does not mandate that the County obtain approval of a project "before judgment." ECF No. 58; ECF No. 132-1 at 26:18-21; *see also* Ballantyne Decl. ¶ 32. The County's Final Habitat Restoration Plan complies with the PI Order.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied. For the expense and effort incurred by the County in responding to this Motion, the Court should award the County its attorneys' fees and costs in an amount to be determined by a subsequent separately filed motion. L.R. 11-9; L.R. 83-7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Date:    July 9, 2025

NOSSAMAN LLP
PAUL S. WEILAND
BENJAMIN Z. RUBIN
ELIZABETH KLEBANER
KATHERINE L. FELTON
BRIAN FERRASCI-O'MALLEY

By: */s/ Katherine L. Felton*

Katherine L. Felton

*Attorneys for Defendant*
*COUNTY OF SAN LUIS OBISPO*

Case No. 2:24-cv-06854 SPG (ASx)

COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIVIL
CONTEMPT ORDER

63609424