Christopher Sproul (Cal. Bar No. 126398)
Brian Orion (Cal. Bar No. 239460)
Marla Fox (Cal. Bar No. 349813)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: borion@enviroadvocates.com
Email: mfox@enviroadvocates.com

**Attorneys for Plaintiffs**

**Additional Counsel Listed on Next Page**

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION,<br><br>the Plaintiffs,<br>v.<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>Defendant. | Case No: 2:24-cv-06854-SPG-AS<br><br>PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CIVIL CONTEMPT ORDER TO ENFORCE THE COUNTY OF SAN LUIS OBISPO'S COMPLIANCE WITH THE PRELIMINARY INJUNCTION<br><br>(Endangered Species Act, 16 U.S.C. §§ 1531, *et seq*; California Fish and Game Code §§ 5901, 5937; California Public Trust Doctrine; California Constitution, Article X; California Code of Civil Procedure § 1085)<br><br>Hearing time and date: 1:30 PM, July 30, 2025<br><br>Location: First Street Courthouse, 350 West 1st Street, Courtroom 5C |

*Additional Counsel for the NGOs*

Jesse Colorado Swanhuyser (Cal. Bar No. 282186)
Sycamore Law Inc.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (805) 689-1469
Email: jesse@sycamore.law

Drevet Hunt (Cal. Bar No. 240487)
Lauren Chase Marshall (Cal. Bar No. 324162)
California Coastkeeper Alliance
1100 11th Street, 3rd Floor
Sacramento, California 95814
Tel: (415) 606-0864
Email: dhunt@cacoastkeeper.org
Email: lauren@cacoastkeeper.org

## **TABLE OF CONTENTS**

I.    Introduction ................................................................................................1

II.   The County's Challenged Plans violate the PI Order ..............................2

    **A.**    The County has violated the PI Order by deferring development or implementation of its remedial plans to the HCP process. ............................2

    **B.**    The Challenged Plans also violate other express terms of the PI Order. .......3

    **C.**    The Services' lack of comment on the plans so far does not excuse the County's PI violations. ...................................................................6

III.  The Stay Order does not establish that the County has complied with the PI Order and the Court has not otherwise precluded hearing of whether the County's Plans have complied with the PI Order..................................................................7

IV.  The County's partial compliance with the PI does not authorize its violation of the remainder of the PI. ............................................................................8

V.    The County's Ninth Circuit appeal does not bar hearing the NGOs' Motion. .......9

VI.  The Stay Order should not be construed as barring the NGOs' Motion...............10

VII.  Local Rule 7-3 should not be invoked to bar the NGOs' Motion.......................10

VIII. Setting new deadlines for standalone regulatory approval requests is an appropriate remedy.............................................................................11

IX.  A court-appointed expert panel is an appropriate remedy. ....................................11

X.    The County's request for fees and costs should be denied. .................................13

XI.  The NGOs should be granted their fees and costs for their Motion. ....................14

XII.  Conclusion.........................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Federal Cases**

*Beltran v. Procare Pharm., LLC*,
  No. 2:19-cv-08819, 2020 WL 6135067 (C.D. Cal., Oct. 19, 2020) ..................... 14

*Curran v. Dep't of Treasury*,
  805 F.2d 1406 (9th Cir. 1986) .................................................................. 14

*Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council Inc.*,
  No. 12-1830, 2018 U.S. Dist. LEXIS 35738 (N.D. Cal., Mar. 5, 2018) ................ 8

*FTC v. Productive Mktg., Inc.*,
  136 F. Supp. 2d 1096 (C.D. Cal. 2001) ................................................... 11

*Galderma Labs., L.P. v. Tisckos*,
  No. 2:21-05522, 2023 WL 3402156 (C.D. Cal., March 21, 2023) ...................... 13

*Gonzalez v. Planned Parenthood of L.A.*,
  No. 05-08818, 2015 WL 12659936 (C.D. Cal., Feb. 4, 2015) ............................ 13

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
  547 F.3d 1213 (9th Cir. 2008) ................................................................ 13

*Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*,
  536 F.2d 1268 (9th Cir. 1976) ................................................................... 9

*Hook v. Arizona Dept. of Corrections*,
  107 F. 3d 1397 (9th Cir. 1997) .............................................................. 12

*Hutto v. Finney*,
  437 U.S. 678 (1978) ............................................................................... 8

*Kerr v. Screen Guild Extras, Inc.*,
  526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds, City of Burlington v. Dague*, 505 U.S. 557 (1992) ..................................................................... 15

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*,
  478 U.S. 421 (1986) ............................................................................ 11

