UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER; LOS PADRES FORESTWATCH; CALIFORNIA COASTKEEPER ALLIANCE; and THE ECOLOGICAL RIGHTS FOUNDATION,<br><br>          Plaintiffs,<br><br>     v.<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>          Defendant. | Case No. 2:24-cv-06854-SPG-AS<br><br>**ORDER DENYING MOTION FOR CONTEMPT [ECF NO. 132]** |

Before the Court is the Motion for Contempt (ECF No. 132 ("Motion")) filed by Plaintiffs San Luis Obispo Coastkeeper, Los Padres Forestwatch, California Coastkeeper Alliance, and the Ecological Rights Foundation ("Plaintiffs"). The Court has read and considered the matters raised with respect to the Motion and concluded that this matter is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES the Motion.

## I. BACKGROUND

### A. Factual Background

The Court has previously discussed at length the underlying facts of this action. *See* (ECF Nos. 54, 131). Relevant to this instant Motion, the Court issued a Preliminary Injunction Order, *see* (ECF No. 58 ("PI Order")), requiring Defendant to complete certain remedial measures to avoid and minimize "take" of Steelhead in the Arroyo Grande Creek. The PI Order also required that Defendant submit its proposed and final plans for different remedial projects to Plaintiffs, the Court, the National Marine Fisheries Service ("NMFS"), and the U.S. Fish and Wildlife Service ("USFWS," together with NMFS, the "agencies")). If the agencies provided any feedback to Defendant about its remedial plans, then the PI Order required that Defendant incorporate such feedback in its plans.

However, when Defendant submitted its remedial plans to the USFWS, the agency declined to provide comments. USFWS stated that it "defers all South-Central California Coast Steelhead . . . considerations to the . . . NMFS or appropriate species experts." (ECF No. 72-1 ("USFWS Response Letter") at 1). The NMFS also declined to comment on Defendant's flow release plans or any other remedial plans from the injunction. *See* (ECF No. 78-1 ("NMFS Response Letter")). Instead, the agencies, particularly the NMFS, "urge[d] the County to submit a new draft [habitat conservation plan ("HCP")] and Permit application as quickly as possible." (*Id.* at 3); *see also* (USFWS Response Letter at 1–2).

Notwithstanding the lack of feedback from the agencies, the PI Order requires Defendant to adopt final remedial plans in accordance with the remedial goals outlined in the Order; the Order further states that Defendant may consider, but is not required to incorporate, Plaintiffs' recommendations, unless the agencies endorsed such recommendations. *See* (PI Order ¶¶ 2, 5, 12, 15, 18, 21, 26). Additionally, the Order also requires Defendant to implement remedial measures once it has secured any necessary regulatory permits and authorizations in a feasible yet timely manner. *See generally* (*id.*).

Thus far, Defendant has timely submitted the following plans to the Court: the Lopez Dam Flow Release Plan (ECF No. 72-2 ("Flow Release Plan")), Steelhead Monitoring Plan

(ECF No. 88-1 ("Monitoring Plan")), Steelhead Volitional Study Plan (ECF No. 104-1 ("Volitional Study Plan")), Best Management Practices Plan (ECF No. 112-1 ("BMP Plan")), Habitat Restoration Plan (ECF No. 112-2 ("Habitat Restoration Plan")), Spillway Fish Screen Plan (ECF No. 118-1 ("Spillway Fish Screen Plan")), Predator Removal Plan (ECF No. 118-2 ("Predator Removal Plan")), and Steelhead Passage Barriers Plan (ECF No. 133-1 ("Passage Barriers Plan")).

### B. Procedural History

After the Court issued the PI Order, Defendant filed an interlocutory appeal to the Ninth Circuit. *See* (ECF No. 63). Thereafter, Defendant filed a partial motion to stay the case proceedings pending resolution of its interlocutory appeal. *See* (ECF No. 99). Defendant, however, did not request a stay of the PI Order, itself. The Court then granted the motion to stay. *See* (ECF No. 131). Shortly thereafter, Plaintiffs filed this instant motion. Defendant opposes the motion. *See* (ECF No. 134 ("Opp.")). Plaintiffs have filed a reply. *See* (ECF No. 135 ("Reply")).

## II. LEGAL STANDARD

"Absent a stay, all orders and judgments of courts must be complied with promptly." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (internal quotation marks omitted). Courts enjoy "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966). "Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). "The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *Id.* (internal quotation marks omitted). "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *Stone v. City & Cty. of S.F.*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) (internal citation omitted). If the moving party satisfies its burden, the "burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id.* In sum, to

hold a party in civil contempt, the Court must determine "(1) that [the party] violated [a] court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck*, 10 F.3d at 695.

