NOSSAMAN LLP
PAUL S. WEILAND (SBN 237058)
pweiland@nossaman.com
BENJAMIN Z. RUBIN (SBN 249630)
brubin@nossaman.com
ELIZABETH KLEBANER (SBN 261735)
lklebaner@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone: 949.833.7800
Facsimile: 949.833.7878

NOSSAMAN LLP
KATHERINE L. FELTON (WA SBN 30382)
*Admitted Pro Hac Vice*
kfelton@nossaman.com
BRIAN FERRASCI-O'MALLEY (WA SBN 46721)
*Admitted Pro Hac Vice*
bferrasciomalley@nossaman.com
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206.395.7630
Facsimile: 206.257.0780

Attorneys for Defendant
COUNTY OF SAN LUIS OBISPO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>Defendant. | Case No: 2:24-cv-06854 SPG (ASx)<br><br>**DEFENDANT COUNTY OF SAN LUIS OBISPO'S STATUS CONFERENCE STATEMENT**<br><br>Date Action Filed: August 13, 2024<br>Date First Amended Complaint Filed: December 27, 2024 |

The County requested a status conference to discuss the orderly filing and briefing of three contemplated motions, page limits for briefing Plaintiffs' anticipated preliminary injunction motion, and the potential continued stay of all pre-trial and trial dates until the Court has resolved the three contemplated motions. While the parties met and conferred on all these issues, except for agreeing that it would be appropriate for the Court to delay setting new pre-trial and trial dates until the three contemplated motions have been resolved, the parties were not able to reach agreement. The County also notes that since it submitted its request for a status conference, Plaintiffs are now proposing a potential fourth motion. Accordingly, the County believes a status conference is still necessary, and the County wholeheartedly disagrees with Plaintiffs' request to not get further direction from this Court on January 28.

Below is the County's summary of the relevant history and the stated positions of the parties.

Before the U.S. Court of Appeals for Ninth Circuit issued its mandate, the County and Plaintiffs met and conferred regarding future anticipated motion practice. Plaintiffs discussed filing a new motion for preliminary injunction and a motion to appoint special masters or court experts. At that time, Plaintiffs proposed appointing two consultants that they had retained in this litigation (Mr. Schmitt and Mr. Spina) as special masters or court experts. The County discussed filing a motion to bifurcate the liability phase and remedy phase. The parties indicated that they planned to oppose each other's contemplated motions.

On December 29, 2025, the Ninth Circuit issued the mandate. ECF No. 149. On January 2, 2026, the County filed a request for status conference. ECF No. 151. On January 4, 2026, the Court set a status conference for January 28, 2026, and ordered the parties to meet and confer in advance of the status conference as to Plaintiffs' request for preliminary injunctive relief. ECF No. 152.

On January 14, 2026, consistent with the Court's order, the parties

1  participated in a further meet and confer and discussed all the contemplated motions.
2  During the meet and confer Plaintiffs confirmed that their motion for preliminary
3  injunction will be limited to their Endangered Species Act ("ESA") claim. Plaintiffs
4  also confirmed that they would not move to have the Court appoint Mr. Schmitt, one
5  of the two consultants they have retained in this matter, as a special master or court
6  appointed expert. However, Plaintiffs confirmed that they still intend to seek
7  appointment of their other consultant in this matter, Mr. Spina. The County will
8  oppose Plaintiffs' anticipated motion to appoint special masters or experts, as it does
9  not believe that any such appointment is appropriate or necessary. Absent party
10 agreement, appointment of a special master is permitted in this case only upon a
11 showing of "exceptional circumstances" which do not exist. Fed. R. Civ. P. 53
12 (a)(1)(B); *see also Burlington N. R.R v. Dept. of Revenue*, 934 F.2d 1064, 1071 (9th
13 Cir. 1991). Courts have been deciding Endangered Species Act cases, weighing the
14 evidence and testimony presented by the parties' expert witnesses and making
15 determinations, for nearly half a century and have done so without need for regular
16 appointment of special masters. This case is no different. Further, Courts are
17 prohibited from relinquishing their Article III judicial decision-making authority to
18 a special master. *Burlington N. R.R.*, 934 F.2d at 1071 (strictly applying Rule 53).
19 "Determining bottom-line legal questions is the responsibility of the court itself."
20 *Cymbidium Restoration Trust v. Am. Homeowner Pres. Trust Series AHP Servicing*,
21 Case No. 2:24-cv-00025-JNW, 2024 U.S. Dist. LEXIS 135613, *6 (W.D. Wa. July
22 31, 2024) (quoting *Stauble v. Warrob, Inc.*, 977 F.2d 690, 695 (1st Cir. 1992)). The
23 Ninth Circuit's recent decision confirms that it is the Court's role to weigh the
24 evidence on the affected species and to balance the equities and public interest. *E.g.*,
25 *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 161 F.4th 590, 602 (9th
26 Cir. 2025) ("the district court must weigh the evidence on all affected species"); *id.*
27 at 603 ("the court must weigh the balance of equities and the public interest").
28 Appointment of special masters or court experts in this case is neither appropriate

