Christopher Sproul (Cal. Bar No. 126398)
Marla Fox (Cal. Bar. No. 349813)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: mfox@enviroadvocates.com

**Attorneys for Plaintiffs**

**Additional Counsel Listed on Next Page**

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN LUIS OBISPO, <br><br> Defendant. | Case No: 2:24-cv-06854-SPG-AS <br><br> PLAINTIFFS' MOTION TO APPOINT SPECIAL MASTER AND EXPERT PANEL <br><br> Judge: Hon. Sherilyn Peace Garnett <br><br> Hearing time and date: 1:30 PM, March 18, 2026 <br><br> Location: First Street Courthouse, 350 West 1st Street, Courtroom 5C |

*Additional Counsel for Plaintiffs*

Jesse Colorado Swanhuyser (Cal. Bar No. 282186)
Sycamore Law Inc.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (805) 689-1469
Email: jesse@sycamore.law

Drevet Hunt (Cal. Bar No. 240487)
California Coastkeeper Alliance
1100 11th Street, 3rd Floor
Sacramento, California 95814
Tel: (415) 606-0864
Email: dhunt@cacoastkeeper.org

## NOTICE OF MOTION AND MOTION

Please take notice that on March 18, 2026 at 1:30 PM or a later date set by the Court, at First Street Courthouse, 350 West 1st Street, Courtroom 5C, Plaintiffs San Luis Obispo Coastkeeper, Los Padres Forestwatch, California Coastkeeper Alliance, and the Ecological Rights Foundation ("the NGOs") will and hereby do move for an order appointing as special master Brenton Spies under Federal Rule of Civil Procedure ("FRCP") 53 and an expert panel under Federal Rule of Evidence ("FRE") 706. If appointed, the special master and expert panel can advise the Court regarding the complex scientific and technical issues in this case. This motion is proper under FRCP 53 and FRE 706 because there are exceptionally challenging scientific and technical questions that the Court must address, the proposed appointing order clearly sets forth the special master's duties, and the proposed special master does not have any disqualifying relationships with the parties.

The NGOs note that the Court's June 18, 2025 stay order granted the County's stay motion which requested the Court stay the case "until the Ninth Circuit renders a ruling on Defendant's interlocutory appeal of the Court's preliminary injunction order." Dkt. 131 at 2. Given that the Ninth Circuit has now ruled, the NGOs assume that the stay has now been dissolved by force of the June 18, 2025 Order itself limiting the stay to the duration of the Ninth Circuit pending appeal. If this is incorrect, the NGOs further hereby move for an order dissolving the stay, as well.

This motion is based on the memorandum of points and authorities, proposed appointing order, and Declaration of Christopher Sproul submitted herewith, and such other evidence or arguments that may be presented to the Court at the hearing. This motion is made following conferral between the parties pursuant to Local Rule 7-3. During such conferral, the County indicated it opposed this motion.

Dated: January 26, 2026                     Respectfully submitted,

*/s/ Christopher Sproul*
Christopher Sproul, Attorney for Plaintiffs

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND .................................................................................. 4

III.  LEGAL STANDARD ........................................................................... 5

    A.   Federal Rule of Civil Procedure 53 ............................................. 5

    B.   Federal Rule of Evidence 706 ...................................................... 7

IV.   ARGUMENT....................................................................................... 7

    A. The Complex Scientific and Technical Issues in this Case Warrant Appointing a Special Master under FRCP 53 and an Expert Panel under FRE 706 to Aid the Court in Adjudicating this Action. ............................................... 7

    B. The County's Intransigence in Evading ESA Compliance Especially Warrants Special Master Oversight. ............................................................... 10

    C. The Proposed Special Master and Expert Panel Are Well Qualified and Neutral and Have Expertise That Will Aid the Court in Addressing Scientific and Technical Issues. ...................................................... 11

        1.   The Proposed Special Master and Expert Panel Have Substantial Experience on Scientific Issues that Are Directly Relevant to this Case........................ 12

        2.   The Special Master Does Not Have Any Disqualifying Relationships. ....... 14

        3.   The Expert Panel Members Are Neutral Experts, Not Advocates for Any of the Parties ......................................................... 14

        4.   Anthony Spina Is Not Disqualified from Serving as an Expert Witness under 18 U.S.C. Section 207 ........................................... 15

    D. The Court Should Order the County to Compensate the Special Masters Considering the Parties' Relative Financial Means. ......................... 18

    E. The NGOs' Proposed Appointment Order Complies with FRCP 53 and FRE 706. ................................................................... 19

V.    CONCLUSION................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**FEDERAL CASES**

*Benjamin v. Fraser*,
    343 F.3d 35 (2d Cir. 2003) ................................................................... 6

*Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*,
    934 F.2d 1064 (9th Cir. 1991) ...................................................... 6, 20

*Caiozzo v. Koreman*,
    581 F.3d 63 (2d Cir. 2009) ................................................................... 6

*Cordoza v. Pac. States Steel Corp.*,
    320 F.3d 989 (9th Cir. 2003) .............................................................. 18

*Danville Tobacco Assn. v. Bryant-Buckner Associates, Inc.*,
    333 F.2d 202 (4th Cir. 1964) ............................................................... 2

*FDIC v. Refco Group*,
    46 F. Supp. 2d 1109 (D. Colo. 1999) ......................................... 15, 18

*Helling v. McKinney*,
    509 U.S. 25 (1993) ................................................................................ 7

*Helling v. McKinney*,
    502 U.S. 903 (1991) ............................................................................ 18

*Hook v. State of Ariz.*,
    907 F. Supp. 1326 (D. Ariz.) ............................................................. 11

*K-2 Ski Co. v. Head Ski Co.*,
    506 F.2d 471 (9th Cir. 1974) .............................................................. 18

*La Buy v. Howes Leather Co.*,
    352 U.S. 249 (1957) ............................................................................ 20

*Long Beach v. Monsanto Co.*,
    No. 16-3493, 2020 WL 7060140 (C.D. Cal. Nov. 25, 2020) ............... 9

*Manriquez v. Huchins,*
　　No. 1:09-CV-00456-LJO, 2012 WL 5880431 (E.D. Cal. Nov. 21, 2012)...............7

*Matthews v. Storgion,*
　　174 Fed. Appx. 980, 2006 U.S. App. LEXIS 9835 (6th Cir. 2006).......................15

*McCoy v. Stronach,*
　　494 F. Supp. 3d 736 (E.D. Cal. 2020) ..................................................................15

