Christopher Sproul (Cal. Bar No. 126398)
Marla Fox (Cal. Bar. No. 349813)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: mfox@enviroadvocates.com

Lucas Williams (Cal. Bar No. 264518)
Community Environmental Lawyers, PC
30 Otis Street #2301
San Francisco, CA 94103
Telephone: (707) 849-5198
Email: lucas@celpc.org

**Attorneys for Plaintiffs**

**Additional Counsel Listed on Next Page**

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and ECOLOGICAL RIGHTS FOUNDATION, <br><br> Plaintiffs, <br> v. <br><br> COUNTY OF SAN LUIS OBISPO, <br><br> Defendant. | Civil Case No: 2:24-cv-6854-SPG-AS <br><br> DECLARATION OF CHRISTOPHER SPROUL IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTION |

*Additional Counsel for Plaintiffs*

Jesse Colorado Swanhuyser (Cal. Bar No. 282186)
Sycamore Law Inc.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (805) 689-1469
Email: jesse@sycamore.law


Drevet Hunt (Cal. Bar No. 240487)
CALIFORNIA COASTKEEPER ALLIANCE
1100 11th Street
Sacramento, California 95814
Tel: (415) 606-0864
Email: dhunt@cacoastkeeper.org

I, Christopher Sproul, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following facts are true and correct:

1.      The facts set forth in this declaration are based on my personal knowledge; if called to testify as a witness, I could and would competently testify thereto under oath. As to those matters that reflect a personal opinion, they reflect my personal opinion and judgment upon the matter.

2.      I am an attorney licensed to practice law in the State of California. I am the Senior Attorney in Environmental Advocates, a public interest law firm based in San Francisco, California, and I am counsel for Plaintiffs in this matter.

3.      I make this declaration in support of Plaintiffs' Notice of Motion and Second Motion for Preliminary Injunction; Memorandum of Points and Authorities In Support Thereof.

4.      Attached as **Exhibit 1** is a true and correct copy of the Declaration of Tevin Schmitt in Support of Plaintiffs' Motion for Preliminary Injunction, originally filed as Dkt. No. 13-2 on August 17, 2024.

5.      Attached as **Exhibit 2** is a true and correct copy of the Reply Declaration of Tevin Schmitt in Support of Plaintiffs' Motion for Preliminary Injunction, originally filed as Dkt. 27 on September 4, 2024.

6.      Attached as **Exhibit 3** is a true and correct copy of the National Marine Fisheries Service ("NMFS"), February 2024, Role of Arroyo Grande Creek and Tributaries, San Luis Obispo County, California, In Meeting NMFS' South-Central California Coast Steelhead Viability/Recovery Criteria, which Plaintiffs received from the California Department of Fish and Wildlife ("CDFW") on February 22, 2024, in response to a California Public Records Act ("PRA") request. Excerpts of this document were originally filed as Dkt. 14-6 and Dkt. 25-10.

7.      Attached as **Exhibit 4** is a true and correct copy of the NMFS, Endangered Species Act Section 7(a)(2) Biological Opinion for the Arroyo Grande Creek Water

Sproul Decl. ISO Sec. Mot. for PI                    1                    CIVIL CASE NO: 2:24-cv-06854-SPG-AS

Management Program (File No. SPL-2012-00317-JWM), which Plaintiffs received from the County of San Luis Obispo ("County") on March 27, 2024, in response to a PRA request.

8.    Attached as **Exhibit 5** is a true and correct copy of relevant portions of the NMFS, 2023 5-Year Review: Summary & Evaluation of South-Central California Coast Steelhead, which Plaintiffs received from NMFS on April 2, 2024, in response to a Freedom of Information Act ("FOIA") request.

9.    Attached as **Exhibit 6** is a true and correct copy of relevant portions of the Declaration of David Spiegel in Support of Opposition to Motion for Preliminary Injunction originally filed as Dkt. 18-17 on August 28, 2024.  Plaintiffs highlighted the relevant portions in orange.

10.    Attached as **Exhibit 7** is a true and correct copy of relevant portions of the County's February 2004 Final Draft (HCP) and Environmental Assessment/Initial Study (EA/IS) For the Protection of Steelhead and California Red-Legged Frogs, which Plaintiffs received from NMFS on April 2, 2024, in response to a FOIA request, and which was originally filed as Dkt. 14-16 on August 17, 2024.

11.    Attached as **Exhibit 8** is a true and correct copy of Stillwater Sciences October 30, 2025, Technical Memorandum, Implementation of Predator Removal Plan Section 3.1 and 3.2 that Plaintiffs received from counsel for the County in an email dated January 28, 2026. Plaintiffs highlighted the relevant portions in orange.

12.    Attached as **Exhibit 9** is a true and correct copy of the Declaration of Dr. Charles Hanson in Support of Opposition to Motion for Preliminary Injunction, originally filed as Dkt. 18-8 on August 28, 2024.

13.    Attached as **Exhibit 10** is a true and correct copy of relevant portions of NMFS's 2013 South-Central California Coast Steelhead Recovery Plan, West Coast Region, California Coastal Area Office, Long Beach, California, which Plaintiffs' counsel downloaded from NMFS's publicly available website:

https://repository.library.noaa.gov/view/noaa/17275 (last accessed March 2, 2026), and which was originally filed as Dkt. 14-5 on August 17, 2024.

