UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, AND ECOLOGICAL RIGHTS FOUNDATION,<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>Defendant. | Civil Case No: 2:24-cv-06854-SPG-AS<br><br>[PROPOSED] ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTION ECF NO. |

On March 4, 2026, Plaintiffs San Luis Obispo Coastkeeper, Los Padres ForestWatch, California Coastkeeper Alliance, and Ecological Rights Foundation ("Plaintiffs") filed their Second Motion for Preliminary Injunction ("Motion"), which came on for hearing before this Court on May 20, 2026. The Court, having considered the briefs and arguments of counsel, the evidence filed in support of and opposition to this motion, and being fully advised, finds that Plaintiffs are entitled to mandatory preliminary injunctive relief because: they have demonstrated (1) a likelihood of showing that Defendant County of San Luis Obispo ("the County") is taking the Distinct Population Segment ("DPS") of South-Central California Coast Steelhead (*Oncorhynchus mykiss*) ("SCCC Steelhead" or "Steelhead"), which are protected as threatened under the Endangered Species Act ("ESA"); (2) this taking likely constitutes a violation of the ESA section 9, 16 U.S.C. § 1538, given that the County lacks ESA authorization to take this listed species; (3) this Steelhead taking constitutes irreparable harm given Steelhead's precarious status; (4) in accord with the Ninth Circuit ruling in *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 161 F.4th 590, 600 (9th Cir. 2025) ("*Coastkeeper*"), the balance of equities and public interest factors for injunctive relief weigh in favor of a preliminary injunction given the Court's conclusions on how injunctive relief to benefit Steelhead will likely affect California red-legged frog ("CRLF") and tidewater goby (Steelhead, CRLF, and tidewater goby are hereinafter collectively referred to as "the Listed Species"); and (5) while mandatory preliminary injunctions are "disfavored," they may be and should be issued when "the facts and law clearly favor the moving party," as is the case here. *See Coastkeeper*, 161 F.4th at 597-98.

With respect to the law clearly favoring the Plaintiffs' request for injunctive relief, U.S. Supreme Court and Ninth Circuit precedents have repeatedly recognized that in enacting the ESA, "Congress has spoken in the plainest of

2

words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities." *TVA v. Hill*, 437 U.S. 153, 194 (1978); *see also, e.g., Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090-91 (9th Cir. 2015); *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 593 (9th Cir. 2014); *Nat'l Wildlife Fed'n v. NMFS*, 886 F.3d 803, 817 (9th Cir. 2018); *Sierra Club v. Marsh*, 816 F.2d 1376, 1383 (9th Cir. 1987). Accordingly, upon a showing of ESA violation and irreparable harm, courts will generally impose the injunctive relief necessary to effectuate the ESA's purposes. *Sierra Club*, 816 F.2d at 1384; *see also TVA*, 437 U.S. at 194-95.

With respect to the factual evidence necessary to establishing that the County is taking Steelhead in violation of ESA section 9 (a showing that the Plaintiffs must also make to show a likelihood of success on the merits on their ESA section 9 claim), in issuing its original preliminary injunction decision on November 27, 2025, the Court found that the evidence "overwhelmingly displays the harmful effects from Defendant's activity, such that the AG Creek Steelhead population may be in peril." Preliminary Injunction Order, Dkt. 54 at 10, reported at *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 758 F. Supp. 3d 1153 (C.D. Cal. 2024) ("2024 Preliminary Injunction Order"). The Court found in its 2024 Preliminary Injunction Order that detailed and credible evaluation by the National Marine Fisheries Service ("NMFS") and the declaration testimony and accompanying exhibits from the Plaintiffs' expert, and even the declaration testimony from the County's own expert, all corroborated that the County's Lopez Dam has harmed and is harming Steelhead by blocking Steelhead migration to Steelhead's historic spawning habitat located above Lopez Dam in Arroyo Grande Creek. Dkt. 54 at 10-15. This evidence further all corroborated that the County's Lopez Dam water diversion operations have harmed and are harming Steelhead by degrading the quantity and quality of the remaining Arroyo Grande Creek

Steelhead habitat located below Lopez Dam, which has led to a decreased abundance of Steelhead in the Creek. *Id*. By constructing and maintaining Lopez Dam and by continuing to operate Lopez Dam's water diversions, and other County infrastructure in Arroyo Grande Creek, the County has proximally caused habitat modification that significantly interferes with Steelhead's essential behavioral patterns, including migrating, spawning, rearing, feeding, and taking refuge/sheltering. *See Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1156-58 (9th Cir. 2024); *Puyallup Tribe of Indians v. Electron Hydro LLC*, No. 24-954, 2024 WL 3842099 (9th Cir. Aug. 16, 2024); *see also San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation Dist.*, 49 F.4th 1242, 1246 (9th Cir. 2022) ("Twitchell Dam harms Southern California Steelhead by impairing their ability to migrate and reproduce."). The Plaintiffs have made this showing based on scientific testimony/expert opinions and NMFS's analysis, which established that it is reasonable to conclude that the County's actions are likely impairing essential Steelhead behavioral patterns. *Cascadia*, 105 F.4th at 1157-59. The Plaintiffs need not prove that the County has *directly* caused the death of one or more Steelhead and need not have direct observational evidence of harm to Steelhead to establish "take." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1185, 1192, 1194-1195 (9th Cir. 2024) (rejecting contentions that "the lack of any *verified* reports" of observed harm to species defeated take claim and further noting that ESA section 9 prohibits the unauthorized taking of any member of a listed species); *see also Alliance for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 605 (9th Cir. 2014) (a showing of "a past or current injury, or the prospect of an imminent threat of harm" to ESA-listed species constitutes "take"). The well-grounded opinion analysis of the County's own experts, the Plaintiffs' expert, and NMFS is sufficient to conclude that the factual evidence "clearly favors" finding in the Plaintiffs' favor that the

4

County's actions are likely actually harming Steelhead by impairing essential Steelhead behavioral patterns. In any case, however, there is also evidence to support the Plaintiffs that the County's restraint of Arroyo Grande Creek flows due to Lopez Dam operations has in fact actually killed Steelhead in the past. Indeed, while unnecessary to show a likelihood of success on the merits of their "take" claim,[1] Plaintiffs have further shown that the County's past, current, and likely future harm to Steelhead will have adverse impacts on Steelhead throughout its range, *i.e*, "species level" adverse impacts. Given the importance of the Arroyo Grande Creek Steelhead population as a NMFS-identified "Core 1" population, the harm to Steelhead that the Plaintiffs have demonstrated qualifies as a species wide impact. *See*, *e.g.*, *Nat'l Wildlife Fed'n v. NMFS*, 839 F. Supp. 2d 1117, 1131 (D. Or. 2011) (substantial harm to threatened fish species caused by operation of dams constituted irreparable harm warranting an injunction).

