UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION,<br><br>          Plaintiffs,<br><br>   vs.<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>          Defendant. | Case No:  2:24-cv-06854 SPG (ASx)<br><br>**[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION [DKT. NO. 179]** |

On May 20, 2026, Plaintiffs' Motion for Preliminary Injunction (ECF. No. 179) came before this Court. Plaintiffs' Motion asserts Defendant County of San Luis Obispo's operation and maintenance of Lopez Dam and in-stream structures in San Luis Obispo County causes "take" of federally threatened South Central California Coast Steelhead (*Oncorhynchus mykiss*) ("Steelhead") in violation of section 9 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1538(a)(1). Plaintiffs request a number of mandatory injunctive measures that would overhaul Lopez Dam operations, modify various physical structures in Arroyo Grande Creek and Los Berros Creek, alter the morphology of Arroyo Grande Creek, and endeavor to control non-native species that might compete with or prey on Steelhead.

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

The Court, having considered Plaintiffs' Motion and Reply (ECF. Nos. 179, __), Defendant's Opposition (ECF. No. __), Defendant's Motion to Strike and the briefing related thereto (ECF. Nos. __), the relevant supporting papers or portions thereof that were not stricken, and oral argument of counsel, hereby DENIES the Motion.

Defendant has filed a Motion to Strike or Exclude Portions of Tevin Schmitt's Declaration (ECF. No. ___). The Motion to Strike is premised on a failure to comply with Rule 702 of the Federal Rules of Evidence and related caselaw. The Court finds these arguments meritorious, and will therefore grant the Motion to Strike and disregard the portions of the Tevin Schmitt Declaration identified in the Motion to Strike. However, the Court also notes that after reviewing the totality of the Tevin Schmitt Declaration, those portions would not if considered modify the Court's ultimate ruling denying Plaintiffs' Motion for Preliminary Injunction.

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (internal citations omitted) (emphasis in original); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (preliminary injunction is an "extraordinary remedy never awarded as of right"). To issue a preliminary injunction, the Court must find: (1) Plaintiffs are likely to succeed on the merits of their claims; (2) irreparable harm will result absent an injunction; (3) the balance of equities tips in the plaintiff's favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction.") (internal citations omitted) (emphasis in original).

The Ninth Circuit has also confirmed that mandatory injunctions are disfavored, and that they are "'subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party.'" *San Luis Obispo*

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

*Coastkeeper v. County of San Luis Obispo*, 161 F.4th 590, 597 (9th Cir. 2025) (quoting *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993)).

In some circumstances, when a preliminary injunction is based on claims of "take" under Section 9 of the ESA, the plaintiff bears the burden of showing only likelihood of success on the merits and irreparable harm. *Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1511 (9th Cir. 1994). However, as recently held by the Ninth Circuit, this is not the case when the relief a plaintiff requests may itself result in harm to another ESA-listed species. *San Luis Obispo Coastkeeper v. County of San Luis Obispo*, 161 F.4th at 600. In that situation, and therefore in this case, a "court must balance the equities and consider the public interest as to the other listed species." *Id.* Judge VanDyke also cautioned in a concurring opinion that "district courts must be confident that the relief granted will not adversely affect other species before pulling the trigger on a mandatory preliminary injunction." *Id.* at 603.

The Supreme Court has not decided whether harm under the ESA is to be determined on a species level or an individual animal level, nor has the Ninth Circuit in a published decision addressing a request for a mandatory preliminary injunction.[1] The First Circuit has concluded, in a published decision, that courts are to examine irreparable harm on a species level. *Animal Welfare Inst. v. Martin*, 623 F.3d 19, 27–28 (1st Cir. 2010); *Water Keeper All. v. U.S. Dept. of Def.*, 271 F.3d 21, 34 (1st Cir. 2001) (affirming denial of preliminary injunction because plaintiffs failed to show how deaths would impact species). District courts within the Ninth Circuit are

