NOSSAMAN LLP
PAUL S. WEILAND (SBN 237058)
pweiland@nossaman.com
BENJAMIN Z. RUBIN (SBN 249630)
brubin@nossaman.com
ELIZABETH KLEBANER (SBN 261735)
lklebaner@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:   949.833.7800
Facsimile:    949.833.7878

KATHERINE L. FELTON (WA SBN 30382)
*Admitted Pro Hac Vice*
kfelton@nossaman.com
BRIAN FERRASCI-O'MALLEY (WA SBN 46721)
*Admitted Pro Hac Vice*
bferrasciomalley@nossaman.com
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone:   206.395.7630
Facsimile:    206.257.0780

Attorneys for Defendant
COUNTY OF SAN LUIS OBISPO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SAN LUIS OBISPO COASTKEEPER, LOS PADRES FORESTWATCH, CALIFORNIA COASTKEEPER ALLIANCE, and THE ECOLOGICAL RIGHTS FOUNDATION,<br><br>     Plaintiffs,<br><br>     vs.<br><br>COUNTY OF SAN LUIS OBISPO,<br><br>     Defendant. | Case No:  2:24-cv-06854 SPG (ASx)<br><br>**DECLARATION OF KATE BALLANTYNE IN SUPPORT OF COUNTY OF SAN LUIS OBISPO'S OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTION AND PLAINTIFFS' RENEWED MOTION TO APPOINT SPECIAL MASTER AND EXPERT PANEL EMBEDDED THEREIN**<br><br>Date Action Filed: August 13, 2024 |

DECLARATION OF KATE BALLANTYNE

70169106.v14

**DECLARATION OF KATE BALLANTYNE**

I, Kate Ballantyne, declare as follows:

1.      I am Assistant Chief Executive Officer for the County of San Luis Obispo ("County"), and I have been in this position since October 2025. Unless otherwise stated on information and belief, I have personal knowledge of the facts set forth herein, and if called and sworn as a witness, could and would competently testify as set forth below. While the San Luis Obispo County Flood Control and Water Conservation District is a distinct and separate legal entity from the County, it is supported by County staff. Accordingly, unless otherwise indicated, when I refer below to the County, I am referring to either the County of San Luis Obispo or the San Luis Obispo County Flood Control and Water Conservation District.

2.      The documents attached as Exhibits A through H to this Declaration and discussed further below are true and correct copies of documents that the County has in its records and which have been kept in the ordinary course. Also, County staff prepared a map depicting the Arroyo Grande Creek watershed, the underlying land ownership (State/City/Federal/County/Private), and certain County infrastructure (e.g., the grade control structure on Los Berros Creek and the culverts at Biddle Park) included as Appendix 2 to the Opposition Brief to Plaintiffs' Second Motion for Preliminary Injunction. The County's consultant also prepared a map of the South Central California Coast steelhead's critical habitat that depicts in green the small portion that is within Arroyo Grande Creek included as Appendix 1 to the Opposition Brief.

3.      Before elevating to the position of Assistant Chief Executive Officer, I held three positions within the County Public Works Department. Between 2018 and October 2025, I was a Deputy Director of Public Works. Between 2014 and 2018, I worked at the County as an Environmental Division Manager. Between 2003 and 2014, I worked at the County as an Environmental Resource Specialist.

4.      In my position as Assistant Chief Executive Officer, I am responsible

for overall performance of the municipal services group consisting of the external facing departments of the Agricultural Commissioner, Planning and Building, Public Works, Groundwater Sustainability, County Fire, Airports, UC Cooperative Extension, Libraries, Parks and Recreation, and Economic Development.

5.      In my prior position as the Deputy Director of Public Works for the County, I was responsible for managing and overseeing, among other things, various flood control and water supply projects in the County, including those involving Zone 3 and Zone 1/1A in the Arroyo Grande area (zones described further in paragraph 7). As a result, my job required that I be familiar with the history of the projects undertaken or administered by the County in the Arroyo Grande Creek watershed, including Lopez Dam. My job responsibilities also included providing updates and presentations to the County Board of Supervisors regarding these projects, overseeing the development of these projects, and overseeing the development of the Lopez Water Project Habitat Conservation Plan ("HCP"), including related studies and reports.