*Marbled Murrelet v. Babbitt*,

    182 F.3d 1091 (9th Cir. 1999)........................................................................14, 15

*McKinney v. Anderson*,

    924 F.2d 1500 (9th Cir. 1991), *vacated on other grounds Helling v. McKinney*,

    502 U.S. 903 (1991) .............................................................................................12

*Meinhold v. U.S. Dep't of Def.*,

    34 F.3d 1469 (9th Cir.1994)...............................................................................9, 10

*NRDC v. Southwest Marine, Inc.*,

    242 F.3d 1163 (9th Cir. 2001).............................................................................9, 10

*Newton v. Consolidated Gas Co.*,

    258 U.S. 165 (1922) .................................................................................................9

*Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*,

    558 F. Supp. 3d 1056 (D. Or. 2021)......................................................................12

*Operating Eng'rs Pension Trust v. A.C. Co.*,

    859 F.2d 1336 (9th Cir. 1988)...............................................................................13

*Penn. v. Del. Valley Citizens' Council*,

    478 U.S. 546 (1986) ...............................................................................................15

*Proffitt v. Municipal Auth. of the Borough of Morrisville*,

    716 F. Supp. 837 (E.D. Pa. 1989) .........................................................................13

*Sierra Club v. Chevron U.S.A., Inc.*,

    834 F.2d 1517 (9th Cir. 1987)...............................................................................13

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,

    802 F. Supp. 2d 1125 (C.D. Cal. 2011)...................................................................1

*Stone v. City & Cnty. of S.F.*,

    968 F.2d 850 (9th Cir. 1992).................................................................................12

**Federal Rules**

Fed. R. Civ. P. 62(c). .................................................................................................. 9

**Local Rules**

Local Rule 7-3 ...................................................................................................... 10, 11

Local Rule 11-9 ........................................................................................................ 13

Local Rule 83-7 ........................................................................................................ 13

## I.       Introduction

The County largely ignores and thus concedes the central point motivating the NGOs' Contempt Motion (Dkt. 132) ("NGOs' Motion"): though the Court expressly denied the County's request to delay its obligations under the Preliminary Injunction Order ("PI Order") until the County completed its Lopez Project Habitat Conservation Plan ("HCP"), the County has done precisely that. Blatantly defying the PI Order, the County submitted five remedial measure "plans" ("Challenged Plans") that impermissibly allow the County to develop the actual plans for Steelhead protection remedial work, identify necessary regulatory approvals for such plans, and disclose when to seek approvals as part of its HCP and delay these actions until it finalizes its HCP. As presently submitted, the Challenged Plans are little more than plans for actual plans in the forthcoming HCP process, in contravention of the PI Order.

The County is repeating a long-established pattern of delay. History well counsels an ITP is many years away at best. The County's approach gives the County an incentive to submit a half-baked HCP (as it has in the past) to indefinitely delay ITP issuance, thus effectively insulating itself from ever implementing the remedial measures. By failing to counter the NGOs' showing that the Challenged Plans embrace the very approach that the Court expressly rejected in its orders (Dkts. 57, 58), the County has conceded these points--making contempt the proper conclusion. *E.g., Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

Mostly skirting the NGOs' central point, the County focuses on procedural bars to the NGOs' Motion. The County contends that the Court's partial stay (Dkt. 131) ("Stay Order") bars the NGOs' Motion, arguing in effect that even though the Court issued the Stay Order on an express finding that the County's compliance with the PI would preclude irreparable harm to the NGOs and the environment, the NGOs are barred from coming to court should the County elect to disregard the PI. This contention is ironic given that the County has asserted, in double standard fashion, *it* may seek to modify the PI Order. Dkt. 133-1 at 7 (claiming a reserved "right" to seek modification of PI Order

based on 1998 Biological Opinion). Surely, however, the Court could not have intended to bar the NGOs from seeking to ensure compliance with the PI, leaving the County free to disregard the PI pending the appeal. The County's additional attempted procedural roadblocks to the Court addressing the merits of the County's PI violations equally fail.

## II.    The County's Challenged Plans violate the PI Order.

### A. The County has violated the PI Order by deferring development or implementation of its remedial plans to the HCP process.

The County obscures the NGOs' Motion main objection--the Challenged Plans improperly defer development or implementation of actual plans for remedial measures to protect Steelhead to the HCP process, even though the Court expressly denied the County's request to do this. *See* Dkt. 132-1 at 2-3, 5-8. The NGOs' Motion pointed out the various express provisions in the Challenged Plans specifying that the actual remedial measures, the schedule for implementing these measures, and the itemization of needed regulatory authorizations and schedule to obtain these authorizations will be developed only as part of the HCP. *Id*. at 13-22. The Motion further pointed out that under the plans, implementation of the remedial measures will only occur upon HCP approval. *Id*. The County does not effectively rebut this showing. As the NGOs' Motion pointed out, **(1)** the Predator Removal Plan plainly defers regulatory approval and implementation of predator control actions to the HCP process (Dkt. 118-2 at 8, 10); **(2)** the BMP Plan states it will include BMPs as conservation measures in the forthcoming HCP (Dkt. 112-1 at 1, 10), a point the County concedes in its Opposition Brief (Dkt. 134 at 17); **(3)** the Habitat Restoration Plan defers identification of any particular project to the HCP (Dkt. 112-2 at 2, 6-8), as the County's own testimony confirms (Dkt. 132-12 at 220-22); **(4)** the Final Steelhead Passage Barriers Plan ("Barriers Plan")[1] defers an actual plan to modify or remove barriers to the HCP (Dkt. 133-1 at 8-9, 11, 12); and **(5)** the Spillway Fish Screen