### III. DISCUSSION

Plaintiffs move for the Court to hold Defendant in civil contempt for its purported failure to comply with the PI Order. Plaintiffs argue that Defendant's BMP Plan, Steelhead Passage Barriers Plan, Spillway Fish Screen Plan, Habitat Restoration Plan, and Predator Removal Plan (the "Challenged Plans") are non-compliant on two grounds. First, the Challenged Plans do not purportedly propose the necessary steps and timelines for Defendant to obtain the regulatory authorizations and permits for implementing certain injunctive measures. Second, some of the Challenged Plans, Plaintiffs maintain, omit any discussion about how Defendant intends to implement the injunctive measures. The Court addresses each issue in turn.

#### A. Jurisdiction Pending Interlocutory Appeal of the Preliminary Injunction

As a threshold matter, the parties first dispute whether the Defendant's interlocutory appeal of the preliminary injunction divests this Court of jurisdiction. The Ninth Circuit has explained that, "[w]hile a preliminary injunction is pending on appeal, a district court lacks jurisdiction to modify the injunction in such manner as to finally adjudicate substantial rights directly involved in the appeal." *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002). In other words, a district court lacks jurisdiction to "adjudicate anew the merits of the case," and "any action taken pursuant to Rule 62(c) may not materially alter the status of the case on appeal." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). The Ninth Circuit further explained that "Federal Rule of Civil Procedure 62(c), however, authorizes a district court to continue supervising compliance with the injunction." *A&M Recs.*, 284 F.3d at 1099. Thus, as applied here, the Court may exercise jurisdiction to monitor compliance with the PI Order

but may not and will not fashion any form of relief that modifies the injunction for any purpose other than supervising compliance.

### B. Defendant's Compliance with the Preliminary Injunction Order

Plaintiffs' Motion primarily advances two arguments in support of their Motion. First, according to Plaintiffs, the Challenged Plans fail to specify in detail the necessary steps and proposed timelines for Defendant to secure regulatory permits and authorizations required to implement certain remedial measures. Second, some of the Challenged Plans do not reflect Defendant's efforts to begin implementing the remedial measures. In sum, Plaintiffs assert that Defendant is not executing the injunctive measures both in a timely and detailed manner. Neither of these contentions persuades the Court.

Starting with the regulatory process, as both parties are aware, the Court's PI Order initially anticipated that the expert agencies would provide ongoing feedback to Defendant while it undergoes the process of designing, studying, and implementing the various injunctive measures. However, as discussed above, the agencies have declined to provide feedback to Defendant's plans on an interim basis, instead encouraging Defendant to promptly submit its HCP application for review.

Per the PI Order, Defendant must list any regulatory and permit authorizations necessary to implement its remedial measures. In their instant Motion, Plaintiffs contend that the Challenged Plans do not specify the regulatory approvals needed for Defendant to implement the BMPs, Steelhead passage barriers, spillway fish screen, and removal of predatory species. *See* (Mot. at 13). Nor do the Plans, according to Plaintiffs, set forth action items for Defendant to obtain such regulatory authorizations. Plaintiffs' arguments do not persuade the Court that Defendant has violated the PI Order by clear and convincing evidence.

As an initial matter, Defendant submitted a declaration from Emily Creel, who works with Defendant on the environmental planning and permitting process. *See* (ECF No. 134-2 ("Creel Decl.") ¶¶ 3–5). The declaration details the complex regulatory process that Defendant may need to complete before implementing some of the injunctive measures.

*See* (*id.* ¶¶ 10–29). Additionally, the declaration provides a timeline of sequential phases for Defendant to apply for and presumably secure such regulatory authorizations. *See* (*id.* ¶¶ 30–38). In addition to this declaration, Defendant's Plans not only discussed the regulatory processes and estimated permit timelines but also identified, when necessary, key stakeholders and agencies that Defendant intends to collaborate with to execute the injunctive measures. *See* (BMP Plan at 9–10, 40–45); (Final Fish Screen Plan at 1–3, 4–6); (Proposed Steelhead Passage Barriers Plan at 8–9, 11–13); (Final Predator Removal Plan at 8–10); (Final Habitat Restoration Plan at 2–5, 7–8). That the Plans do not include each and every detail regarding the permit schedules is of no consequence. While Plaintiffs may demand greater detail, the PI Order does not do so. The Plans' schedules—many of which offer a month-to-month timeline—satisfy the requirements of the PI Order.