nor warranted. Furthermore, Plaintiffs' attempt to seek appointment of Mr. Spina is improper given his relationship to Plaintiffs and their counsel, and the express prohibitions that he is subject to under 18 U.S.C. § 207.

The parties also discussed potential briefing schedules. Prior to the meet and confer, the County had proposed briefing Plaintiffs' motion to have the court appoint special masters/experts first, briefing Plaintiffs' motion for preliminary injunction after the Court rules on the motion to appoint special masters/experts, and briefing the County's bifurcation motion after the Court rules on the motion for preliminary injunction. While Plaintiffs initially indicated that this schedule might be acceptable, during the meet and confer Plaintiffs proposed a different briefing schedule for all three contemplated motions.

Specifically, for their motion to appoint special masters/experts, Plaintiffs proposed: Plaintiffs' opening brief would be due by January 23; County's opposition brief would be due February 18; Plaintiffs' reply brief would be due March 4; and the hearing would be set for March 18.

For their preliminary injunction motion, Plaintiffs not only proposed briefing that issue before the Court resolved their motion to appoint special masters/experts, but they proposed briefing the preliminary injunction motion while the parties were still briefing Plaintiffs' motion to appoint special masters/experts. Specifically, for their preliminary injunction motion Plaintiffs proposed: Plaintiffs' opening brief would be due by February 23; the County's opposition would be due by March 11 (14 days); Plaintiffs' reply would be due by March 25 (14 days); and the hearing would be set for April 8.

For the County's bifurcation motion, Plaintiffs proposed briefing that motion using the same dates as the preliminary injunction motion. Specifically, Plaintiffs proposed: County's opening brief would be due by February 23; Plaintiffs' opposition would be due by March 11; County's reply would be due by March 25; and the hearing would be set for April 8.

1       The County does not agree with Plaintiffs' proposed schedule, as the County continues to believe that a schedule that includes overlapping briefing and hearing dates is not appropriate or efficient. The County also believes that it is not fair or appropriate to provide the County with only 14 days to prepare and file an opposition to Plaintiffs' preliminary injunction motion.

      As opposed to overlapping briefing schedules that potentially result in hardships for the parties and the Court and an inability for the parties to fully develop their arguments, the County contends that the Court should either hear and resolve Plaintiffs' motion to appoint special masters/experts before the briefing begins on Plaintiffs' preliminary injunction motion, or the Court should hear and resolve Plaintiffs' motion for preliminary injunction before the briefing begins on Plaintiffs' motion to appoint special masters/experts. The County also continues to believe that the motion for bifurcation should be briefed and heard after the Court resolves the two other motions.

      The County would also like to discuss page limits for the briefing on Plaintiffs' contemplated motion for preliminary injunction. While Plaintiffs confirmed that their motion for preliminary injunction will be limited to their ESA claim, based on the meet and confer, the County anticipates the motion for preliminary injunction will still raise a number of issues. As the Court is aware, the last motion for preliminary injunction (which primarily argued the ESA claim) included hundreds of pages of exhibits, numerous declarations, and substantial briefing. Plaintiffs have implied in passing that some findings from the prior preliminary injunction ruling may be controlling for purposes of their second motion for preliminary injunction. But the law does not support this contention. *See generally S. Or. Barter Fair v. Jackson Cnty.*, 372 F.3d 1128, 1136 (9th Cir. 2004) ("decisions on preliminary injunctions are just that – preliminary – and must often be made hastily and on less than a full record"); *Delta Smelt Consol. Cases v. Salazar*, 686 F.Supp.2d 1026, 1032 (E.D. Cal. 2009) (explaining that even when a

preliminary injunction was not reversed by the appellate court, "it is not law of the case nor is it dispositive of any issues presently before the court"). Moreover, in the 17 months since the initial preliminary injunction motion was filed by Plaintiffs, the County has identified additional relevant documents,[1] the facts have continued to evolve, and the law itself has evolved.[2] Accordingly, the County would like to discuss with the Court increasing the page limits for the preliminary injunction briefing. The County has proposed 35 pages for Plaintiffs' opening brief, 45 pages for the County's opposition brief, and 20 pages for the Plaintiffs' reply brief. The Plaintiffs have indicated they do not believe that increasing the page limits is necessary.