*McKinney v. Anderson,*
　　924 F.2d 1500 (9th Cir. 1991) ................................................................7, 18, 19

*Melendres v. Skinner,*
　　113 F.4th 1126 (9th Cir. 2024) ............................................................................6

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,*
　　558 F.3d 1341 (Fed. Cir. 2009) ............................................................................7

*Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.,*
　　No. 2:11-CV-03471-KJM-AC, 2015 WL 10939711 (E.D. Cal. July 2, 2015).......19

*Nat'l Org. For the Reform of Marijuana L. (NORML) v. Mullen,*
　　828 F.2d 536 (9th Cir. 1987) ............................................................................6, 8

*Nw. Env't Def. Ctr. v. United States Army Corps of Eng'rs,*
　　No. 3:18-CV-00437-HZ, 2019 WL 2372591, (D. Or. June 5, 2019)...............16, 18

*Nw. Env't Def. Ctr. v. United States Army Corps of Eng'rs,*
　　558 F. Supp. 3d 1056 (D. Or. 2021), *amended,* No. 3:18-CV-00437-HZ, 2021 WL
　　12319692 (D. Or. Sept. 21, 2021) .................................................................8, 9, 11

*San Luis & Delta-Mendota Water Auth. (Delta-Mendota) v. Jewell,*
　　747 F.3d 581 (9th Cir. 2014) ..........................................................................3, 4, 8

*San Luis Obispo Coastkeeper (Coastkeeper) v. Cnty. of San Luis Obispo,*
　　161 F.4th 590 (9th Cir. 2025)....................................................................*passim*

*San Luis Obispo Coastkeeper (Coastkeeper) v. Cnty. of San Luis Obispo,*
　　758 F. Supp. 3d 1153 (C.D. Cal. 2024).......................................................5, 10, 19

*Scott v. Spanjer Bros., Inc.*,
    298 F.2d 928 (2d Cir. 1962) .......................................................................... 2

*United States v. Clifford Matley Family Trust*,
    354 F.3d 1154 (9th Cir. 2004) ...................................................................... 6

*United States v. Rosen*,
    599 F. Supp. 2d 690 (E.D. Va. 2009) ........................................................ 17

*United States v. Suquamish Indian Tribe*,
    901 F.2d 772 (9th Cir. 1990) .................................................................. 5, 8

*United States v. Sweeney*,
    No. 217CV00112KJMKJN, 2022 WL 17555626 (E.D. Cal. Dec. 9, 2022) ............. 9

*Walker v. Am. Home Shield Long Term Disability Plan*,
    180 F.3d 1065 (9th Cir. 1999) .............................................................. 7, 8

*Wishtoyo Found. v. United Water Conservation Dist.*,
    No. CV163869DOCPLAX, 2018 WL 7571315 (C.D. Cal. Dec. 1, 2018),
    *aff'd*, 795 F. App'x 541 (9th Cir. 2020) ...................................................... 9


**FEDERAL STATUTES**

18 U.S.C. § 207 ................................................................... 15, 16, 17, 18

18 U.S.C. § 207(a)(1) ............................................................................ 16

18 U.S.C. § 207(j)(6) ............................................................................ 16

28 U.S.C. § 455 .................................................................................... 14


**FEDERAL REGULATIONS**

Fed. R. Evid. (FRE) 703 ....................................................................... 15

Fed. R. Evid. 706 ........................................................................... *passim*

Fed. R. Evid. 706(a) ............................................................................. 7

Fed. R. Evid. 706(b) ............................................................................. 7

Fed. R. Evid. 706(c) ............................................................................. 4

Fed. R. Evid. 706(c)(2) ........................................................................................ 18

Fed. R. Civ. P. (FRCP) 53 ............................................................................... *passim*

Fed. R. Civ. P. 53(a) .............................................................................................. 6

Fed. R. Civ. P. 53(a)(1)(A) .................................................................................... 6

Fed. R. Civ. P. 53(a)(1)(B) .................................................................................... 6

Fed. R. Civ. P. 53(a)(1)(B)(i) ............................................................................ 5, 7

Fed. R. Civ. P. 53(a)(2) ..................................................................................... 6, 14

Fed. R. Civ. P. 53(b) .......................................................................................... 6, 20

Fed. R. Civ. P. 53(b)(2)(B) ................................................................................ 6, 20

Fed. R. Civ. P. 53(c) .............................................................................................. 6

Fed. R. Civ. P. 53(g) .......................................................................................... 4, 19

Fed. R. Civ. P. 53(g)(1) ....................................................................................... 18

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3        The Ninth Circuit's ruling on the County of San Luis Obispo's ("the County")

4   interlocutory appeal mandates that to determine what injunctive relief is appropriate in

5   this case the Court must evaluate whether there is conflict between the needs of three

6   species listed for protection under the federal Endangered Species Act ("ESA") in their

7   utilization of the habitat provided by Arroyo Grande Creek ("AG Creek"): South-Central

8   California Coast Distinct Population Segment of Steelhead trout ("Steelhead"), California

9   red-legged frog ("CRLF"), and tidewater goby (collectively, "the Listed Species")—and

10  if so, how to balance the equities in fashioning the relief that might affect the Listed

11  Species. *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 161 F.4th 590, 600

12  (9th Cir. 2025) ("*Coastkeeper*").

13        The Court should appoint a special master under Federal Rule of Civil Procedure

14  ("FRCP") 53 and a panel of experts under Federal Rule of Evidence ("FRE") 706 to

15  assist the Court in evaluating the complex scientific and technical evidence that the Court

16  will be required to weigh to address the Ninth Circuit's mandate—and properly rule on

17  Plaintiffs San Luis Obispo Coastkeeper, Los Padres Forestwatch, California Coastkeeper

18  Alliance, and the Ecological Rights Foundation ("the NGOs")'s renewed motion for a

19  preliminary injunction, the parties' forthcoming cross-motions for summary judgment,

20  and, should the matter not be resolved on summary judgment, the appropriate final

21  judgment post-trial. The NGOs propose that the Court appoint Brenton Spies as the

22  special master under FRCP 53. Dr. Spies is a university professor with unique expertise

23  in tidewater goby. He also has considerable expertise with the ecology pertinent to all the

24  Listed Species. In addition, he has extensive experience serving on expert panels and

25  technical advisory committees as well as organizing and directing the activities of

26  research teams and synthesizing the results produced by such teams. The NGOs further

27  propose that the Court appoint a panel of experts under FRE 706 to advise and work with

28  Dr. Spies in fashioning scientific advice to the Court. The NGOs propose that this panel

---

would consist of Anthony Spina, a Steelhead expert with decades of experience as a former staff member and manager at the National Marine Fisheries Service ("NMFS"), Jeff Alvarez, a CRLF expert retained by federal and state agencies to train other scientists in CRLF fieldwork, and Dr. Brian Cluer, a former NMFS staff member and expert in fluvial geomorphology (the science of river and stream shape). Anthony Spina, Jeff Alvarez, and Dr. Brian Cluer are collectively referred to herein as the "Expert Panel."