14. Attached as **Exhibit 11** is a true and correct copy of the United States Fish and Wildlife Service's ("FWS") Biological Opinion 8-8-15-F-4, Annual Report, prepared for the County by Rincon Consultants, Inc. dated January 2026 that Plaintiffs received from counsel for the County in an email dated February 5, 2026.

15. Attached as **Exhibit 12** is a true and correct copy of California State Parks, Aquatic Survey Report Reference Permit ES101154-4) for Arroyo Grande, Pismo, Carpenter, and Oso Flaco Creeks/Lagoons, Pismo State Beach and Oceano Dunes State Vehicular Area, survey dates May 13, 2025 and May 14, 2025, report dated June 5, 2025 that Plaintiffs received from counsel for the County in an email dated January 23, 2026.

16. Attached as **Exhibit 13** is a true and correct copy of a letter from Robert L. Jones, Regional Manager of California Department of Fish and Game ("CDFG") to the San Luis Obispo County Flood Control and Water Conservation District dated November 8, 1960, which Plaintiffs received from the California State Water Resources Control Board, Division of Water Rights ("DWR") on July 26, 2024, in response to a PRA request, and which was originally filed as Dkt. 25-7 on September 4, 2024. Plaintiffs highlighted relevant portions in orange.

17. Attached as **Exhibit 14** is a true and correct copy of CDFG's Intraoffice Correspondence dated March 1, 1961, which Plaintiffs received on February 22, 2024, in response to a PRA request to CDFW, and which was originally filed as Dkt. 25-4 on September 4, 2024. Plaintiffs highlighted relevant portions in orange.

18. Attached as **Exhibit 15** is a true and correct copy of relevant portions of the Central Coast Salmon Enhancement Arroyo Grande Creek Watershed Management Plan Update prepared for CDFG by Central Coast Salmon Enhancement dated March 2009, that Plaintiffs received on February 22, 2024, from CDFW in response to a PRA request and which was originally filed as Dkt. 25-2 on September 4, 2024. Plaintiffs highlighted the relevant portions in orange.

19.    Attached as **Exhibit 16** is a true and correct copy of relevant portions of a scientific paper, Titus, R.G., et al., (*In preparation*), *History and status of steelhead in California coastal drainages south of San Francisco Bay* (draft manuscript) which Plaintiffs received from CDFW on January 13, 2026 in response to a PRA request. Plaintiffs highlighted the relevant portions in orange.

20.    Attached as **Exhibit 17** is a true and correct copy of relevant portions of the County's Grant Application 1732300 for the Cecchetti Road Crossing Fish Passage Improvement Project submitted on April 18, 2024 that Plaintiffs received from the County on August 12, 2024 in response to a PRA request.

21.    Attached as **Exhibit 18** is a true and correct copy of relevant portions of Defendant County of San Luis Obispo's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for a Preliminary Injunction, which was originally filed as Dkt. 18 on August 28, 2024.

22.    Attached as **Exhibit 19** is a true and correct copy of relevant portions of the FWS, Region 1, 2002 Recovery Plan for the California Red-legged Frog that Plaintiffs' counsel downloaded from the FWS's website: https://ecos.fws.gov/docs/recovery_plan/020528.pdf (last accessed March 4, 2026).

23.    Attached as **Exhibit 20** is a true and correct copy of FWS's Biological Opinion for the Rodriguez Waterline Stabilization Project in San Luis Obispo County, California, dated May 9, 2012 that Plaintiffs received from the County on December 15, 2025, in response to a PRA request.

24.    Attached as **Exhibit 21** is a true and correct copy of the California Red-legged Frog and Tidewater Goby Habitat Assessment for Arroyo Grande Creek, San Luis Obispo County, California, prepared for the County by Susan V. Christopher, Ph.D., that Plaintiffs received from the County on March 8, 2024 in response to a PRA request, and which was originally filed as Dkt. 20-8 on August 29, 2024.

25.    Attached as **Exhibit 22** is a true and correct copy of California State Parks' Draft Habitat Conservation Plan for the Oceano Dunes District dated July 2025 that

Plaintiffs' counsel downloaded from the following website:

https://www.oceanoduneshcp.com/document-library (last accessed March 4, 2026).

26.    Attached as **Exhibit 23** is a true and correct copy of FWS's California Red-Legged Frog 5-Year Review: Summary and Evaluation Dated December 2022 that Plaintiffs' counsel downloaded from the FWS's website: https://www.fws.gov/node/5100706  (last accessed March 4, 2026).

27.    Attached as **Exhibit 24** is a true and correct copy of the Technical Memorandum regarding Arroyo Grande Creek Habitat Surveys, prepared by Stillwater Sciences for the County dated April 2022, that Plaintiffs received from CDFW on February 22, 2024 in response to a PRA request and that was originally filed as Dkt. 14-3 on August 17, 2024.