The Plaintiffs have further shown the requisite irreparable harm to Steelhead by virtue of having demonstrated substantial interference with essential Steelhead behavior as a result of the County's actions. This showing of irreparable harm is particularly strengthened by the undisputed evidence that the Arroyo Grande Creek Steelhead population is a NMFS-identified "Core 1" population particularly important for Steelhead survival and recovery throughout its range. By undertaking actions in the Arroyo Grande Creek watershed that are jeopardizing the survival and recovery of this Core 1 population, the County is substantially increasing the risk of Steelhead extinction throughout its range.

The County has opposed the Plaintiffs' requested injunctive relief on the basis that it alleges the relief will cause the County hardship to its water supply

---

[1] The Plaintiffs need not show species wide impact to Steelhead to show irreparable harm. *E.g.*, 105 F. *Cascadia*, 4th at 1158; *Alliance for Wild Rockies v. Gassmann*, 604 F.Supp.3d 1022, 1034 (D. Mont. 2022).

deliveries to the communities of the City of Arroyo Grande, City of Pismo Beach, Cities of Grover Beach, County Service Area 12 (the Avila Valley area), and Oceano Community Services District (collectively, "the Zone 3 Entities"). The County argues that the injunctive relief is contrary to the public interest for this reason. This objection is not well-taken, however, as the Ninth Circuit's *Coastkeeper* ruling reaffirms precedent that in adjudicating an ESA injunction, any consideration of the balance of hardships and public interest factors must necessarily be deemed to weigh in favor of ESA-listed species. Accordingly, the only hardship/equities and public interest considerations for the Court to evaluate are the impacts of the requested injunctive relief on the Listed Species--not on the County's water supply deliveries.

Accordingly, pursuant to Federal Rule of Civil Procedure 65 and the inherent equitable powers of the Court, Plaintiffs are entitled to preliminary injunctive relief to protect Steelhead from the irreparable harm associated with the County's ESA violations pending resolution of their ESA claims case on the merits.

In support of this Order, the Court also enters the following findings:

(a) The Lopez Dam flow release provisions set forth below are warranted to hold the harms to Steelhead caused by the County's implementation of its "Interim Downstream Release Schedule" ("IDRS"). Analysis done by NMFS, CDFW, Plaintiffs' expert, and even the County's consultants well supports that the IDRS is creating conditions in Arroyo Grande Creek that interfere with essential Steelhead lifecycle behaviors, including migration, spawning, rearing, and feeding  This analysis supports that modifying Lopez Dam releases to add more water to lower Arroyo Grande Creek is essential for Steelhead survival and recovery.

6

(b) The Listed Species monitoring provisions set forth below are warranted as a measure consistent with NMFS and other guidance that monitoring the effects of activity on Steelhead and other species to facilitate adaptive management and changes in approach that newly developed information warrants is necessary for good stewardship of protected species.

(c) The provisions set forth below for removal of debris from certain County structures in the watershed to remove Steelhead passage blockages are warranted as a measure consistent with recommendations from both the County's testifying and consulting experts and NMFS, as well as Plaintiffs' expert.

(d) The provisions set forth below for installation of a fish screen to prevent non-native predator fish that prey upon Steelhead, CRLF, and tidewater goby from being transported from Lopez Lake into Arroyo Grande Creek are warranted based on assessment from NMFS, Plaintiffs' expert, and even the County's expert consultants that non-native predator species often are introduced and spread in association with dams and reservoirs and that this is a phenomenon that has been observed in connection with Lopez Dam and Reservoir, and that these non-native predator species are likely preying upon rearing juvenile Steelhead and Steelhead eggs, as well as CRLF and tidewater goby. Installation of a fish screen is also warranted based on the County's own HCP consultants work that has acknowledged that warm-water predatory fish in Arroyo Grande Creek likely prey on juvenile Steelhead and CRLF. This measure is feasible as demonstrated by the fact that the County previously installed a fish screen on the Lopez Dam outlet structure. Installation of a fish screen on the spillway structure is also consistent with NMFS guidance. Additionally, the presently damaged for screen on the Lopez Dam outlet

7

structure should also be repaired so that it becomes once more a functional fish screen to keep non-native predator species from being transported from Lopez Reservoir into lower Arroyo Grande Creek.

(e) The provisions set forth below for removal or modification of Steelhead passage barriers in the Arroyo Grande Creek watershed are warranted as a measure consistent with recommendations from the Plaintiffs' expert and both the County's HCP consultants and NMFS.

(f) The provisions set forth below for best management practices to minimize sediment loading to Arroyo Grande Creek are warranted as a measure consistent with recommendations from the Plaintiffs' expert, NMFS, and even the County's own consultants..

(g) The provisions set forth below for submittal of a revised, adequate HCP and complete application for an ESA section 10 incidental take permit are warranted as a measure needed to bring the County into compliance with the ESA's prohibition on unauthorized take of Steelhead.

(h) The provisions set forth below for habitat restoration in the Arroyo Grande watershed are warranted as a measure recommended by the Plaintiffs' expert, the County's own HCP consultants and NMFS.