---

[1] In *Cascadia Wildlands v. Scott Timber Co.*, 715 Fed. Appx. 621, 624 (9th Cir. 2017), the Ninth Circuit stated, without any analysis, that "the district court correctly required harm to Cascadia's interest in individual members of the marbled murrelet species as opposed to harm to the entire species itself." But this decision is unpublished, and under Ninth Circuit Rule 36-3(a), "[u]npublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

somewhat split on this issue. *Compare Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1248 (N.D. Cal. 2015) ("no court has held that as a matter of law, the taking of a single animal or egg, no matter the circumstance, constitutes irreparable harm") (citations omitted); *with White v. U.S. Army Corps of Engineers*, No. 3:22-cv-06143-JSC, 2023 WL 7003263, at *9 (N.D. Cal., Oct. 23, 2023) (while irreparable harm, in the context of the ESA, generally requires proof of harm to only a single member of a listed species, because plaintiff was seeking a mandatory injunction, plaintiff had to establish extreme or very serious damage to the listed species population), *with Pac. Coast Fed. of Fishermen's Ass'ns v. Gutierrez*, 606 F. Supp. 2d 1195, 1210 (E.D. Cal. 2008) (requiring plaintiffs to show irreparable harm that is significant to the overall population of the species).

Plaintiffs in this case seek a mandatory injunction, which should not be granted "unless extreme or very serious damage will result." *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011). In light of that fact, and consistent with the decisions in *White* and *Gutierrez*, this Court finds that take of a single Steelhead would be insufficient to demonstrate irreparable harm. Instead, Plaintiffs were required to establish extreme or very serious damage to the Steelhead population. Plaintiffs failed to carry this burden. The Court notes, however, that even if it were to apply the single-animal standard, the Plaintiffs' Motion would still fail.

Finally, even if all four factors do weigh in favor of issuing an injunction, "[a]n injunction must be narrowly tailored to remedy the specific harm shown." *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019); see also *Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007) ("an overbroad preliminary injunction is an abuse of discretion"). Plaintiffs have failed to provide the necessary evidence for this Court to determine that any of the relief requested is

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

narrowly tailored, as they have quantified nothing, modeled nothing, and rely solely on conjecture.

## 1. PLAINTIFFS' MOTION IS DENIED BECAUSE THEY FAILED TO DEMONSTRATE IN THEIR MOVING PAPERS THAT THEY HAVE STANDING TO MAINTAIN THIS ACTION.

"Because standing is 'an indispensable part of the plaintiff's case,' it 'must be supported in the same was as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). It has been 20 months since the lawsuit was filed, and fact discovery has essentially closed. Plaintiffs' failure to provide any current standing declarations requires denial of the instant preliminary injunction motion. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) ("At the preliminary injunction stage . . . the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing." (quoting *Winter*, 555 U.S. at 22) (emphasis deleted)); *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020) ("At this preliminary injunction stage, [plaintiff] 'must make a clear showing of each element of standing'" (quoting *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013)); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 104 (D.C. Cir. 2019) (explaining that it is appropriate to affirm the denial of a preliminary injunction if a plaintiff fails to "establish[] a substantial likelihood of standing" at the preliminary injunction stage); *Waskul v. Washtenaw Cnty. Community Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018) (it is plaintiff's affirmative burden to show a substantial likelihood of standing on a preliminary injunction motion).

## 2. PLAINTIFFS HAVE NOT PROVIDED CLEAR AND CONVINCING EVIDENCE OF A SECTION 9 VIOLATION.

As noted above, to prevail on their Motion Plaintiffs must satisfy all four of the *Winter* elements. If they fail to carry their burden as to a single element, the

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
70178850

Motion necessarily fails. As to the first element, Plaintiffs fail to establish a likelihood of success going to the merits on their claim of "take" under Section 9 of the ESA. Accordingly, Plaintiffs' Motion fails on this basis alone.

To show a likelihood of success on the merits of their ESA claim, Plaintiffs bear the burden of establishing that "take" of Steelhead by the County is "imminent and reasonably certain." *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 925 (9th Cir. 2000); 50 C.F.R. § 223.203(a). Plaintiffs have not done so.

The term "take" encompasses acts that "harass, harm, pursue . . . wound, kill, trap, capture, or collect" any ESA-protected species. 16 U.S.C. § 1532(19). The term "harm" is further defined as "an act which ***actually kills or injures*** wildlife." 50 C.F.R. § 17.3 (emphasis added). To prove "harm" to a listed species, the Supreme Court has established there must be: (1) actual death or injury; (2) to identifiable members of a listed species; (3) that is proximately caused by the challenged activity and is foreseeable. *See Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 691 n.2, 696–97 n.9, 700 n.13, 708–09 (1995). Plaintiffs have not shown by clear and convincing evidence that "take" of Steelhead is imminent and reasonably certain.