6.      After the Court issued the now vacated 2024 Preliminary Injunction Order, I was also involved with developing the proposed and final plans required by the Order. I was also the point person at the County for responding to the Plaintiffs' voluminous discovery requests issued during fact discovery in this litigation.

**County History of Project Permitting and Implementation**

7.      As discussed in my prior declaration, when Plaintiffs filed their motion for the now vacated preliminary injunction in August 2024, the County had limited time to prepare its opposition. ECF No. 134-1 ¶ 6. Therefore, at that time, the County was unable to undertake a comprehensive review of its files regarding the history of County actions in the Arroyo Grande Creek watershed. Since that time, the County has been able to review its files. The County has a long history of implementing improvement projects that benefit South-Central California Coast

steelhead ("steelhead") and California red-legged frogs in Arroyo Grande Creek. The County has identified a number of instances where the County sought permits from the U.S. Army Corps of Engineers ("Corps") to undertake proposed actions in the Arroyo Grande Creek watershed. The Corps consulted with the National Marine Fisheries Service ("NMFS") and U.S. Fish & Wildlife Service ("USFWS") through the section 7 process regarding the effects of such proposed actions on steelhead for these projects, and NMFS and USFWS issued biological opinions and incidental take statements authorizing take as a consequence of the proposed actions.

8.      After the listing of Steelhead in 1997, the County immediately took steps to assure compliance with the Endangered Species Act "take" prohibition for steelhead. In 1998, the County sought and obtained authorizations to construct the culvert at Biddle Park. One of the authorizations the County obtained is a permit under section 404 of the Clean Water Act. The Corps issued the permit on October 27, 1998. Before it issued the permit, the Corps engaged in consultation with NMFS and USFWS under section 7 of the Endangered Species Act. Following consultation, NMFS and USFWS both issued biological opinions and incidental take statements in October 1998, that authorized take incidental to the County's repair project and maintenance of the culverts at Biddle Park. The NMFS biological opinion focused on Steelhead, whereas the USFWS biological opinion focused on California red-legged frog. The NMFS biological opinion is attached to this Declaration as Exhibit A. In 2000, NMFS amended its 1998 biological opinion and incidental take statement. *See* ECF No. 183-17. In 2024, the California Department of Fish and Wildlife (previously called the California Department of Fish and Game) completed a formal assessment of the Biddle Park culverts and concluded that it "is not currently a barrier." This assessment is attached to this Declaration as Exhibit B.

9.      The County has continued to work with NMFS and USFWS and

- 3 -                    Case No. 2:24-cv-06854 SPG (ASx)
DECLARATION OF KATE BALLANTYNE
70169106.v14

obtain authorization for potential "take" of listed species associated with a range of projects in the Arroyo Grande Creek watershed. In 2001, the County obtained authorizations to complete the Lopez Dam seismic remediation project, including changes to the dam and outlet works. The California Department of Water Resources Division of Safety of Dams required the County to undertake the project to operate the Lopez Reservoir to capacity. One of the authorizations the County obtained is a permit from the Corps under section 404 of the Clean Water Act. The Corps issued a permit in 2001. Before it issued the permit, the Corps engaged in consultation with NMFS and USFWS under section 7 of the Endangered Species Act regarding the effects of the action on steelhead and California red-legged frog, respectively. Following consultation, USFWS issued a biological opinion and incidental take statement in 2001. NMFS also issued a biological opinion and incidental take statement in 2001 (attached as Exhibit C to this Declaration). NMFS amended its biological opinion and incidental take statement in 2002 (attached as Exhibit D to this Declaration).

10.    In 2012, the County obtained authorizations for the Rodriquez Waterline Project, which was a project intended to stabilize a water pipeline and eliminate the potential for the pipeline to impede Steelhead passage in Arroyo Grande Creek near the Rodriguez Bridge (PAD_ID 736893/ Passage ID 13260). One of the authorizations the County obtained is a permit from the Corps under section 404 of the Clean Water Act. The Corps issued a permit on June 6, 2012. Before it issued the permit, the Corps engaged in consultation with NMFS and USFWS. USFWS issued a biological opinion and incidental take statement in 2012. NMFS also issued a biological opinion and incidental take statement in 2012 (attached as Exhibit E to this Declaration).