---

[1] The County filed its Barriers Plan with the Court on June 30, 2025, and, as the NGOs anticipated, the final plan suffers from the same flaws as the proposed plan. *Compare* Dkt. 132-1 at 17 n.6 *with* Dkt. 133-1.

Plan indicates that the County may only include the fish screen as a conservation strategy in an approved HCP (Dkt. 118-1 at 3).

As discussed in the NGOs' Motion (Dkt. 132-1 at 5-8, 11), the County's effective delay of its Steelhead protective measures until it submits and eventually gets approval for an HCP for the whole Lopez Project is highly problematic given the County's long history of foot-dragging in developing this HCP. The County attempts to rebut the NGOs' showing of County foot-dragging with assertions that it has not "sat on its hands" in completing its HCP (Dkt. 134 at 24 n.5) and the County has a "productive working relationship with NMFS and other permitting agencies." Dkt. 134-1 ¶ 16. But the inescapable reality remains, as this Court recognized, that "Defendant has engaged in an extensive and lengthy regulatory process with the [NMFS] agency to improve the Steelhead Creek habitat for nearly two decades—the results of which have remained seemingly unavailing based on the record." Dkt. 57 at 2. This pattern continues. For example, its co-lead HCP consultant halted work on the County's HCP for one year, from March 2024 to April 2025, and the County did not have either of its two HCP consultants resume HCP work in earnest until April 2025, though under court order since December 9, 2024 to complete and submit an HCP to NMFS and USFWS ("the Services") by October 1, 2025. Sproul Reply Decl., ¶ 8, Ex. 5 at 182-83; *id.* ¶ 9, Ex. 6 at 204-05. Further examples are numerous. In 2007, the County created a "list of known barriers" to Steelhead passage targeted for remedial action. *See* Dkt. 20-1 at 13-15. However, 18 years later, five of the eight barriers are still in place. Sproul Reply Decl., ¶ 10, Ex. 7. The County's co-lead HCP consultant developed a list of AG Creek restoration project opportunities to benefit Steelhead in 2023. Dkt. 22-2 at 25 (Table 2). Two years later, the County has not committed to, or implemented, any of those restoration projects and has done little to develop the specifics needed to design and seek approval for those projects. Dkt. 132-12 at 220-22; Sproul Reply Decl., ¶ 9, Ex. 6 at 199.

### B. The Challenged Plans also violate other express terms of the PI Order.

The NGOs also present clear and convincing evidence demonstrating other ways

the Challenged Plans do not meet the express terms of the PI Order. For example, the BMP Plan omits a schedule for implementation, instead expressly delaying adoption of a schedule until September 30, 2025. Dkt. 112-1 at 10. The County's Opposition confirms this. Dkt. 134 at 15-16; Dkt. 134-1 ¶ 29. The BMP Plan also does not specify all regulatory approvals or access agreements necessary to implement the plan or outline a timely schedule to obtain such regulatory approvals or access agreements. Dkt. 132-1 at 13-16. The County's Opposition points to nothing in the plan to refute this. Dkt. 134 at 16. The Creel Declaration, rather than supporting the County, underscores the NGOs' point by identifying the various steps needed for regulatory approvals of Steelhead protective measures, but with no schedule to make them happen. Dkt. 134-2 ¶¶ 30-40.[2] To comply with the PI, the BMP Plan needed to specify which approvals apply and provide a schedule for completing the steps--but the BMP Plan omits the steps and a schedule for implementing them. Dkt. 112-1 at 9-10.

The Barriers Plan also omits an implementation schedule, deferring schedule adoption to three months out. Dkt. 133-1 at 11. With circular logic, the County claims PI compliance because it is complying with its self-prescribed obligation to develop this schedule months from now. Dkts. 134 at 21; 134-1 ¶ 30.[3] The County's list of potentially needed regulatory approvals does not specify the necessary steps for obtaining such approvals or access agreements to implement the Barriers Plan, and the County's estimated timeline omits any information about the steps needed to gain regulatory approvals beyond ESA authorization. *Compare* Dkt. 58 ¶¶ 14-15 *with* Dkt. 133-1 at 8-14. The Creel Declaration does not fill these gaps as, (1) it is not itself a PI plan, and (2) in

---

[2] The NGOs do not suggest that it is improper for the County to pursue the Services' authorizations. *Contra* Dkt. 134 at 16. The problem is the County's failure to specify whether these authorizations are necessary and for which BMPs (some BMPs likely would not need the Services' approvals), or a schedule for seeking the authorizations.