Likewise, Plaintiffs' argument that Defendant has delayed implementing certain injunctive measures is unavailing. Again, Plaintiffs have not demonstrated by clear and convincing evidence that Defendant's Plans violate the PI Order. As to the BMP Plan, Plaintiffs contend that Defendant has not specified the locations where it will ultimately apply the respective BMPs. (Mot. at 18). However, as Defendant notes, the PI Order does not require that the BMP Plan list the locations where Defendant plans to implement the BMPs. Instead, the PI Order requires that Defendant "implement[] appropriate best management practices to reduce sediment loading into tributaries to Arroyo Grande Creek . . . ." (PI Order ¶ 17). According to Defendant, it has begun conducting inventory of its parcel in the watershed to first identify the areas with sediment buildup. *See* (BMP Plan at 4); (ECF No. 134-1 ("Ballantyne Decl.") ¶ 29). As explained in the BMP Plan, Defendant intends to then use those inventory results not only to determine the appropriate BMPs tailored to each location but also to develop a schedule to implement the BMPs for each identified site. *See* (BMP Plan at 7, 10). Additionally, the BMP Plan states that Defendant will begin implementing the BMPs that do not require permits once it completes its inventory and field surveys in September 2025. *See* (*id.* at 10). For those reasons, Defendant's BMP Plan complies with the PI Order.

Next, Plaintiffs argue that the Steelhead Passage Barriers Plan omits any discussion about Defendant's intent to remove barriers that impede Steelhead migration. Instead, according to Plaintiffs, the Plan merely outlines action items to identify whether certain barriers are in fact impairing Steelhead passage. (Mot. at 21). The Court disagrees with such characterization. The Passage Barriers Plan sets out a sequential order for Defendant to first identify the potential barriers, examine how such barriers impede migration, and develop remedial treatments and designs to modify or remove the identified barriers. *See* (Passage Barriers Plan at 3, 5–7). The developed designs will also provide "sufficient direction to execute construction," (*id.* at 7), and, most importantly, require regulatory approvals before construction, *see* (*id.* at 7–9). Thus, contrary to Plaintiffs' assertion, the Passage Barriers Plan details each necessary step to modify or remove the migration barriers.

Similarly, the Habitat Restoration Plan and Spillway Fish Screen Plan comply with the PI Order. Contrary to Plaintiffs' argument, *see* (Mot. at 25–26), the Habitat Restoration Plan identifies "beneficial components" for the Steelhead population—namely, placement of "gravel or other native bed materials," "installation of anchored large wood . . . structures," and "planting native riparian and emergency aquatic vegetation . . . ." (Habitat Restoration Plan at 6). Plaintiffs further assert that the Spillway Fish Screen Plan's timeline does not require Defendant to install the fish screen as soon as feasibly possible. (Mot. at 23). Plaintiffs, however, seem to disregard that these remedial projects will take time, extensive work, and collaboration with several agencies. As outlined in the Spillway Fish Screen Plan, Defendant's installation of the fish screen will occur in five phases—starting with Defendant requesting design proposals for the fish screen and then finally, installing and routinely monitoring the fish screen. (Spillway Fish Screen Plan at 3–6). When the Court ordered Defendant to implement this remedial measure as soon as feasibly possible, it did not mean that Defendant should skip necessary steps or produce rushed, ineffective work product. Such result would undermine the purpose of the PI Order to promptly, yet efficiently, prevent future harms to the Steelhead population. In sum, Plaintiffs have not

shown by clear and convincing evidence that Defendant's Plans violate the PI Order; to date, Defendant has produced detailed plans that outline the necessary, extensive processes to develop and implement the injunctive measures.[1]

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion.

**IT IS SO ORDERED.**

DATED: August 1, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

[1] Plaintiffs also request that the Court order the Defendant to create and fund an expert panel to monitor the development of the injunctive projects. (Mot. at 29–30). Plaintiffs, however, did not request such relief when they moved for the preliminary injunction; as such, the Court declines to modify the PI Order in a manner that alters the status of the injunction that is currently before the Ninth Circuit. If the Ninth Circuit affirms any portion of the injunction, then the parties may consider the option of implementing an expert panel; the Court, however, does not prematurely take any position on whether such panel is necessary and whether Defendant should solely bear the costs of such panel.