Separate from the meet and confer efforts related to the three motions discussed above, the parties also discussed a stipulation regarding the San Luis Obispo Flood Control and Water Conservation District ("District"). The Plaintiffs were aware that the District and the County were distinct legal entities prior to filing this action, as demonstrated by their initial notice of intent naming both the County and the District, and the fact that the notice of intent alleged specific actions by the

---

[1] *E.g.,* Decl. of Kate Ballantyne in Supp. of County of San Luis Obispo's Opp'n to Plfs.' Mot. for Civil Contempt Order to Enforce the County of San Luis Obispo's Compliance with the Preliminary Injunction, ECF No. 134-1 (Explaining that the County had limited time to prepare its opposition to the first motion for preliminary injunction, and that since that time the County reviewed its files and identified a number of instances where the County sought and obtained permits from federal agencies along with biological opinions and take authorization of Steelhead and other listed species under the ESA.).

[2] *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 161 F.4th at 600 & 602 (when another ESA-listed species may be impacted a district court must consider all four *Winter* factors and "weigh the evidence on all affected species"); *id.* at 603 (VanDyke, J., concurring) ("Applying that rigorous standard in the Endangered Species Act context means that district courts must be confident that the relief granted will not adversely affect other species before pulling the trigger on a mandatory preliminary injunction.").

1  District and specific actions by the County. Plaintiffs' June 2024 notice of intent also
2  cited heavily to the 2004 Draft Habitat Conservation Plan, which identified and
3  discussed the District's operations. In addition, in July 2024 the County and the
4  District responded to Plaintiffs' initial notice of intent, and that letter clearly
5  identified the County and the District as two separate entities. Publicly available
6  agendas also made it clear that the County and District were two distinct legal
7  entities. Plaintiffs elected not to name the District in this litigation. As such, when
8  the County answered the Complaint, it distinguished between itself and the District.
9  ECF Nos. 40 & 47.

10  This Court set March 19, 2025 as the deadline to hear any motion to amend
11 the pleadings or add a party. ECF No. 79-1. While this deadline to amend the
12 pleadings or add parties has long-passed, the County and the District were willing to
13 stipulate that: (i) any orders or judgments in this matter issued to or against the
14 County shall also extend to and bind the District to the extent such orders or
15 judgments require action by the District rather than or in lieu of the Conty, and (ii)
16 any orders or judgment in this matter shall have full collateral estoppel and res
17 judicata effect with respect to the District and the County in equal measure (i.e.,
18 Plaintiffs would be precluded from bringing a separate action against the District for
19 the claims litigated in this action against the County). As such, the County and
20 Plaintiffs filed a stipulation and proposed order encompassing this understanding.
21 ECF Nos. 153 & 153-1. The Court denied the stipulation without prejudice, and
22 advised that the parties could submit a revised stipulation that "contain[s] facts
23 demonstrating the legal authority of the individual(s) signing on behalf of the District
24 to bind the District to the agreements contained in the stipulation." ECF No. 155.

25  Earlier this week, the County provided Plaintiffs with a revised stipulation
26 that included the Court's requested information, but the Plaintiffs have declined to
27 execute this stipulation. Instead, Plaintiffs informed the County that it must either
28 stipulate to amending the operative complaint or they will file an untimely motion

to amend. The County has asked for a redline to see Plaintiffs' proposed amendments, and Plaintiffs are presumably working on providing that to the County. If the proposed amendments are reasonable, and Plaintiffs agree to not expand this litigation or try to use the amendment as a basis for reopening discovery that closed in June of last year, then the County anticipates that it will stipulate to the amendment. If that is not the case, then Plaintiffs have indicated that they will bring an additional motion which the County will likely oppose.

Because the County would like to discuss with the Court appropriate briefing schedules and page limits for the three (possibly four) contemplated motions, the County requests that the status conference stay on schedule for January 28.

Respectfully submitted,

Date:   January 22, 2026

NOSSAMAN LLP
PAUL S. WEILAND
BENJAMIN Z. RUBIN
ELIZABETH KLEBANER
KATHERINE L. FELTON
BRIAN FERRASCI-O'MALLEY

By: */s/ Paul S. Weiland*
    Paul S. Weiland

*Attorneys for Defendant*
COUNTY OF SAN LUIS OBISPO