To determine whether measures needed to protect any of the Listed Species would conflict with what actions are needed to be implemented or to be avoided to protect the other Listed Species and if so, how to create an appropriately balanced approach as the Ninth Circuit has directed, the Court will necessarily need to evaluate the science related to all three species. *Coastkeeper*, 161 F.4th at 602 ("On remand, the district court must weigh the evidence on all affected species."). The Court will also need to evaluate scientific questions in the field of fluvial geomorphology given the inevitable need for the Court to reach determinations concerning how the County's operations impact the geomorphology of AG Creek, how this affects the Listed Species, and what actions are appropriate to lessen the County's impact on the geomorphology. As further described in this memorandum, there are perhaps no independent experts more qualified to provide the Court with the sound neutral scientific guidance the Court will need to meet the Ninth Circuit's mandate to exercise "informed discretion" in reaching judgment here. *Id*. at 601.

Courts have authority to appoint special masters under FRCP 53 where, as here, exceptional conditions exist such as the complexity of scientific issues, substantial expert testimony, and the need for ongoing compliance monitoring to ensure that the County properly implements the relief ordered by the Court. Similarly, under FRE 706, as the Advisory Committee Note accompanying the Rule emphasizes, the "inherent power of a trial judge to appoint an expert of his [or her] own choosing is virtually unquestioned." Notes of Advisory Committee, 1972 Amendment, Fed. R. Evid. 706; *see also Scott v. Spanjer Bros., Inc*., 298 F.2d 928, 940 (2d Cir. 1962); *Danville Tobacco Assn. v. Bryant-Buckner Associates, Inc*., 333 F.2d 202, 208-209 (4th Cir. 1964). The Ninth Circuit has

affirmed appointments of an expert panel under FRE 706 in an ESA case, implicitly recognizing the complexity of endangered species litigation and the understandable need for courts to seek independent expert guidance. *San Luis & Delta-Mendota Water Auth. (Delta-Mendota) v. Jewell*, 747 F.3d 581, 603 (9th Cir. 2014) (affirming four-member expert panel under FRE 706 in complex ESA case).

The NGOs intend to file a renewed motion for preliminary injunction solely on their ESA claim. The NGOs will fashion this motion and accompanying evidence to satisfy the Ninth Circuit's recently announced standard for ESA preliminary injunctions when the injunction implicates multiple ESA-listed species. The Ninth Circuit ruling emphasized the complexity of the questions for this Court to decide on remand in weighing the equities pertinent to further injunctive relief. *See Coastkeeper*, 161 F.4th at 601 ("Habitats are complex. Species are interconnected."). Accordingly, the NGOs will support their renewed motion with expert testimony concerning the County operation's adverse impacts on Steelhead, CRLF, and tidewater goby and what remedies are appropriate to strike the proper balance between protection of all three species. The County will likely support its opposition with their own expert testimony contesting the NGOs' showing that the County's Lopez Dam operations are harming the Listed Species and further contesting the NGOs' proposed remedies to address this harm. Appointing a special master and a panel of experts will aid the Court in parsing the highly complex scientific issues—set forth in an increasingly voluminous evidentiary record—that will be posed first by the NGOs' renewed preliminary injunction motion, then the parties' cross-motions for summary judgment, and at trial, if there is one. This is particularly true given that the regulatory agencies have declined to weigh in on this dispute. The special master and expert panel will also be essential to assisting the Court in ensuring compliance with whatever renewed preliminary or permanent injunction the Court issues given the scientific and technical nature of the relief and substantial resources required to effectively monitor such relief.

In sum, this is not an ordinary civil case, but instead one that is uniquely complex, even for an ESA case (a type of case repeatedly recognized as posing complex science questions). *See*, *e.g.*, *Delta-Mendota*, 747 F.3d at 603. It is a case of first impression, as the Ninth Circuit observed. *See Coastkeeper*, 161 F.4th at 600-601. Getting the injunction remedy right is critical. If an effective plan to protect the Listed Species is not awarded in the near future as preliminary relief and then promptly implemented, the Listed Species could be irreparably harmed before this case even gets to trial. Indeed, the Court has emphasized the "exigency of Steelhead migration" as weighing heavily in favor of a preliminary injunction. Dkt. No. 56 at 1. The Ninth Circuit also commented on the exigency of the situation, emphasizing that the ESA permitting "processes can take months or years, and the critical wet season is fast approaching." *Coastkeeper*, 161 F.4th at 601. Moreover, compliance monitoring is imperative given the vicissitudes of species protection, as well as evidence in the record that the County has sought to "significantly delay" and otherwise avoid complying with the preliminary injunction. *See* Dkt. No. 157 at 1. This supervision will conserve judicial resources by avoiding the need for contempt motions or other enforcement motion practice.

Finally, the Court should exercise its broad authority under FRCP 53(g) and its equally broad discretion under FRE 706(c) to require the County to compensate the special master and expert panel members. The NGOs are nonprofits that operate on shoestring budgets. They cannot afford to pay the special master and expert panel. Moreover, requiring the County to pay for the special master and expert panel is proper because the County's long history of shirking its ESA duties is what created the need for the special master and expert panel in the first place. Thus, the Court should appoint Dr. Spies as the special master under Rule 53 and the Expert Panel under FRE 706(c) and require the County to pay for their work.

## II.    BACKGROUND

In December 2024, the Court entered a preliminary injunction requiring the County to, among other things, submit and implement a proposed plan for releasing sufficient

flows from Lopez Dam into the lower AG Creek area. *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 758 F. Supp. 3d 1153, 1166 (C.D. Cal. 2024). In December 2025, the Ninth Circuit reversed and remanded the Court's order granting the preliminary injunction. *Coastkeeper*, 161 F.4th 590. In a matter of first impression, the Ninth Circuit held that when mandatory injunctive relief under the ESA may benefit one protected species at the expense of other protected species, a court must consider competing equities and the public interest as to those other species. *Id*. at 594, 600.