28.    Attached as **Exhibit 25** is a true and correct copy of relevant portions of the Technical Memorandum regarding Arroyo Grande Creek Habitat Surveys, prepared by Stillwater Sciences for the County dated February 2022, which Plaintiffs received from Stillwater Sciences on November 25, 2024 in response to a subpoena for documents in this matter (*see* Dkt. 60-3, ¶¶ 6, 17). Plaintiffs highlighted the relevant portions in orange.

29.    Attached as **Exhibit 26** is a true and correct copy of the California Red-Legged Frog Survey Report prepared by Clevland Biological, LLC for the Oceano Dunes District on October 14, 2025 that Plaintiffs received from California State Parks on January 30, 2026, in response to a PRA request.

30.    Attached as **Exhibit 27** is a true and correct copy of the FWS's Recovery Plan for the Tidewater Goby dated December 7, 2005 that Plaintiffs' counsel downloaded from the FWS's website: https://ecos.fws.gov/docs/recovery_plan/051207.pdf (last accessed March 4, 2026).

31.    Attached as **Exhibit 28** is a true and correct copy of a webpage titled *FWS Focus, Tidewater Goby*, which Plaintiffs' counsel retrieved from FWS's publicly available website: https://www.fws.gov/species/tidewater-goby-eucyclogobius-newberryi (last accessed on March 1, 2026).

32.     Attached as **Exhibit 29** is a true and correct copy of the FWS's Biological Opinion on the Arroyo Grande Creek Channel Waterway Management Program, San Luis Obispo County, California, dated May 25, 2015 that Plaintiffs received from the County on March 27, 2024, in response to a PRA request.

33.     Attached as **Exhibit 30** is a true and correct copy of the California State Parks' Aquatic Survey Report (Reference Permit ES101154-4) for Arroyo Grande, Pismo, Carpenter, Oso Flaco Creeks/Lagoons, Pismo State Beach and Oceano Dunes State Vehicular Recreation Area, survey dates November 18 and November 19, 2025, report dated December 16, 2025 that Plaintiffs received from counsel for the County in an email dated January 23, 2026.

34.     Attached as **Exhibit 31** is a true and correct copy of the California State Parks' Aquatic Survey Report (Reference Permit ES101154-4) for Arroyo Grande, Pismo, Carpenter, Oso Flaco Creeks/Lagoons, Pismo State Beach and Oceano Dunes State Vehicular Recreation Area, survey date December 14, 2022, report dated January 10, 2023 that Plaintiffs received from CDFW on February 22, 2024 in response to a PRA request. Plaintiffs highlighted the relevant portions in orange.

35.     Attached as **Exhibit 32** is a true and correct copy of the Declaration of Jared Emery in Support of Opposition to Motion for Preliminary Injunction, originally filed as Dkt. 18-6 on August 28, 2024.

36.     Attached as **Exhibit 33** is a true and correct copy of the NMFS's protest to the County of San Luis Obispo's water right permit application No. 30826 to appropriate water from the Arroyo Grande Creek dated November 4, 1999 that Plaintiffs received from the California State Water Resources Control Board, Division of Water Rights, on September 13, 2024 in response to a PRA request.

37.     Attached as **Exhibit 34** is a true and correct copy of the CDFG's protest to the County's water application No. 30826 dated October 18, 1999 that Plaintiffs received from the California State Water Resources Control Board, Division of Water Rights, on September 13, 2024 in response to a PRA request.

38.     Attached as **Exhibit 35** is a true and correct copy of the County's Response to Protests of CDFG, NMFS, and California Sportfishing Alliance dated March 13, 2000 that Plaintiffs received from the California State Water Resources Control Board, Division of Water Rights, in response to a PRA request. Plaintiffs highlighted the relevant portions in orange.

39.     Attached as **Exhibit 36** is a true and correct copy of NMFS's Biological Opinion for the Army Corp of Engineers permitting of the Lopez Dam Seismic Remediation Project dated March 28, 2001 that Plaintiffs received from the County on March 8, 2024, in response to a PRA request.

40.     Attached as **Exhibit 37** is a true and correct copy of relevant portions of a webpage that Plaintiffs' counsel retrieved from the United States Geographical Survey's website titled *Nonindigenous Aquatic Species*, *Western Mosquitofish Species Profile*, available at https://nas.er.usgs.gov/queries/factsheet.aspx?SpeciesID=846 (last accessed on March 2, 2026).

41.     Attached as **Exhibit 38** is a true and correct copy of the County's 2007 Interim Downstream Release Schedule ("IDRS") that Plaintiffs received from the California State Water Resources Control Board, Division of Water Rights, in response to a PRA request.

42.     Attached as **Exhibit 39** is a true and correct copy of an email from David Spiegel regarding an updated downstream release schedule dated April 8, 2025 that Plaintiffs received from the County on July 26, 2024, in response to a PRA request, and that was originally filed as Dkt. 23-11 on August 30, 2024.

43.     Attached as **Exhibit 40** are true and correct copies of screenshots that Plaintiffs' counsel obtained from the County's Public Works Department's publicly available website showing Lopez Dam spillway discharges in 2023 and 2024.  The screenshots were retrieved from the following website address: https://wr.slocountywater.org/sensor/?site_id=16&site=ad5cdb23-3e46-41f0-98a9-b169a505c0f4&device_id=10&device=66f2305d-7fc0-4af8-a405-bfdf4c25168

Sproul Decl. ISO Sec. Mot. for PI                    7                    CIVIL CASE NO: 2:24-cv-06854-SPG-AS

(last accessed March 4, 2026).