(i) The provisions in set forth below for study and removal of non-native predators are warranted as a measure recommended by the Plaintiffs' expert, NMFS, and even the County's own HCP consultants.

Therefore, the Court hereby GRANTS the Motion and ORDERS as follows:

1. **Expert Panel and Special Master.** The Court hereby appoints a special master pursuant to Federal Rules of Civil Procedure 53 and an expert panel pursuant to Federal Rule of Evidence 706 to provide oversight of the County's implementation of this Preliminary Injunction Order, to provide guidance to the Court concerning any need to modify the terms of

8

the Preliminary Injunction Order to reflect new information learned during the process of implementation of the order, and to assume direction and control over the County's development of a habitat conservation plan and accompanying ESA section 10 incidental take permit application and submittal of this HCP and incidental take permit ("ITP") application to NMFS and the U.S. Fish and Wildlife Service ("FWS") as follows:

a. Dr. Brenton Spies is appointed as the Special Master in this action to assist the Court with respect to scientific and technical issues regarding the Listed Species. Dr. Spies shall be ultimately responsible for making recommendations and findings of fact to the Court as necessary to fulfillment of the tasks listed in this Order. Dr. Spies shall utilize scientific advice from the expert panel and his own research and expertise to make recommendations to the Court.

b. Anthony Spina, Jeff Alvarez, and Dr. Brian Cluer are appointed as members on the Expert Panel and shall collaborate with each other and provide expert recommendations to the Special Master. These recommendations shall be served by email on the parties at the time they are provided to Dr. Spies.

c. Dr. Spies shall provide the Court with expert report(s) at appropriate intervals as decided by the Special Master or as otherwise requested by the Court providing the collective guidance of the Special Master and Expert Panel concerning whether the County is appropriately complying with this Preliminary Injunction Order and/or whether the Preliminary Injunction Order's terms should be modified to reflect any new information learned during implementation of the Order. The Special Master shall give due consideration to any requests from the parties concerning the timing of such reports. The reports shall be served on the parties by email at the time they are submitted to the Court.

d. The Special Master may convene meetings with the Expert Panel as appropriate and necessary for development of expert reports to the Court.

e. Within a reasonable time after issuance of this Order, the Special Master shall, in consultation with the Expert Panel, submit a report to the County (and provide copies of the report to the Court and to the

9

Plaintiffs) with specific instructions to the County on how to revise its present draft HCP to comport with the criteria for HCP and ITS approval set forth in 16 U.S.C. §1539(a)(2)(B), *i.e.*, that (i) the Listed Species taking will be incidental, (ii) the County will, to the maximum extent practicable, minimize and mitigate the impacts of such taking, (iii) the County will ensure adequate funding to implement the HCP, (iv) the taking will not appreciably reduce the likelihood of the survival and recovery of the Listed Species in the wild and (v) any such measures that NMFS or FWS may require as being necessary appropriate for purposes of the HCP will be implemented. The Special Master's report shall include a schedule for the County, with interim milestones, for implementing the instructions in the report and providing documentation to the Special Master concerning the County's implementation of these instructions. The Special Master, in consultation with the Expert Panel, shall continue to monitor the County's compliance with the instructions.

f.  If the Special Master, in consultation with the Expert Panel, concludes that the County is not implementing the instructions for proper development of an HCP referred to in the preceding paragraph, the Special Master shall so inform the County in writing and further inform the County of a cure period during which the County may correct its noncompliance. If at the end of the cure period, the County remains in noncompliance with the Special Master's HCP instructions, the Special Master shall have the authority to assume development and drafting of the HCP and to hire such consultants as the Special Master needs to complete and finalize the HCP within a reasonable timeframe. The County shall compensate such consultants at their normally charged rates upon presentation of invoices from these consultants on similar terms as set forth in subparagraph n.

g.  The Special Master, in consultation with the Expert Panel, shall also review and provide comments on the Revised Final Listed Species Monitoring Plan, Revised Final Fish Screen Plan, Revised Final Steelhead Passage Barriers Removal Plan, Revised Final BMP Plan, Revised Final Habitat Restoration Plan, or Revised Final Predator Removal Plan as further described below.

h.  Upon expert report submissions to the Court by the Special Master, the parties shall have 21 days to make any comments on the reports,

10

which may include declarations from the parties' experts with their views on the reports. The parties shall file any such comments or declarations with the Court to make them a matter of public record. In addition, the parties may at any time provide comments or documents containing technical information, including statements or declarations from their experts, to the Special Master and Expert Panel provided that they provide copies of such comments to their opposing party/parties.

i.  The Special Master may require any of the parties to provide documents in their possession, custody, or control within 30 days of any request for such documents. Such requests shall be made in writing and served by email.

j.  The Special Master may require any party or any party's witness to submit to an interview of the Special Master and/or the Expert Panel within 30 days of a request for an interview. Such requests shall be made in writing and served by email. The Special Master may, but is not required to record such interviews and direct the preparation of a transcript of such interviews at the County's expense. The Special Master shall allow the parties to attend any such interviews.

k.  The Special Master may convene and require the parties to attend a hearing on any matter pertinent to the Special Master's appointment within 30 days of his request for a hearing. Such requests shall be made in writing and served on the parties by email.

l.  The Special Master shall not be called as a witness or served with discovery. The Expert Panel members may be deposed pursuant to FRE 706.

m. The Special Master and Expert Panel are prohibited from communicating *ex parte* with the Court.

n.  The County shall compensate the Special Master and Expert Panel at their customary hourly rates, which are as follows: Dr. Spies: $300 per hour, Mr. Spina: $250 per hour, Mr. Alvarez: $150 per hour, Dr. Cluer: $300 per hour. The Special Master and expert panel members shall submit invoices accompanied with records of their time to the County either monthly or upon completion of a phase of work (at their

11

election). The County shall tender payment to the Special Master and to each of the Expert Panel members within 30 days of receiving invoices from them.