For example, Plaintiffs assert that "[a]s a complete barrier to Steelhead migration, Lopez Dam has had the greatest negative impact on the AG Creek Steelhead population of all factors." ECF No. 179 at 7. But in 2001 NMFS completed a consultation under section 7 of the ESA related to Lopez Dama that resulted in the issuance of a biological opinion and incidental take statement that covered extending the existing effects of Lopez Dam into the future. In particular, the biological opinion concluded that "existing instream survival and reproduction rates of the local [steelhead] population will remain within ranges occurring during baseline conditions, and the number of steelhead individuals affected by the dam is relatively small . . . compared to the total number of steelhead believed to be present throughout the South-Central California Coast ESU." ECF No. __ at 6. As a section

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
70178850

7 consultation was completed for Lopez Dam, Plaintiffs' ESA claim, to the extent it is based on Lopez Dam, necessarily fails. *See Defs. of Wildlife v. Zinke*, 856 F.3d 1248, 1253 (9th Cir. 2017); *White v. U.S. Army Corps of Eng'rs*, 659 F. Supp. 3d 1045, 11049 (N.D. Cal. 2023) ("Any taking in compliance with an incidental take statement's terms and conditions is then exempt from the general take prohibition of ESA Section 9.").

The historical abundance data reaffirms the conclusion by NMFS in the 2001 biological opinion. Decades before Lopez Dam was constructed in 1967, the Steelhead in Arroyo Grande Creek experienced a significant decline. In fact, some estimates suggest that by 1959, there were less than 100 Steelhead in Arroyo Grande Creek, and some estimates even suggest that by 1960 there were no Steelhead at all in the Creek. Plaintiffs' proffered Steelhead expert, Mr. Schmitt, admits that "the abundance of the Steelhead population in [Arroyo Grande Creek] varies substantially among years often based on precipitation." ECF No. 182 at ¶ 16. Mr. Schmitt also assumes that the "current abundance of adult Steelhead in [Arroyo Grande Creek] is in the dozens to low hundreds." *Id.* at ¶ 15. Thus, after the construction of Lopez Dam Steelhead continue to live and complete their life-cycle at a rate that is at least consistent with historical abundance estimates in Arroyo Grande Creek for almost a full decade before construction of Lopez Dam. This is a strong indication that it is not Lopez Dam, but some other external factor that lead to the decline of the Steelhead population in general and in Arroyo Grande Creek and is inhibiting their recovery.

Plaintiffs have offered no modeling or even attempted to quantify the perceived negative impact to Steelhead from Lopez Dam, perceived passage impediments, hypothetical predation events, or any other alleged "take" claimed in their papers, either collectively or individually. Plaintiffs have also completely failed to provide any evidence of "actual death or injury" to "identifiable" Steelhead. *Sweet Home*, 515 U.S. at 687, 691 n.2, 696–97 n.9, 700 n.13, 708–09.

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

Nevertheless, Plaintiffs assert that Lopez Dam increases predation of Steelhead by non-native predators. But this is simply unsupported speculation. For example, Mr. Schmitt does not provide an estimate of the number of non-native predators in Arroyo Grande Creek, evidence of the distribution of these non-native predators in Arroyo Grande Creek, an evaluation based on any modeling of the potential for interaction between Steelhead and these non-native predators, or any actual evidence that in the more than 50-plus year history of Lopez Dam, that a single non-native predator has in fact successfully preyed on Steelhead in Arroyo Grande Creek. Plaintiffs also have not presented any actual evidence, and certainly not clear and convincing evidence, that a non-native predator escaped through the Lopez Dam spillway and preyed on a Steelhead in Arroyo Grande Creek. Plaintiffs have also not shown by clear and convincing evidence that any such predator escapement via the Lopez Dam spillway is imminent and reasonably certain if the County continues to operate under the Interim Downstream Release Schedule.

Plaintiffs also assert that Lopez Dam causes buildup of sediment within the Creek. But there is not clear and convincing evidence to support this theory. Rather, based on the evidence presented, sediment buildup in Arroyo Grande Creek is a consequence of third parties – not the County. For example, sediment build-up occurs because of runoff from agricultural, industrial, and residential developments and the tributaries that feed into the Creek. While there does appear to be a potential issue with sediment build-up in some areas, Plaintiffs have not shown by clear and convincing evidence that the issue stems from the County's operation under the Interim Downstream Release Schedule as opposed to actions or inactions of third parties or the existence of Lopez Dam in general (which has already been authorized by NMFS pursuant to a section 7 consultation). Further, Plaintiffs have not shown by clear and convincing evidence that the sediment build-up will result in imminent and reasonably certain "take" of Steelhead.