11.    In 2019, the County obtained a Corps permit for its Waterway Management Program ("WMP"). The County began planning for the WMP around 2005. The WMP is a set of actions designed to help restore the capacity of the

DECLARATION OF KATE BALLANTYNE

70169106.v14

leveed lower three miles of Arroyo Grande Creek and Los Berros Creek to provide flood protection up to a 20-year storm event while simultaneously enhancing water quality and sensitive species habitat within the managed channel. The County initiated environmental review of the WMP under the California Environmental Quality Act in 2008 and issued an Environmental Impact Report for the WMP in 2010. Before the Corps issued a permit for the WMP, it engaged in consultation with USFWS and NMFS under section 7 of the Endangered Species Act. In 2015, USFWS issued a biological opinion and incidental take statement authorizing take incidental to the WMP. In 2017, NMFS issued a jeopardy biological opinion with a reasonable and prudent alternative and incidental take statement authorizing take incidental to the WMP (attached as Exhibit F to this Declaration). In March 2025, NMFS confirmed the Corps and County are complying with the biological opinion including the reasonable and prudent alternative for the WMP (see Exhibit G attached to this Declaration).

12.    Between 2019 and 2020, approximately $7.5 million was spent on constructing substantial components of the WMP project, including the construction of 42 log structures to stabilize the channel and provide steelhead and California red-legged frog habitat. The project also aims to establish continuous canopy cover of mature trees by filling existing vegetation gaps and improving species diversity.

13.    In 2023, heavy rains caused damage to the Arroyo Grande Creek levee and caused levee failure, flooding and posed an imminent threat to life and property. The County promptly reported the levee damage to the Corps, NMFS, and other federal and state regulatory agencies. The County also provided the Corps, NMFS, and other agencies with an emergency notification package of the work conducted to address damage to the levee. The Corps subsequently notified the County that the emergency activity was covered by a Regional General Permit issued by the Corps in combination with a modified programmatic permit for the

DECLARATION OF KATE BALLANTYNE
70169106.v14

WMP. The Corps also indicated to the County that it had coordinated with NMFS. The Corps issued the modified section 404 permit in 2023.

14. The County is currently designing the WMP reasonable and prudent alternative Meadow Creek Lagoon project with guidance from an independent science review panel ("Independent Science Panel") composed of experts in environmental science and engineering, NMFS, CDFW, and key land owners. By including resource agencies and land owners, the Independent Science Panel can account for all interests, make informed feasibility determinations, and avoid the risk of inconsistent direction emerging from the Panel's recommendations and the federal agencies imbued with the authority to implement the Endangered Species Act. The Meadow Creek Lagoon project seeks to improve connectivity between Meadow Creek Lagoon and Arroyo Grande Creek Lagoon, increasing habitat for growth and survival of migrating smolts/juvenile steelhead, as well as addressing flood impacts associated with lagoon management alternatives. The Meadow Creek Lagoon project is a multi-year project that is anticipated to be developed, permitted, and implemented over the next several years. This project is being coordinated with underlying landowners including California Department of State Parks and South San Luis Obispo County Sanitation District as well as NMFS. It is expected that the project may also benefit tidewater goby, and USFWS will be consulted for the project. Before implementing the project, the County anticipates obtaining environmental authorizations from a number of federal and state regulatory agencies, including NMFS, USFWS, the California Department of Fish and Wildlife ("CDFW"), the Corps, the Regional Water Quality Control Board ("RWQCB"), and the California Coastal Commission.

15. Due to previously unknown Sanitation District infrastructure which could not be relocated or removed, the Independent Science Panel (which includes NMFS and Corps representatives) has been providing input on revisions to the project. The County submitted an updated and revised Meadow Creek Restoration

DECLARATION OF KATE BALLANTYNE
70169106.v14

Alternatives Analysis to the Independent Science Panel in January 2026. The Panel met in March 2026 and discussed the Analysis and the preferred alternative identified by the County for further assessment during a subsequent environmental review and permitting process as described above.