[3] The County's claim that it is frivolous for the NGOs to seek a modified PI Order requiring the County address all structures on Attachment 1 is unfounded. Dkt. 134 at 19. By its terms the PI Order requires a plan to address "the specified Steelhead passage barriers . . . listed in Attachment 1 to this Order." Dkt. 58 ¶ 15.

any case it does not provide dates for the County completing steps to secure regulatory authorization to implement barrier removals in Arroyo Grande Creek ("AG Creek").

The NGOs' Motion pointed out that the Spillway Fish Screen Plan lacks the schedule for installing the proposed fish screen required by the PI Order (Dkt. 58 ¶ 11), instead stating a schedule for developing a proposed plan to install a fish screen. Dkt. 132-1 at 18. The County's Opposition only echoes the problem, summarizing its plan to develop a plan while ignoring the terms of its own plan acknowledging that the County may never ultimately install a fish screen. Dkt. 134 at 17-18; Dkt. 118-1 at 4 n.1. Further, despite recognizing the fish screen regulatory approval process will be extensive and must occur in sequence, the County does not refute that its Spillway Fish Screen Plan omits a timely schedule for obtaining such regulatory approvals. Dkt. 134 at 18.

The Predator Removal Plan fails to specify the necessary regulatory approvals, omits the steps to obtain those approvals, and lacks a schedule for implementation. Dkt. 132-1 at 22. The County points to the plan's broad list of "Regulatory Considerations" that may or may not apply, but this does not specify the necessary steps for obtaining needed approvals for implementation of the plan as required by the PI Order. *Compare* Dkt. 134 at 21 (citing Dkt. 118-2 at 8-9) *with* Dkt. 58 ¶ 29. The plan's general statement that "permit applications . . . will be submitted within six months of completion of surveys" and that "[a]ll measures will be implemented following permit issuance, subject to permitting requirements" does not constitute an implementation schedule. The entire process (including details of treatment location and timing) is contingent on a visual survey to "be completed within six months of final plan adoption *if feasible*[.]" Dkt. 118-2 at 9-10 (emphasis added). The County states it is implementing the plan because it has retained a consultant to complete the surveys, Dkt. 134-1 ¶ 33, but under the plan's own language the schedule may delay well beyond October 30, 2025, if the County unilaterally determines it is not feasible to complete it by then.

Finally, the Habitat Restoration Plan does not specify the steps needed to comply with all necessary regulatory permits to implement the plan and lacks a schedule for

implementation of the restoration measures. Dkt. 132-1 at 20-21. The "Permitting Options Summary and Schedule" omits any information about the steps needed to gain regulatory approvals beyond ESA authorization or a schedule for implementing those steps. *Compare* Dkt. 58 ¶¶ 25, 27 *with* Dkt. 112-2 at 6-8. The County effectively recognizes that that a complete plan would require specifying the sequence of *all* needed authorizations but does not provide this. Dkt. 134 at 25 (citing Dkt. 134-2 ¶¶ 32-34).

### C. The Services' lack of comment on the plans so far does not excuse the County's PI violations.

The County's contention that the Services presently declining to comment on the Challenged Plans empowered the County to defer development and implementation of its Challenged Plans to the HCP process is meritless. While the NGOs have advocated and the PI Order mandated that the plans should be developed in conjunction with feedback from the Services, submittal of the Lopez Project HCP is *not* the only means for the County to secure the Services' guidance. The Services have indicated that they will provide comments as the County pursues regulatory approvals. Accordingly, the County in short order could obtain the Services' guidance by submitting discrete, standalone ITP applications for each of the remedial measures or, as the County itself acknowledges, by requesting a federal lead agency to initiate ESA § 7 consultation in conjunction with applications to a federal lead agency for necessary permits. *See, e.g.*, Dkt. 134-2 ¶¶ 21-23. Indeed, the County has repeatedly pursued regulatory approvals for remediation work in AG Creek as standalone projects, demonstrating that this is a workable approach to implement remedial measures while avoiding the bottleneck of awaiting HCP approval for the Lopez Project as a whole. *See* Dkt. 132-13; Dkt. 132-14; Dkt. 134-1 ¶¶ 7-10.