The NGOs intend to file a renewed motion for preliminary injunction on or before February 23, 2026 on their ESA claims, supported, *inter alia*, by new extensive expert testimony from their expert, Tevin Schmitt. *See* Dkt. No. 157 at 5-7. A prompt hearing and ruling on this preliminary injunction motion is urgently needed given that the County has now reverted to implementing its "Interim Downstream Release Schedule" ("IDRS") as its Lopez Dam flow release regime (*see* Declaration of Christopher Sproul ("Sproul Decl."), ¶ 8), a regime that Court's prior preliminary injunction order expressly found was endangering Steelhead survival in accord with NMFS's similar conclusions. 758 F. Supp. 3d at 1166. Notably, while the Ninth Circuit vacated this Court's preliminary injunction, the Ninth Circuit did not criticize and thus has left intact the Court's factual findings concerning the County's flow release regime being harmful to Steelhead. 161 F.4th at 597 (noting that appellate review is limited to determining whether the District Court's findings of fact were clearly erroneous and declining to so find).

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 53

FRCP 53 provides for the appointment of a special master in cases where "some exceptional condition" requires it. Fed. R. Civ. P. 53(a)(1)(B)(i). Exceptional conditions include the complexity of factual and legal issues, voluminous expert evidence, and the need to implement (and monitor compliance with) a highly technical injunction. *See, e.g., United States v. Suquamish Indian Tribe*, 901 F.2d 772, 774-775 (9th Cir. 1990); *Nat'l*

*Org. For the Reform of Marijuana L. (NORML) v. Mullen*, 828 F.2d 536, 542 (9th Cir. 1987). As relevant here, a district court may appoint a special master to: (1) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district; and (2) hold trial proceedings and make or recommend findings of fact. Fed. R. Civ. P. 53(a)(1)(A) & (B).

The special master has quasi-judicial authority to "regulate all proceedings in every hearing" and "do all acts and take all measures necessary or proper for the efficient performance of [their] duties." *United States v. Clifford Matley Family Trust*, 354 F.3d 1154 (9th Cir. 2004) (quoting Fed. R. Civ. P. 53(c)). For example, a special master has "the ability to convene and to regulate hearings, to rule on the admissibility of evidence, to subpoena and swear witnesses, and to hold non-cooperating witnesses in contempt." *Melendres v. Skinner*, 113 F.4th 1126, 1133 (9th Cir. 2024) (quoting *Benjamin v. Fraser*, 343 F.3d 35, 45 (2d Cir. 2003)). The special master's responsibilities typically culminate in reports to the court. *See Benjamin v. Fraser*, 343 F.3d 35, 45 (2d Cir. 2003), *overruled on other grounds*, *Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009). The special master does not, however, supplant the Court's role in adjudicating the facts and law. *See Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.2d 1064, 1072 (9th Cir. 1991) (special master's role is restricted to aiding judges to perform specific judicial duties).

A court must provide notice and an opportunity to be heard before appointing a special master and must ensure the proposed master has no disqualifying relationships. Fed. R. Civ. P. 53(a)(2) & (b). FRCP 53 requires "precise designation of the special master's duties and authority" and "[c]are must be taken to make the order as precise as possible." Committee Notes on Rules, 2003 Amendment, Fed. R. Civ. P. 53(b). In addition, the appointing order must state the circumstances under which the special master may communicate *ex parte* with the court. Fed. R. Civ. P. 53(b)(2)(B). The Court sets the compensation of a master and determines how to allocate the costs among the parties. Fed. R. Civ. P. 53(a)." *Id.* at 476.

### B.    Federal Rule of Evidence 706

Under FRE 706(a), a court may "on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed." The Court may "ask the parties to submit nominations." *Id.* Courts enjoy wide latitude to make Rule 706 expert appointments. *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,* 558 F.3d 1341, 1348 (Fed. Cir. 2009). Courts must inform the expert of their duties and the expert must advise parties of any findings, may be deposed by any party, may be called to testify by the court or any party, and may be cross-examined by any party. Fed. R. Evid. 706(b).

The Court has broad discretion to appoint experts and to apportion costs to the defendants. *McKinney v. Anderson*, 924 F.2d 1500, 1510-1511 (9th Cir. 1991), *vacated on other grounds*, *Helling v. McKinney*, 509 U.S. 25 (1993). Court-appointed experts are used in complex litigation where there is a need to develop a record on scientific issues. *See Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999). FRE 706 is not intended for the appointment of an expert witness to serve as an advocate for the parties. *Manriquez v. Huchins,* No. 1:09-CV-00456-LJO, 2012 WL 5880431, at *14 (E.D. Cal. Nov. 21, 2012). Rather, the purpose of a court-appointed expert is to aid the court in understanding a complex subject matter. *Id.* The Court has broad discretion to apportion expert panel costs to the defendant. *McKinney,* 924 F.2d at 1510-1511.

## IV.    ARGUMENT

### A. The Complex Scientific and Technical Issues in this Case Warrant Appointing a Special Master under FRCP 53 and an Expert Panel under FRE 706 to Aid the Court in Adjudicating this Action.

A neutral Special Master and Expert Panel with expertise on protecting listed species is necessary to aid the Court in overseeing this case. Here, the resolution of this case will require the Court to decide complex factual and legal issues regarding how best to protect the Listed Species. These issues have been and will be subject to conflicting expert testimony and other scientific and technical evidence. Thus, there are "exceptional

conditions" that under FRCP 53(a)(1)(B)(i) warrant appointing a special master and good cause to appoint an expert panel under FRE 706 to help the Court navigate the science and exercise the "informed discretion" required by the Ninth Circuit's ruling in this case (161 F.4th at 601). *See*, *e.g.*, *Delta-Mendota,* 747 F.3d at 603. Seeking aid in this fashion from a special master and an expert panel will further serve judicial economy, as it would be extraordinarily time-consuming for the Court to wade through the science without such assistance. .