44.    Attached as **Exhibit 41** is a true and correct copy of a letter from NMFS to the United States Army Corps of Engineers dated May 15, 2000 regarding the County's road repair project involving the Biddle Park entrance road, which crosses Arroyo Canyon Creek that Plaintiffs received from CDFW on January 13, 2026, in response to a PRA request.

45.    Attached as **Exhibit 42** is a true and correct copy of the County's responses to pre-application comments on the proposed Habitat Conservation Plan to support an application for an incidental take permit covering threatened steelhead dated August 13, 2025 that Plaintiffs received from CDFW on January 13, 2026, in response to a PRA request.

46.    Attached as **Exhibit 43** is a true and correct copy of the Draft Technical Report, Steelhead Restoration Opportunities, prepared by Stillwater Sciences for the County dated October 2023 that Plaintiffs received from the County on February 22, 2024 in response to a PRA request and which was originally filed as Dkt. 22-2 on August 29, 2024.

47.    Attached as **Exhibit 44** is a true and correct copy of email correspondence between CDFW staff dated September 15, 2023 that Plaintiffs received from CDFW on Oct. 23, 2024, in response to a PRA request.

48.    Attached as **Exhibit 45** are true and correct copies of photos of the Lopez Lake Works and Fish Screen from 2013 and 2023 that Plaintiffs received from NMFS on September 9, 2024, in response to a FOIA request.

49.    Attached as **Exhibit 46** are true and correct copies of correspondence between the County's Public Works staff and CDFW staff dated September 6, 2023 and September 7, 2023 that Plaintiffs received from the County on February 22, 2024, in response to a PRA request.

50.    Attached as **Exhibit 47** is a true and correct copy of relevant portions of a scientific paper, Doubledee et al., *Bullfrogs, Disturbance Regimes, and the Persistence of*

*California Red-Legged Frogs*, The Journal of Wildlife Management, Vol. 67, No. 2, pp. 424-438 (April 2003) that Plaintiffs' counsel downloaded from JSTOR, a publicly available website providing access to scholarship: https://www.jstor.org/stable/3802783 (last accessed March 4, 2026).

51.     Attached as **Exhibit 48** is a true and correct copy of NMFS's Biological Opinion for the Army Corp of Engineers' permitting of the County's pipeline-protection project in Arroyo Grande Creek dated June 6, 2012 that Plaintiffs received from the County on August 12, 2024, in response to a PRA request .

52.     Attached as **Exhibit 49** is a true and correct copy of a scientific paper, Pulley et al., *Longitudinal Variability in the Oxygen Demand of Channel Bed Matrix Sediment in a UK Agricultural Catchment: Implications for Managing the Sediment Problem*, River Research and Applications, Vol. 41, pp. 1270-1281 (March 19, 2025) that Plaintiffs' counsel downloaded from Wiley, a publicly available online library providing access to scholarship: https://onlinelibrary.wiley.com/doi/10.1002/rra.4444 (last accessed March 4, 2026).

53.     Attached as **Exhibit 50** is a true and correct copy of a scientific paper, Sparling, *Water-quality criteria for amphibians*, Ch. 7, published in Dodd, *Amphibian Ecology and Conservation: A Handbook of Techniques* (2009), that Plaintiffs' counsel downloaded from the publicly available websitet: https://books.google.com/books?hl=en&lr=&id=zoQ3AwAAQBAJ&oi=fnd&pg=PA105 &dq=low+dissolved+oxygen+impacts+on+ranid+frogs&ots=UxBx6CMGW1&sig=6owz JHrdVLK6imugQZYBci-S1TE#v=onepage&q&f=false (last accessed March 1, 2026).

54.     On January 7, 2026, I sent an email message to the County's counsel Paul Weiland asking what approach to releasing flows from Lopez Dam the County was implementing and would continue to implement in light of the Ninth Circuit ruling *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 161 F.4th 590, 600 (9th Cir. 2025) vacating this Court's preliminary injunction (which took effect on December 29, 2026 when the Ninth Circuit issued its Mandate, which was filed with this Court as Dkt. 149).

On January 8, 2026, Mr. Weiland responded via email and stated, "The County is now operating under the IDRS. On December 29, the day the Ninth Circuit issued the mandate, consistent with the IDRS, the County began ramping down from the pulse flow from the starting point of 10 cfs at a rate of 0.5 cfs/day. The ramp down has continued to date. When the flow reaches 4.8 cfs, the County intends to hold at that level for 5 days consistent with the IDRS. Thereafter, the IDRS will continue to control…. [T]he County does not intend to deviate from the IDRS absent a stipulated order or preliminary injunction order or express guidance from NMFS and USFWS."

55.    Attached as **Exhibit 51** is a true and correct copy of NMFS's comment letter dated November 25, 2004 regarding the County Flood Control and Water Conservation District's February 2004 draft Habitat Conservation Plan for operation of Lopez Dam. Plaintiffs received this document from the County on March 8, 2024, in response to a PRA request. Plaintiffs highlighted the relevant portions in orange.