2. **Base Flow Release.** Unless and until the Special Master recommends and the Court approves an alternative water release schedule for Lopez Dam operations, the County shall throughout the duration of this Preliminary Injunction implement the following Lopez Base Flow Release: continuously release at least eight (8) cubic feet per second ("cfs") of flow from Lopez Dam into Arroyo Grande Creek on a daily basis.

3. **Pulse Flow Release.** In addition to the 8 cfs continuous daily Base Flow Release referred to in the preceding paragraph, unless and until the Special Master recommends and the Court approves an alternative Lopez Pulse Flow Release regime for Lopez Dam operations, the County shall throughout the duration of this Preliminary Injunction implement the following Pulse Flow Release:

**Lopez Pulse Flow Release Summary**

| Water-release goal | Timing | Pulse-initiation trigger | Magnitude of water release from Lopez Dam | Pulse-cessation trigger |
|---|---|---|---|---|
| Immigration and emigration of adult (including kelts) and juvenile Steelhead, and spawning. | Begins November 1, ends June 30 | ≥100.00 cfs (instantaneous flow @ Lopez C NR Arroyo Grande CA - USGS-11141280) | When instantaneous flow @ Lopez C NR Arroyo Grande CA (USGS-11141280) is ≥ 100.00 cfs, release 35% of the instantaneous flow up to a release of 100 cfs or the amount of flow that can be released with implementation of pumping recommended as feasible by the Special Master;<br>and,<br>When instantaneous flow @ Lopez C NR Arroyo Grande CA (USGS-11141280) is <100.00 cfs, release 70% of the instantaneous flow. | ≤ 8.00 cfs (instantaneous flow @ Lopez C NR Arroyo Grande CA - USGS-11141280) |

a. As noted in the above summary table, the County's obligation to release temporary increased pulse flows from Lopez Dam into Arroyo Grande Creek shall be triggered by an increase in flow to equal to or

12

exceeding 100 cfs as measured by the stream gage known as Lopez C NR Arroyo Grande CA (USGS-11141280). This stream gage is on Lopez Creek, a tributary to Arroyo Grande Creek located upstream of Lopez Reservoir. Use of this stream gage is important and appropriate because it accurately reflects the natural increase in the watershed hydrograph in a fashion not biased/altered by Lopez Dam itself--a pitfall of relying on any stream gage located downstream of Lopez Dam. Gages located downstream of Lopez Dam will tend to not show natural increases in Arroyo Grande Creek flow in some rainfall conditions because Lopez Dam is trapping increased storm related flow from the upper Arroyo Grande Creek watershed.

b.  The time period for the County's potential pulse flow releases shall be from November 1 to June 30 to be inclusive of the adult Steelhead migration window on the California Central Coast.

c.  The pulse flows magnitude shall be tied to 35% of the peak instantaneous flow measured in Lopez Creek, initially to a maximum flow release magnitude from Lopez Dam of 100 cfs--the present maximum rate of flow release achievable from Lopez Dam given existing infrastructure without implementation of measures such as pumping with portable pumps. However, the Special Master, in consultation with the Expert Panel, shall evaluate and make recommendations within a reasonable time concerning the feasibility of increasing this maximum pulse flow rate utilizing portable pumps. The Special Master shall consider safety concerns and flood risk as well as environmental benefits (as well as any detriments) to each of the Listed Species that could be achieved by utilizing portable pumps to increase pulse flow release magnitudes. The Special Master shall include his conclusions on this pumping issue in his reports to the Court.

d.  To ensure that both adult and juvenile Steelhead are given sufficient time of increased flow levels in Lopez Creek to complete migration behavior in Arroyo Grande Creek, the County shall continue to implement any given pulse flow release until flow levels in Lopez Creek fall to equal to or less than 8 cfs.

e.  The County shall implement up to five pulse flow releases in any given water year in which the above discussed criteria are met.

13

4. **Proposed Listed Species Monitoring Plan.** By no later than August 28, 2026, develop and submit to the Special Master, the Plaintiffs, and the Court a proposed plan for a revised comprehensive study of the effect of implementation of the Lopez Base Flow Release and Lopez Pulse Flow Release on all three Listed Species in Arroyo Grande Creek ("Proposed Listed Species Monitoring Plan"). In this Revised Proposed Spillway Fish Screen Plan, the County shall rectify the errors in its previous Spillway Fish Screen Plan submitted in response to the Court's original preliminary injunction and shall specify: (1) the exact means that the County will employ to monitor the abundance/presence of adult and juvenile Steelhead, CRLF, and tidewater goby in Arroyo Grande Creek. This will include specifying the exact locations where the County will conduct monitoring, the methodology(y)/(ies) that the County will employ to conduct monitoring, and a complete time schedule for conducting specified monitoring actions, (2) the exact means that the County will employ to evaluate how the County's Lopez Dam flow releases are impacting Steelhead lifecycle behaviors in Arroyo Grande Creek, including migration (such as timing of entry into the Creek from the ocean and upstream Steelhead passage to spawning habitats in the Creek and its tributaries), spawning (as revealed by the presence or absence of Steelhead redds), rearing (as revealed by the presence and abundance of different Steelhead lifestages), feeding (as indicated, *inter alia*, by the presence/abundance of macroinvertebrates), and taking refuge, (3) the exact means that the County will employ to evaluate how the County's Lopez Dam flow releases are impacting CRLF and tidewater goby lifecycle behaviors in Arroyo Grande Creek. The study shall be sufficient to provide information for any needed amendments to the Lopez Base Flow Release and Lopez Pulse Flow Release to continue to secure protection and avoid or at least minimize take of the Listed Species and provide appropriate balance between the environmental needs of each of the Listed Species. The Proposed Listed Species Monitoring Plan shall incorporate the Steelhead monitoring strategies outlined in NMFS's 2013 Recovery Plan for Steelhead, including establishing accounting and lifecycle monitoring stations at these locations: Creek crossings of Highway 1, Highway 101, and Lopez Drive. The Proposed Plan shall include a schedule for implementation of each of the concrete monitoring actions required by the Plan, with Plan implementation proposed to commence no later than December 7, 2026.