Plaintiffs also assert that eight barriers located downstream from Lopez Dam

- 8 -    Case No. 2:24-cv-06854 SPG (ASx)

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

cause "take," because they create barriers to Steelhead migration. But of the eight alleged fish passage impediments identified by Plaintiffs, only two are owned or maintained by the County or a County associated entity. Specifically, the County, or a County associated entity, owns the culverts at Biddle Regional Park and the grade control structure downstream in Los Berros Creek. Because the County does not own or control the other six alleged downstream impediments, it cannot be liable for any resulting "take" of Steelhead associated with those impediments. *Sweet Home,* 515 U.S. at 696, n.9. As to the two County-owned structures, Plaintiffs have not presented clear and convincing evidence that either results in unlawful "take" of Steelhead. With respect to the culverts at Biddle Regional Park, in 1998 NMFS completed a consultation pursuant to section 7 of the Endangered Species Act, and issued a biological opinion and incidental take statement that authorized the construction and continued existence of the structure. Further, following a formal assessment of the Biddle Park culverts in May 2024, the California Department of Fish and Wildlife confirmed that it "is not currently a barrier." ECF No. at __. As such, Plaintiffs have failed to show by clear and convincing evidence that the Biddle Park culverts will result in imminent and reasonably certain unauthorized "take" of Steelhead.

With respect to the grade control structure in Los Berros Creek, Plaintiffs do not provide any actual evidence of Steelhead attempting and failing to migrate north of the structure. In fact, Plaintiffs do not provide any evidence that Steelhead have within the past decade even interacted with the grade control structure. Also, Lopez Dam operations have no impact on the grade control structure, as it is located in a completely different creek. Accordingly, Plaintiffs have failed to demonstrate by clear and convincing evidence that the grade control structures in Los Berros Creek, which is not impacted by Lopez Dam operations, will result in imminent and reasonably certain "take" of Steelhead.

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
70178850

## 3.    PLAINTIFFS HAVE NOT PROVIDED CLEAR AND CONVINCING EVIDENCE OF IRREPARABLE HARM.

Plaintiffs' Motion is also denied on the alterative ground that Plaintiffs do not show that maintaining the status quo with respect to the Lopez Dam Project, the Biddle Park culverts, or the grade control structure at Los Berros Creek would cause irreparable harm to the Steelhead.

Irreparable harm is not presumed in ESA cases. *Cottonwood Env't Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1091 (9th Cir. 2015). Plaintiffs must establish "a definitive threat of future harm to protected species, not mere speculation." *Nat'l Wildlife Fed'n v. Burlington N. R.R.*, 23 F.3d at 1512 n.8. As explained above, since Plaintiffs are seeking a mandatory preliminary injunction, Plaintiffs must establish extreme or very serious damage to the Steelhead population to demonstrate irreparable harm. In addition, Plaintiffs must also show irreparable harm to their own interests. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 822 (9th Cir. 2018).

The subpopulation of Steelhead in Arroyo Grande Creek is just one of the 29 different subpopulations spread out over hundreds of miles of the California coast. NMFS has designated over 1,200 stream miles as critical habitat for the Steelhead population across its wide geographic range. The approximately 13 miles of Arroyo Grande Creek below Lopez Dam designated as critical habitat accounts for only roughly 1 percent of the total Steelhead population critical habitat. As noted by NMFS, the Arroyo Grande Creek population is relatively small "compared to the total number of steelhead believed to be present throughout the South-Central California Coast ESU." ECF No. __ (NMFS 2001 Biological Opinion) at 6. Plaintiffs have not provided any estimate at all, let alone an estimate supported by modeling or any other scientific analysis, of the potential impact to Steelhead in Arroyo Grande Creek, or the population in general, from the various forms of "take" that they have alleged. As such, Plaintiffs have not shown by clear and convincing

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

evidence extreme or very serious damage to the Steelhead population resulting from the County's continued operation under the Interim Downstream Release Schedule. Accordingly, Plaintiffs' preliminary injunction motion must be denied.

The preliminary injunction may also be denied on the alternative ground that Plaintiffs have not submitted any evidence demonstrating harm to their own interests.