16. In 2024, the District partnered with Creeklands (formerly known as Central Coast Salmon Enhancement) and provided staff resources and $296,000 funding for construction of a fish passage improvement project at the Arroyo Grande Gauge in Arroyo Grande Creek (PAD_ID 707001/ Passage ID 8409) downstream of the Lopez Dam. Before proceeding with the project, it was necessary to obtain a permit from the Corps, and to do so the Corps was required to consult with USFWS and NMFS. Both USFWS and NMFS authorized the gage modification project under programmatic biological opinions covering certain categories of restoration actions.

17. The foregoing demonstrates that, contrary to Plaintiffs' allegations, the County regularly communicates with various regulatory agencies including NMFS, and that the County has obtained numerous authorizations from NMFS and USFWS for County activities in the Arroyo Grande Creek watershed. In my experience, the County has a productive working relationship with NMFS and other permitting agencies.

### The County's Development of the Lopez Project HCP

18. The County's work to develop the HCP began in 1999. This HCP would provide further protection for species listed under the Endangered Species Act, and some species that are proposed to be listed under the Act. Development of the HCP has been a lengthy and expensive process for a variety of reasons, including the need to coordinate with NMFS and USFWS, conduct studies necessary to understand the hydrology of the system, habitat improvement opportunities, operations models, water availability analysis, and assisted migration or volitional passage potential, among others, and to understand the

Case No. 2:24-cv-06854 SPG (ASx)

DECLARATION OF KATE BALLANTYNE

70169106.v14

potential impacts on multiple listed species (e.g., tidewater goby, California red-legged frog, steelhead, etc.). With the passage of time, and changing conditions, many studies needed to be updated or redone. Turnover in staff at the resource agencies and the County, leadership changes at the County and federal levels, and a pandemic also occurred. The County has expended millions of dollars on studies, model development, and other tasks intended to support the HCP planning process. Through conversations with staff and a review of records, I can confirm that this has included the development of a hydrological model of Arroyo Grande Creek, groundwater modeling in the Arroyo Grande Creek watershed, steelhead and California red-legged frog habitat surveys in Arroyo Grande Creek, analyses of fish passage in Arroyo Grande Creek, an analysis of habitat restoration opportunities in Arroyo Grande Creek, and a model of steelhead in Arroyo Grande Creek. In many instances, the impetus for preparing such studies and analyses was input from USFWS or NMFS regarding the information necessary to support the HCP. Some of the major milestones and studies prepared include, but are not limited to:

- 1999-2004: Instream flow studies; preparation of a Draft HCP and Environmental Assessment; submittal of Final Draft HCP to resource agencies
- 2006-2007: IDRS developed, provided to NMFS and USFWS for their review and comment, and adopted by Zone 3 agencies and Board of Supervisors;[1] flow modeling to address NMFS' comments on the HCP

---

[1] I have searched for records, and over the nearly 20-year period since the County approved and began implementing the IDRS, I have not found a single instance in which NMFS has sent a cease and desist letter or any other formal communication asserting that implementation of the IDRS was resulting in unauthorized take of Steelhead.

- 8 -                                    Case No. 2:24-cv-06854 SPG (ASx)

DECLARATION OF KATE BALLANTYNE

70169106.v14

- 2009: Revisions to Lopez Reservoir operations model
- 2009-2011: Development of Aquatic Habitat Survey for Arroyo Grande Creek
- 2012: Water Availability Analysis prepared at NMFS' request
- 2015: Preparation of draft downstream release program
- 2019-2021: County consultant maps habitat in Arroyo Grande Creek and completes instream studies
- 2020-2022: County consultant provides draft field flow measurement data related to Groundwater Sustainability Plan; County prepares a Groundwater Sustainability Plan for the Arroyo Grande basin, providing information about groundwater-surface water interactions; County consultant prepares draft habitat report
- 2023: Draft Assisted Migration report prepared and submitted to NMFS and CDFW; District begins drafting Fish Passage Feasibility Report; County consultant begins Downstream Steelhead Restoration Opportunities Tech Report
- 2023-2024: Preliminary downstream releases modeling results provided by County consultant
- 2024: NFMS requests additional passage study; County begins the process of securing a consultant for this work
- 2025: County completes volitional fish passage study and submits to NMFS; County completes Final Draft HCP and submits to NMFS and USFWS

19. The work set forth above that occurred from 2019 to 2024 with the assistance of County's consultants (habitat mapping, data collection, model development and testing, and analyses) was informed by discussions with NMFS. This shows that the County was not pursuing a strategy of delay in developing the HCP as Plaintiffs argue. Rather the County has been steadfast in its efforts to make

DECLARATION OF KATE BALLANTYNE
70169106.v14

progress toward approval of the HCP.