The County's complaint (Dkt. 134 at 16-17; Dkt. 134-1, ¶ 25) that the NGOs are naïve about regulatory approvals, which necessarily require the County's slow walk, serial approach lacks merit. The NGOs are mindful that securing regulatory approvals requires steps and these steps can take significant time. Schmitt Reply Decl., Dkt. 27 ¶¶ 129, 151, 154, 156, 160; Dkt. 56-1 (proposing conditions for regulatory approvals in PI

Order); Dkt. 57 at 3. However, it is the County that is the driver for the regulatory approval process and the first step is for the County to develop, as it has not, concrete plans for the Services and other regulatory agencies to review. *See*, *e.g.*, Sproul Reply Decl., ¶ 12; Ex. 9 (NMFS HCP Handbook underscoring ITP approval is an applicant driven process). With proper County initiative, some of the Steelhead remedial measures called for by the PI could be designed and implemented forthwith, at least in part, without ESA authorization and with minimal or no regulatory approvals needed. *See, e.g.*, Dkt. 112-1 at 9-10. Even the County acknowledges that this is potentially true with respect to BMPs. Dkt. 134 at 16. Other measures may require more extensive environmental review, with approvals not likely to be secured and projects implemented until well after the County's HCP submittal in October 2025. Dkt. 134-2 ¶¶ 30, 36. Regardless, the likely long lead time for some of these projects does not justify the County failing to robustly pursue the first step of devising concrete plans for regulatory review. Without that first step, the County continues its approach of indefinite delay.

**III.    The Stay Order does not establish that the County has complied with the PI Order and the Court has not otherwise precluded hearing of whether the County's Plans have complied with the PI Order.**

The County's argument (Dkt. 134 at 6-7) that the Court's Stay Order ruled that the County has fully complied with the PI is meritless. The Stay Order (at 1) states in passing that the County "has timely complied with the actions mandated by the" PI Order, but this can only reasonably be interpreted as acknowledgement of the uncontested timely submittal of the Challenged Plans by the PI Order's deadlines. Respecting the Court's direction not to challenge the County's PI plan submittals seriatim (Dkt. 101 at 29:9-10), the NGOs did not brief the Challenged Plans' defects before the Court issued the Stay Order. The Stay Order does not analyze the Plans' merits, making unreasonable a conclusion that the Order held that the Challenged Plans meet the PI Order's substantive

terms despite no merits briefing on this point.[4] Accordingly, the Stay Order does not
resolve whether the Challenged Plans substantively comply with the PI Order.

Equally meritless is the County's contention (Dkt. 134 at 13) that the Court's
February 2025 Status Conference remarks barred the NGOs from seeking relief for the
Challenged Plans violating the PI. The Court stated objections to hearing seriatim
objections to the work plans (Dkt. 101 at 29:9-10), but it would be an unreasonable
interpretation of these comments (which were not formalized in a court order) that the
County is immune from a contempt motion should the County abandon PI compliance.
*Id.* at 14:13-15. The Court's remarks did not render the PI effectively unenforceable,
dependent only on the County's voluntary compliance. *See, e.g., Dep't of Fair Emp't &
Hous. v. Law Sch. Admission Council Inc.*, No. 12-1830, 2018 U.S. Dist. LEXIS 35738,
at *85-86 (N.D. Cal., Mar. 5, 2018) (excusing violations would render court order merely
"set of guidelines" from which defendants can "choose which to follow and which to
disregard," defendant was "bound to comply with all of [the order's] provisions," and
"[F]ederal courts are not reduced to issuing injunctions . . . and hoping for compliance.")
(quoting *Hutto v. Finney*, 437 U.S. 678, 690 (1978)). Respecting the Court's direction
while seeking to preserve the PI Order's relief that was granted to avoid irreparable harm,
the NGOs thoroughly discussed and attempted to resolve the issues without Court
involvement via conferral correspondence and meetings—and delayed this Motion until
the last of the remedial plans was before the Court. Sproul Reply Decl., ¶¶ 4-7.

**IV.    The County's partial compliance with the PI does not authorize its violation of
the remainder of the PI.**

The County apparently urges that its partial compliance with the PI by releasing
increased base flows from Lopez Dam should be deemed "good enough," rendering
immaterial whether the County has violated numerous other PI conditions. This is
untenable. Granted, releasing more water from Lopez Dam to create better hydrological

---

[4] Indeed, the Court could not have reviewed the final Barriers Plan (Dkt. 133-1) as the
County did not submit this plan until *after* the Stay Order.

conditions for Steelhead in AG Creek is a significant remedy for Steelhead, perhaps the most important short-term remedial measure until such time as Steelhead access to a greater portion of the AG Creek watershed can be restored. *See* Schmitt Decl., Dkt. 13-2 ¶¶ 116-18; Plfs.' Rev. Prop. PI Order, Dkt. 24-1 at 5. However, as the Court found in granting the PI, the measures that should have been specified in the Challenged Plans are also significant to Steelhead survival and recovery in AG Creek. Dkt. 54 at 26-28; *see also* Schmitt Decl., Dkt. 13-2 ¶¶ 128-35, 141-45; Dkt. 24-1 at 6-8.