The key factor indicating appointments under FRCP 53 and FRE 706 are proper is where significant judicial resources must be devoted to complex scientific and technical questions. *See, e.g., Suquamish Indian Tribe*, 901 F.2d at 775 (appointing special master under FRCP 53 to opine on complicated fishing rights issues); *NORML*, 828 F.2d at 542 (appointing special master to oversee broad injunction concerning law enforcement activities); *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) (appointing expert under FRE 706 to opine on elusive illness with unknown causes). For example, the Ninth Circuit approved a special master in a fishing rights case due to the "complexity of [the] litigation and problems associated with compliance with [a] district court order." *Suquamish Indian Tribe,* 901 F.2d at 775; *see also NORML*, 828 F.2d at 542.

Because environmental litigation often involves complicated scientific issues, courts in the Ninth Circuit have repeatedly appointed special masters and expert panels to oversee complex environmental issues. For example, in an ESA case challenging a biological opinion regarding a listed species, the Ninth Circuit affirmed the district court's appointment of a panel of four experts. *Delta-Mendota,* 747 F.3d at 603. The *Delta-Mendota* court held that the expert panel appointment was proper to provide the district court with a "scientific interpreter" to "explain the highly technical material in the [biological opinion]." *Id.* Similarly, a district court appointed an expert panel to navigate scientific and technical issues in an ESA action. *Nw. Env't Def. Ctr. v. United States Army Corps of Eng'rs,* 558 F. Supp. 3d 1056, 1075 (D. Or. 2021), amended, No. 3:18-

CV-00437-HZ, 2021 WL 12319692 (D. Or. Sept. 21, 2021). The *Nw. Env't Def. Ctr.* court held that the expert panel appointment was appropriate because the remedies "necessitate[d] consideration of biological tradeoffs, involve[d] many complex and sometimes imprecise variables, require[d] adaptive management in their implementation, and must be monitored to measure their efficacy." *Id.* In addition, a district court appointed a special master to assist the court in monitoring a dam operator's compliance with a permanent injunction in a complex ESA case. *Wishtoyo Found. v. United Water Conservation Dist.,* No. CV163869DOCPLAX, 2018 WL 7571315, at *5 (C.D. Cal. Dec. 1, 2018), aff'd, 795 F. App'x 541 (9th Cir. 2020). Other district courts have reached similar conclusions about scientific complexity and the need to appoint special masters and experts in environmental cases. *See United States v. Sweeney*, No. 217CV00112KJMKJN, 2022 WL 17555626, at *17 (E.D. Cal. Dec. 9, 2022) (appointing special master to oversee the enforcement of complex injunction to restore wetlands under the Clean Water Act); *Long Beach v. Monsanto Co.*, No. 16-3493, 2020 WL 7060140, at *5 (C.D. Cal. Nov. 25, 2020) (affirming special master appointment to aid court in implementing a complex toxic tort consent decree).

This case is analogous to the cases approving a special master and court appointed-experts because complex scientific and technical issues require careful consideration and ongoing supervision. Deciding how to protect the Listed Species is necessarily complex and requires scientific expertise to comprehensively evaluate. Notably, the Ninth Circuit has expressly directed the Court to address the scientifically complex question of whether there is conflict between the needs of the Listed Species in their utilization of the habitat provided by AG Creek. *Coastkeeper,* 161 F.4th at 600. The Ninth Circuit ruling emphasized the complexity of the questions for this Court on remand to decide in weighing the equities pertinent to further injunctive relief. *See id.* at 601 ("Habitats are complex. Species are interconnected."). Indeed, to comply with the Ninth Circuit's directive, the Court will need to address, among other things, the lifecycle needs of three different species and how these lifecycle needs interplay with the environmental

resources of AG Creek and the County's heavy alteration of those resources. The Court will further face questions in the complex field of fluvial geomorphology to reach determinations concerning how the County's operation of Lopez Dam impacts the geomorphology of AG Creek, how this in turn affects the Listed Species, and what actions are appropriate to lessen or avoid the County's impacts on the geomorphology of AG Creek. As the Court acknowledged, determining the proper remedy "may require scientific expertise that the Court does not possess." Dkt. No. 57 at 2 n.3. The Court hoped to rely on the expertise of the federal agencies to "bridge the gap." *Coastkeeper,* 161 F.4th at 601. But though expressly invited to comment on the County's work plans prepared in compliance with the Court's preliminary injunction, the agencies have declined to weigh in. *Id.* Accordingly, the proposed Special Master and Expert Panel are necessary to aid the Court in resolving these complex scientific issues.

### B. The County's Intransigence in Evading ESA Compliance Especially Warrants Special Master Oversight.

As this Court effectively recognized in issuing its preliminary injunction orders, the County has half-heartedly—and futilely—pursued ESA habitat conservation plan ("HCP") and ESA section 10 incidental take permit ("ITP") approval for more than two decades while repeatedly declining to respond to NMFS's criticisms of the County's proposed approaches to ESA compliance--criticisms which this Court recognized as valid. *See Coastkeeper*, 758 F. Supp. 3d at 1174-75 (noting the "endeavor of securing a suitable habitat for the survival of Steelhead has remained ongoing for years" and deeming "it appropriate to propel this process in a timely manner"); Dkt. 57 at 1-2 (noting "the irreparable harm endured by Steelhead for years" while the County "engaged in an extensive and lengthy regulatory process with [NMFS] agency to improve the Steelhead Creek habitat for nearly two decades—the results of which have remained seemingly unavailing based on the record."). At the time, this Court found the proposed order "warranted, feasible, and long overdue." Dkt. 57 at 3. Despite this Court's finding in its preliminary injunction ruling that the County's prior approach to releasing water

from Lopez Dam to AG Creek (the County's IDRS), was causing irreparable harm to Steelhead (a finding which the Ninth Circuit did not disturb on appeal), the County has returned to implementing its IDRS given the Ninth Circuit's appeal ruling vacating this Court's preliminary injunction. Sproul Decl., ¶ 8. Consistent with the Ninth Circuit's remand, this Court is now tasked with fashioning an interim remedy that not only abates the ongoing irreparable harm to Steelhead but also avoids potential harm to CRLF and tidewater goby. *Coastkeeper*, 161 F.4th at 602 ("On remand, the district court must weigh the evidence on all affected species.").