56.    Attached as **Exhibit 52** is a true and correct copy of FWS's Comments dated June 27, 2005 regarding the County Flood Control and Water Conservation District's February 2004 draft Habitat Conservation Plan for the operation of the Lopez Dam. Plaintiffs received this document from the County on March 8, 2024, in response to a PRA request. Plaintiffs highlighted the relevant portions in orange.

57.    Attached as **Exhibit 53** is a true and correct copy of a scientific paper, Olsson et al., *Hypoxia increases the risk of egg predation in nest-guarding fish*, Royal Society Open Science, 3:160326 (July 29, 2016). Plaintiffs' counsel downloaded this article from the following publicly available website, National Library of Medicine: https://pmc.ncbi.nlm.nih.gov/articles/PMC5108961/ (last accessed March 4, 2026).

58.    Attached as **Exhibit 54** is a true and correct copy of the Declaration of Dr. Mark R. Jennings in Support of Opposition to Motion for Preliminary Injunction, originally filed as Dkt. 18-10 on August 28, 2024.

59.    Attached as **Exhibit 55** is a true and correct copy of a scientific paper, Richter et al., *A Method for Assessing Hydrologic Alteration within Ecosystems*,

Conservation Biology, Volume 10, No. 4, pp. 1163-1174 (August 14, 1996). Plaintiffs' counsel downloaded this article from Wiley, a publicly available online library providing access to scholarship: https://conbio.onlinelibrary.wiley.com/doi/10.1046/j.1523-1739.1996.10041163.x (last accessed March 4, 2026).

60.    Attached as **Exhibit 56** is the Morrison-Maierle, 2012 Guidelines for Use of Pumps. Plaintiffs' counsel downloaded this guidance document from the following publicly available website: https://damfailures.org/sites/default/files/wp-pdf/technical_note_9.pdf (last accessed March 4, 2026).

61.    Attached as **Exhibit 57** is a true and correct copy of a table displaying CDFW's comments dated July 2025 regarding the Steelhead Passage Feasibility Assessment of Lopez Dam: Design Criteria and Alternatives Pre-Screening Evaluation for TAC Review. Plaintiffs received this document from the County on October 7, 2025, in response to a PRA request.

62.    Attached as **Exhibit 58** is a true and correct copy of a scientific paper, Alvarez, et al., *An effective method for long-term control of American bullfrogs syntopic with special-status native amphibians in California, USA*, Human-Wildlife Interactions, Volume 18, No. 1, pp. 23-32 (Spring 2024). Plaintiffs' counsel downloaded this article from the following publicly available website: https://digitalcommons.usu.edu/hwi/vol18/iss1/6/  (last accessed March 4, 2026).

63.    Attached as **Exhibit 59** is a true and correct copy of selected relevant pages of the Transcript Deposition of Sharon Kramer that I took on behalf of the Plaintiffs in this case on May 20, 2025. Among other things, Ms. Kramer testified that the County retained her and her firm HT Harvey to commence working on its Lopez Project Habitat Conservation Plan ("the HCP") in 2010. Ex. 59 at 15. Ms. Kramer indicated she was familiar with the County's 2004 Draft HCP for the Lopez Project that Charles Hansen had a lead in drafting and reviewed this 2004 Draft HCP as part of her work for the County on a new draft County HCP. *Id*. at 125. Ms. Kramer helped draft a revised 2013 version of a Lopez Project HCP for the County and further indicated that there was no

complete version of a Lopez Project HCP in the nine years between 2004 and 2013, though there were some documents exchanged about further work on the HCP in these nine years. *Id*. at 125-26. Additionally, at the time of our May 2025 deposition, she testified that there was not yet another complete draft Lopez Project HCP produced by the County and its consultants in the 12 years since the 2013 Draft HCP that she helped write. *Id*. at 124-26. When asked for an explanation why there was no additional complete Draft HCP in the 12 years since her 2013 Draft HCP, Ms. Kramer responded: "I can't give you any exact reason, but I --from my perspective, the County has limited staff and they were involved in the waterway management plan, the groundwater study, and they all have jobs that are -- make them -- have them doing other things besides this, so we would work hard and then put -- stop working when they got busy on other things they had to do…." When asked for an explanation why no additional draft HCP was prepared during the nine years between the Charles Hansen authored 2004 Draft HCP and the 2013 Draft HCP, Ms. Kramer explained that "So many meetings [between the County and its consultants were held] where we discussed biological goals and objectives and potential conservation measures and then [had to] go back and model a potential stream flow release. So there was a lot of back and forth. So work was happening, but we weren't putting pen to paper or we were putting pen to paper but just like little memo type, just documenting sort of decision pathways…. It was just a very iterative process." *Id*. at 126.