14

5.  The Special Master, in consultation with the Expert Panel, shall review the County's Proposed Listed Species Monitoring Plan and within a reasonable time, make any recommendations to the County, the Plaintiffs and the Court concerning revisions to the Plan needed to ensure adequate monitoring of the effects of the County's Lopez Dam flow releases on the Listed Species.

6.  **Final Listed Species Monitoring Plan.** By no later than October 30, 2026, the County shall adopt a Final Listed Species Monitoring Plan to govern monitoring the effects of flow releases from Lopez Dam on the Listed Species for the duration of the Preliminary Injunction. In adopting the Final Monitoring Plan, the County shall adopt any recommendations made by the Special Master for appropriate content in the Final Monitoring Plan.

7.  By no later than December 7, 2026, the County shall commence implementing the Final Listed Species Monitoring Plan and shall continue to implement the Plan throughout the duration of the Preliminary Injunction.

8.  **Listed Species Monitoring Report.** By no later than October 1 of each year that the Preliminary Injunction is in effect, the County shall develop and submit a comprehensive report to the Special Master, the Plaintiffs, and the Court concerning the results of the County's implementation of the Final Listed Species Monitoring Plan ("Listed Species Monitoring Report"). *Inter alia*, the report shall include the County's findings concerning the effects of its Lopez Dam flow releases on each of the Listed Species, report any data or observations collected during the prior year, and detail proposed revisions to the Base Flow Release or Pulse Flow Release the County believes are necessary to avoid harm to the survival and recovery of the Listed Species and to minimize take of the Listed Species in ensuing water years, with an explanation as to how the proposed revisions are designed to better achieve the specific environmental objectives of supporting all Steelhead life stages while avoiding harm to the Listed Species.

9.  The Special Master, in consultation with the Expert Panel, shall review the County's Listed Species Monitoring Reports and within a reasonable time, make any recommendations to the County, the Plaintiffs and the Court concerning: (1) any revisions warranted to the County's Listed Species

Monitoring Plan to secure sufficient information to reach conclusions concerning the impacts on the Listed Species from the County's activities, including its releases of flow from Lopez Dam; and (2) any revisions to the Base Flow Release or Pulse Flow Release warranted by any new information in the Listed Species Monitoring Reports. The County shall implement any of the Special Master's recommendations concerning modifications to the Listed Species Monitoring Plan. The County shall further implement any of the Special Master's Revisions to the Base Flow Release or Pulse Flow Release that the Court subsequently approves.

10. **Biddle Park Culverts.** Commencing on November 1, 2026, and continuing throughout the duration of this preliminary injunction, the County shall regularly monitor and as necessary clear any debris or blockages from the double arch culvert at Biddle Park access road. Specifically, the County shall inspect the culverts at least once every two weeks and following any rain event equaling or exceeding 0.25 inches in a 24-hour period. The County shall remove any debris or blockages from the culverts at those inspections.

11. **Revised Proposed Spillway Fish Screen Plan.** By no later than August 30, 2026, the County shall develop and submit to the Special Master, the Plaintiffs, and the Court a revised proposed plan for installing a fish screen on the spillway at Lopez Dam to prevent non-native species that prey on and/or compete with Steelhead from escaping Lopez Lake into downstream Steelhead habitat in Arroyo Grande Creek ("Revised Proposed Fish Screen Plan"). In this Revised Proposed Spillway Fish Screen Plan, the County shall rectify the errors in its previous Spillway Fish Screen Plan submitted in response to the Court's original preliminary injunction and specify: (1) either a recommendation for a specific type of fish screen to be installed on the spillway or a complete analysis of the various fish screen technologies that could be employed and the advantages and disadvantages of these different options in the Lopez Dam setting; (2) a list of the specific regulatory approvals that the County has determined it will need to implement either the fish screen option that it has chosen or each of the fish screen options that it is still considering choosing, include a time schedule in the Proposed Plan for applying for any needed regulatory approvals and installing the proposed fish screen. The Proposed Fish Screen Plan shall identify the specific regulatory approvals that the County shall pursue (to the extent that there are any such regulatory approvals needed to implement the Plan); and (3) analysis

16

of which fish screen option would be most consistent with comments that NMFS and CDFW have previously provided to the County concerning installation of fish screens to prevent non-native fish that might otherwise migrate from Lopez Reservoir into lower Arroyo Grande Creek. The County's Proposed Fish Screen Plan shall also specify repair of the existing damaged fish screen on the Lopez outfall structure such that the fish screen is restored to functional condition.

12. The Special Master, in consultation with the Expert Panel, shall review the County's Revised Proposed Fish Screen Plan and, within a reasonable time, make any recommendations to the County, the Plaintiffs and the Court concerning any revisions to the Plan necessary to achieve the objective of installing a spillway fish screen and repairing the County's existing damaged Lopez outfall fish screen within a reasonably prompt timeframe that will be effective at preventing non-native predator/competitor fish species from migrating from Lopez Reservoir into lower Arroyo Grande Creek. The County shall implement any of the Special Master's recommendations concerning revisions to the Revised Proposed Fish Screen Plan in a revised Final Fish Screen Plan unless the County requests the Court to review these recommendations and the Court subsequently orders that the County need not follow these recommendations.

13. **Revised Final Spillway Fish Screen Plan.** By no later than November 25, 2026, the County shall adopt a Revised Final Fish Screen Plan for installing a fish screen on the spillway at Lopez Dam and repairing the existing fish screen on the Lopez outfall to prevent non-native species that prey on and/or compete with Steelhead from escaping Lopez Lake into downstream Steelhead habitat in Arroyo Grande Creek. As noted, in adopting the Revised Final Fish Screen Plan, the County shall implement recommendations on revisions to the Plan provided by the Special Master unless excused from doing so by Court order.