**4.    PLAINTIFFS HAVE NOT PROVIDED CLEAR AND CONVINCINV EVIDENCE THAT THE BALANCE OF THE EQUITITIES AND PUBLIC INTEREST FAVOR GRANTING THE REQUESTED INJUNCTION.**

Because Plaintiffs' requested relief could potentially harm other federally listed species within the Arroyo Grande Creek watershed, Plaintiffs were obligated to demonstrate that the balance of the equities and public interest both tip in their favor. Here, the admissible evidence demonstrates that Plaintiffs' requested relief will likely result in harm to the Steelhead, the threatened California red-legged frog, and the endangered tidewater goby. As such, the balance of the equities and public interest do not weigh in favor of issuance of the requested injunction. Accordingly, Plaintiffs' Motion is also denied on this independent ground.

The pulse flow rate advocated by Plaintiffs purportedly to benefit Steelhead, which is between two and five times higher than the rate they sought a year ago, will increase the risk of harm to young Steelhead. As Dr. Hanson explains, high magnitude pulses that are triggered during a time when early life stage Steelhead are occupying Arroyo Grande Creek have the potential to wash those fish downstream and out to the Pacific Ocean. There is no indication that Mr. Schmitt in his initial declaration, or Plaintiffs in their initial filings, considered this possibility. However, Mr. Schmitt does assert that Plaintiffs' proposed pulse flows will flush out non-native fish and amphibians, including larger fish such as the largemouth bass. ECF No. 182, ¶ 134. Given the potential for Plaintiffs' pulse

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

flows to prematurely flush out early life stage Steelhead to the Pacific Ocean, Plaintiffs have not demonstrated by clear and convincing evidence that the requested pulse flows would actually benefit the Steelhead.

In addition, the pulse flow advocated by Plaintiffs will increase the risk of harm to young California red-legged frog. Not only is the peak rate of flow two to five times higher than the rate Plaintiffs' sought a year ago, but Plaintiffs also proposes up to five pulses (as compared to one or two) enhancing the likelihood of pulses in February, March, and April when there is the greatest risk of harm to the species. As Dr. Jennings explains, high magnitude pulses that are triggered during a time when early life stage red-legged frogs are occupying the reach of Arroyo Grande Creek above the confluence with Tar Springs Creek have the potential to dislodge egg masses and wash both egg masses and emerging tadpoles downstream and out to the Pacific Ocean. Thus, the evidence indicates that Plaintiffs' requested flow regime has the potential to harm the threatened California red-legged frog.

The pulse flow advocated by Plaintiffs will also increase the risk of harm to endangered tidewater goby. The newly proposed operational regime contemplates pulses with a maximum rate that is two to five times higher than the rate Plaintiffs sought a year ago, and pulses can take place even when the berm separating Arroyo Grande Lagoon from the Pacific Ocean is in place. As a consequence, the pulses can directly cause breaches and wash endangered tidewater goby into the Pacific Ocean. This is potentially problematic, because unlike the adults, early life stage tidewater goby cannot withstand rapid changes in salinity that occur when there is a breach. Thus, the evidence indicates that Plaintiffs' requested flow regime has the potential to harm the endangered tidewater goby.

To the extent Plaintiffs' requested operations and other actions may increase the Steelhead population – Plaintiffs do not provide any estimates of the increase or when this increase might occur – this increase in population also increases the risk of predation by Steelhead on both the threatened California red-legged frog

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

and endangered tidewater goby. In the final rule listing the tidewater goby as endangered, the U.S. Fish and Wildlife Service noted that steelhead predation of the species has been documented. 59 Fed. Reg. 5494 (Feb. 4, 1994). And as acknowledged by the Ninth Circuit in Judge VanDyke's concurring opinion, "an injunction that helps the steelhead inherently risks harming the goby and the frog." *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 161 F.4th at 603.

Accordingly, the motion must be denied because Plaintiffs have failed to demonstrate by clear and convincing evidence that both the balance of the equities and public interest weigh in favor of issuing the requested injunction, particularly in light of the potential negative impacts to the threatened California red-legged frog and endangered tidewater goby.