20. After the Court issued the vacated Preliminary Injunction in December 2024, the County diligently undertook efforts to comply with the Order. This included, among other things, issuing a request for proposals for a Steelhead Passage Feasibility Assessment of Lopez Dam as recommended by NMFS and directed in the vacated Preliminary Injunction. The County awarded the contract to McMillen in April 2025.

21. County staff regularly met with staff from H.T. Harvey, Stillwater Sciences, and McMillen to ensure the schedule and approach resulted in the timely completion of all tasks required by the now vacated Preliminary Injunction.

22. During this same time period the County also continued to discuss the major components of the HCP during regular meetings with NMFS, USFWS, and CDFW.

**Plaintiffs' Proposal for Appointment of an "Expert Panel" and Special Master**

23. The County is a local public agency with limited staff capacity. While Public Works employs approximately 300 people, the services it provides are Countywide and consist of all facets of public works- roads, water and wastewater systems, flood control, facilities, building maintenance and custodial, finance, capital planning, construction, and support services. At present, we have approximately three engineering staff partially assigned to the Zone 3 system (budgeted at 1 ¼ full time equivalents). Environmental support to Zone 3 is regularly provided partially by 2-3 Environmental Specialists as a portion of their workload. At least 12 County staff members were involved in developing and implementing work product to comply with the vacated Preliminary Injunction and 14 County staff members supported the efforts to respond to Plaintiffs' discovery demands. These County staff have regular ongoing responsibilities that are separate and distinct from the work they have been required to perform relating to the litigation. Since fact discovery closed in 2025, and the County submitted the

DECLARATION OF KATE BALLANTYNE

70169106.v14

HCP to NMFS and USFWS for agency review on October 1, 2025, County staff have been able to return to focusing their time on their regular, ongoing responsibilities while continuing to coordinate with NMFS and USFWS staff on the submitted HCP. If the County is required to re-do or redraft its HCP to Plaintiffs' wants and desires as opposed to the direction of the regulatory agencies responsible for implementing the Endangered Species Act, the discovery process in this litigation is reopened, and/or if the County is required to revise and implement plans under a second Preliminary Injunction at the instruction of a special master, then County staff will be forced to divert time away from, and deprioritize, their other important work to serve County residents.

24.    Responding to Plaintiffs' voluminous discovery requests issued during the fact discovery phase of this litigation, and developing the work products called for in the vacated Preliminary Injunction was incredibly burdensome and time-consuming for the County. It placed a significant strain on the County's ability to perform other necessary services as part of its normal duties. County staff had to complete all their normal responsibilities supporting the County and its residents in addition to implementing the requirements of the Order. Staff had to work evenings, weekends and holidays. Our engineering staff deferred operations and maintenance duties in order to work on the litigation.

25.    Plaintiffs' now request that this Court enter a new Preliminary Injunction that mandates intensive new, additional injunctive relief that includes requiring the County to re-draft its HCP application based on the direction of a special master and "expert panel" who are not County personnel, and to empower the appointees to employ consultants and take control of the County's work product, all at the County's expense. This ignores completely that the County is engaged in ongoing discussions with NMFS and USFWS concerning the draft HCP. It would be counterproductive for a panel of third-parties to direct the County's HCP, particularly because USFWS has indicated it is sufficiently

DECLARATION OF KATE BALLANTYNE

70169106.v14

satisfied with the HCP to issue a public draft for review and comment (as required before issuance of an incidental take permit) and NMFS has provided initial input to the County that staff are addressing through technical meetings. Additionally, based on my review of the materials submitted to the Court regarding Plaintiffs' proposed special master, there is no indication that he has ever participated in the development of a habitat conservation plan or has any experience with development, approval and implementation of habitat conservation plans.