## V.    The County's Ninth Circuit appeal does not bar hearing the NGOs' Motion.

The County's contention that its interlocutory appeal of the PI has deprived this Court of jurisdiction to halt the County's contemptuous failure to comply with the PI lacks merit. Federal Rule of Civil Procedure ("FRCP") 62(c) allows a district court to "suspend, modify, restore, or grant an injunction during the pendency of the appeal" to secure the rights of the opposing party. *NRDC v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166-69 (9th Cir. 2001); *see also Newton v. Consolidated Gas Co.*, 258 U.S. 165 (1922); *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976). Under FRCP 62(c), district courts may modify injunctions pending appeal to add new deadlines for injunction compliance and even alter the substantive actions required when such modifications have "left unchanged the core questions before the appellate panel." *Southwest Marine*, 242 F.3d at 1167. Such modifications are acceptable so long as reversing the injunction's originally stated core requirements would necessarily reverse the modifications as well. *Id.*; *see also Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 n.14 (9th Cir.1994) (upholding modification to injunction to aid court oversight of compliance made in response to contempt motion).

Here, "revising" the PI Order to state new compliance deadlines would merely ensure compliance with the substantive terms of the PI Order. Similarly, the proposed expert panel is a mechanism to ensure compliance with the PI Order's substantive terms rather than altering the Order's substance. The Ninth Circuit's reversal of the PI Order's original terms would necessarily also reverse the proposed expert panel requirement.

Thus, ordering the NGOs' requested PI modifications are within this Court's jurisdiction. *Southwest Marine*, 242 F.3d at 1167; *Meinhold*, 34 F.3d at 1480 n.14.

## VI.    The Stay Order should not be construed as barring the NGOs' Motion.

The County contends that the Stay Order has stayed all motion practice, thus precluding the NGOs' Motion. However, the Court characterized the County's stay motion as seeking "to stay this matter, including discovery, pretrial, and trial dates" without mentioning a stay on all motion practice. Further, the Court neither signed the County's Proposed Order (Dkt. 99-4), which expressly stayed all motion practice, nor otherwise expressly prohibited motion practice. Accordingly, the Stay Order at least left some ambiguity on whether all motions are now barred that, at a minimum, should preclude the County's argument (discussed below) that the NGOs' Motion was frivolously filed and thus sanctionable. More importantly, the Stay Order expressly granted only a partial stay, finding that the stay was permissible only because the County would remain obligated to comply with the PI, thus obviating irreparable environmental harm. Dkt. 131 at 2-3, 5-6. Predicating a stay on the County's PI compliance but then barring the NGOs from seeking relief should the County abandon PI compliance would be contradictory. The PI relief is needed to avoid irreparable harm (*see* Dkt. 54 at 26-28) and allowing the County to violate the PI would open the door to that irreparable harm.

Further, if the Court finds the Stay Order bars the NGOs' Motion, the Court surely has discretion to modify the stay to allow a hearing on the Motion, as the NGOs have requested in the alternative. The Stay Order pointed out the wide discretion whether to issue the stay. Dkt. 131 at 2. The Court obviously still retains this discretion to modify the stay to hear whether the County is complying with the PI.

## VII.    Local Rule 7-3 should not be invoked to bar the NGOs' Motion.

The County's contentions that the NGOs failed to comply with Local Rule 7-3 before filing their Motion lack merit. Sproul Reply Decl., ¶ 4. The NGOs sent the County 7 letters over 7 months objecting to the County's PI plans, including 6 letters objecting to the Challenged Plans. *Id.* The NGOs informed the County that they intended to seek a

contempt finding if the County did not comply with the PI Order. *Id.* ¶ 4, Ex. 1. Indeed, a County court filing acknowledged the NGOs' expressed intention to potentially seek contempt. Dkt. 69 at 4; *see also* Sproul Reply Decl. ¶¶ 5-6, Exs. 2, 3. The NGOs further repeatedly complained to the County in numerous conferral calls about the Challenged Plans and stated they would ask the Court to compel the County to modify the Challenged Plans to comply with the PI. Sproul Reply Decl., ¶ 7. In these multiple failed attempts to convince the County to fix the Challenged Plans, the NGOs met Local Rule 7-3's intended purpose--to come to Court only after exhausting attempts to resolve conflicts and establishing that judicial relief would be needed to secure legitimate ends.[5] The County's vehement objection to the Motion underscores that the parties irreconcilably disagree about the Challenged Plans, necessitating a court resolution.