The proposed Special Master and Expert Panel will provide crucial assistance to the Court in fashioning a remedy that appropriately balances the evidence of harm to the Listed Species and monitoring of the County's compliance with a preliminary or permanent injunction. *See*, *e.g.*, *Nw. Env't Def. Ctr.*, 558 F. Supp. 3d at 1075 (appointing expert panel and ESA case to assist the Court in overseeing implementation of injunction). Monitoring a complicated mandatory injunction is resource intensive and can tax a district court's resources. *See*, *e.g., Hook v. State of Ariz.*, 907 F. Supp. 1326, 1335 (D. Ariz.), aff'd sub nom. *Gluth v. Arizona Dep't of Corr.*, 73 F.3d 369 (9th Cir. 1995) (appointing special master to oversee injunction implementation with recognition that court monitoring alone would be insufficient). Here, the Special Master and Expert Panel, with their scientific and regulatory expertise, can monitor compliance more efficiently than the Court and offset the need for the Court's resources. Without expert guidance, the Court is highly likely to find it both time-consuming and challenging to evaluate whether the County is adequately implementing the complex measures needed to remedy harm to the Listed Species. For these reasons, the Court should appoint a special master and expert panel to make recommendations regarding scientific issues.

**C. The Proposed Special Master and Expert Panel Are Well Qualified and Neutral and Have Expertise That Will Aid the Court in Addressing Scientific and Technical Issues.**

There are likely no experts more qualified to opine on the scientific issues in this case than Dr. Spies and the Expert Panel. They have significant expertise regarding the regulatory processes and Listed Species at issue here. Moreover, they are neutral experts who do not have disqualifying relationships with the NGOs or the County. They can provide the Court with objective recommendations that would aid the Court in deciding the case, reducing the burden on the Court's resources.

### 1.    The Proposed Special Master and Expert Panel Have Substantial Experience on Scientific Issues that Are Directly Relevant to this Case.

The proposed Special Master and Expert Panel are well qualified to address the scientific issues raised in this case. Dr. Spies is a biologist who specializes in tidewater goby research and is one of the few scientists widely published in the science of that species. Sproul Decl., ¶ 4 Ex. A. He also has extensive experience with the ecology that is relevant to and affects Steelhead and CRLF, as well, and has expertise with the interactions between these three species. *Id.* He is a professor at California State University, Channel Islands. *Id.* He has extensive expertise directly relevant to the Listed Species. *Id.* Since 2010, he has led a research program on the tidewater goby. *Id.* He also has extensive experience serving on expert panels and technical advisory committees, as well as organizing and directing the activities of research teams and synthesizing the results produced by such teams. *Id.* Thus, Dr. Spies is well suited to work with the Expert Panel to provide recommendations that will assist the Court in deciding how to develop a remedy that protects the Listed Species and includes robust monitoring and adaptive management to ensure the intended ecological outcomes.

Mr. Spina is a fishery biologist who has expertise on the biology, ecology, and conservation of Steelhead in central and southern California based on almost three decades of work in fisheries science. Sproul Decl. ¶ 5, Ex. B. He specializes in providing expert advice on preserving listed species, reconciling human-caused adverse impacts, and achieving compliance with the ESA. *Id.* Most recently, Mr. Spina was the Branch Chief of NMFS's California Coastal Division for the southern California branch office.

---

*Id.* At NMFS, Mr. Spina developed regional strategies and policies to conserve threatened and endangered Steelhead, including working with stakeholders to forge mutually agreeable solutions for environmental disputes involving conservation of Steelhead in central and southern California. *Id.* The County referenced Mr. Spina's work in its October 2025 Draft HCP. *See* Dkt. 141-1 at 245. Mr. Spina retired from NMFS in April of 2025, and now is the Owner-Principal of Spinal Environmental. Sproul Decl. ¶ 5, Ex. B.

Jeff Alvarez has developed extensive expertise regarding the CRLF over the course of more than three decades. Sproul Decl. ¶ 6, Ex. C. Mr. Alvarez is frequently retained by federal and state agencies to train other scientists in CRLF fieldwork, including methods to survey for CRLF egg masses in creeks as well as methods for lethal removal of non-native bullfrogs (a top predator of CRLF). *Id.* The United States Fish and Wildlife Service ("FWS") recommended Mr. Alvarez in response to the NGOs' inquiry for an expert on CRLF biology and habitat management issues. *Id.* Mr. Alvarez has a voluminous record of recent peer-reviewed publications on CRLF biology, breeding, and reproduction, including a paper on surveying for CRLF egg masses in creeks. *Id.* Mr. Alvarez has also published articles on effective methods for long-term control of American bullfrogs, a recognized key threat to CRLF that is present in AG Creek at the base of Lopez Dam. *Id.*; *see also* Dkt. 141-1 at 61, 178 ("Non-native predatory species like bullfrogs currently flourish in low-velocity warm-water habitats and have been identified in several ponds in the mainstem of AG Creek downstream of Lopez Dam."). The County referenced one of Mr. Alvarez's recent publications in its October 2025 Draft HCP. Dkt. 141-1 at 226.

Dr. Brian Cluer is an expert in fluvial geomorphology—the science of river and stream shape—and how geomorphic processes influence biological resources and habitat management. Sproul Decl. ¶ 7, Ex. D. Dr. Cluer earned his Ph.D. from Colorado State University in 1997 and completed his dissertation on the downstream effects of dams on the erosion and deposition processes of canyon-confined sandbars in Grand Canyon. *Id.*

After spending ten years with the National Park Service, Dr. Cluer spent over two decades as the West Coast Regional Fluvial Geomorphologist for NMFS. *Id.* Dr. Cluer has extensive experience advising the restoration of rivers and streams and restoring natural channel processes, including as a technical team member for the design and removal of the Klamath River dams (among other dam removal projects), designing the restoration of a gravel mine pit complex along the Russian River in Sonoma County, and recontouring a section of the Carmel River. *Id.* Dr. Cluer retired from NMFS in April of 2025. *Id.* He is currently Owner of Resilient Rivers LLC, a river restoration scientific consulting firm. *Id.* The County also referenced one of Mr. Cluer's publications in its October 2025 Draft HCP. *See* Dkt. 141-1 at 230.

In light of the Special Master and Expert Panel's excellent qualifications, the Court will greatly benefit from their recommendations on scientific questions and understanding the relevant regulatory processes.

### 2.      The Special Master Does Not Have Any Disqualifying Relationships.

Under FRCP 53, a special master "must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the Court's approval, consent to the appointment after the master discloses any potential grounds for disqualification." Fed. R. Civ. P. 53(a)(2). Dr. Spies has no relationship with the parties that would disqualify him. Notably, Dr. Spies does not routinely engage in paid expert testimony on behalf of interested parties in litigation (unlike the County's preliminary injunction opposition expert Mark Jennings, for example). Instead, Dr. Spies focuses in his profession on academic research and instruction with unique focus on tidewater goby--and providing science advice in regulatory and academic settings. With this background and accompanying perspective, Dr. Spies can be trusted to provide the Court with objective, science-based recommendations.