64.     At her May, 2025 deposition, Ms. Kramer also addressed her work that led up to the October 1, 2025 Lopez Project HCP, the first complete Lopez Project HCP since her 2013 Draft HCP. She indicated that before leaving for a six week vacation in March 2024, she sent an email message to the County and its other HCP consultants outlining several "low hanging fruit tasks that could be done" to advance the HCP while she was gone. The first of these low hanging fruit tasks was: "Resolving a few of the conservation measures and their phasing with the County, the 20 in-stream restoration projects recommended by Stillwater are a menu of items that will require the County to

indicate which, if any, makes sense to do given budget restrictions, and the other conservation measures in the HCP. This would be a team effort but progress could be made while I am gone." *Id*. at 198. The second of these tasks was for the County to determine the location of where in Arroyo Grande Creek it would measure compliance with obtaining criteria for sufficient flow in the creek to benefit Steelhead. *Id*. at 200. The third task was to incorporate County consultant Stillwater Sciences findings in its Arroyo Grande Creek habitat and habitat restoration assessment into a draft of the HCP. *Id*. at 202. *Id*. at 200. *Id*. at 200. A fourth task was to "get the [proposed HCP] conservation measures in a place where the County feels it can share them with NMFS, CDFW and USFWS to get initial feedback before proceeding further." *Id*. at 205. Ms. Kramer testified that the County and its consultants did not complete any of these tasks during her six week vacation absence and in fact had not completed any of these tasks as of the date of her May 20, 2025 deposition--all remained a work in progress. *Id*. at 199-205. When asked for an explanation, she indicated that one of the reasons was that the County did not place Stillwater or her under contract to resume HCP work until January 2025-- leading her and Stillwater's project lead Ethan Bell to not begin work on the October 2025 Draft HCP until the end of March 2025. *Id*. at 203-04.

65.     Attached as **Exhibit 60** is a true and correct copy of selected relevant pages of the Transcript Deposition of Ethan Bell that I took on behalf of the Plaintiffs in this case on April 29, 2025. Mr. Bell's deposition testimony corroborated Ms. Kramer's deposition testimony that Stillwater Sciences, one of the two biology consultants retained by the County to develop the Lopez Project HCP that Stillwater Sciences, like Sharon Kramer at HT Harvey, did no work on further written development of the Lopez Project HCP between March 2024 and April 2025. Ex. 60 at 170-76, 181-83. Mr. Bell wrote to Kate Ballantyne in March 2024 with the suggestion that the County would need to do a lot of additional analysis to support its draft HCP. *Id*. at 171. Despite this recommendation, the County did not retain Mr. Bell to do any such additional analysis until January 2025, but Mr. Bell did not actually commence working on this analysis until

Sproul Decl. ISO Sec. Mot. for PI                    13                    CIVIL CASE NO: 2:24-cv-06854-SPG-AS

April 2025. *Id*. at 176. Mr. Bell further corroborated Ms. Kramer that Stillwater did not do any of the low hanging fruit tasks mentioned in Ms. Kramer's March 2024 email message discussed above because "there was no request [from the County] for Stillwater to conduct that activity." *Id*. at 181-83.

66.     The NGOs have sent correspondence to NMFS and FWS indicating our ongoing interest in the agency's processing of the County's 2025 Draft HCP and potential Endangered Species Act section 10 incidental take permit to the County for the Lopez Project. Environmental Advocates on behalf of our clients have sent FOIA request for documents from NMFS indicating the status of the agency's processing of this draft HCP. On behalf of our clients, I have also been monitoring NMFS's Internet webpage where it publishes notices of public common opportunities on draft HCPs and ESA section 10 incidental take permit applications: https://www.fisheries.noaa.gov/tags/conservation-plan?title=&field_topics_vocab_target_id%5B1000000050%5D=1000000050&field_species_vocab_target_id=&field_region_vocab_target_id%5B1000001126%5D=1000001126&sort_by=created. I last visited this page on March 3, 2026. NMFS has not published a notice of a public comment period on the County's 2025 Draft HCP, nor any public notice concerning public common opportunity on any County draft Lopez Project incidental take permit application. This NMFS Internet page would tend to suggest that NMFS is quite backlogged in reviewing any HCP submittals, as the most recent public notice concerning an HCP or incidental take permit application available on its website is from September 12, 2023.

67.     On behalf of our client Ecological Rights Foundation, I sent a series of FOIA requests to NMFS in August 2025 related to NMFS oversight over various dam operations located in Southern California. On September 23, 2025, I attended a video conference with several NMFS staff to discuss NMFS's response to the series of FOIA requests and NMFS's request that my client consider narrowing the requests and to give NMFS more time to respond to the requests. The NMFS staff attending the

videoconference explained as justification that NMFS's West Coast office that would be handling the FOIA responses had lost about one third of its staff since the new Presidential administration took office in January 2025. In my discussions with NMFS staff members about these FOIA requests, and several other additional conversations I have had with former NMFS employees and environmental public interest organization colleagues who have had extensive interactions with NMFS, I have learned that several of the NMFS West Coast office personnel that I knew from personal experience to have extensive expertise with West Coast steelhead science issues have left NMFS since January 2025, leaving very few individuals still working at NMFS who have such expertise.

68.    In seeking potential experts to propose to the Court who could serve as members of a court-appointed panel of experts pursuant to Federal Rule of Evidence 706 and/or a special master pursuant to Federal Rules of Civil Procedure 53, I interviewed several potential expert candidates, including Dr. Brenton Spies, Jeff Alvarez, Dr. Brian Cluer, and Anthony Spina. The NGOs attached their curriculum vitae as exhibits to their January 26, 2026 Motion To Appoint Special Master and Expert Panel (Dkt. 159). Dkt. 159-3, Dkt. 159-4, Dkt. 159-5, Dkt. 159-6.