14. The County shall implement the Revised Final Fish Screen Plan as soon as fish screen installation is feasible given Arroyo Grande Creek flow, weather conditions, compliance with applicable contracting requirements (provided that the County shall pursue entering into effective and timely contracts in good faith), and the issuance of any necessary regulatory approvals.

17

15. **Revised Proposed Steelhead Passage Barriers Removal Plan.** By no later than August 30, 2026, develop and submit to the Special Master, the Plaintiffs, and the Court a revised proposed plan for removal or modification of the specified Steelhead passage barriers in lower Arroyo Grande Creek listed in Attachment 1 to this Order ("Revised Proposed Steelhead Passage Barriers Removal Plan"). In this Revised Proposed Steelhead Passage Barriers Removal Plan, the County shall rectify the errors in its previous Steelhead Passage Barriers Removal Plan submitted in response to the Court's original preliminary injunction and specify: (1) plans for removal or modification to all seven of the Steelhead passage barriers identified in Attachment 1 to this Order, (2) the actual concrete steps for removing or modifying these seven Steelhead passage barriers such that they no longer impede Steelhead migration (and not just plans to further study whether to remove or modify these passage barriers and if so how), (3) a schedule to implement the actual concrete steps, including interim milestones, necessary to remove or modify these seven Steelhead passage barriers, (4), a definitive list of the regulatory permits or approvals needed for implementation of the Plan and a schedule for applying for these regulatory approvals. The Proposed Plan shall not merely generically list potential regulatory approvals that the County will further consider pursuing, but instead shall identify the specific regulatory approvals that the County shall pursue (to the extent that there are any such regulatory approvals needed to implement the Plan), and (5) in designing the barrier removal measures referred to above, the Plan shall include provision for ensuring that implementation of barrier removals does not adversely impact any of the Listed Species. This shall include designing the timing of any riparian construction actions to avoid periods of Steelhead migration, CRLF or tidewater goby breeding and locations where Steelhead migration, CRLF or tidewater goby breeding is actively occurring. This shall also include surveys for the presence of CRLF to ensure that barrier removal measures avoid and thus do not injure or kill CRLF found to be present.

16. The Special Master, in consultation with the Expert Panel, shall review the County's Revised Proposed Steelhead Passage Barriers Removal Plan and, within a reasonable time, make any recommendations to the County, the Plaintiffs and the Court concerning any revisions to the Plan necessary to achieve the objective of removing or modifying the identified Steelhead passage barriers in Arroyo Grande Creek in reasonably prompt fashion. The County shall implement any of the Special Master's recommendations

18

concerning revisions to the Revised Proposed Steelhead Passage Barriers Removal Plan in a Revised Proposed Steelhead Passage Barriers Removal Plan unless the County requests the Court to review these recommendations and the Court subsequently orders that the County need not follow these recommendations.

17. **Final Steelhead Passage Barriers Removal Plan.** By no later than November 25, 2026, the County shall adopt a Final Steelhead Passage Barriers Removal Plan for removal of the specified Steelhead passage barriers in lower Arroyo Grande Creek listed in Attachment 1 to this Order. As noted, in adopting the Revised Final Steelhead Passage Barriers Removal Plan, the County shall implement comments and recommendations on revisions to the Plan provided by the Special Master unless excused from doing so by Court order.

18. The County shall implement the Final Steelhead Passage Barriers Removal Plan according to the schedule set forth in the Final Plan.

19. **Revised Proposed BMP Plan.** By no later than August 30, 2026, develop and submit to the Special Master, the Plaintiffs, and the Court a revised proposed plan for implementing appropriate best management practices to reduce sediment loading into Arroyo Grande Creek or its tributaries ("Revised Proposed BMP Plan"). In this Revised Proposed BMP Plan, the County shall rectify the errors in its previous BMP Plan submitted in response to the Court's original preliminary injunction and specify: (1), provisions for specific actions to take both on County owned land adjacent to tributaries to Arroyo Grande Creek below Lopez Dam and actions to pursue on property adjacent to such tributaries owned by third parties. Such actions shall include a well-designed mix of sediment loading reduction BMP measures, such as installing sediment fences, jute netting, planting and maintaining native vegetation, and constructing settling basins (detention ponds). The plan shall specify implementation of such measures on County owned land and actions to work cooperatively with third-party property owners to secure such property owners agreement to implement or allow the County to implement such measures on property owned by third parties. The Proposed Plan shall include a schedule for implementation of the specified BMP measures. The County's Proposed Plan shall not merely provide for evaluation of potential BMPs, but instead shall identify actual concrete BMP actions and the locations of such actions to be implemented; (2), a listing of the

19

specific regulatory approvals necessary or access agreements with third-party landowners necessary to implement the Plan. The Proposed Plan shall not merely generically list potential regulatory approvals that the County will further consider pursuing, but instead shall identify the specific regulatory approvals that the County shall pursue (to the extent that there are any such regulatory approvals needed to implement the Plan); (4) a schedule for completing any needed regulatory approval applications and a further schedule for implementing specific BMP measures, prioritizing any such BMP measures that do not need regulatory approvals or only need U.S. Army Corps of Engineers Clean Water Act nationwide permits to implement; and (5) provisions in the Plan to manage roadways, both presently used and now abandoned, to reduce sediment loading from such roadways into all Arroyo Grande Creek--in accord with recommendations in NMFS's Steelhead Recovery Plan.

20. The Special Master, in consultation with the Expert Panel, shall review the County's Revised Proposed BMP Plan and, within a reasonable time, make any recommendations to the County, the Plaintiffs and the Court concerning any revisions to the Plan necessary to achieve the objective of reducing sediment loading that is harmful to any or all of the Listed Species in Arroyo Grande Creek in reasonably prompt fashion. The County shall implement any of the Special Master's recommendations concerning revisions to the Revised BMP Plan unless the County requests the Court to review these recommendations and the Court subsequently orders that the County need not follow these recommendations.