**5.    THE RELIEF REQUESTED BY PLAINTIFFS IS NOT NARROWLY TAILORED.**

Finally, the Court denies Plaintiffs' Motion on the alternative ground that the proposed mandatory injunctive measures are not narrowly tailored. *See Nat'l Wildlife Fed'n*, 886 F.3d at 823; *All. for the Wild Rockies v. Kruger*, 35 F. Supp. 3d 1259, 1267 (D. Mont. 2014) (plaintiffs must "present the court with some basis on which it can conclude that an injunction would in fact benefit the protected species"); *Pac. Coast Fed'n of Fishermen's Ass'n v. Ross*, Case No. 1:20-cv-00431, 2020 U.S. Dist. LEXIS 87214, at *38 (E.D. Cal. May 18, 2020) (plaintiff must provide "an explanation of how, under present conditions (i.e., not based solely upon rough projections set forth in the 2019 NMFS BiOp), the requested injunction would benefit the species of concern"). While Plaintiffs have proposed a sweeping list of mandatory measures, they do not demonstrate that these measures would prevent irreparable harm to Steelhead. Plaintiffs' hypothesis that the requested actions will overall, over an indeterminate period of time, be beneficial to Steelhead does not as a matter of law demonstrate that the relief requested is narrowly tailored.

Plaintiffs have asserted that "[a]s a complete barrier to Steelhead migration,

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

Lopez Dam has had the greatest negative impact on the AG Creek Steelhead population of all factors." ECF No. 179 at 7. But the County has already received authorizations under the Endangered Species Act for the existence of Lopez Dam, and Plaintiffs do not explain how any of their requested relief is narrowly tailored or even justified when accounting for that fact.

Plaintiffs also assert that eight structures within Arroyo Grande Creek or Los Berros Creek are passage impediments, but the County only owns or maintains two of those structures. With respect to the first structure, the Biddle Park double arch culvert, NMFS has already issued an Endangered Species Act authorization for the structure. Even more recently, the California Department of Fish and Wildlife confirmed that the structure is not a passage impediment. As for the second structure, the grade control structure in Los Berros Creek, Plaintiffs have not provided any evidence that Steelhead have attempted and failed to migrate in Los Berros Creek due to the grade control structure. As such, Plaintiffs have not demonstrated how the requested injunction is "narrowly tailored to remedy the specific harm shown." *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d at 1029.

Plaintiffs also fail to justify the requested relief for a fish screen, predator removal plan, BMP plan, or the habitat restoration measures. For example, Plaintiffs fail to quantify or explain how any of these mandatory actions would reduce the asserted irreparable injury, when the single "greatest negative impact" to Steelhead in Arroyo Grande Creek is the existence of Lopez Dam, and Lopez Dam has already been permitted under the Endangered Species Act.

Moreover, Plaintiffs have not demonstrated that the measures are narrowly tailored such that the County could feasibly accomplish them in the proposed time period that a preliminary injunction may be in place. *Pac. Coast Fed'n of Fishermen's Ass'n v. Ross*, 2020 U.S. Dist. LEXIS 87214, at *38 (requiring plaintiffs to provide "at least a basic showing" that the defendant "has the ability and sufficient discretionary authority (i.e., is not constrained by other legal or contractual

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

70178850

requirements) to implement the requested relief"). In contrast, the County has demonstrated that, in light of the applicable state and federal regulatory requirements, it is likely that these measures could only be completed, if at all, after the approval of the HCP or in conjunction therewith. As approval of the HCP would moot Plaintiffs' ESA claim, it is clear that this "sort of distant relief is not calibrated to address the imminent harms for which preliminary injunctions are intended." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, Case No. 3:01-cv-640, 2026 WL 599621, at \*20 (D. Or. Mar. 02, 2026) (declining to order the defendant to complete repair and maintenance projects because the "time horizon on the requested repairs extends far into the future, with benefits likely not reaped until future seasons, possibly even after a final decision on the merits of this case").

## 6.    CONCLUSION.

In summary, Plaintiffs have failed to demonstrate that they have standing, which on its own requires denial of the motion. Plaintiffs have also failed, however, to demonstrate by clear and convincing evidence a likelihood of success, irreparable harm, that the balance of the equities tip in their favor, and that granting the Motion is in the public interest. Any one of these failures requires denial of the Motion. The Motion is also denied on the basis that that the proposed mandatory injunctive measures requested by Plaintiffs are not narrowly tailored. Accordingly, for all of the reasons set forth above, the **MOTION IS DENIED.**

**IT IS SO ORDERED.**

Dated:

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

- 15 -                                Case No. 2:24-cv-06854 SPG (ASx)
ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
70178850