26. The request that the special master and "expert panel" have the authority to direct County actions would improperly usurp the County's governmental functions and create the potential for inconsistent direction from NMFS and USFWS on the one hand and the "expert panel" and special master on the other. Similarly, the request that the "expert panel" and special master be empowered to direct the County to revise and implement various plans presents the similar risk of inconsistent direction from the regulatory agencies (NMFS, USFWS, CDFW, and others) on the one hand, and the "expert panel" and special master on the other. As a consequence, in my professional opinion the request is untenable.  The County would be forced to redirect staff away from their work on the HCP to assist with preparing motions to the Court relating to the special master and "expert panel's" conflicting instructions. This would further drain County staff's time to complete their other regular required duties.

27. In addition, Plaintiffs propose that the special master be authorized to demand that the County produce documents, sit for "interviews," and appear at "hearings" conducted by the special master who could then issue "findings of fact" "as necessary" to the Court. As discussed above, the County has already devoted considerable resources to responding to Plaintiffs' voluminous discovery, including responding to 50 interrogatories, 106 requests for production, and 309 requests for admission, and the depositions of numerous County staff in their individual and Rule 30(b)(6) capacities. If the special master is provided with the

- 12 -                    Case No. 2:24-cv-06854 SPG (ASx)

DECLARATION OF KATE BALLANTYNE

70169106.v14

authority to direct limitless discovery and require County staff and consultants to appear for "interviews" and "hearings," as Plaintiffs propose, this will likely result in a significant drain on County resources, pulling these consultants and staff away from their existing and ongoing responsibilities, including continued coordination with NMFS and USFWS on the HCP. The result will be further delay and unnecessary litigation expense imposed on the County.

28.	It is also concerning that based on my review of the materials submitted to the Court, there is no indication that Plaintiffs' proposed special master is a lawyer, has any legal training, or has ever served as special master in a legal proceeding.

29.	Based on my review of the documents, it appears that Brian Cluer attended a site meeting regarding the development of the RPA for the WMP. Dr. Cluer's CV (ECF No. 159-6) also lists, as one of five "Notable Projects" that he worked on, the "Arroyo Grande Creek flood control evaluation in support of NMFS Biological Opinion." This is the WMP. The CV also states with respect to the WMP that he "[l]ed field evaluations and review of consultant's model and recommendations for revising flood control actions."

30.	After reviewing the files and based on my own personal knowledge, it is clear that Mr. Spina has been significantly involved in many Arroyo Grande Creek projects since at least 1998. For example, he was the lead NMFS staff on the biological opinions associated with the Biddle Park culverts and the Lopez Dam Seismic Retrofit. He has also attended meetings, provided verbal and written comments, acted as lead staff, and supervised staff associated with the HCP for an extended duration of that effort (1999-2025).

31.	The County is incurring substantial attorneys' fees and costs to defend this litigation, which includes funding its own expert witnesses. Plaintiffs, now seek to burden the County with the financial costs to pay unlimited sums to four proposed "experts" and a special master, and for Plaintiffs to pay nothing. In

DECLARATION OF KATE BALLANTYNE

70169106.v14

addition to the drain on the County's finances, Plaintiffs' proposal would appear to enable said "experts" to direct the procurement of consultants and contractors, the acquisition of property, and the reappropriation of County funds with no consideration of the requirements of the Mini-Brooks Act, Meyers-Milias-Brown Act, the Local Agency Public Construction Act, the Uniform Public Construction Cost Accounting Act, and the County Budget Act, let alone the County's Contracting for Services Policy. *See* Cal. Gov. Code §§ 4525 et seq.; Cal. Gov. Code §§ 3500, et seq.; Cal. Gov. Code §§ 29000, et seq; Cal. Pub. Cont. Code §§ 20100, et seq.; Cal Pub. Cont. Code §§ 22000, et seq.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this ⎣Ο date of April 2026, at San Luis Obispo, California.

_____
Kate Ballantyne

- 14 -                    Case No. 2:24-cv-06854 SPG (ASx)
**DECLARATION OF KATE BALLANTYNE**

70169106.v14