**VIII.  Setting new deadlines for standalone regulatory approval requests is an appropriate remedy.**

As argued in the NGOs' Motion (Dkt. 132-1 at 23-24), setting new deadlines for the County seeking standalone regulatory approvals for the Challenged Plans projects is an appropriate remedy to halt the County from the delay tactics of wrapping approvals into its Lopez HCP process. Notably, the County pursued the few projects that it has actually implemented in AG Creek to benefit Steelhead as standalone projects independent of its decades long and ineffective pursuit of ESA authorization for the Lopez Project HCP. *See, e.g.*, Dkt. 132-13; Dkt. 132-14. Proceeding in this standalone matter is what allowed the County and/or its partners to design and timely win regulatory approval for those projects. *Id.*; *see also* Dkt. 18-14 ¶¶ 8-15; Dkt. 134-1 ¶¶ 7-10.

**IX.    A court-appointed expert panel is an appropriate remedy.**

---

[5] The County's argument that the NGOs' references to a motion to compel somehow disguised "the true nature of the Motion" (Dkt. 134 at 8) is meritless. Seeking civil contempt *is* the means to compel compliance with a court order and the County could not have been surprised that a contempt motion would be the means to this end. *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443, (1986); *FTC v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1107 (C.D. Cal. 2001).

As the Court has recognized, the County has delayed fashioning acceptable remedial action to offset the harm of the Lopez Project on Steelhead for decades. Dkt. 57 at 2. Moreover, as discussed above, the County is still entrenched in its delay approach, formulating the Challenged Plans so as to ensure that the County will not be obligated to take affirmative actions for years. Moreover, so far as the available evidence shows, the County is also now drafting its HCP similar to its failed approaches in the past. Its draft HCP still reads in significant measure as plans to someday have a plan rather than specifying concrete measures to implement. Dkt. 132-1 at 17 n.5, 20, 22 n.7. To halt this evasion, the Court should follow the approach in *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs* ("*NEDC*") and order the County to create and fund an expert panel on the terms proposed in the NGOs' Motion. 558 F. Supp. 3d 1056, 1075-76 (D. Or. 2021). Such a panel will assist development of proper revisions for the County's present Challenged Plans and provide independent expertise to aid the Court in further adjudication of what remedial measures are appropriate to protect ESA-listed species. Indeed, this Court previously noted it would be open to requests for additional expertise if it would be helpful. *See* Dkt. 101 at 29-30. Tellingly, the County's Opp. makes no mention of *NEDC* nor any other cases addressing when it is appropriate to appoint independent experts, instead stating in merely conclusory fashion that the Court's appointment of a County-funded expert panel would be "unworkable." This is meritless; case law well supports that appointing experts under Federal Rule of Evidence 706(a) and/or pursuant to the courts' inherent authority to assist judicial evaluation of complex issues, is "workable," even when the defendant is a state government entity. *McKinney v. Anderson*, 924 F.2d 1500, 1510-11 (9th Cir. 1991), *vacated on other grounds Helling v. McKinney*, 502 U.S. 903 (1991); *see also Stone v. City & Cnty. of S.F.*, 968 F.2d 850, 852, 863 (9th Cir. 1992). Moreover, when plaintiffs have limited means, as here, it is appropriate to require the defendant to pay for the experts' costs, even if the defendant is a state government entity. *McKinney*, 924 F.2d at 1510-11; *Hook v. Arizona Dept. of Corrections*, 107 F. 3d 1397, 1402-03 (9th Cir. 1997) (affirming district court appointment of special master to

monitor injunction compliance at state defendant's expense).

## X.      The County's request for fees and costs should be denied.

The County's request to be awarded fees is frivolous and should be denied. The County's two sentence fees "argument" only cites, without explanation, Local Rules 11-9 and 83-7. Arguments made in passing and inadequately briefed are waived, which alone warrants denying the County's request. *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008). Moreover, these Local Rules limit sanctions to "frivolous" motions amounting to "willful, grossly negligent, or reckless" conduct that "rises to the level of bad faith and/or a willful disobedience of a court order." *E.g.*, *Galderma Labs., L.P. v. Tisckos*, No. 21-05522, 2023 WL 3402156, at *1-2 (C.D. Cal., March 21, 2023). The Ninth Circuit has counseled that analogous FRCP 11 sanctions are reserved for "rare and exceptional" circumstances, and are "an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A.C. Co.*, 859 F.2d 1336, 1344-45 (9th Cir. 1988). Courts have adopted the same approach to sanctions under Local Rule 83-7. *E.g.*, *Gonzalez v. Planned Parenthood of L.A.*, No. 05-08818, 2015 WL 12659936, at *13 (C.D. Cal., Feb. 4, 2015). For a pleading to be "frivolous," it must be "baseless and made without a reasonable and competent inquiry." *Id.* at *4. To be deemed filed in bad faith, the pleading must be more than merely burdensome or vexing, it must be akin to a "persistent pattern of clearly abusive litigation activity." *Id.* at *14-15. The County presents no argument that the NGOs' Motion is "frivolous" or made for an improper purpose under these high standards. Indeed, the NGOs' purpose was the laudable one of trying to preserve the PI relief awarded to reduce the Steelhead extinction risk from the County's Lopez Project, vindicating the ESA's important public policy. Dkt. 54 at 26-28.; *see also Proffitt v. Municipal Auth. of the Borough of Morrisville*, 716 F. Supp. 837, 844 (E.D. Pa. 1989) (citizen suit provisions reflect "Congress' clear intention . . . that citizen plaintiffs are not to be treated as 'nuisances or troublemakers' but rather as 'welcomed participants in the vindication of environmental interests.'"); *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987) ("citizen suits