### 3.      The Expert Panel Members Are Neutral Experts, Not Advocates for Any of the Parties.

Under FRE 706, a court appointed expert must be neutral. *McCoy v. Stronach,* 494 F. Supp. 3d 736, 739 (E.D. Cal. 2020). Expert neutrality means that the expert is appointed to provide objective advice, and not to advocate on the parties' behalf. *See Garcia v. Chandra*, No. 2:22-CV-1221 TLN CSK P, 2024 WL 4794636, at *2 (E.D. Cal. Nov. 14, 2024) ("An expert appointed pursuant to Rule 706 does not serve as an advocate for either party and each party retains the ability to call its own experts."). The question of whether the expert is neutral and qualified rests within the sound discretion of the trial court. *See Students of California Sch. for the Blind v. Honig*, 736 F.2d 538, 549 (9th Cir. 1984), *cert. granted*, *judgment vacated on other grounds*, 471 U.S. 148 (1985).

Here, the proposed Special Master and Expert Panel are highly qualified scientists who will provide the Court with objective recommendations regarding the scientific and technical questions in this case. They are not advocates for either party. They are scientists with no interests other than helping the Court solve the complex issues in this action. Thus, the proposed Special Master and Expert Panel are properly neutral under FRE 706.

### 4. Anthony Spina Is Not Disqualified from Serving as an Expert Witness under 18 U.S.C. Section 207

The County has erroneously suggested that Mr. Spina should be prohibited from to serving as an expert witness due to the restrictions imposed by 18 U.S.C. section 207.[1] Dkt. 158 at 4. 18 U.S.C. section 207 bars former federal agency employees from

---

[1] The County should exercise care and appropriate restraint in attempting to block Mr. Spina from being employed by the Court as an expert witness. Entities that go to inappropriate lengths to block relevant witnesses from testifying, such as enlisting the employee's former agency employer against the witness, face potential tort liability or other sanction. *Matthews v. Storgion*, 174 Fed. Appx. 980, 2006 U.S. App. LEXIS 9835, at *986-89 (6th Cir. 2006) (private party defense lawyer who contacted the FDA and attempted to persuade the FDA to forbid an employee from testifying as an expert witness potentially liable for the tort of intentional interference with a business relationship); *FDIC v. Refco Group*, 46 F. Supp. 2d 1109, 1111 (D. Colo. 1999) (enjoining FDIC from firing or threatening FDIC employee with sanctions for testifying in court).

communicating with, or appearing before, a federal agency or court "on behalf of any other person" "in connection with a particular matter" in which (a) the United States has a "direct and substantial interest," (b) the "person participated personally and substantially as such officer or employee," and (c) "which involved a specific party or specific parties at the time of such participation." *See* 18 U.S.C. § 207(a)(1). An exception to this prohibition applies for a person "giving testimony under oath, or . . . making statements required to be made under penalty of perjury." 18 U.S.C. § 207(j)(6). But in an exception-to-the-exception, section 207(j)(6)(A) provides that any person falling within subsection (a)(1) "with respect to a particular matter may not, *except pursuant to court order*, serve as an expert witness for any other person . . . in that matter" (emphasis added). Section 207(a)(1)'s bar on appearing before a federal court should not apply to Mr. Spina here given that (1) this citizen suit case is not a particular matter that Mr. Spina worked on while at NMFS, and (2) neither NMFS nor any other federal agency has a direct and substantial interest in this case as demonstrated by NMFS and FWS declining to bring their own enforcement case against the County or intervene in this case despite being given advance notice that the NGOs would file this case and being provided copies of the complaint and other pleadings in this matter and by the agencies further declining to provide any comments to the Court concerning matters related to the case. *See, e.g., Northwest Environmental Defense Center v. U.S. Army Corps of Engineers*, No. 3:18-CV-00437-HZ, 2019 WL 2372591, at *5-6 (D. Or. June 5, 2019) (two former NMFS employees were not barred by 18 U.S.C. section 207 from testifying against NMFS and the U.S. Army Corps of Engineers in an ESA citizen suit over harms to salmon and steelhead caused by dams even though they worked on the NMFS biological opinion for those dams; biological opinion held to not be the same particular matter as the citizen suit).

However, even if section 207(a)(1)'s prohibition did apply to Mr. Spina, this prohibition would not apply should the Court appoint Mr. Spina as a court expert pursuant to section 207(j)(6)(A). To begin, if appointed by the Court to serve as its

expert, Mr. Spina would not be appearing before the court "on behalf of any other person," *i.e.*, would not be in an advocacy role on behalf of someone with an interest to be advanced. As such, appointment of Mr. Spina in such a role would be entirely appropriate and consistent with the congressional intent behind 18 U.S.C. section 207, which is "to prevent former government officials from using the specific knowledge--rather than any general expertise--obtained during their employment for the benefit of parties whose interests conflict with those of the United States." *United States v. Rosen*, 599 F. Supp. 2d 690, 699 (E.D. Va. 2009); *see also*, *e.g.*, 63 Fed. Reg. 7844, 7849 (Feb. 18, 2003) ("The target of this restriction is the former employee who participates personally and substantially in a particular matter involving a specific party or parties while employed by the Government and who later 'switches sides' by representing another person on the same matter, with the intent to influence, before a Federal department, agency, or court."). By providing objective advice to the Court concerning how the County should be regulated consistent with ESA objectives and the protection of Steelhead, Mr. Spina would manifestly not be "switching sides" in a manner conflicting with the interests of the United States. Notably, the United States has effectively disclaimed concern about how the Court rules in this matter given that it has declined to bring its own action, intervene in this action, or provide the Court with comments on what the County should do to comply with ESA. And Mr. Spina providing objective science advice to the Court could not be seriously characterized as inimical to the interests of the United States government, which this Court is a branch of.

When a former government agency employee's testimony would be probative in resolving matters pending before a federal court, courts have regularly ordered that such employees may testify. As one court noted in allowing former NMFS employees to testify in an ESA citizen suit involving adverse impacts on salmon and steelhead from dams:

> [18 U.S.C. section 207] is intended to address corruption concerns about former government employees using knowledge of specific matters they obtained during their government service for the benefit of other parties involved in those same

matters. [The NMFS's employee's] testimony on behalf of three public-interest groups relating to a broad government program and its effect on listed species simply does not implicate such corruption concerns. As a result, even if [the employee's] testimony fell within the scope of the Ethics in Government Act, the Court would authorize [his] testimony because excluding it would serve neither the purpose of the Act nor the public interest.