69.    In my interview of Dr. Spies and in my review of his curriculum vitae, I learned that he is one of a small handful of biologists who has developed expertise with tidewater goby. Dr. Spies has conducted extensive field research and authored many publications on tidewater goby, one of the few scientists widely published in the science of that species. He also has extensive experience with the ecology that is relevant to and affects South-Central California Coast Distinct Population Segment of Steelhead trout ("Steelhead") and California red-legged frog ("CRLF") as well, and has expertise with the interactions and ecological interrelationships between these two species and tidewater goby (collectively all three, "the Listed Species"). He is a professor at California State University, Channel Islands. Since 2010, he has led a research program on the tidewater goby. His field research work has included survey of tidewater goby presence and habitat

in the Arroyo Grande Creek watershed. Much of his work with tidewater goby and its habitat overlaps with the ecology that affects Steelhead and CRLF. He also has extensive experience serving on expert panels and technical advisory committees, as well as organizing and directing the activities of research teams and synthesizing the results produced by such teams. Dr. Spies' customary hourly billing rate is $300.00 per hour. He resides in Los Angeles, California.

70.     In my interview of Jeff Alvarez and in my review of his curriculum vitae, I learned that Mr. Alvarez has developed extensive expertise regarding the CRLF over the course of more than three decades. He is frequently retained by federal and state agencies to train other scientists in CRLF fieldwork, including methods to survey for CRLF egg masses in creeks as well as methods for lethal removal of non-native bullfrogs (a top predator of CRLF). The FWS recommended Mr. Alvarez in response to the NGOs' inquiry for an expert on CRLF biology and habitat management issues. Mr. Alvarez has a voluminous record of recent peer-reviewed publications on CRLF biology, breeding, and reproduction, including a paper on surveying for CRLF egg masses in creeks. Mr. Alvarez has also published articles on effective methods for long-term control of American bullfrogs, a recognized key threat to CRLF that is present in Arroyo Grande Creek at the base of Lopez Dam. *See* Dkt. 141-1 at 61, 178 ("Non-native predatory species like bullfrogs currently flourish in low-velocity warm-water habitats and have been identified in several ponds in the mainstem of AG Creek downstream of Lopez Dam."). The County referenced one of Mr. Alvarez's recent publications in its Lopez Project October 2025 Draft HCP. Dkt. 141-1 at 226. From my interview with Mr. Alvarez, I am aware that he has done field survey work related to CRLF in the Arroyo Grande Creek watershed. Mr. Alvarez's customary hourly billing rate is $150.00 per hour. He resides in Sacramento, California.

71.     In my interview of Dr. Cluer and in my review of his curriculum vitae, I learned that Dr. Cluer is an expert in fluvial geomorphology—the science of river and stream shape—and how geomorphic processes influence biological resources and habitat

Sproul Decl. ISO Sec. Mot. for PI                16                CIVIL CASE NO: 2:24-cv-06854-SPG-AS

management. Dr. Cluer earned his Ph.D. from Colorado State University in 1997 and completed his dissertation on the downstream effects of dams on the erosion and deposition processes of canyon-confined sandbars in the Grand Canyon. After spending ten years with the National Park Service, Dr. Cluer spent over two decades as the West Coast Regional Fluvial Geomorphologist for NMFS. He has extensive experience advising the restoration of rivers and streams and restoring natural channel processes, including as a technical team member for the design and removal of the Klamath River dams (among other dam removal projects), designing the restoration of a gravel mine pit complex along the Russian River in Sonoma County, and recontouring a section of the Carmel River. He also has done some field observation work in the Arroyo Grande Creek watershed while at NMFS and is familiar with the effects that Lopez Dam is having on Arroyo Grande Creek geomorphology as result of this work. Dr. Cluer retired from NMFS in April of 2025. He is currently Owner of Resilient Rivers LLC, a river restoration scientific consulting firm. The County also referenced one of Mr. Cluer's publications in its Lopez Project October 2025 Draft HCP. *See* Dkt. 141-1 at 230. Dr. Cluer's customary hourly billing rate is $300.00 per hour.

72.    In my interview of Anthony Spina, prior dealings with him as a witness for NMFS in the ESA citizen suit *Wishtoyo Found. v. United Water Conservation Dist.*, No. 163869, 2018 WL 6265099, (C.D. Cal. Sept. 23, 2018) and in my review of his curriculum vitae, I have learned that Mr. Spina is a fishery biologist who has expertise on the biology, ecology, and conservation of Steelhead in central and southern California based on almost three decades of work in fisheries science. He specializes in providing expert advice on preserving listed species, reconciling human-caused adverse impacts, and achieving compliance with the ESA. Until recently, Mr. Spina was the Branch Chief of the NMFS's California Coastal Division for the southern California branch office. At NMFS, Mr. Spina helped administer NMFS's evaluation of ESA compliance with respect to impacts on Steelhead and he developed extensive experience and knowledge concerning evaluating whether projects as proposed are eligible for incidental take permit