21. **Revised Final BMP Plan.** By no later than November 25, 2026, the County shall adopt a Revised Final BMP Plan for implementing appropriate best management practices to reduce sediment loading into tributaries to Arroyo Grande Creek. As noted, in adopting the Revised Final BMP Plan, the County shall implement recommendations on revisions to the Plan provided by the Special Master unless excused from doing so by Court order.

22. The County shall implement the Final BMP Plan according to the schedule set forth in the Final Plan.

23. **Revised Proposed Habitat Restoration Plan.** By no later than August 30, 2026, develop and submit to the Special Master, the Plaintiffs, and the Court a revised proposed plan for a habitat restoration project for Arroyo

Grande Creek that will offset some of the adverse impacts of the Project on Steelhead ("Revised Proposed Habitat Restoration Plan"). The Revised Proposed Habitat Restoration Plan shall rectify the errors in its previous Habitat Restoration Plan submitted in response to the Court's original preliminary injunction and shall specify: (1) the exact locations within Arroyo Grande Creek where the County will implement actions that will help restore/improve Steelhead habitat conditions, (2) the addition of gravel to the Arroyo Grande Creekbed, including the exact locations where the County will add gravel, how much gravel the County will add by weight or volume, the time schedule the County will follow for when to add the gravel, and what actions the County will implement such that the gravel is placed or dispersed in the creekbed in a fashion that will create suitable spawning areas or improved spawning areas for Steelhead, (3) placement of large woody debris ("LWD") to create channel heterogeneity beneficial to various Steelhead lifecycle behaviors, including the exact locations where the County will place the LWD and the time schedule for placement of the LWD. The County shall also specify the means to employ to ensure anchoring of the LWD in place, (4), planting of native riparian vegetation and maintenance of the vegetation to ensure vegetation survival to provide shade canopy to keep Arroyo Grande Creek water temperatures low and within suitable range for Steelhead and help reduce sediment loading to Arroyo Grande Creek, including the exact locations, volume and time schedule of native riparian vegetation planting, (5), the exact location and conceptual design for channel grading, *i.e.*, earthmoving work to improve the geomorphology of Arroyo Grande Creek to create or help create creek channel features such as secondary channels, alcoves, bank setbacks, point bars, hydrological connectivity with adjoining floodplain/landform beneficial to Steelhead and the other Listed Species, including the time schedule for such channel grading work, (6), the exact actions and the schedule for such actions the County will implement to reverse or at least help reverse the adverse modification of the estuarine habitat in Arroyo Grande Creek Lagoon caused by the County's actions, including lagoon dredging to remove the artificial buildup of fine sediment caused by the County's unnatural alteration of Arroyo Grande Creek flows that have greatly reduced elevated pulse flows into the lagoon that historically served to flush out fine sediments and preserve lagoon depth and bottom shape/depth heterogeneity, (7) all necessary regulatory permits and authorizations to implement the Plan and a time schedule for applying for these regulatory authorizations, and (8) the list of any habitat restoration efforts that do not

need regulatory approvals from government entities other than the County Board of Supervisors. The County shall prioritize prompt implementation of any such measures. The Plan shall further clearly identify any habitat restoration efforts that would only require regulatory authorization via an already issued U.S. Army Corps of Engineers Clean Water Act nationwide permit and shall also prioritize implementation of any such measures given the relatively straightforward ability to proceed with projects that only need such authorization, and (9) in designing the restoration measures referred to above, the Plan shall include provision for ensuring that implementation of habitat restoration measures do not adversely impact any of the Listed Species. This shall include designing the timing of measures such as gravel placement, native riparian vegetation planting, and channel grading to avoid periods of Steelhead migration, CRLF or tidewater goby breeding and locations where Steelhead migration, CRLF or tidewater goby breeding is actively occurring. This shall also include surveys for the presence of CRLF to ensure that restoration measures avoid and thus do not injure or kill CRLF found to be present.

24. The Special Master, in consultation with the Expert Panel, shall review the County's Revised Habitat Restoration Plan and, within a reasonable time, make any recommendations to the County, the Plaintiffs and the Court concerning any revisions to the Plan necessary to achieve the objective of restoring or improving Steelhead habitat in Arroyo Grande Creek in a manner that does not harm CRLF or tidewater goby (but instead, to the extent attainable, tends to improve conditions for CRLF and tidewater goby as well) in reasonably prompt fashion. The County shall implement any of the Special Master's recommendations concerning revisions to the Revised Proposed Habitat Restoration Plan in a Revised Habitat Restoration Plan unless the County requests the Court to review these recommendations and the Court subsequently orders that the County need not follow these recommendations.

25. **Final Habitat Restoration Plan.** By no later than November 25, 2026, the County shall adopt a Final Habitat Restoration Plan for a habitat restoration project for Arroyo Grande Creek that will offset some of the adverse impacts of the Project on Steelhead.

26. The County shall implement the Final Habitat Restoration Plan according to the schedule set forth in the Final Plan.

27. **Revised Proposed Predator Removal Plan.** By no later than August 30, 2026, develop and submit to the Special Master, the Plaintiffs, and the Court a revised proposed plan for removal of Steelhead competitor and predator non-native species from Arroyo Grande Creek ("Revised Proposed Predator Removal Plan"). In this Revised Proposed Predator Removal Plan, the County shall rectify the errors in its previous Predator Removal Plan submitted in response to the Court's original preliminary injunction and include: (1) a complete list of non-native aquatic species that are predators or competitors on or to Steelhead, CRLF, and/or tidewater goby and present or likely present in Arroyo Grande Creek (including but not limited to non-native trout, mosquitofish, Sacramento sucker, black crappie, largemouth bass, smallmouth bass, common carp, sunfish, bluegill, goldfish, black bullhead, and American bullfrogs), (2) a protocol for environmental DNA ("eDNA") sampling for all of these species in Arroyo Grande Creek and quantitative PCR assays to test for bullfrogs presence in Arroyo Grande Creek and Meadow Creek lagoons. The protocol shall specify the exact locations and time schedule for conducting eDNA sampling and PCR assays, (3) the specific predator/competitor removal actions that the County will implement to capture or kill and thus remove non-native predator/competitor species that prey upon or compete with Steelhead, CRLF, and/or tidewater goby, including some combination of culling, seining, dip-netting, angling, gillnetting, and passive trapping, where exactly the County will implement these removal actions, and a time schedule for implementing these actions, (4) a public education effort that will include the placement of signs in public access areas that communicate the risk of releasing non-native fish or amphibians into Arroyo Grande Creek. The County's Plan shall identify exactly where the County will place such signs and what the signs will say, (5), a list of all the regulatory approvals or permits that the County will need to implement the Plan and a time schedule for applying for these regulatory approvals, and (6) in designing the restoration measures referred to above, the Plan shall include provision for ensuring that implementation of predator removal measures do not adversely impact any of the Listed Species. This shall include designing the non-native species removal in such a fashion that collateral injury or mortality to Steelhead, CRLF or tidewater goby does not occur. This shall also include surveys for the presence of CRLF to ensure that predator removal measures avoid and thus do not injure or kill CRLF found to be present.