should be handled liberally, because they perform an important public function"). The County's sanction request must further be evaluated only in the context of case law mandating a high bar for reverse fees awards against citizens in environmental public interest litigation. *See, e.g.*, *Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095-96 (9th Cir. 1999) (ESA creates an asymmetrical attorney fee provision under which prevailing citizens are generally entitled to their attorneys' fees, but prevailing defendants are only entitled to fees if plaintiffs' claims are frivolous--to give effect to congressional intent of facilitating citizen suit enforcement).

Moreover, before a party can seek sanctions under the Local Rules, it must follow FRCP 11's notice and "safe harbor" procedural requirements—not request sanctions in opposition to a motion. *Beltran v. Procare Pharm., LLC*, No. 19-08819, 2020 WL 6135067, at *4 (C.D. Cal., Oct. 19, 2020). The County has not complied with these requirements, thus barring any present County sanctions request. Additionally, the County attempting to reconcile this fatal procedural defect with a sanctions motion now would be ironic given its position that the Stay Order presently bars all motion practice-- the County cannot have it both ways. In light of the above, it is the County's request for fees and costs that is frivolous, not the NGOs' Motion.[6]

## XI.    The NGOs should be granted their fees and costs for their Motion.

As argued in the NGOs' Motion (at 10, 25), the NGOs should be awarded their attorneys' fees and costs in an amount to be determined by a subsequent motion. The County's apparent contention that the NGOs should be denied because their lawyers are working on contingency is meritless. Citizens are entitled to attorney fee recovery for their counsel at prevailing market rates regardless of what they are actually paying their counsel. *See, e.g., Curran v. Dep't of Treasury*, 805 F.2d 1406, 1408-10 (9th Cir. 1986).

---

[6] Finally, the County's fee request should be denied because its assertion (Dkt. 134 at 9:18-19) that the County has incurred attorneys' fees in opposing the NGOs' Motion is false. The County hides from the Court that it is *not* paying its attorneys on this case; all defense costs are being paid for by the entities that the County provides Lopez water to. Sproul Reply Decl., ¶ 11 Ex. 8.

Indeed, that attorneys are working on contingency potentially warrants increasing rather than denying their compensation. *See, e.g., Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds, City of Burlington v. Dague*, 505 U.S. 557 (1992). Awarding prevailing citizens fair market value attorneys' fees is mandatory to respect congressional intent that citizens have the means to bring environmental cases. Without contingent fee recovery possibility, such citizens would be unable to secure legal representation as they generally lack the means to pay lawyers on their own—which is true for the NGOs. *E.g.*, *Penn. v. Del. Valley Citizens' Council*, 478 U.S. 546, 559-60 (1986) (Congress concluded that without award of attorneys' fees to prevailing environmental case plaintiffs "many legitimate claims would not be redressed."); *Marbled Murrelet*, 182 F.3d at 1095-96; Bothwell Reply Decl. ¶¶ 1-4.

## XII.  Conclusion

The Court should declare the County in contempt of the PI and grant the NGOs' requested relief, including ordering the County to submit revised versions of the Challenged Plans. Court direction now that the County cannot merely draft plans to someday have a plan, but must actually specify actions to protect Steelhead is important to improve the Challenged Plans, but also to signal that the County cannot repeat this approach in its HCP. As noted, the County's present draft HCP follows the County's familiar pattern in both the Challenged Plans and prior HCP drafts of declining to propose specific actions, and instead providing only vague planning to someday develop actual plans for actions to protect ESA-listed species. The NGOs bring this important matter to the Court's attention now, lest the County argue that the NGOs have slept on their rights to contest the County's continued approach of delaying development of concrete proposals.

Date: July 16, 2025              Respectfully submitted,

*/s/ Christopher Sproul*
Christopher Sproul, Attorney for the Plaintiffs