*Northwest Environmental Defense Center*, 2019 WL 2372591at *6; *see also FDIC v. Refco Group*, 46 F. Supp. 2d 1109, 1114 (D. Colo. 1999) (rejecting FDIC arguments that 18 U.S.C. section 207 regulations barred an FDIC employee from testifying as an expert witness against the FDIC, appointed the employee as court's own expert and for bidding FDIC from pursing any sanction investigation against the employee or otherwise communicating with him to discourage him from testifying, noting the importance of having the witness testify to expedite case resolution).

### D. The Court Should Order the County to Compensate the Special Masters Considering the Parties' Relative Financial Means.

The Court should order the County to pay Dr. Spies and the Expert Panel's compensation and any related costs. Under FRCP 53, the Court must set the special master's pay and allocate the compensation amongst the parties. Fed. R. Civ. P. 53(g)(1). Similarly, FRE 706 "permits the district court to apportion all the cost to one side" in "an appropriate case," particularly where one party is unable to afford the expert. *See McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991), *cert. granted*, *judgment vacated sub nom. on other grounds*, *Helling v. McKinney*, 502 U.S. 903 (1991); *see* Fed. R. Evid. 706(c)(2) (expert costs are payable "by the parties in the proportion and at the time that the court directs."). The Court has broad discretion under both Rules to allocate the proposed Special Master and Expert Panel's pay and other costs. *McKinney,* 924 F.2d at 1511 (FRE 706 "allows the court to assess the cost of the expert's compensation as it deems appropriate."); *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 1001 (9th Cir. 2003) (broad discretion to allocate costs under FRCP 53); *see also K-2 Ski Co. v. Head Ski Co., 506 F.2d 471*, 476 (9th Cir. 1974) ("The compensation of a master is fixed by the court and paid as the court may direct" under FRCP 53).

In deciding how to allocate the Special Master and Expert Panel's compensation and costs between the parties, the Court must consider "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)*. Parties "pursuing matters of public interest, for example, may deserve special protection." Committee Notes on Rules, 2003 Amendment, Fed. R. Civ. P. 53; *Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, No. 2:11-CV-03471-KJM-AC, 2015 WL 10939711, at *2 (E.D. Cal. July 2, 2015). In analogous public interest cases concerning FRCP 53 and FRE 706, courts have required defendants to pay the special master. *See Morgan Hill.*, at *2; *McKinney,* 924 F.2d at 1511. For example, in *Morgan Hill*, the district court ordered the defendant to pay the special master's fees and costs given the parties' comparative financial means and the fact that plaintiffs were nonprofit associations pursuing a matter of public interest. 2015 WL 10939711, at *2.

Here, the NGOs are nonprofit organizations operating on shoestring budgets that are pursuing this litigation in the public interest of protecting endangered and threatened species. Sproul Decl., ¶ 9. They do not have the means to foot the bill of the Special Master and Expert Panel. *Id.* Moreover, the County is responsible for the need to appoint a special master and expert panel. As the Court found in ruling on the initial preliminary injunction, the County has shirked its obligations under the ESA for many years, creating the need for citizen enforcement of the ESA. *See Coastkeeper*, 758 F. Supp. 3d at 1164-65 (discussing the County's history of failing to comply with the ESA). Moreover, the County's failure to comply with the ESA has imperiled the Listed Species, requiring close supervision of the injunctive relief in this case. Thus, the County's actions created the need for a special master and court-appointed experts. For these reasons, the County should be ordered to compensate the special master and the Expert Panel.

### E. The Proposed Appointment Order Complies with FRCP 53 and FRE 706.

The NGOs' proposed appointment order submitted with this motion complies with FRCP 53 and FRE 706 and will promote judicial economy. Appointment orders must set

forth the special master and expert panel's duties. *See* Committee Notes on Rules, 2003 Amendment, Fed. R. Civ. P. 53(b) ("[c]are must be taken to make the order as precise as possible." Here, the proposed order clearly outlines Dr. Spies' duties—primarily, to receive input from the Expert Panel, direct the County and the NGOs to provide documents and potentially participate in special master hearings, and provide expert advice to the Court in the form of reports. *See* Proposed Order ¶¶ 1-4, 6-8. Based on advice from the Expert Panel and his own research, Dr. Spies would be ultimately responsible for making pertinent scientific findings and recommendations to the Court. Proposed Order ¶¶ 1, 3.

The Special Master and Expert Panel will not "displace the court," but will provide expert advice necessary to protect the Listed Species pending trial. *See Burlington,* 934 F.2d at 1072 (quoting *La Buy v. Howes Leather Co.*, 352 U.S. 249, 256 (1957)). Moreover, the NGOs' proposed order properly asks the Court to exercise its authority to limit ex parte communications between the special master or Expert Panel and the Court to preserve the adversarial process. Proposed Order ¶ 10; *see* Fed. R. Civ. P. 53(b)(2)(B). Thus, the proposed appointing order complies with FRCP 53 and FRE 703 and will promote judicial economy.

## V.    CONCLUSION

The Court should grant this motion to appoint Dr. Spies as Special Master under FRCP 53 and Anthony Spina, Jeff Alvarez, and Dr. Cluer as expert panelists under FRE 706. Exceptional conditions warrant a special master to address complicated scientific questions in this case. The proposed Special Master and Expert Panel are highly qualified and neutral experts—with expertise directly relevant to the scientific and technical issues in this case—that will greatly aid the Court and reduce the burden on the Court's resources. The County should be required to pay the Special Master and Expert Panel given the NGOs' very limited resources and because the County's noncompliance with the ESA caused the need for a special master. The NGOs' proposed appointment order complies with FRCP 53 and FRE 706 because it clearly sets forth the Special Master and

Expert Panel's duties. Finally, if for any reason the Court finds Dr. Spies should not be appointed as Special Master, the NGOs request that he be appointed as an expert panelist under FRE 703. Thus, this motion to appoint a Special Master and Expert Panel should be granted.

Dated: January 26, 2026                    Respectfully submitted,

                                           */s/ Christopher Sproul*
                                           Christopher Sproul
                                           Environmental Advocates
                                           Attorney for Plaintiffs