approval or qualify for incidental take authorization via NMFS ESA section 7 biological opinions. He also helped develop NMFS regional strategies and policies to conserve threatened and endangered Steelhead, including working with stakeholders to forge mutually agreeable solutions for environmental disputes involving conservation of Steelhead in central and southern California. The County referenced Mr. Spina's work in its Lopez Project October 2025 Draft Habitat Conservation Plan. *See* Dkt. 141-1 at 245. Mr. Spina retired from NMFS in April of 2025, and now is the Owner-Principal of Spina Environmental. Although the NGOs previously retained Mr. Spina, he was retained only to provide guidance to the NGOs to better inform their review and development of comments on the County's Lopez Project Draft HCP and the County's various work plans prepared in response to this Court's preliminary injunction. The NGOs sought Mr. Spina's perspectives on how NMFS would likely view the merits of the County's Draft HCP and preliminary injunction work plans and Mr. Spina's analysis concerning measures needed in Arroyo Grande Creek to protect Steelhead given his many years of regulatory experience and acquired knowledge with Steelhead science. The NGOs did not retain Mr. Spina as an advocate for the NGOs in this case and have not worked with him to prepare expert testimony on behalf of the NGOs in this matter. Mr. Spina's customary hourly billing rate is $250.00 per hour. Mr. Spina resides in San Dimas, California.

73. Environmental Advocates, Jesse Swanhuyser at Sycamore Law Inc. and newly retained additional outside counsel, Lucas Williams at Community Environmental Lawyers, PC are all working on this case on contingency given that the NGOs are nonprofit organizations that lack the ability to pay outside counsel.

74. Attached hereto as **Exhibit 61** is a true and correct copy of a letter from NMFS to the County dated June 22, 2023, which was previously filed as Dkt. 23-20, Ex. 39 on August 30, 2024, and which Plaintiffs received this letter from the County on March 27, 2024, in response to a PRA request. Plaintiffs highlighted the relevant portions in orange.

75. Attached hereto as **Exhibit 62** are true and correct copies of emails between NMFS staff members dated November 28, 2023, which were previously filed as Dkt. 23-22 Ex. 41 on August 30, 2024, and which Plaintiffs received this document from NMFS on April 2, 2024, in response to a FOIA request. Plaintiffs highlighted the relevant portions in orange.

76. Attached hereto as **Exhibit 63** is a true and correct copy of a letter from NMFS to the County dated May 6, 2024, which was previously filed as Dkt. 14-20 on August 17, 2024. Plaintiffs received this document from the County on July 26, 2024, in response to a PRA request.  Plaintiffs highlighted the relevant portions in orange.

77. Attached hereto as **Exhibit 64** a true and correct copy of the Declaration of Gordon Hensley in Support of Plaintiffs' Motion for Preliminary Injunction, originally filed as Dkt. No. 13-3 on August 17, 2024.

78. Attached hereto as **Exhibit 65** is a true and correct copy of the Declaration of Benjamin Pitterle in Support of Plaintiffs' Motion for Preliminary Injunction, originally filed as Dkt. No. 13-4 on August 17, 2024.

79. Attached hereto as **Exhibit 66** is a true and correct copy of the Declaration of Sean Bothwell in Support of Plaintiffs' Motion for Preliminary Injunction, originally filed as Dkt. No. 13-5 on August 17, 2024.

80. Attached hereto as **Exhibit 67** is a true and correct copy of the Declaration of Cynthia Replogle in Support of Plaintiffs' Motion for Preliminary Injunction, originally filed as Dkt. No. 13-6 on August 17, 2024.

81. Attached hereto as **Exhibit 68** is a true and correct copy of an agenda and meeting minutes from a meeting of the San Luis Obispo County Flood Control and Water Conservation District Zone 3 Advisory Committee indicating that the County has incurred $2.68 million in litigation expense in this case as of September 2025. Plaintiffs' counsel obtained this document from the County's publicly available website: https://www.slocounty.ca.gov/departments/public-works/forms-documents/committees-programs/flood-control-zones/zone-3-lopez-water-project/agenda-packets/2025/2025-9-

18-zone-3-ac-agenda (last accessed March 4, 2026). I am aware from the amount of legal work that I and my co-counsel have performed and the opposition work we have observed from the County's counsel throughout this case and since September 2025, that the majority of the County's litigation expense has had to have been paying its outside counsel's legal bills. Furthermore, given the extensive work that counsel for both the Plaintiffs and defendant have done since September 2025, the amount of money paid by the County for this litigation has increased greatly since September 2025. I am also aware from discovery responses and conferral discussions with the County and its counsel, that funding litigation expense has been borne by the several municipal entities that the County provides Lopez Reservoir water to: the City of Arroyo Grande, the City of Pismo Beach, the City of Grover Beach, Oceano Community Service District, and County Service Area 12 (the Avila Valley area) (collectively, "District Zone 3 Communities").

82.     Attached hereto as **Exhibit 69** is a true and correct copy of relevant portions of the transcript from this Court's status conference on January 28, 2026.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed within the United States on this 4th day of March 2026.

*/s/ Christopher Sproul*
Christopher Sproul
Environmental Advocates
Attorney for Plaintiffs