28. The Special Master, in consultation with the Expert Panel, shall review the County's Revised Proposed Predator Removal Plan and, within a reasonable time, make any recommendations to the County, the Plaintiffs and the Court concerning any revisions to the Plan necessary to achieve the objective of removing non-native predator/competitor species in Arroyo Grande Creek that are harmful to the Listed Species in reasonably prompt fashion. The County shall implement any of the Special Master's recommendations concerning revisions to the Revised Predator Removal Plan in a Revised Predator Removal Plan unless the County requests the Court to review these recommendations and the Court subsequently orders that the County need not follow these recommendations.

29. **Final Predator Removal Plan.** By no later than November 25, 2026, the County shall adopt a Final Predator Removal Plan to remove Steelhead, CRLF, and/or tidewater goby competitor and predator non-native species from Arroyo Grande Creek. The County shall implement the Predator Removal Plan according to the schedule set forth in the Final Predator Removal Plan.

30. The County **shall not** propose to delay or delay development, adoption, or implementation of the Revised Final Listed Species Monitoring Plan, Revised Final Fish Screen Plan, Revised Final Steelhead Passage Barriers Removal Plan, Revised Final BMP Plan, Revised Final Habitat Restoration Plan, or Revised Final Predator Removal Plan until the County completes and secures approval from NMFS and FWS for its Project HCP and accompanying ITP Application. The County shall pursue carved out approval of the measures called for by these various plans as standalone measures and shall not forgo seeking individual approvals for the measures set forth in these various plans in favor of seeking regulatory approvals for these measures only in conjunction with HCP and ITP approval for the Lopez Project as a whole.

31. **Revised HCP.** The County shall thoroughly and expeditiously pursue completion of a revised HCP that rectifies the errors in the County's October 1, 2025 draft HCP and completion of an accompanying ESA § 10 ITP application for operation of the Lopez Project. The County shall respond promptly and thoroughly to requests for information from NMFS and USFWS that the agencies indicate they need to review and consider the County's HCP and ITP application.

24

32. By no later than June 1, 2027, submit a complete application (ready for the institution of environmental review under the National Environmental Policy Act and California Environmental Quality Act) for an ESA § 10 ITP to NMFS and the USFWS for operation and maintenance of the Lopez Project. This application shall include proposals for minimizing take of Steelhead consistent with ESA directives to include reasonable and prudent measures for reducing take of listed species in any authorization for species take, appropriate monitoring of compliance with ESA § 10 permit terms and conditions, and adaptive management to alter HCP implementation as needed to avoid jeopardy to survival and recovery of Steelhead or take of Steelhead in excess of ESA § 10 incidental take authorization.

33. As noted, the Special Master in conjunction with the Expert Panel shall provide instructions to the County concerning how to prepare an improved HCP. The County shall adhere to these instructions in preparing its revised HCP and accompanying ITP Application referred to in the preceding paragraph.

34. The County shall file quarterly reports with the Court explaining its actions to comply with this Preliminary Injunction throughout the duration of this Preliminary Injunction on or before January 31, April 30, July 31, and October 31 during each year that this Preliminary Injunction remains in place. In addition, the County shall publish on its Internet website data establishing how much water the County has released from Lopez Dam and how much water remains stored in Lopez Reservoir no less frequently than monthly while this Preliminary Injunction remains in place.

This Preliminary Injunction shall remain in effect until entry of a final judgment on the merits, unless otherwise subsequently ordered.

IT IS SO ORDERED.

Dated: _____

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

25

**ATTACHMENT 1**

| Barrier | Location |
|---|---|
| **Arroyo Grande Creek** | |
| 1. Biddle Park double arch culvert | Biddle Park access road crossing over Arroyo Grande Creek. |
| 2. Abandoned dam and diversion footings | At or about stream mile 11.22 from confluence with ocean. |
| 3. "S" Rip-rap Dam | At or about stream mile 9.31 from confluence with ocean. Downstream from Talley Farms Rd crossing and upstream of former Cecchetti Rd crossing (washed out) over Arroyo Grande Creek. |
| 4. Concrete Dam | At or about stream mile 5.82 from confluence with ocean. Downstream from confluence of Tar Spring Creek with Arroyo Grande Creek, and upstream of Strother Park. |
| 5. Rip-rap Dam | About 2,000 feet upstream of Arroyo Grande stream gage station at mile 5.35 from confluence with ocean. Downstream from Strother Park. |
| 6. Two concrete dams | Adjacent to Woodland Drive, upstream from Arroyo Grande Creek confluence with Los Berros Creek. Located at or about mile 2.88 from confluence with ocean and about 0.5 miles downstream from Fair Oaks Crossing. |
| **Los Berros Creek** | |
| 7. Grade Control Structure | Upstream of confluence with Arroyo Grande Creek and downstream of Valley Road crossing. |
| 8. Los Berros double culvert | Crossing over Los Berros Creek at 1950 Los Berros Road at the intersection of Los Berros Creek Road. |

26